```
 1                      STATE OF MICHIGAN

 2          THIRD JUDICIAL CIRCUIT COURT - WAYNE COUNTY

 3

 4    THE PEOPLE OF THE STATE OF MICHIGAN,

 5

 6    vs.                              Case No. 10-3521

 7

 8    SAMUEL LEE DANTZLER

 9               Defendant.

10                                      /

11

12                        JURY TRIAL

13       BEFORE THE HONORABLE GREGORY D. BILL, CIRCUIT JUDGE

14       701 Frank Murphy Hall of Justice, 1441 St. Antoine,

15            Detroit, Michigan - December 14, 2010

16    APPEARANCES:

17    For the People:       MR. AUGUSTUS W. HUTTING  P24839
                            MS. ANDREA LYNN HUTTING  P68606
18                          Wayne County Prosecutors Office
                            1441 St. Antoine
19                          Detroit, MI  48226
                            (313) 224-5777
20
      For the Defendant:    MR. ROBERT F. KINNEY, III  P35842
21                          MS. ALANNA P. O'ROURKE  P74210
                            Attorney at Law
22                          645 Griswold, Suite 1220
                            Detroit, MI  48226
23                          (313) 963-5310

24    REPORTED BY:          Becky L. Bauer (CSR-3326)
                            Certified Shorthand Reporter
25                          (313) 967-6928
```

1

```
1       COMPUTER GENERATED INDEX AT THE END OF TRANSCRIPT

2                 Detroit, Michigan

3                 December 14, 2010

4                 At or about 10:46 a.m.

5                 (Court, Counsel and Defendants present.)

6                        *      *      *

7                 COURT CLERK:  People versus Samuel Lee Dantzler,

8       circuit court docket number 10-3521, before your Honor for

9       trial by jury.

10                MR. HUTTING:  Good morning, your Honor.

11      Augustus Hutting, Assistant Prosecuting Attorney, on

12      behalf of the People.

13                MR. KINNEY:  Good morning, your Honor.  Robert

14      Kinney appearing on behalf of Mr. Dantzler.

15                THE COURT:  Good morning.  I understand there

16      was a final offer made, a new final improved offer to the

17      Defense.

18                MR. HUTTING:  Yes.  It was plea to -- guilty

19      plea to second degree murder with a sentence agreement of

20      nine-and-a-half years to 15 years.

21                THE COURT:  All right.  And he would also be

22      credited with any jail credit that he's accumulated and,

23      according to my records, since it's one of the oldest

24      cases on the docket, he'd have at least, probably, 250 to

25      275 days --
```

1           MR. HUTTING:  That's correct.

2           THE COURT:  -- credited towards his sentence if

3    there was a plea and adjudication that way, on top of

4    that, which is about, what, nine months?

5           MR. KINNEY:  Yes, your Honor.

6           MR. HUTTING:  Yes, your Honor.

7           MR. KINNEY:  Very close.

8           THE COURT:  So your offer is nine-and-a-half to

9    15, jail credit is about nine months or so by the time of

10   sentencing, so it brings it to eight years and something,

11   in reality, to 15.

12          What is the People's position if he's convicted

13   of various the offenses, Mr. Hutting; what would you be

14   asking from the Court?

15          MR. HUTTING:  I'm sorry, Judge?

16          THE COURT:  If Mr. Dantzler rejects the offer

17   and we proceed to trial, we have the jury in the hallway,

18   what will the People's position be regarding sentencing?

19          MR. HUTTING:  Well, he would -- If he gets

20   convicted, it's going to be mandatory life.

21          THE COURT:  As charged.  If it's the lesser,

22   murder two, for instance?

23          MR. HUTTING:  I don't think he's -- Well, if

24   he's entitled to murder two, and I don't believe that he's

25   going to be because I think his Defense is it wasn't me,

3

```
 1    and this is a felony murder and so he's going to be in it
 2    for all or nothing.  But if somehow he was given murder
 3    two, I would be looking -- and convicted of murder two,
 4    I'd be asking for at least 20 years here, Judge.
 5              THE COURT:  Twenty to what?
 6              MR. HUTTING:  Twenty to 50.  Okay.  Because his
 7    guidelines are 15 to 25.
 8              THE COURT:  And you're fairly confident in the
 9    evidence?
10              MR. HUTTING:  Yes.  With the DNA and the work
11    that -- The additional work that we had done, I believe,
12    is helpful to us because we're now able to put the
13    decedent's DNA on that cap, which came probably during the
14    course of the struggle that this Defendant had with the
15    decedent in that apartment.
16              THE COURT:  All right.  Mr. Kinney, there's a
17    tremendous disparity in Mr. Dantzler's exposure here if
18    things don't go his way at trial.  You've gone over all of
19    this, the jail credit, the People's offer, their new and
20    final and improved offer and what his exposure is if he's
21    convicted?
22              MR. KINNEY:  I have.
23              Haven't I, Mr. Dantzler?
24              THE COURT:  You understand what your options are
25    here, Mr. Dantzler?
```

4

1            DEFENDANT DANTZLER:  Yes, I do.

2            THE COURT:  And you understand what happens if

3    you are convicted, despite Mr. Kinney's skill?

4            DEFENDANT DANTZLER:  Yes.

5            THE COURT:  All right.  And you had a chance

6    this morning, I allowed you to talk to Mr. Kinney.  What

7    is your position at this point?

8            What's your client's position, Mr. Kinney?

9            MR. KINNEY:  Mr. Dantzler wants to go to trial.

10           THE COURT:  You're rejecting the offer and wish

11   to proceed to trial?

12           DEFENDANT DANTZLER:  Yes.

13           MR. KINNEY:  Mr. Culpepper has also been here

14   and talked to him this morning, and me and Mr. Dantzler

15   also had conversations about having a bench trial before

16   this Court, and I indicated to Mr. Dantzler -- and the

17   Court can correct me if I'm incorrect -- but before I had

18   an opportunity to get an answer from Mr. Hutting, the

19   Court indicated that you would not hear a bench trial.

20           THE COURT:  No.  And the reason for that is we

21   picked two -- actually there were two juries selected

22   weeks ago, it takes us weeks to order jurors, so we have

23   enough jurors, especially during holiday season.  And this

24   morning we went to great pains to make sure we had enough

25   jurors for this trial, and they're out in the hallway.  So

```
 1      at this point, my deputies were down there first thing

 2      trying to make sure, because there's a shortage of jurors

 3      this morning, that we had enough jurors for our trial.  So

 4      they're here ready to go.  And I decided that -- What was

 5      the People's position on a waiver trial in this case, Mr.

 6      Hutting?

 7             MR. HUTTING:  Well, provided the proper voir

 8      dire was done and the proper answers came on voir dire

 9      because of the Court's familiarity with the other part of

10      the case, I wouldn't have stood in the way of that.

11             THE COURT:  All right.  Well, I -- I'm -- We

12      have jurors in the hallway, we'll proceed to a jury trial;

13      okay?

14             MR. KINNEY:  Thank you, your Honor.

15             THE COURT:  You're welcome.

16             MR. KINNEY:  The other thing that we would like

17      to put on the Record is that I had -- as everybody knows,

18      most of the arguments that I've had with this Honorable

19      Court was with respect to our own DNA expert.  And the

20      Court signed orders for us, we had talked to, first,

21      Cathy?  Carr, who I found out through the Prosecution that

22      she had done some work on this particular case.

23             Then I went to -- referenced from Ms. Carr to

24      Ann E. Chamberlain.  And the reason my office spoke to Ms.

25      Chamberlain, she was willing to take a court-appointed.
```

```
 1     We sent the information to her and, shortly before trial,

 2     she indicated how much money she wanted and requested that

 3     we send that to the Court, which we did, and I think it

 4     was 2500 dollars a day for testimony, and that didn't

 5     include whatever work she had to prepare for the case.

 6            Naturally, the Court, as the Court knows, the

 7     Court denied it.  And I believe the Court indicated that

 8     you also talked to the Chief Judge in this particular case

 9     and the Chief Judge denied it as well.

10            THE COURT:  Well, because it was extraordinary

11     fees.  And I consulted with our presiding judge because of

12     the amounts involved.  In my years of practice, I had

13     never seen that much, and I used to do complex product

14     liability and wrongful death litigation, aviation

15     litigation, car train collisions, things like that.

16            And that retainer that she presented, I had some

17     problems with.  I went to the -- I had no problems with

18     her hourly fee, and it may well have been that the hourly

19     fee would have probably paralleled what the testimony --

20     what she was entitled to had it taken as long as the

21     projection was.  But there's also a chance that if

22     someone's going to testify for an hour and they're going

23     to bill for a full day, I had some problems with that, and

24     there were some modifications to the agreement.  I had no

25     problems with honoring the hourly fee, as did Judge Kenny,
```

```
1      but the initial retainer into the thousands of dollars

2      and --

3                  MR. KINNEY:  Right.

4                  THE COURT:  -- I thought was exorbitant,

5      unrealistic.  And subject to modification, I would

6      certainly honor the hourly fee, whatever that turned out

7      to be, in terms of preparation and depositions or trial

8      testimony, things like that, and parking, miscellaneous

9      expenses.  That's customary, I had no problem with any of

10     that.  So I'll just -- That was my response so --

11                 MR. KINNEY:  Yes, your Honor.  Well, we just

12     wanted to put that on the Record because Ms.

13     Chamberlain -- well, she wants the retainer or she won't

14     be here.

15                 THE COURT:  All right.

16                 MR. KINNEY:  And with respect to the

17     guidelines -- I mean the jury instructions --

18                 THE COURT:  Well, we can deal with that later.

19                 MR. KINNEY:  Thank you.

20                 THE COURT:  At this time, are we ready for the

21     jurors?

22                 MR. HUTTING:  Yes, your Honor.

23                 THE COURT:  So I'll instruct them to come in

24     tomorrow at 11:30?

25                 MR. HUTTING:  Yes.
```

1            THE COURT:  I'll tell them 11:00, 11:15, and

2    we'll see how things go.

3            I have jury instructions, a preliminary set that

4    we can still discuss at the appropriate time, and verdict

5    forms?

6            MR. HUTTING:  I'll have one for the Court by the

7    end of the day.

8            THE COURT:  By the time I instruct them, that's

9    fine.

10           MR. KINNEY:  Mr. Dantzler is just making sure

11   that Ms. Chamberlain was ready to do her own test, to

12   determine whether his DNA was on the cap.

13           THE COURT:  I did not preclude from that

14   witness, matter of fact, I think I signed the order

15   appointing an expert for the Defense; did I not?

16           MR. KINNEY:  And she was supposed to be an

17   expert, she never brought any results, never indicated to

18   our office that she did anything.

19           THE COURT:  And there was just a question to

20   some of the fees she was assessing and I was going to,

21   basically, honor the hourly rate and the miscellaneous

22   costs.  It was just the retainer I had an issue with, I

23   think.

24           MR. KINNEY:  That she was demanding, so --

25           THE COURT:  All right.  We're ready for the

```
 1        jury?  I have to clear the courtroom momentarily, then the
 2        courtroom will be open.  I have to bring all the jurors
 3        in, please.  Once the jurors are in, prospective jurors,
 4        everyone is welcome to join us.
 5                    DEPUTY SHERIFF:  All rise.
 6                    (At about 10:56 a.m., prospective jurors
 7                    seated.)
 8                    DEPUTY SHERIFF:  Please be seated.
 9                    THE COURT:  Good morning, ladies and gentlemen.
10                    PROSPECTIVE JURORS:  Good morning.
11                    THE COURT:  Before we begin, I'm Judge Greg
12        Bill.  Welcome to our court this morning.  And has
13        everyone had an opportunity to go to the bathroom, get a
14        drink of water before we start?  Raise your hand if you
15        have not had that chance.  A couple of hands.
16                    Would you like to go right now so we don't have
17        to interrupt the proceedings?  Anyone who feels the need
18        to go to the bathroom, get a drink of water, stay on the
19        floor, please go and return.
20                    Count how many, please.
21                    DEPUTY SHERIFF:  Twelve.
22                    (At about 10:59 a.m., brief recess.)
23                    (At about 11:11 a.m., back on the Record.)
24                    THE COURT:  Everyone's had a chance to go to the
25        restroom, get a drink now?
```

10

```
 1                PROSPECTIVE JURORS:  Thank you.

 2                THE COURT:  You're welcome.

 3                Ladies and gentlemen, like I said before, I'm

 4      Judge Greg Bill of the 3rd Circuit Court.  It's my

 5      pleasure and privilege to welcome you to our court this

 6      morning.  I know jury duty may be a new experience for

 7      some of you.  It's one of the most serious duties members

 8      of our free society are asked to perform.  Our system of

 9      self government could not exist without it.

10                The jury is an important part of this court.

11      The right to a jury trial is an ancient tradition and part

12      of our heritage.  The law says that both a person accused

13      of a crime and the prosecution have a right to a trial not

14      by one person but by a jury of twelve impartial persons.

15                Jurors must be as free as humanly possible from

16      bias, prejudice or sympathy for either side.  Each side in

17      a trial is entitled to jurors who keep an open mind until

18      the time comes to decide the case.

19                A trial begins with jury selection.  The purpose

20      of this process is to obtain information about you that

21      will help us choose a fair and impartial jury to hear this

22      case.

23                During jury selection, the lawyers and I will

24      ask you questions, and this is called the voir dire.  The

25      questions are meant to find out if you know anything at
```

11

1      all about this case.  Also, we need to find out if you

2      have any opinions or personal experiences that might

3      influence you for or against the Prosecution, the

4      Defendant or any of the witnesses.  One or more of these

5      things could cause you to be dismissed in this particular

6      case, even though you may otherwise be qualified to serve

7      as a juror.

8             The questions may probe deeply into your

9      attitudes, beliefs and experiences.  They are not meant to

10     be an unreasonable prying into your private lives.  The

11     law requires that we get this information so that a fair

12     and impartial jury may be selected.

13            If you do not hear or understand a question, you

14     should say so.  If you do understand it, you should answer

15     it truthfully and completely.  Please do not hesitate to

16     speak freely about anything that you believe we should

17     know.

18            Now, during jury selection, you may be excused

19     from serving on the jury in one of two ways.  First, I may

20     excuse you for cause; that is, I may decide there's a

21     valid reason why you cannot or should not serve as a juror

22     in this case, or a lawyer from one side or the other may

23     excuse you without giving any reason for doing so and this

24     is called a peremptory challenge.

25            The law gives each side the right to excuse a

1     certain number of jurors in this way.  If you are excused,

2     do not feel bad or take it personally.  As I explained

3     before, there simply may be something that causes you to

4     be excused from this particular case.

5          I will now ask you to stand and swear to answer

6     truthfully, fully and honestly all the questions that you

7     will be asked about your qualifications to serve as a

8     juror in this case.  If you have religious beliefs against

9     taking an oath, you may affirm that you will answer all

10    the questions truthfully, fully and honestly.

11         Here is your oath.

12         COURT CLERK:  Raise your right hands, please.

13         Counsel, all hands raised?

14         MR. KINNEY:  Yes.

15         COURT CLERK:  Do you swear or affirm that you

16    will truthfully answer all questions put to you touching

17    upon your qualifications to serve as jurors in this cause?

18         PROSPECTIVE JURORS:  Yes.

19         COURT CLERK:  Thank you.  You may be seated.

20         THE COURT:  All right.  Thank you.  I'd like to

21    introduce you to the members of our staff at this time and

22    explain briefly what they do.

23         To my right is Becky Bauer.  She's the court

24    reporter.  She's recording everything that's being said on

25    that machine in front of her.

```
 1                    Brenda Moore is our court clerk.  She'll help me
 2         with the jury selection and other matters that will arise
 3         during the course of the trial.
 4                    Our deputies are Corporal Jerome Jenkins and
 5         Corporal Dan Shippee.
 6                    Our judicial assistant is Laurie Zeluff.
 7                    And I'm Judge Greg Bill.  And my job is to make
 8         sure that the trial is run fairly and efficiently and make
 9         sure the rulings comport with what the law requires.
10                    Now this is a criminal case involving the charge
11         of homicide felony murder; is that correct, Mr. Hutting?
12                    MR. HUTTING:  Yes, your Honor, it is.
13                    MR. KINNEY:  Yes, your Honor.
14                    THE COURT:  And I'll explain this charge more
15         fully later.  The charge has been made against the
16         defendant, Mr. Samuel Dantzler, and Mr. Dantzler is
17         represented by Mr. Robert Kinney.
18                    Mr. Kinney, would you like to introduce yourself
19         and your client?
20                    MR. KINNEY:  Thank you, your Honor.
21                    Good morning, ladies and gentlemen, my name is
22         Robert Kinney.  I'm a lawyer and I represent Mr. Sam
23         Dantzler.
24                    THE COURT:  All right.  And who will be seated
25         with you at trial?
```

14

```
 1                    MR. KINNEY:  I apologize.  This is Alanna
 2         O'Rourke, she's a new attorney, she will be assisting me
 3         on this case.
 4                    THE COURT:  All right.  Thank you, both.  Thank
 5         all of you.
 6                    The lawyer for the State of Michigan is
 7         Assistant Prosecuting Attorney Mr. Hutting, Mr. Auggie
 8         Hutting.  Would you introduce yourself and anyone who will
 9         be at the table with you during the course of the trial?
10                    MR. HUTTING:  Sure.
11                    THE COURT:  And then I'll have you call the
12         names of any prospective witnesses that the People may
13         call, since you have the burden of proof.
14                    MR. HUTTING:  Okay.  Good morning, ladies and
15         gentlemen.  As Judge Bill indicated to you, my name is
16         Auggie Hutting, H-U-T-T-I-N-G.  I'm an assistant Wayne
17         County prosecutor and the prosecutor that's been assigned
18         to handle this case.  Assisting me during the course of
19         the trial will be another Wayne County prosecutor, her
20         name is Andrea Hutting, H-U-T-T-I-N-G.  You will also hear
21         and see from an officer in charge that I will have who is
22         out doing some other things right now, his name is
23         Sergeant Charles Clark, he's with the Detroit Police
24         Department Homicide Section Cold Case Squad.
25                    In terms of the witnesses that you may hear
```

```
 1      from, we expect to call, I believe, somewhere between nine
 2      to twelve, what I call live witnesses.  And those
 3      witnesses will be the following:
 4              A doctor for the Wayne County Medical Examiner's
 5      Office.  I believe that will be Doctor Cheryl Loewe, the
 6      deputy chief medical examiner for the County of Wayne.
 7              An evidence tech from the Detroit Police
 8      Department by the name of William Niarhos.
 9              Some civilian witnesses by the name of Janet
10      Burt, that's B-U-R-T, the mother of the deceased.
11              Ms. Nikitta McKenzie, who was the girlfriend of
12      the deceased at the time that this incident occurred.
13              Possibly, Mr. Bernard Wesley, the father of the
14      deceased.
15              And another civilian by the name of Patrick
16      Grunewald.
17              You may also hear from the following witnesses:
18              A person by the name of Chris Steary, who, at
19      the time worked for the Detroit Police Department over in
20      their crime lab.
21              And also from a witness by the name of Nicole
22      Yannacone Clay who worked for a company called -- well,
23      she worked for a company called Bode Technology, and now
24      works for the Metropolitan Detroit -- Metropolitan DC
25      Police Department in their crime lab.
```

```
 1                    And a lady by the name of Rebecca Preston, who
 2          is also from Bode Technology out in Virginia.
 3                    You may also hear from Quiana Turner.
 4                    And I think that that's going to be
 5          approximately the witnesses that you will hear from.
 6                    THE COURT:  All right.  Thank you, Mr. Hutting.
 7                    Now, the Defense does not have to call any
 8          witnesses or produce any evidence, but I'll defer to Mr.
 9          Kinney regarding the issue of witnesses.
10                    Any comments at this time?
11                    MR. KINNEY:  No.  I appreciate the Court telling
12          the jury that, your Honor.
13                    THE COURT:  All right.  You're welcome.
14                    Does anyone who is seated as a prospective juror
15          in this courtroom know the defendant, Mr. Dantzler, the
16          attorneys whose names have been mentioned to you, or any
17          of the witnesses whose names have just been announced in
18          open court?  If you're familiar with somebody, would you
19          rise, please?
20                    All right.  The lady in the back row in the
21          white hat.  Your name, please.
22                    PROSPECTIVE JUROR:  Diana Ziolkowski.
23                    THE COURT:  And who do you know?
24                    PROSPECTIVE JUROR:  Mr. Hutting.
25                    THE COURT:  You know Mr. Hutting?  How are you
```

```
 1      acquainted with Mr. Hutting?

 2                   PROSPECTIVE JUROR:  My husband is a Wayne County

 3      prosecutor.

 4                   THE COURT:  All right.  And your name?

 5                   PROSPECTIVE JUROR:  Debbie Cooper.  I know

 6      Alanna.

 7                   THE COURT:  And you know who?

 8                   PROSPECTIVE JUROR:  Alanna.

 9                   THE COURT:  The attorney at the Defense table?

10                   PROSPECTIVE JUROR:  Yeah.

11                   THE COURT:  How do you know her?

12                   PROSPECTIVE JUROR:  From sailing, at the Bayview

13      Yacht Club.

14                   THE COURT:  From sailing?

15                   PROSPECTIVE JUROR:  Um-hmm.

16                   THE COURT:  Okay.  And what's your last name?

17                   PROSPECTIVE JUROR:  Colpaert.

18                   THE COURT:  How do you spell your last name?

19                   PROSPECTIVE JUROR:  C-O-L --

20                   THE COURT:  Oh, thank you very much.  Debra

21      Jean?

22                   PROSPECTIVE JUROR:  Um-hmm.

23                   THE COURT:  Anyone else?  You may remain seated.

24      Thank you.

25                   May I see the Prosecutor, Mr. Hutting, and the
```

18

```
1          Defense attorney, Mr. Kinney, please?

2                    (At about 11:21 a.m., brief sidebar.)

3               THE COURT:  Okay.  The two ladies that rose,

4     would you stand again?  Thank you for being forthcoming.

5     The lawyers and I, we've had a sidebar conference and

6     you're going to be excused for cause.  Thank you very

7     much.  Thank you for being honest.  Would you visit with

8     Corporal Shippee and you'll be resigned to the jury

9     commission?  Thank you.

10              COURT CLERK:  And the first one was Diana

11    Ziolkowski?

12              PROSPECTIVE JUROR:  Yes.

13              THE COURT:  Gentlemen, what's your projection

14    for the length of trial, including jury selection?

15    Projection for the length of trial, including jury

16    selection?

17              MR. HUTTING:  Three days.

18              MR. KINNEY:  I agree, your Honor.

19              THE COURT:  All right.  Thank you.  We do not

20    meet on Friday.  That's motion day in the court.  So the

21    jury, unless they are in deliberations, they're not here

22    on Friday.  If you're in deliberations, you'll be here on

23    Friday, okay, so that you can make your plans.

24              In a moment, I'll ask whether you believe the

25    length of the trial will be a hardship for you.  Some of
```

19

1    you may have health problems that might prevent you from

2    serving on a jury.  For example, I'm going to ask whether

3    anyone has a medical problem which makes you unable to sit

4    for about 90 minutes or so at a time without interruption

5    and whether anyone has a sight or a hearing problem that

6    might preclude you from seeing or hearing the evidence.

7          Now, before anyone raises their hand, I'm going

8    to make a few brief comments.  There are about 50 of you.

9    There are 14 chairs.  Statistically your chances of being

10   called are less than a third; okay?  At the end of the

11   trial, two names are called.  Those people are alternate

12   jurors.  So 12 of the 50 will actually hear the case.  So

13   your chances of actually being a juror who gets to decide

14   this case are 25 percent or less.  If you're excused from

15   this courtroom, I don't say go home, have a nice day.

16   What I tell you is you have to go back to the jury

17   commission for reassignment to another courtroom.

18          Now the average trial in those letters that you

19   receive is three to four days.  This is an average length,

20   maybe even the shorter side; okay?  I've done trials in

21   this courtroom that have gone two-and-a-half months, last

22   month my trials were, and before that six-and-a-half

23   weeks, three weeks, and a week-and-a-half.  Okay?

24          So if you're assigned to another courtroom for

25   another trial and picked, you may well -- well be serving

```
 1        in a trial that lasts that long.  This is a shorter trial
 2        and you heard what the odds are of you being selected in
 3        this case.  Again, if you're excused, you go back to the
 4        jury commission for reassignment to another courtroom;
 5        okay?
 6               Now everyone serves in the jury box.  I've had
 7        everyone serve from all walks of life.  Matter of fact,
 8        about a year ago, guess who was called, picked, and
 9        served?
10               PROSPECTIVE JURORS:  Congratulations.
11               THE COURT:  Thank you.  After virtually every
12        trial, we get cards and letters from the people that
13        served telling me that it was nothing like they had been
14        told, it wasn't the scary experience.  Some compared me to
15        Judge Judy or Judge Wapner and Judge Mathis.  We try to
16        accommodate you as best we can.
17               This is an interesting experience.  That tragic
18        event of 9/11 renewed our sense of civic obligation.  For
19        our system of government to work effectively, we need
20        people.  You are the judges of the facts; okay?  That's
21        why we need jurors.  Everyone serves.
22               Some of you have -- take -- some of you have
23        childcare issues, like I do.  Raise your hands.  Childcare
24        issues, raise your hands.  Okay.  People take care of
25        family members with physical disabilities, raise your
```

21

1        hands.  Anyone the primary source of income for their

2        households?  Raise your hand.  Look around you.  I can go

3        on and on and on.  We all have many issues in common;

4        okay?  But we're all expected to serve.

5                Do you know that statistically each and every

6        one of us is going to be in a legal situation in all

7        likelihood one day that requires citizens like yourselves

8        being available so we can resolve our own legal dispute?

9                Now I indicated that everyone serves in that

10       jury box.  I've served, as a judge.  We've had emergency

11       room physicians.  We've had priests.  We've had people

12       unemployed, people self-employed, younger citizens, more

13       seasoned citizens, people that are physically challenged.

14       Everyone has served in that jury box.

15                Until about a month ago, I had not had an

16       astronaut.  Well, guess what happened a month ago?  I'm in

17       my twelfth year of being a judge.  I had a gentleman from

18       Alabama who, seven days, is in an astronaut training

19       program.  So I was fulfilled as a judge, I guess.

20                Everyone serves in that jury box.  And we're all

21       expected to make sacrifices; okay?  So I know from looking

22       at your faces when you marched in this morning, you come

23       here with about as much enthusiasm as if I were your

24       dentist about to extract your teeth or your IRS agent

25       about to audit your tax returns with you and I want a

1     piece of paper for every itemization deduction credit

2     you're seeking.

3             But by and large it's an interesting experience.

4     It's not like the movie my staff got me for the holidays,

5     "12 Angry Men", for those of you that have seen that movie

6     or the play.  It's an interesting experience and -- It's

7     interesting, it really is, and we need you.

8             At this time, does anyone have an extenuating

9     circumstance or a medical condition that you feel

10    precludes you from being a fair and appropriate juror in

11    this case?  Keeping in mind if you're excused from this

12    courtroom, you go back to the jury commission for

13    reassignment to another courtroom.

14            Is there anyone in the back row who wants to

15    talk to me?  Yes, sir, your name?

16            PROSPECTIVE JUROR:  John Ketvirtis.

17            THE COURT:  Yes, Mr. Ketvirtis?

18            PROSPECTIVE JUROR:  I had a surgery in mid

19    September and I'm just starting my physical therapy, so

20    I'm having some difficulty to sit still all the time.

21            THE COURT:  Are you able to sit for 90 minutes

22    or so at a time without a break?

23            PROSPECTIVE JUROR:  It depends on the day, it

24    really does.

25            THE COURT:  Did you share your condition with

1    the jury commission?

2              PROSPECTIVE JUROR:  No.

3              THE COURT:  See, the jury commission is separate

4    from us.  They're the ones that have the authority to

5    excuse you, grant you an adjournment, consider anything

6    that you want to talk to them about.  By the time they

7    send you to our floors, we're limited to who we can excuse

8    and why, and that's why I raised those questions with the

9    other people that I've excused and sent back to the jury

10   commission.

11             If you think you can sit 90 minutes or so at a

12   time, I'll ask you to remain.  If you have some

13   discomfort, if you're selected, raise your hand, we'll

14   take a break and accommodate you.  Thank you for being

15   forthcoming.

16             PROSPECTIVE JUROR:  Okay.

17             THE COURT:  Yes?  Your name?

18             PROSPECTIVE JUROR:  Kyung Jin Lim.

19             THE COURT:  Yes?

20             PROSPECTIVE JUROR:  I'm a bankruptcy trustee and

21   I have a hearing scheduled for Thursday, all day, for

22   about a hundred cases, so I don't know if it's going to go

23   that far.

24             THE COURT:  Did you talk to the jury commission

25   about your situation?

```
 1                    PROSPECTIVE JUROR:  No, I did not.  I didn't
 2         realize this was going to take more than one day.
 3                    THE COURT:  Okay.  You got the letter that said
 4         three to four days.
 5                    PROSPECTIVE JUROR:  Oh.
 6                    THE COURT:  Did you read it carefully?
 7                    PROSPECTIVE JUROR:  I guess not.
 8                    THE COURT:  Okay.  I have to ask you to remain
 9         for the time being.
10                    PROSPECTIVE JUROR:  Okay.
11                    THE COURT:  And how do you spell your last name?
12                    PROSPECTIVE JUROR:  L-I-M.
13                    THE COURT:  Okay.  Thank you very much.  And
14         you're a bankruptcy trustee?
15                    PROSPECTIVE JUROR:  Yes.
16                    THE COURT:  Is there a Mr. Dakmak over there
17         still?
18                    PROSPECTIVE JUROR:  Yes, he's still there.
19                    THE COURT:  His son appears here on occasion.
20                    Anyone else in the back row?  Oh, how did we
21         miss you?  Your name?
22                    PROSPECTIVE JUROR:  Zlatka Milosevski.
23                    THE COURT:  Yes.
24                    PROSPECTIVE JUROR:  I have a language problem.
25                    THE COURT:  What's the problem?
```

25

1               PROSPECTIVE JUROR:  Some words I really can't

2       understand.

3               THE COURT:  Are you a United States citizen?

4               PROSPECTIVE JUROR:  Yes.

5               THE COURT:  How long have you lived here?

6               PROSPECTIVE JUROR:  Thirty-six years now.

7               THE COURT:  Thirty-six years?

8               PROSPECTIVE JUROR:  Yeah.

9               THE COURT:  Do you work?

10              PROSPECTIVE JUROR:  I'm retired.

11              THE COURT:  You're retired.  What did you do?

12              PROSPECTIVE JUROR:  I worked on an assembly

13      line.

14              THE COURT:  You worked on an assembly line?

15              PROSPECTIVE JUROR:  Um-hmm.

16              THE COURT:  Do you drive a car?

17              PROSPECTIVE JUROR:  Yes.

18              THE COURT:  Did you take the written test to be

19      licensed?

20              PROSPECTIVE JUROR:  Yes.

21              THE COURT:  No problem?

22              PROSPECTIVE JUROR:  I know, but some words are

23      complicated.

24              THE COURT:  What's your primary language?

25              PROSPECTIVE JUROR:  Macedonian.

```
 1                    THE COURT:  Macedonian.  Did you talk to the
 2        jury commission about this downstairs?
 3                    PROSPECTIVE JUROR:  No, I did not.  They just
 4        call us.
 5                    THE COURT:  Okay.  I have to ask you to remain
 6        for the time being.  Thank you very much for being
 7        forthcoming; okay?
 8                    PROSPECTIVE JUROR:  Thanks.
 9                    THE COURT:  Yes, sir, your name?
10                    PROSPECTIVE JUROR:  Franklin Johnson.
11                    THE COURT:  Okay.  Mr. Johnson?
12                    PROSPECTIVE JUROR:  I'm more than willing to
13        serve.  My only concern is if I'm eligible.  I'm currently
14        on probation for a misdemeanor.
15                    THE COURT:  Yes, you're eligible.  But thank you
16        for being forthcoming.
17                    PROSPECTIVE JUROR:  Yes.  It's my first time
18        here, so --
19                    THE COURT:  All right.  Well, thank you.
20                    Anyone else in the back row?  In the second row?
21        Nobody in the second row?  Anyone in the first row?
22                    Yes, sir, your name?
23                    PROSPECTIVE JUROR:  My name is Ramez Ibrahim.
24                    THE COURT:  Yes.
25                    PROSPECTIVE JUROR:  Some words, sometimes, I
```

27

```
 1      don't understand.  I don't want to make a decision on

 2      something I'm not sure about.

 3              THE COURT:  What's your primary language?

 4              PROSPECTIVE JUROR:  Arabic.

 5              THE COURT:  Arabic?

 6              THE WITNESS:  I don't want to make the wrong

 7      decision, God will punish me for it later on.

 8              THE COURT:  Are you employed?

 9              PROSPECTIVE JUROR:  Yes.

10              THE COURT:  What do you do?

11              PROSPECTIVE JUROR:  Building inspector in the

12      City of Detroit.

13              THE COURT:  You're a building inspector in the

14      City of Detroit?

15              PROSPECTIVE JUROR:  Yes.

16              THE COURT:  And how long have you been a United

17      States citizen?

18              PROSPECTIVE JUROR:  About twenty years.

19              THE COURT:  Now, you talk to people every day;

20      don't you?

21              PROSPECTIVE JUROR:  I do.  But sometimes, you

22      know, in judicial world, something related to law, I don't

23      understand, I haven't seen it.

24              THE COURT:  You're having no problem

25      communicating with me today; correct?
```

28

```
 1                    PROSPECTIVE JUROR:  I understand you now, but
 2         this, probably, sometime I don't.  I'm going to be honest
 3         with you.
 4                    THE COURT:  I appreciate that, Mr. Ibrahim.
 5         Ibrahim; right?
 6                    PROSPECTIVE JUROR:  Ibrahim, yes.
 7                    THE COURT:  Okay.  I'll have to ask you to
 8         remain for the time being.  Did you share this with the
 9         jury commission?
10                    PROSPECTIVE JUROR:  No.
11                    THE COURT:  No.  All right.  Thank you very
12         much.
13                    Anyone else in the first row?  Yes, ma'am, your
14         name?
15                    PROSPECTIVE JUROR:  Estera Iacoban.
16                    THE COURT:  Yes.
17                    PROSPECTIVE JUROR:  I'm willing to serve, but I
18         have an ultrasound scheduled for Thursday and Friday.
19                    THE COURT:  Ultrasounds for Thursday and Friday?
20                    PROSPECTIVE JUROR:  I mean Wednesday and
21         Thursday.
22                    THE COURT:  Wednesday and Thursday?
23                    PROSPECTIVE JUROR:  Yes.
24                    THE COURT:  Can they be rescheduled if you're
25         selected?
```

```
1                    PROSPECTIVE JUROR:  I don't -- it was scheduled
2        almost a month ago.
3                    THE COURT:  Okay.  You said tomorrow and
4        Thursday?
5                    PROSPECTIVE JUROR:  Yes.
6                    THE COURT:  What time tomorrow?
7                    PROSPECTIVE JUROR:  Tomorrow, 9:30 in the
8        morning.
9                    THE COURT:  Because tomorrow we're not going to
10       start until 11:30; is that right, Mr. Hutting?
11                   MR. HUTTING:  That's correct, your Honor.
12                   MR. KINNEY:  That's correct, your Honor.
13                   THE COURT:  Tomorrow, ladies and gentlemen,
14       you'll come in at 11:20 or so, 11:30; okay?  So you could
15       make your one tomorrow.  Did you talk to the jury
16       commission about this?
17                   PROSPECTIVE JUROR:  No.
18                   THE COURT:  No?  Okay.  I have to ask you to
19       remain for the time being; okay?
20                   Anyone else in the first row?
21                   All right.  May I see the lawyers again, please?
22                   (At about 11:36 a.m., brief sidebar.)
23                   THE COURT:  All right.  I've had a sidebar
24       conference with the lawyers.  We're going to excuse for
25       cause, Mr. Ibrahim.  Please tell the jury commission why
```

```
1          you were excused.

2                    Ms. Iacoban, please tell the jury commission why

3          you were excused.

4                    Ms. Milosevski, talk to the jury commission

5          about why you were excused, please.  Please meet with our

6          deputies at the door.

7                    PROSPECTIVE JUROR:  Yes.

8                    THE COURT:  Bankruptcy Trustee Lim, would you

9          also tell the jury commission why you were excused?

10                   PROSPECTIVE JUROR:  Thank you.

11                   THE COURT:  You're welcome.

12                   Is that it, gentlemen?

13                   MR. HUTTING:  Yes, your Honor.

14                   MR. KINNEY:  Yes, your Honor.

15                   THE COURT:  Is there anyone else in the

16         courtroom we missed?

17                   No one else has raised their hand; am I correct

18         gentlemen?  Wait, yes, one more lady.

19                   Why didn't you raise your hand before, ma'am?

20                   PROSPECTIVE JUROR:  Because I have a doctor's

21         appointment tomorrow and I didn't know whether they would

22         let me go or not.

23                   THE COURT:  What is your name?

24                   PROSPECTIVE JUROR:  Delores Casey.

25                   THE COURT:  And what kind of a doctor's
```

```
1        appointment do you have?

2               PROSPECTIVE JUROR:  I have to have -- they are

3        working on my back, I'm going to a pain specialist.

4               THE COURT:  And that's scheduled for tomorrow?

5               PROSPECTIVE JUROR:  Yes.  I have three doctors'

6        appointments all this week.

7               THE COURT:  Gentlemen, should we excuse Ms.

8        Casey?

9               MR. HUTTING:  Yes, your Honor.

10              MR. KINNEY:  No objection, your Honor.

11              THE COURT:  All right.  Ms. Casey, you're

12       excused.  Tell the jury commission why you were excused,

13       please.

14              PROSPECTIVE JUROR:  Thank you.

15              THE COURT:  They still might send you to another

16       courtroom; okay?

17              PROSPECTIVE JUROR:  Okay.

18              THE COURT:  Meet with our deputies at the door,

19       please.

20              This is a criminal case.  The paper used to

21       charge a defendant with a crime is called an Information.

22       The Information in this case charges the defendant, Mr.

23       Dantzler, with the following crime and reads as follows:

24              The date of the alleged offense is January 16,

25       2006.  The place of the alleged offense at 20415 Seven
```

1      Mile, Apartment 302, City of Detroit.  Complainant or

2      victim is listed as Bernard Hill.  Complaining witness

3      reads upon Information and belief.

4           Count one alleges homicide, felony murder, and

5      alleges the Defendant did so while in perpetration or

6      attempted perpetration of home invasion of the first

7      degree, murder one, Bernard Hill, contrary to MCL

8      750.316(1)(b).

9           The Defendant has pled not guilty to this

10     charge.  You should clearly understand the Information I

11     have just read is not evidence.  An Information is read in

12     every criminal trial so that the defendant and jury can

13     hear the charges.  You must not think it is evidence of

14     his guilt or that he must be guilty because he has been

15     charged.

16          A person accused of a crime is presumed to be

17     innocent.  This means that you must start with the

18     presumption that the Defendant is innocent.  This

19     presumption continues throughout the trial and entitles

20     the Defendant to a verdict of not guilty unless you are

21     satisfied beyond a reasonable doubt that he is guilty.

22          Every crime is made up of parts called elements.

23     The Prosecutor must prove each element of the crime beyond

24     a reasonable doubt.  The Defendant is not required to

25     prove his innocence or to do anything.  If you find that

33

1    the Prosecutor has not proven every element beyond a

2    reasonable doubt, then you must find the Defendant not

3    guilty.

4            A reasonable doubt is a fair, honest doubt,

5    growing out of the evidence or lack of evidence.  It is

6    not merely an imaginary or possible doubt, but a doubt

7    based on reason and common sense.  A reasonable doubt is

8    just that, a doubt that is reasonable after a careful and

9    considered examination of the facts and circumstances of

10   this case.

11           Now what we're going to do, ladies and

12   gentlemen, is randomly select the names of prospective

13   jurors.  If your name is called, would you please take the

14   next available seat in the jury box?

15           In row one, closest to this witness chair, is

16   seat number one, followed by seats two, three and four.

17   In the second row are seats five, six, seven and eight.

18   And in the row, back row, by the wall, are seats nine,

19   ten, 11, 12, 13 and 14.  Take the next available chair.

20           Now if we mispronounce anyone's name -- as you

21   can see we deal with hundreds of names every week and we

22   mispronounce some names, on occasion.  If we mispronounce

23   your name initially, bear with us because one of the first

24   questions I'll ask you when you're in that jury box is how

25   do you correctly pronounce your name?  So please wait

34

```
 1        until that time to correct us if we mispronounce your name

 2        initially.

 3                 At this time, Brenda, would you randomly call

 4        some names for us?

 5                 COURT CLERK:  For seat number one, Vera Lynn

 6        Ciavaglia.

 7                 THE COURT:  And you'll take the seat closest to

 8        the witness chair; okay, ma'am?

 9                 COURT CLERK:  For seat number two, Jose Angel

10        Alvarado.

11                 For seat number three, John Howard Ketvirtis.

12                 Seat number four, Vickie Anna Davis.

13                 Seat number five, Cynthia Regina Parker.

14                 Seat number six, Suzanne Ryder Smith.

15                 Seat number seven, Marc Edward Gayeski.

16                 Seat number eight, Sherry Jo Groh.

17                 Seat number nine, David Lee Schrader.

18                 Seat number ten, Karen Elaine Felek.

19                 Seat number 11, Suzanne Marie Riggs.

20                 Seat number 12, Cynthia Suzanne Lozon.

21                 Seat number 13, Franklin Morrell Johnson.

22                 And seat number 14, Timothy James Stradling.

23                 THE COURT:  Good morning.

24                 PROSPECTIVE JURY PANEL:  Good morning.

25                 THE COURT:  To those of you that are in the
```

1          courtroom as prospective jurors, please pay attention to
2          the questions asked of these prospective jurors because if
3          anyone is excused and your name is called, you'll be
4          subjected to the same line of questioning they were and it
5          will expedite and facilitate the impaneling of the jury if
6          I have your attention at the outset.  So thank you in
7          advance for your cooperation.
8                    Juror Number 1, how do you pronounce your last
9          name?
10                   JUROR NO. 1:  Ciavaglia.
11                   THE COURT:  Where are you from, ma'am?
12                   JUROR NO. 1:  Dearborn, Michigan.
13                   THE COURT:  Are you employed?
14                   JUROR NO. 1:  No, I'm retired.
15                   THE COURT:  What did you do?
16                   JUROR NO. 1:  Mail distribution.
17                   THE COURT:  All right.  Thank you.
18                   Anyone in your immediate family employed by law
19         enforcement?
20                   JUROR NO. 1:  No.
21                   THE COURT:  Have you ever served as a juror?
22                   JUROR NO. 1:  No.
23                   THE COURT:  And have you had any direct contact
24         with the criminal justice system where you, yourself, were
25         a defendant, witness or victim?

36

```
1                    JUROR NO. 1:  No.

2                    THE COURT:  Thank you very much.

3                    Number 2, is that Mr. Alvarado?

4                    JUROR NO. 2:  Yes, sir.

5                    THE COURT:  Good morning.

6                    JUROR NO. 2:  Good morning.

7                    THE COURT:  Where you from, sir?

8                    JUROR NO. 2:  Dearborn Heights.

9                    THE COURT:  Are you employed?

10                    JUROR NO. 2:  Yes, sir.  Self-employed.

11                    THE COURT:  You are self-employed.  What do you

12        do?

13                    JUROR NO. 2:  We own a family business

14        restaurant.

15                    THE COURT:  Okay.  We're approaching the lunch

16        hour, I'm hungry.

17                    JUROR NO. 2:  My stomach's rumbling already.

18                    THE COURT:  What kind of food do they have

19        there?

20                    JUROR NO. 2:  Mexican food.

21                    THE COURT:  Where is it at?

22                    JUROR NO. 2:  Ford Road and Telegraph.  We have

23        three locations.

24                    THE COURT:  Oh, Mexican Fiesta.

25                    JUROR NO. 2:  Yes, sir.
```

```
 1                    THE COURT:  I used to be a judge in Dearborn
 2        Heights, grew up at Joy Road and Telegraph, right on the
 3        border of Detroit, Redford and Dearborn Heights there.
 4                    JUROR NO. 2:  I was probably a little rug rat
 5        running around there when you were sitting there.
 6                    THE COURT:  Okay.  They have very good food.
 7                    JUROR NO. 2:  Thank you.
 8                    THE COURT:  There's one in Canton now.
 9                    JUROR NO. 2:  One in Canton, and we just opened
10        one in Hartland, Michigan.
11                    THE COURT:  Is it Ford and Sheldon, roughly?
12                    JUROR NO. 2:  Ford and Sheldon, yes.
13                    THE COURT:  Okay.  So what do you do there?
14                    JUROR NO. 2:  Well, I'm one of the owners.
15                    THE COURT:  All right.  Thank you very much.
16                    Is anyone in your family employed by law
17        enforcement?
18                    JUROR NO. 2:  I have a brother-in-law and
19        father-in-law.
20                    THE COURT:  Who are they with?
21                    JUROR NO. 2:  One is -- They're both retired.
22        Both were chiefs of police at Dearborn.
23                    THE COURT:  All right.  Thank you very much.
24                    Have you ever served as a juror?
25                    JUROR NO. 2:  No.
```

1                    THE COURT:  And have you had any direct contact

2          with the criminal justice system where you were a

3          defendant, witness or victim?

4                    JUROR NO. 2:  I was a victim about twenty years

5          ago.

6                    THE COURT:  What happened?

7                    JUROR NO. 2:  My van was parked in a parking lot

8          at the Fiesta, and when I walked outside, somebody was

9          trying to break into it.  And I chased them down and he

10         turned around and pulled a knife on me and then I just

11         said, you're fine, you can go.  And it went to trial and

12         he pled out.

13                   THE COURT:  All right.  Thank you very much, Mr.

14         Alvarado.

15                   JUROR NO. 2:  You're welcome.

16                   THE COURT:  Next is Mr. Ketvirtis, who has the

17         back situation; right?

18                   JUROR NO. 3:  Yes, sir.

19                   THE COURT:  Where are you from, sir?

20                   JUROR NO. 3:  Dearborn.

21                   THE COURT:  Are you employed?

22                   JUROR NO. 3:  Yes.

23                   THE COURT:  What do you do?

24                   JUROR NO. 3:  I work in a golf retail store.

25                   THE COURT:  Which one?

```
1                    JUROR NO. 3:  Caddy Shack, Newburgh, in Livonia.

2                    THE COURT:  Sure.  Right by Whispering Willows.

3                    JUROR NO. 3:  Right next door.

4                    THE COURT:  I've been there, purchased things

5          there.

6                    JUROR NO. 3:  Come back.

7                    THE COURT:  Probably will.

8                    Anyone in your family with law enforcement?

9                    JUROR NO. 3:  I have two cousins on the Michigan

10         State Police.

11                   THE COURT:  Okay.  Have you ever served as a

12         juror?

13                   JUROR NO. 3:  No.

14                   THE COURT:  Any contacts with the criminal

15         justice system where you were a defendant, witness or

16         victim?

17                   JUROR NO. 3:  No.

18                   THE COURT:  And I'm sorry, what city did you say

19         you're from?

20                   JUROR NO. 3:  Dearborn.

21                   THE COURT:  Dearborn.  Thank you very much.

22                   That's Ms. Davis?

23                   JUROR NO. 4:  Yes.

24                   THE COURT:  Hello.

25                   JUROR NO. 4:  Hello.
```

40

```
 1                    THE COURT:  Where you from?

 2                    JUROR NO. 4:  Detroit.

 3                    THE COURT:  Are you employed?

 4                    JUROR NO. 4:  No.

 5                    THE COURT:  All right.  Is anyone in your family

 6       with law enforcement?

 7                    JUROR NO. 4:  No.

 8                    THE COURT:  Have you ever served as a juror?

 9                    JUROR NO. 4:  No, I haven't.

10                    THE COURT:  Have you had any direct contact with

11       the criminal justice system where you were a defendant,

12       witness or victim?

13                    JUROR NO. 4:  No.

14                    THE COURT:  A lot of nos.  Are you getting

15       hungry?

16                    JUROR NO. 4:  Not really.

17                    THE COURT:  Are you looking forward to the

18       holidays?

19                    JUROR NO. 4:  Yes.

20                    THE COURT:  There we go.

21                    That's Ms. Parker?

22                    JUROR NO. 5:  Yes.

23                    THE COURT:  Good morning.

24                    JUROR NO. 5:  Good morning.

25                    THE COURT:  Where you from, Ms. Parker?
```

```
 1                   JUROR NO. 5:  Redford.

 2                   THE COURT:  Are you employed?

 3                   JUROR NO. 5:  Yes.

 4                   THE COURT:  What do you do?

 5                   JUROR NO. 5:  Technical writer.

 6                   THE COURT:  Is anyone in your family employed by

 7       law enforcement?

 8                   JUROR NO. 5:  Well, my brother-in-law.  Well,

 9       he's retired.  He was a Detroit police officer.

10                   THE COURT:  All right.  Have you ever served as

11       a juror, Ms. Parker?

12                   JUROR NO. 5:  Yes.

13                   THE COURT:  And where was that at?

14                   JUROR NO. 5:  Here.

15                   THE COURT:  Was a verdict reached?

16                   JUROR NO. 5:  I don't know.  I was an alternate

17       so I got off.

18                   THE COURT:  Alternate.  Fair enough.  And have

19       you ever been a defendant, witness or victim regarding a

20       criminal case?

21                   JUROR NO. 5:  No.

22                   THE COURT:  Thank you very much.

23                   Next is Ms. Smith.

24                   JUROR NO. 6:  Yes.

25                   THE COURT:  Where are you from, Ms. Smith?
```

42

1              JUROR NO. 6:  Livonia.

2              THE COURT:  Are you employed?

3              JUROR NO. 6:  Yes, I am.

4              THE COURT:  What do you do?

5              JUROR NO. 6:  I'm a speech pathologist for the

6    Farmington schools.

7              THE COURT:  Thank you.  Is anyone in your family

8    employed with law enforcement?

9              JUROR NO. 6:  No.

10             THE COURT:  Have you ever served as a juror?

11             JUROR NO. 6:  No.

12             THE COURT:  Have you had any direct contact with

13   the criminal justice system where you were a defendant,

14   witness or victim?

15             JUROR NO. 6:  I was a victim, a home invasion,

16   break-in.

17             THE COURT:  Did they apprehend the perpetrator?

18             JUROR NO. 6:  No.

19             THE COURT:  All right.  Thank you very much.

20             Next, is that Mr. Gayeski?

21             JUROR NO. 7:  Yes, it is, sir.

22             THE COURT:  Good morning.

23             JUROR NO. 7:  Good morning.

24             THE COURT:  And where are you from, sir?

25             JUROR NO. 7:  Dearborn.

1            THE COURT:  Are you employed?

2            JUROR NO. 7:  Yes, I am, sir.

3            THE COURT:  What do you do?

4            JUROR NO. 7:  I'm a manager for security for

5      Ford Motor Company.

6            THE COURT:  Thank you.  Is anyone in your family

7      with law enforcement?

8            JUROR NO. 7:  My son's fiance is -- both her

9      parents work for the police department.

10           THE COURT:  All right.  Have you ever served as

11     a juror?

12           JUROR NO. 7:  No, sir.

13           THE COURT:  And have you had any direct contact

14     with the criminal justice system where you were a

15     defendant, witness or victim?

16           JUROR NO. 7:  Yes, sir.

17           THE COURT:  What happened, sir?

18           JUROR NO. 7:  Most recently, 180,000 dollar

19     embezzlement case that we brought to trial and had

20     prosecution against the perpetrator.

21           THE COURT:  All right.  Thank you very much.

22           Next, is that Ms. Groh?

23           JUROR NO. 8:  Yes.

24           THE COURT:  Hello.  Where you from?

25           JUROR NO. 8:  Westland, Michigan.

```
 1                    THE COURT:  Are you employed?

 2                    JUROR NO. 8:  I am.

 3                    THE COURT:  What do you do, ma'am?

 4                    JUROR NO. 8:  I'm a retail store manager for

 5       Sally's Beauty Supply.

 6                    THE COURT:  All right.  Is anyone in your family

 7       employed by law enforcement?

 8                    JUROR NO. 8:  I just had a cousin on the Detroit

 9       Police Department, but he's off on medical.

10                    THE COURT:  All right.  Thank you.

11                    Have you ever served as a juror?

12                    JUROR NO. 8:  No.

13                    THE COURT:  And have you had any direct contact

14       with our criminal justice system where you, yourself, were

15       a defendant, witness or victim?

16                    JUROR NO. 8:  No.

17                    THE COURT:  All right.  Thank you, Ms. Groh.

18                    We'll move on to number 9, Mr. Schrader.

19                    JUROR NO. 9:  Yes.

20                    THE COURT:  Good morning.

21                    JUROR NO. 9:  Good morning.

22                    THE COURT:  Where are you from, Mr. Schrader?

23                    JUROR NO. 9:  Livonia.

24                    THE COURT:  Are you employed?

25                    JUROR NO. 9:  Yes, sir.
```

```
1                    THE COURT:  What do you do, sir?

2                    JUROR NO. 9:  Programmer.

3                    THE COURT:  Anyone in your family with law

4         enforcement?

5                    JUROR NO. 9:  No.

6                    THE COURT:  Ever been a juror?

7                    JUROR NO. 9:  Yes.

8                    THE COURT:  Where was that at?

9                    JUROR NO. 9:  Here.

10                   THE COURT:  Was a verdict reached?

11                   JUROR NO. 9:  Yes.

12                   THE COURT:  Were you the foreperson?

13                   JUROR NO. 9:  No.

14                   THE COURT:  All right.  And have you had any

15        direct contact with the criminal justice system where you

16        were a defendant, witness or victim?

17                   JUROR NO. 9:  I guess it would be like a

18        witness.  I did a deposition in a civil case.

19                   THE COURT:  All right.  Thank you much.

20                   Next is -- Is that Ms. Felek?

21                   JUROR NO. 10:  Felek.

22                   THE COURT:  That's what I said, Felek.  Where

23        you from?

24                   JUROR NO. 10:  Redford.

25                   THE COURT:  Are you employed?
```

46

```
 1                    JUROR NO. 10:  Yes.

 2                    THE COURT:  What do you do?

 3                    JUROR NO. 10:  I'm a sales coordinator.

 4                    THE COURT:  Okay.  I need you to all use your

 5        outside voices, okay, for Mrs. Bauer.

 6                    Is anyone in your family with law enforcement?

 7                    JUROR NO. 10:  No.

 8                    THE COURT:  Have you ever been a juror?

 9                    JUROR NO. 10:  Yes.

10                    THE COURT:  And where was that at, ma'am?

11                    JUROR NO. 10:  I think it was -- Does Cobo Hall

12        have -- not Cobo Hall -- I mean, the County building.

13                    THE COURT:  Yes.

14                    JUROR NO. 10:  It was a lawsuit.

15                    THE COURT:  Oh, okay.  And you were on a jury?

16                    JUROR NO. 10:  Yes.

17                    THE COURT:  Was a verdict reached in the trial?

18                    JUROR NO. 10:  Yes.

19                    THE COURT:  And were you the foreperson?

20                    JUROR NO. 10:  No.

21                    THE COURT:  All right.  And have you had any

22        direct contact with the criminal justice system where you

23        were a defendant, witness or victim?

24                    JUROR NO. 10:  Yes.

25                    THE COURT:  What happened?
```

47

1                    JUROR NO. 10:  My son and I were kidnapped.  I

2          was raped.  I was hit in the head with a hammer,

3          threatened with a butcher knife.  Then, four years after

4          that, I was on a date when we were robbed at gunpoint.

5                    THE COURT:  Did they apprehend these

6          perpetrators?

7                    JUROR NO. 10:  In the rape, they did.  Not in

8          the robbery.

9                    THE COURT:  Okay.  Did the case go to trial?

10                   JUROR NO. 10:  No, they plea bargained.

11                   THE COURT:  Resolved it?  All right.  Well,

12         thank you much.

13                   Next to Ms. Felek, is that Ms. Riggs?

14                   JUROR NO. 11:  Yes.

15                   THE COURT:  Good morning, almost afternoon.

16                   JUROR NO. 11:  Good morning.

17                   THE COURT:  Where are you from?

18                   JUROR NO. 11:  Livonia, Michigan.

19                   THE COURT:  Are you employed?

20                   JUROR NO. 11:  Yes, I am.

21                   THE COURT:  And what do you do?

22                   JUROR NO. 11:  I teach pre-kindergarten over at

23         the Detroit public schools at the Golightly Elementary.

24                   THE COURT:  All right.  Thank you.

25                   Is anyone in your family with law enforcement?

48

1           JUROR NO. 11:  No, they're not.

2           THE COURT:  Have you ever been a juror?

3           JUROR NO. 11:  Yes, I have.

4           THE COURT:  Where?

5           JUROR NO. 11:  A civil court, a civil case, a

6    lawsuit.

7           THE COURT:  Okay.  Was a verdict reached?

8           JUROR NO. 11:  Yes, it was.

9           THE COURT:  Were you the foreperson?

10          JUROR NO. 11:  No.

11          THE COURT:  Okay.  And, Ms. Riggs, have you had

12   any direct contact with our criminal justice system where

13   you were a defendant, witness or victim?

14          JUROR NO. 11:  No.

15          THE COURT:  All right.  Thank you.

16          Let's move on to -- Is that Ms. Lozon?

17          JUROR NO. 12:  That's correct.

18          THE COURT:  Where you from, ma'am?

19          JUROR NO. 12:  Dearborn.

20          THE COURT:  Are you employed?

21          JUROR NO. 12:  Yes, sir.  Catholic Social

22   Services in Wayne County where I am a licensing intake

23   supervisor and I also coordinate the respite program for

24   children with serious emotional disturbances.

25          THE COURT:  Thank you.  Is anyone in your

49

1          household employed by law enforcement?

2                    JUROR NO. 12:  No.

3                    THE COURT:  Have you ever served as a juror?

4                    JUROR NO. 12:  No.

5                    THE COURT:  And have you had any direct contact

6          with the criminal justice system where you were a

7          defendant, witness or victim?

8                    JUROR NO. 12:  Yes.

9                    THE COURT:  What happened?

10                   JUROR NO. 12:  Witness.  Because I have 11 years

11         investigating child abuse, neglect and criminal sexual

12         assault cases.

13                   THE COURT:  Thank you very much.

14                   Next is Mr. Johnson.  We spoke earlier.

15                   JUROR NO. 13:  Yes.

16                   THE COURT:  Where are you from, Mr. Johnson?

17                   JUROR NO. 13:  Belleville.

18                   THE COURT:  Are you employed?

19                   JUROR NO. 13:  Yes.

20                   THE COURT:  What do you do?

21                   JUROR NO. 13:  I'm an optician for Walmart

22         Vision Center in Belleville.

23                   THE COURT:  Oh, okay.  Thank you.  Is anyone in

24         your family employed by law enforcement?

25                   JUROR NO. 13:  No.

50

1                    THE COURT:  Have you ever served as a juror?

2                    JUROR NO. 13:  I have not.

3                    THE COURT:  And, Mr. Johnson, have you had any

4        direct contact with the criminal justice system where you

5        were a defendant, witness or victim?

6                    JUROR NO. 13:  It was a misdemeanor, so --

7                    THE COURT:  Okay.  Thank you.  I'll let the

8        lawyers explore that issue if they'd like to; okay?

9                    JUROR NO. 13:  Okay.

10                   THE COURT:  Thanks, Mr. Johnson.

11                   Finally, is that Mr. Stradling?

12                   JUROR NO. 14:  Yes.

13                   THE COURT:  Good morning.

14                   JUROR NO. 14:  Good morning.

15                   THE COURT:  And where are you from, sir?

16                   JUROR NO. 14:  Romulus.

17                   THE COURT:  Are you employed?

18                   JUROR NO. 14:  Yes.

19                   THE COURT:  What do you do?

20                   JUROR NO. 14:  I am an operator at a door

21        company.

22                   THE COURT:  All right.  Is anyone in your family

23        with law enforcement?

24                   JUROR NO. 14:  No.

25                   THE COURT:  Have you ever served as a juror?

```
 1                    JUROR NO. 14:  No.

 2                    THE COURT:  And have you had any --

 3                    JUROR NO. 14:  I take that back.  I did serve as

 4          a juror, but went there twice and then they settled out of

 5          court.

 6                    THE COURT:  All right.  Have you had any direct

 7          contact with the criminal justice system where you were a

 8          defendant, witness or victim?

 9                    JUROR NO. 14:  No.

10                    THE COURT:  All right.  Thank you.

11                    To the lawyers, I might as well tell you this

12          right now.  We'll have a mutual sequestration order in

13          effect throughout the trial.  Please instruct your

14          witnesses not to enter the courtroom and to discuss their

15          testimony with any other witness during the course of

16          trial.

17                    You'll have the Court's continuing permission to

18          approach any and all witnesses throughout the trial.  You

19          don't have to ask me, you have my permission.  Okay?

20                    You'll be given wide latitude on cross-

21          examination pursuant to People versus Blunt, Court of

22          Appeals' decision, which indicates that Michigan has quite

23          deliberately opted for presumptive wide-open

24          cross-examination.

25                    So those will be the rules; okay?
```

1              MR. KINNEY:  Yes.

2              THE COURT:  Now as to jury selection, gentlemen,

3        we will rotate.  We'll start with Mr. Hutting, because you

4        have the burden of proof, and next time you can go first,

5        Mr. Kinney.  And when it comes to asserting challenges, if

6        multiple are applicable, please assert multiples to

7        expedite the process; okay?

8              MR. KINNEY:  Yes, your Honor.

9              THE COURT:  All right.  Mr. Hutting?

10             MR. HUTTING:  Yes, your Honor.  May I address

11       the jury?

12             THE COURT:  You may.

13             MR. HUTTING:  Thank you, your Honor.

14             Still good morning, ladies and gentlemen.

15             PROSPECTIVE JURY PANEL:  Good morning.

16             MR. HUTTING:  As I indicated before, my name is

17       Auggie Hutting.  I'm going to be asking you a few

18       individual questions with a couple of the jurors, and then

19       I kind of want to explore three or four concepts of law to

20       see if we can, you know, reach some agreement or if you

21       understand or agree with those concepts of law.

22             I guess the first question that I have is, and

23       it's going to go to, I think, Juror Number 10, I may

24       mispronounce your name, is it Ms. Felek?

25             JUROR NO. 10:  Felek.

53

1              MR. HUTTING:  Okay.  You've indicated that in

2       the past you've had two pretty significant contacts with

3       the criminal justice system.  One was the kidnaping of you

4       and your son that also involved, I think, a sexual

5       assault.

6              Okay.  You've got to answer out loud for, Mrs.

7       Bauer here.

8              JUROR NO. 10:  Yes.

9              MR. HUTTING:  How long ago was that?

10             JUROR NO. 10:  That was quite a while ago.  It

11      was in '78.

12             MR. HUTTING:  More than 20 years ago.

13             JUROR NO. 10:  Yes.

14             MR. HUTTING:  Was someone arrested in that case

15      or were people --

16             JUROR NO. 10:  Yes, both the men were.

17             MR. HUTTING:  Okay.  So there were two

18      perpetrators.

19             JUROR NO. 10:  Yes.

20             MR. HUTTING:  And that case, ultimately,

21      somebody was charged and that case got resolved prior to

22      trial?

23             JUROR NO. 10:  Yes.

24             MR. HUTTING:  Okay.  Did you have to go to a

25      preliminary examination and testify?

54

1                    JUROR NO. 10:  Yes.

2                    MR. HUTTING:  So you've testified in court

3          before?

4                    JUROR NO. 10:  Yes.

5                    MR. HUTTING:  So that was one.  And then you

6          also mentioned another case.

7                    JUROR NO. 10:  Yes.

8                    MR. HUTTING:  And the case, the first case, did

9          that happen here in Michigan or in Wayne County?

10                   JUROR NO. 10:  Yes, it happened in Detroit.

11                   MR. HUTTING:  In Detroit, okay.

12                   Okay.  Then you mentioned another case, what was

13         that?

14                   JUROR NO. 10:  That was armed robbery.

15                   MR. HUTTING:  How long ago did that take place?

16                   JUROR NO. 10:  That was four years afterwards.

17                   MR. HUTTING:  Been some time?

18                   JUROR NO. 10:  Wait a minute.  It was in '82 or

19         '83.

20                   MR. HUTTING:  Okay.  So --

21                   THE COURT:  May I interrupt you, Mr. Hutting?

22         The courtroom is open to observers.  You're a prospective

23         juror.  Could I get you to relocate?  And move over people

24         so we have some seats for our guests, as well.

25                   Thank you very much.  I'm sorry for the

1          interruption.  Go ahead.

2                    MR. HUTTING:  All right.  And was this just you

3          that was robbed or was there somebody else besides you?

4                    JUROR NO. 10:  I was on a date.  We were robbed

5          in a parking lot going into the restaurant.

6                    MR. HUTTING:  Did this involve a gun?

7                    JUROR NO. 10:  Yes.

8                    MR. HUTTING:  Okay.  Nobody got shot or hurt in

9          that way.  Money was taken, though, I take it?

10                   JUROR NO. 10:  Yes.

11                   MR. HUTTING:  Was a police report made?

12                   JUROR NO. 10:  Yes.

13                   MR. HUTTING:  Okay.  Was anybody in that case

14         arrested?

15                   JUROR NO. 10:  No.

16                   MR. HUTTING:  So that case basically went

17         unsolved?

18                   JUROR NO. 10:  Yes.

19                   MR. HUTTING:  Did that also happen in Wayne

20         County or in Detroit?

21                   JUROR NO. 10:  No.  It was more towards like

22         going up to Centerline and Van Dyke.

23                   MR. HUTTING:  Macomb County.

24                   JUROR NO. 10:  Okay.

25                   MR. HUTTING:  Other side of Eight Mile?

```
 1                    JUROR NO. 10:  I believe so, yeah.  I don't even
 2        think that restaurant is there, but more towards
 3        Centerline.
 4                    MR. HUTTING:  All right.  That's Macomb County.
 5                    So you've had two significant contacts.  I guess
 6        what my question to you is -- well, did you -- were you
 7        satisfied with what the police department did and the
 8        prosecutor's office did in the first case involving you
 9        and your son?
10                    JUROR NO. 10:  No.
11                    MR. HUTTING:  You were not.
12                    JUROR NO. 10:  No.
13                    MR. HUTTING:  All right.  Do you harbor some
14        resentment towards them even today or not?
15                    JUROR NO. 10:  Yes, I do.
16                    MR. HUTTING:  You do.
17                    JUROR NO. 10:  I do.
18                    MR. HUTTING:  All right.  Okay.  That, of
19        course, was the office that I worked for in Wayne County.
20        All right.  How about in the second case, were you
21        satisfied?  I understand that no one was arrested, but did
22        you feel that at least the police took your report and
23        treated you courteously or did the best they could, you
24        know, in that kind of situation?
25                    JUROR NO. 10:  I guess so.  They came to the
```

1       restaurant and took the report and everything, and that's

2       where it ended.

3                MR. HUTTING:  Okay.  All right.  So my question

4       to you, then, is, and only you know your own mind, okay,

5       based on the experience that you had, if you were to sit

6       here, you know, for the next three or four days, what we

7       would be asking you to do is sit here with a fair and open

8       mind, okay, listen to the testimony and the evidence and

9       give both sides in this case, the People of the State of

10      Michigan, okay, the Prosecutor, the police department,

11      we're called the People, and the Defense, give both sides

12      a fair trial.

13               Sometimes jurors come in and they say that

14      because of their experiences, whatever it's been, okay,

15      one way or the other, that they could not separate out a

16      past incident and be a fair and impartial juror.  Other

17      times, jurors come in and say, yeah, I've had these past

18      incidents, either I was or I wasn't pleased with the

19      police department or the prosecutor's office or whoever,

20      but I can separate that out and I can be a fair and

21      impartial juror.

22               So that's my question to you.  Because of the

23      two past experiences that you've had, do you feel that you

24      could sit here for the next three or four days and give

25      both sides a fair trial in this case?

```
1                    JUROR NO. 10:  Okay.  I really don't know, and I
2          -- that's the honest-to-God's truth.  To this day, I have
3          a lot of problems.  And I'm trying to think.  When I feel
4          like I'm being attacked by something, you know, I get very
5          upset.  And it's very hard for me to accept a lot of
6          things and I really don't know.  And, I mean, I don't want
7          to offend anybody but it was blacks who did this to me
8          and --
9                    MR. HUTTING:  So it was a cross-racial incident?
10                   JUROR NO. 10:  Both cases were two blacks in
11         both cases so, no, I really don't know.
12                   MR. HUTTING:  And, obviously, in this case, as
13         you can see, Mr. Dantzler, the defendant who is on trial
14         here is black or African-American.
15                   JUROR NO. 10:  Yes.
16                   MR. HUTTING:  Okay.  Well, you know, I'm going
17         to come back to you.  Remind me before I sit down; okay?
18         I'm going to think about that, okay, what you've just
19         said.  We appreciate your candor.  Think about that and
20         then come back and maybe you can have a little bit more
21         definitive answer for us, or maybe you can't, but we
22         appreciate those answers.  Okay.
23                   All right.  Let me address my next question
24         to -- is it Mr. Johnson?
25                   JUROR NO. 13:  Yes.
```

```
1                    MR. HUTTING:  You indicated you are a -- you're
2         an optician; right?
3                    JUROR NO. 13:  Yes.
4                    MR. HUTTING:  You indicated who you worked for?
5                    JUROR NO. 13:  Yes.
6                    MR. HUTTING:  And I forget.
7                    JUROR NO. 13:  Walmart Vision Center.
8                    MR. HUTTING:  All right.  You indicated both
9         initially and then again that you're currently off
10        probation for a misdemeanor.
11                   JUROR NO. 13:  Correct.
12                   MR. HUTTING:  What's the nature of that
13        misdemeanor, if I can ask?
14                   JUROR NO. 13:  It would have been operating
15        while intoxicated, operating while impaired.
16                   MR. HUTTING:  So we're talking about a driving
17        incident?
18                   JUROR NO. 13:  Correct.
19                   MR. HUTTING:  All right.  First one?
20                   JUROR NO. 13:  Yes.  Only one ever, yes.
21                   MR. HUTTING:  Okay.  How long ago did this
22        happen?
23                   JUROR NO. 13:  This would have been February of
24        this year, so ten months.
25                   MR. HUTTING:  Okay.  All right.  Did you feel --
```

1        Did it -- Was the stop in Wayne County or was it in

2        another county?

3               JUROR NO. 13:  It would have been in Wayne

4        County because it would have been the City of Grosse

5        Pointe.

6               MR. HUTTING:  All right.  Did you feel that you

7        were treated fairly by the criminal justice system?

8               JUROR NO. 13:  I do.

9               MR. HUTTING:  Okay.  My question then to you is

10       do you feel that you could sit with a fair and open mind

11       and give both sides a fair trial in this case?

12              JUROR NO. 13:  I do.

13              MR. HUTTING:  Okay.  All right.  Very good.

14              Let me ask a question.  The Judge asked kind of

15       part of it when he went into asking about whether or not

16       you've been involved with the criminal justice system, you

17       know, as a victim or a defendant or anything of that

18       nature.  But let me take it just one little step further.

19              Does anyone here have any close friends or

20       relatives who have ever been accused, charged or

21       convicted, okay, of a felony?  I'm not talking about a

22       misdemeanor.  Close friends or relatives who have ever

23       been accused, charged or convicted of a felony?  Anybody

24       here have any?

25              Okay.  We're getting a hand from Juror Number

```
 1        12.  Juror Number 12, Ms. Lozon; right?  Okay.  And what

 2   close friend or relative?

 3             JUROR NO. 12:  My sister-in-law in

 4   Massachusetts.

 5             MR. HUTTING:  Okay.  All right.  And what was

 6   she ever --

 7             JUROR NO. 12:  She was embezzling at the

 8   Children's Hospital.

 9             MR. HUTTING:  All right.  How long ago?

10             JUROR NO. 12:  Oh, had to be --

11             MR. HUTTING:  A long time?

12             JUROR NO. 12:  About ten years ago.

13             MR. HUTTING:  You didn't attend any of the

14   proceedings?

15             JUROR NO. 12:  No.

16             MR. HUTTING:  From what you know, do you think

17   that your sister-in-law was treated fairly by the criminal

18   justice system, or don't you know enough about it?

19             JUROR NO. 12:  She was guilty.

20             MR. HUTTING:  I take it that wouldn't affect

21   your ability to sit fairly in any way; right?

22             JUROR NO. 12:  Right.

23             MR. HUTTING:  Okay.  All right.  Very good.  All

24   right.  With that in mind, let me see if I can -- Did we

25   get another hand?
```

```
 1                    I'm sorry.  Thank you very much, Mr. Stradling.

 2         What close friend or relative?

 3                    JUROR NO. 14:  I have a stepson that had a

 4         felony.

 5                    MR. HUTTING:  The nature of the felony?

 6                    JUROR NO. 14:  Stole a motorcycle.

 7                    MR. HUTTING:  How long ago?

 8                    JUROR NO. 14:  Five years ago.

 9                    MR. HUTTING:  Here in Detroit?

10                    JUROR NO. 14:  Up north.

11                    MR. HUTTING:  Up north, okay.

12                    Did you attend any proceedings with him?

13                    JUROR NO. 14:  No.

14                    MR. HUTTING:  Do you feel he was treated fair,

15         or don't you know?

16                    JUROR NO. 14:  I don't know really all about it.

17                    MR. HUTTING:  Okay.  Would that affect you

18         because you had this stepson up north, would that affect

19         your ability to be fair and impartial?

20                    JUROR NO. 14:  No.

21                    MR. HUTTING:  Okay.  Very good.  All right.

22         With that in mind, can I pick on Mr. Gayeski?

23                    JUROR NO. 7:  Yes, sir.

24                    MR. HUTTING:  You understand this is a criminal

25         case?
```

```
 1                    JUROR NO. 7:  Yes, sir.

 2                    MR. HUTTING:  You understand, sir, that in a

 3          criminal case every defendant is presumed to be innocent?

 4                    JUROR NO. 7:  Yes.

 5                    MR. HUTTING:  You understand that?  Okay.

 6                    JUROR NO. 7:  Yes, sir.

 7                    MR. HUTTING:  Any problems with that concept?

 8                    JUROR NO. 7:  No, sir.

 9                    MR. HUTTING:  All right.  You understand that

10          what that would mean is if for some reason the trial

11          stopped right now and Judge Bill told the twelve of you to

12          go in that jury room and to reach a verdict, either guilty

13          or not guilty, the verdict that you would absolutely be

14          required to reach at this point would be not guilty.

15                    You understand that?

16                    JUROR NO. 7:  Yes, sir.

17                    MR. HUTTING:  That's because every defendant is

18          presumed to be innocent.

19                    JUROR NO. 7:  Yes, sir.

20                    MR. HUTTING:  You haven't heard an iota of

21          evidence that washes away or obliterates that presumption

22          of innocence.  Those presumptions of innocence would carry

23          the day; right?

24                    JUROR NO. 7:  Yes, sir.

25                    MR. HUTTING:  Okay.  Ms. Davis, do you
```

64

1    understand that every defendant in a criminal case has the

2    presumption of innocence?

3         JUROR NO. 4:  Yes, sir.

4         MR. HUTTING:  Because sometimes, you know, in

5    other countries, okay, defendants have to prove their

6    innocence or they're presumed to be guilty.  But it's the

7    opposite way in America.  They're presumed to be innocent.

8         Any problem with that concept?

9         JUROR NO. 4:  No.

10        MR. HUTTING:  Okay.  Ms. Groh, any problem with

11   the concept of presumption of innocence?

12        JUROR NO. 8:  No.

13        MR. HUTTING:  To the rest of the jury, is there

14   anybody here that says, nah, I can't go along with that

15   criminal justice concept that every defendant is presumed

16   to be innocent, and I'm going to presume him to be guilty

17   until I hear otherwise.  Anybody feel that way?

18        Okay, Mr. Alvarado.

19        JUROR NO. 2:  Yes.  My daughter was involved in

20   a home invasion about two years ago.

21        MR. HUTTING:  Okay.  All right.

22        JUROR NO. 2:  And it -- Well, it actually

23   involved all our family because my daughter went to my

24   daughter-in-law's house because my daughter-in-law and my

25   son had a little argument there, and he was -- he's a

65

```
 1        recovering alcoholic, been sober going on three years now.
 2                   MR. HUTTING:  Okay.
 3                   JUROR NO. 2:  And at the time he was drinking,
 4        so there was something happening there, and then my son --
 5        my daughter got ahold of it and she went over there and
 6        there was just a big --
 7                   MR. HUTTING:  Are you telling me --
 8                   JUROR NO. 2:  She was charged with that.
 9                   MR. HUTTING:  What did she get charged with?
10                   JUROR NO. 2:  Home invasion.
11                   MR. HUTTING:  That was here in Wayne County?
12                   JUROR NO. 2:  It was in Dearborn Heights.
13                   MR. HUTTING:  In Dearborn Heights.
14                   JUROR NO. 2:  Yes, sir.
15                   MR. HUTTING:  Okay.  All right.  Ultimately,
16        what happened with that?
17                   JUROR NO. 2:  Well, ultimately, one of -- It was
18        just a big mess because one of our workers that worked at
19        the restaurant, her -- his wife was there at the house and
20        he wound up getting fired from work for another reason,
21        but then they wound up suing us because my brother and
22        sister fired him, and they came back suing us saying it
23        was a wrongful --
24                   MR. HUTTING:  Sure.  So that was a civil suit.
25                   JUROR NO. 2:  Exactly.
```

1                    MR. HUTTING:  In terms of the criminal case, was

2          the case against your daughter dismissed?  Did she plead

3          guilty?  How did that ultimately get resolved, sir?

4                    JUROR NO. 2:  I think she plead guilty and she's

5          on probation.

6                    MR. HUTTING:  Okay.  All right.  How old was

7          she?

8                    JUROR NO. 2:  She was --

9                    MR. HUTTING:  About?

10                    JUROR NO. 2:  Eighteen.

11                    MR. HUTTING:  I'm sorry?

12                    JUROR NO. 2:  Eighteen.

13                    MR. HUTTING:  Did you attend any of the

14          proceedings with her?

15                    JUROR NO. 2:  Yes.

16                    MR. HUTTING:  All right.  Were you down here in

17          this Court?

18                    JUROR NO. 2:  No, it was in Dearborn Heights.

19                    MR. HUTTING:  Everything took place in Dearborn

20          Heights?

21                    JUROR NO. 2:  Yes, sir.

22                    MR. HUTTING:  Are you sure it wasn't a

23          misdemeanor because usually when it stays out there in

24          District Court, many times it's a misdemeanor and not a

25          felony.

1           JUROR NO. 2:  Could have been misdemeanor.

2           MR. HUTTING:  Okay.  All right.  Did you feel

3      that your daughter, ultimately, was treated fairly by the

4      criminal justice system?

5           JUROR NO. 2:  No, not really.

6           MR. HUTTING:  Okay.  All right.  Because you

7      feel that way, kind of the same question, all right, is

8      that going to affect your ability to be fair and impartial

9      here in this case?

10           JUROR NO. 2:  No.

11           MR. HUTTING:  You can separate that out?

12           JUROR NO. 2:  Yes.

13           MR. HUTTING:  Okay.  Thank you very much for

14      bringing that up.

15           Okay.  All right.  Okay.  So I think that we had

16      completed the question or two that I had about presumption

17      of innocence.  Let's talk about the second concept.

18           THE COURT:  Well, let's talk about it after they

19      go to lunch, Mr. Hutting.

20           MR. HUTTING:  Okay.  Thank you.

21           THE COURT:  You're welcome.

22           Ladies and gentlemen, I'm going to instruct you

23      throughout the course of this trial, for those of you that

24      are ultimately selected, you always wear your badges,

25      never discuss the case with anyone, especially your

1           family, your friends or the other jurors.  You don't

2           attempt at any time to talk to people associated with the

3           case, Mr. Kinney, Mr. Hutting, the witnesses, anyone; is

4           that understood.

5                     PROSPECTIVE JURY PANEL:  Yes, your Honor.

6                     THE COURT:  The only time you discuss the case

7           is when you're in that jury room deliberating after all

8           the evidence in the case has been presented; okay?  So do

9           not attempt to talk to the lawyers or anyone associated

10          with the case.  Don't talk to families or anyone.  You

11          always wear your badges.

12                    I'd like you back at 1:30.  It's 12:15.  Okay?

13                    There are a number of restaurants if you walk

14          towards the Greektown area.  A block-and-a-half behind the

15          building, there's a Subway and some restaurants that way.

16          There's a snack shop on the ground floor.  So you'll have

17          no problem finding places to procure food.

18                    Have a good lunch.  I'll see you outside this

19          courtroom.  You don't come into the courtroom.  1:30.

20                    DEPUTY SHERIFF:  All rise for the jury.

21                    (At about 12:13 p.m., prospective jurors

22                    excused.)

23                    THE COURT:  Okay.  Have a good lunch, everybody.

24          I'm hoping today -- Actually, I have a doctor's

25          appointment at four o'clock in western Wayne County.  I'm

```
 1      going to need about 35 minutes to get there.

 2              MR. HUTTING:  Sure.

 3              THE COURT:  So I'm guessing we're going to go

 4      until about 3:15, 3:20 today.  I'm hoping to have a jury

 5      picked today.

 6              MR. HUTTING:  I hope so, too.

 7              MR. KINNEY:  I hope so, too.

 8              THE COURT:  So there will be no rush to

 9      judgment, we'll take as much time as necessary.

10              Everybody, have a good lunch.  I'll see you at

11      1:30.

12              MR. HUTTING:  Judge, there was something Juror

13      Number 1 --

14              THE COURT:  We can deal with that when we

15      reconvene.  I've got some other matters I have to do.

16              MR. HUTTING:  All right.

17              (At about 12:15 p.m., lunch recess;

18              At about 1:39 p.m., back on the Record.)

19              COURT CLERK:  Recalling docket 10-3521, People

20      versus Samuel Lee Dantzler, jury trial in progress.

21              MR. HUTTING:  Auggie Hutting for the People.

22              MR. KINNEY:  Good afternoon, your Honor.  Robert

23      Kinney appearing on behalf of Mr. Dantzler.

24              I think that we have done everything possible to

25      make sure that Mr. Dantzler understands the situation he's
```

70

1          in, how serious it is.  He just got through talking with

2          another family member.  I just think it's Mr. Dantzler's

3          intentions to go to trial.

4                    THE COURT:  Well, we're in trial.

5                    MR. KINNEY:  Is that correct, Mr. Dantzler?

6                    DEFENDANT DANTZLER:  Yes.

7                    THE COURT:  Thank you.  Jury, please.

8                    DEPUTY SHERIFF:  All rise for the jury.

9                    (At about 1:40 p.m., prospective jurors seated.)

10                   THE COURT:  You want to both approach?

11                   MR. KINNEY:  Yes.

12                   MR. HUTTING:  Oh, I'm sorry.

13                   (At about 1:41 p.m., brief sidebar.)

14                   (At about 1:42 p.m., back on the Record.)

15                   DEPUTY SHERIFF:  Please be seated.

16                   THE COURT:  Count right?

17                   DEPUTY SHERIFF:  Yes.

18                   THE COURT:  Mr. Hutting, you may continue.

19                   MR. HUTTING:  Thank you, your Honor.

20                   Can we approach, Judge?

21                   THE COURT:  Sure.  Do you want to go in

22         chambers?

23                   MR. HUTTING:  No.

24                   (At about 1:43 p.m., brief sidebar.)

25                   THE COURT:  Juror Number 1, prospective Juror

```
1        Number 1, you had occasion to try to talk to the

2        Prosecutor and one of our deputies?

3                JUROR NO. 1:  I needed to approach them, Judge,

4        and I apologize.  I am a diabetic and I thought I could

5        possibly serve but I do have to have injections four times

6        a day.  And I took my sugar test before lunch and it is

7        quite high, so I don't know if I'll be able to serve due

8        to the fact that I have to do it four times a day,

9        periodically every four hours.

10               THE COURT:  Well, we've had a number of

11       people --

12               JUROR NO. 1:  That's what I thought, but I just

13       wanted to bring it to your attention.

14               THE COURT:  All right.  Well, the lawyers have

15       heard your concern for the time being and if you have the

16       need for a break, let me know; okay?  Whether you're

17       selected or not selected during the process, just let me

18       know, I'll try to work with you as best I can.  Thank you

19       for being forthcoming.

20               JUROR NO. 1:  Thank you.

21               THE COURT:  Mr. Hutting.

22               MR. HUTTING:  Good afternoon, ladies and

23       gentlemen.

24               PROSPECTIVE JURY PANEL:  Good afternoon.

25               THE COURT:  Hope you all had a good lunch.  When
```

72

```
 1    we broke this morning, I was just finished picking on Mr.

 2    Gayeski here concerning the presumption of innocence.

 3            I now want to move -- There's three cardinal

 4    principles of law.  I want to move to the second cardinal

 5    principle of law, and that's something that maybe many of

 6    you have heard about.  It's called the burden of proof.

 7            Have you heard that term before, Mr. Gayeski?

 8            JUROR NO. 7:  Yes, sir.

 9            MR. HUTTING:  All right.  Now, in a civil case,

10    okay, where you're talking about money damages, all right,

11    the burden of proof can sometimes shift and the burden of

12    proof is a little bit different than in a criminal case.

13    But in a criminal case, in every criminal case that we

14    have here in the United States of America, the burden of

15    proving a person guilty, okay, starts with the prosecutor,

16    stays with the prosecutor, and never moves from this

17    table.  So it's right here at this table.

18            The Defense, in essence, has nothing to prove in

19    this case.  Basically, they have to show up, they have to

20    behave themselves.  If they don't want to, they don't even

21    have to ask any questions.  It doesn't happen that way,

22    but the Defense has nothing to prove.  The only person

23    that has something to prove in this courtroom in this case

24    is who, Mr. Gayeski.

25            JUROR NO. 7:  The Prosecutor.
```

73

```
 1              MR. HUTTING:  Me, that's right.

 2              Okay.  Ms. Parker, do you understand that

 3     concept?

 4              JUROR NO. 5:  Yes.

 5              MR. HUTTING:  Okay.  And that the burden never

 6     shifts, never slides over here to the Defense table, it

 7     always stays right here.

 8              Ms. Smith, do you understand that?

 9              JUROR NO. 6:  Yes, I do.

10              MR. HUTTING:  How about you Mr. Schrader?

11              JUROR NO. 9:  Yes.

12              MR. HUTTING:  To the rest of the jury, is there

13     anybody here that disagrees with that, that says, nah, I

14     don't think so, I think the Defendant should have

15     something to prove; okay?  I think that the Defendant, you

16     know, somebody accuses him, he should have something to

17     prove?  Because if I was accused of something, you know,

18     I'd want to prove my innocence, or things of that nature.

19              Does anybody feel that, no, it's the Defendant

20     that has something to prove, not the Prosecutor?  So if I

21     understand your response by that, everybody will follow

22     the burden of proof; is that correct?

23              JURY PANEL:  Yes.

24              MR. HUTTING:  Okay.  All right.  Let's go to the

25     third cardinal principle of law.  And Mr. Schrader, can I
```

74

1    pick on you?

2              JUROR NO. 9:  Sure.

3              MR. HUTTING:  Okay.  That third cardinal

4    principle of law is called the standard of proof.  And in

5    a criminal case, the standard of proof is beyond a

6    reasonable doubt as to the elements of the crime charged.

7    Okay?  Beyond a reasonable doubt as to the elements of the

8    crime charged.

9              Do you understand -- Do you understand that?

10             JUROR NO. 9:  Um-hmm.

11             MR. HUTTING:  That's what I have to prove.

12   Okay?

13             Do you understand that beyond a reasonable doubt

14   does not mean beyond all doubt or beyond all possible

15   doubt; do you understand that?

16             JUROR NO. 9:  Um-hmm.

17             MR. HUTTING:  Okay.  All right.  Ms. Groh, is

18   it?  Okay.  Do you understand that difference between

19   beyond a reasonable doubt as to the elements of the crime

20   charged as to beyond a possible doubt?

21             JUROR NO. 8:  Yes.

22             MR. HUTTING:  Okay.  All right.  Or, I guess

23   people say beyond a possible doubt or beyond all doubt.

24   The standard is reasonable doubt; okay?

25             Any of the jurors have any questions about that?

1          Anybody say, nah, you should have to prove it beyond all

2     doubt or beyond a shadow of a doubt; anybody feel that

3     way?  Okay.  Everybody will follow the standard of beyond

4     a reasonable doubt?

5                    PROSPECTIVE JURY PANEL:  Yes.

6                    MR. HUTTING:  Very good.  All right.  Ms.

7     Lozon -- Oh, no.  Ms. Riggs.  All right.

8                    JUROR NO. 11:  Yes.

9                    MR. HUTTING:  All right.  Let me pick on you for

10    a minute.

11                   Have you ever baked a pie or a cake in your

12    lifetime?

13                   JUROR NO. 11:  Yes.

14                   MR. HUTTING:  Okay.  You know when you bake a

15    pie or a cake, you've got to have these things called

16    ingredients; right?

17                   JUROR NO. 11:  Yes.

18                   MR. HUTTING:  If you don't have those

19    ingredients, then you don't have the pie or the cake;

20    right?

21                   JUROR NO. 11:  Right.

22                   MR. HUTTING:  Okay.  Well, criminal charges,

23    okay, crimes in the -- are made up of what we call

24    elements, okay, and that's what the Prosecutor has to

25    prove.  So if a crime has five elements, I've got -- or

                                    76

1          let's say six elements, I have to prove all six elements

2          beyond a reasonable doubt.

3                    Do you understand that?

4                    JUROR NO. 11:  Yes.

5                    MR. HUTTING:  If I prove five of those elements,

6          but not the sixth, I haven't met my burden and the

7          Defendant is entitled to a verdict of not guilty.

8                    Do you understand that?  Any objections about

9          that or any questions about that?

10                   JUROR NO. 11:  No.

11                   MR. HUTTING:  Mr. Stradling, how about you, do

12         you understand that?

13                   JUROR NO. 14:  Yes, I do.

14                   MR. HUTTING:  Okay.  All right.  On the other

15         hand, if I prove it's got six elements and I prove all six

16         of those elements, then I've met my burden.

17                   Now, in this case do you remember the Judge

18         mentioned the charge here is what we call first degree

19         felony murder?

20                   THE COURT:  Excuse me.  Ma'am, are you okay?

21                   MS. O'ROURKE:  I'm just hot.  I have to take off

22         my coat.  I just got hot.

23                   THE COURT:  Okay.  All right.  Thank you.

24                   I'm sorry, Mr. Hutting.

25                   MR. HUTTING:  Sure.  The crime here is first

1    degree felony murder, that felony being home invasion.  So

2    the elements basically of that crime are we have to show

3    that it was committed on or about January the 16th, 2006,

4    City of Detroit, County of Wayne.

5            A person by the name of Bernard Hill was alive

6    and he died on that day.

7            Thirdly, we have to show that Bernard Hill died

8    from an unnatural cause of death.

9            Fourth, we have to show that the person that

10   caused Bernard Hill to die of that unnatural cause of

11   death either by -- either directly or by helping other

12   people out was this Defendant right here, Mr. Samuel

13   Dantzler, Senior.

14           The fifth thing that we have to show is that at

15   the time that Mr. Dantzler and others caused or aided and

16   abetted others themselves in causing Mr. Hill's death,

17   that they had either an intent to kill, an intent to do

18   great bodily harm or they created a very high risk of

19   death, knowing that death would be the probable result.

20           And the sixth thing that we have to show is that

21   at the time that this was all done, at the time that Mr.

22   Bernard Hill's unnatural death happened, it occurred

23   during the course of a home invasion where they came up to

24   Mr. Hill's home where he was staying, uninvited, and

25   that's when the incident occurred.  It occurred during the

1        felony of a home invasion.

2                Do you understand those six elements?

3                PROSPECTIVE JURY PANEL:  Yes.

4                MR. HUTTING:  Okay.  Now, if I prove those six

5        things to you and nothing more in this case, just those

6        six things, then I've met my burden; right?

7                PROSPECTIVE JURY PANEL:  Yes.

8                MR. HUTTING:  Okay.  Ms. Smith, do you

9        understand?

10               JUROR NO. 6:  Yes.

11               MR. HUTTING:  Ms. Parker?

12               JUROR NO. 5:  Yes.

13               MR. HUTTING:  And if we'd met our burden, the

14       People are entitled to a verdict of guilty.  If we don't

15       prove those six things, the Defendant is entitled to a

16       verdict of not guilty.  Any problems, any questions, any

17       disagreements with that from the rest of the jury about

18       the elements?

19               PROSPECTIVE JURY PANEL:  No.

20               MR. HUTTING:  Okay.  You know, though, Ms.

21       Riggs, when you make that cake, sometimes you do something

22       to the cake, you maybe put some writing on the cake, maybe

23       you get a nice box, maybe you get a card, maybe you write

24       something in the card and then maybe, you know, put some

25       nice tassels or stuff around the box to make it look

79

1      pretty.  All those things are nice; right?

2                  JUROR NO. 11:  Um-hmm.

3                  MR. HUTTING:  Okay.  But they're not ingredients

4      of the cake; are they?

5                  JUROR NO. 11:  No.

6                  MR. HUTTING:  Okay.  It's just like in a

7      criminal case, or any case.  You may hear testimony about

8      a lot of things, okay, and there might be doubts about a

9      lot of things, and there might be doubts about different

10     things, but not every fact has to be proven beyond a

11     reasonable doubt.  Do you understand that?

12                 JUROR NO. 11:  Yes.

13                 MR. HUTTING:  So, Mr. Gayeski, I'm held to the

14     burden of proving beyond a reasonable doubt the elements

15     of the crime charged; right?

16                 JUROR NO. 7:  Correct.

17                 MR. HUTTING:  Not every fact testified to.

18                 JUROR NO. 7:  Correct.

19                 MR. HUTTING:  All right.  Couple more areas,

20     then I'm going to sit down.

21                 Okay.  Now, in that last example, when I was

22     talking, Mr. Ketvirtis.

23                 JUROR NO. 3:  Ketvirtis.

24                 MR. HUTTING:  All right.  You heard me use the

25     term "aiding and abetting"; right?  Okay.  What does that

80

1       mean to you, just as a layman?

2                 JUROR NO. 3:  I mean, if you're aiding a --

3       someone that committed a crime or helping out in any

4       shape, way or form.

5                 MR. HUTTING:  There you go, helping out.  Okay,

6       that's a great term.  That's what it means, helping out.

7       Do you understand that, in Michigan, all parties who help

8       one another out, who aid and abet one another in the

9       actual commission of the crime, okay, whether their part

10      is big or small, okay, but if you aid and abet in the

11      actual commission of the crime, everybody is equally

12      liable?

13                You understand that?  Okay.

14                Ms. -- I'm going to need help.

15                JUROR NO. 1:  Ciavaglia.

16                MR. HUTTING:  Ciavaglia.  Do you understand that

17      concept?

18                JUROR NO. 1:  Yes.

19                MR. HUTTING:  Okay.  So that would mean, let's

20      say, Mrs. Bauer, myself and my daughter here, let's say

21      the three of us decided that we are going to rob a bank;

22      okay?  And it was my daughter's job to go check out the

23      bank, make sure where the money was and stuff like that.

24      She did that.  It was Mrs. Bauer's job here to drive you

25      to the bank, okay, and she did that.  And it was my job to

1        go in there with the gun, all right, and hold the people

2        up and get the money and do all the heavy lifting, so to

3        speak.  Let's say I did that, and then we jumped in the

4        car, okay, and with Mrs. Bauer driving and my daughter

5        there in the passenger seat, and we drove away and we

6        split the money.

7                Do you understand that under that scenario, even

8        though I was the only one in the bank, even though I did

9        all the heavy lifting, because both of the other two

10       helped me out, okay, in the commission of this crime, they

11       would be equally liable; do you understand that?

12               JUROR NO. 1:  Yes.

13               MR. HUTTING:  Okay.  Any problems with that?

14               JUROR NO. 1:  No.

15               MR. HUTTING:  Okay.  Ms. Parker, any problems

16       with that?

17               JUROR NO. 5:  No.

18               MR. HUTTING:  Okay.  To the rest of the jury,

19       any problems, any questions about the example that all

20       parties who aid and abet, help out one another in the

21       commission of the crime, all right, are equally liable?

22               JUROR NO. 7:  We agree.

23               MR. HUTTING:  Okay.  All right.  Let's change

24       the example of aiding and abetting a little bit.  Let's

25       say we got the three of them, the two of them, plus me,

```
 1        and we'll put Sergeant Clark.  He's not here right now,

 2        but we'll put Sergeant Clark in fourth; all right?  And

 3        let's say we do this robbery -- or I do the robbery.  And

 4        let's say that Mr. Ketvirtis is assigned to investigate

 5        the case, and he does, and he gets enough evidence against

 6        me.  Okay?  I leave my fingerprints there.  Maybe I chewed

 7        off my mouth, okay, and telling people that I did it; all

 8        right?

 9                But he knows that Mrs. Bauer and my daughter and

10        Sergeant Clark are involved, but he just doesn't have the

11        evidence admissible in a court of law against them, so he

12        brings -- so the charges are brought against me.  You

13        understand that, Mr. Ketvirtis, it's not a defense to say,

14        well, either you don't know who the other parties are or

15        you don't have enough evidence in a court of law against

16        the other parties so, therefore, old Hutting here, okay,

17        that you do have the evidence, therefore, old Hutting gets

18        a break.  Doesn't work that way.  Do you understand that?

19        You have to answer.

20                JUROR NO. 3:  Yes.

21                MR. HUTTING:  Okay.  All right.  Ms. Davis, do

22        you understand?  You're looking a little puzzled.

23                JUROR NO. 4:  Yes.

24                MR. HUTTING:  So the question then becomes what

25        evidence do you have against the person that's charged,
```

83

1      ultimately; right?

2                     JUROR NO. 4:  Um-hmm.

3                     MR. HUTTING:  Okay.  And is that evidence good

4      enough to prove the case and to prove that that person

5      participated beyond a reasonable doubt?  And just because

6      you can't charge the others or don't know who the others

7      are, that doesn't give old Hutting a break; right?

8                     JUROR NO. 4:  Right.

9                     MR. HUTTING:  Okay.  Mr. Johnson, do you

10     understand that?

11                    JUROR NO. 13:  Yes.

12                    MR. HUTTING:  Okay.  Mr. -- is it Stradling?  Do

13     you understand that?

14                    JUROR NO. 14:  Yes, I do.

15                    MR. HUTTING:  Okay.  Any questions?  Any

16     problems?  Any disagreements about that?

17                    JUROR NO. 7:  No.

18                    PROSPECTIVE JURY PANEL:  No.

19                    MR. HUTTING:  All right.  One more area and I'm

20     going to sit down.  Actually, two.

21                    Anybody here, is there anybody here who hasn't

22     heard the term "DNA"?  Okay.  I take it everybody's heard

23     it; right?

24                    JUROR NO. 7:  Yes.

25                    THE COURT:  Ms. Smith, you've heard that term

84

1      before?

2              JUROR NO. 6:  Yes, I have.

3              MR. HUTTING:  This case, I think, will involve

4      testimony about DNA.  Okay?  Probably an expert or two is

5      going to testify about that.  Will you listen with a fair

6      and open mind to what the expert has to say concerning

7      DNA?

8              JUROR NO. 7:  Yes.

9              JUROR NO. 6:  Yes, I will.

10             MR. HUTTING:  Okay.  Ms. Lozon, will you do

11     that?

12             JUROR NO. 12:  Yes.

13             MR. HUTTING:  Is there anybody here who says,

14     ah, DNA, CNA, it's all nothing but, you know, scientific

15     mish-mash.  Is there anybody here that feels that way?

16             JUROR NO. 2:  No.

17             MR. HUTTING:  I couldn't listen to a DNA expert.

18     I wouldn't take anything a DNA expert said.

19             JUROR NO. 7:  No.

20             MR. HUTTING:  Okay.  Finally, Mr. Johnson, let

21     me pick on you; okay?  Is that all right?

22             JUROR NO. 13:  Yep.

23             MR. HUTTING:  Okay.  All right.  And I kind of

24     mentioned this in my last example.  If I -- Let's say I do

25     a crime and I tell Mr. Stradling about it.

1              JUROR NO. 13:  Okay.

2              MR. HUTTING:  You understand that if I got

3      charged with that crime, Mr. Stradling could come in, get

4      on the witness stand, and he could testify that on such

5      and such a day I heard old Hutting bragging about the

6      crime?

7              JUROR NO. 13:  Yes.

8              MR. HUTTING:  And that could be used as evidence

9      against me, okay, in a prosecution.

10             JUROR NO. 13:  Yes.

11             MR. HUTTING:  Which goes to the statement that

12     statements made by a defendant, okay, whether oral or

13     written, all right, can be used to prove the elements of

14     the crime charged or the peoples' participation.

15             Do you understand that?

16             JUROR NO. 13:  I do.

17             MR. HUTTING:  Okay.  Any problem with that

18     concept?

19             JUROR NO. 13:  No.

20             MR. HUTTING:  Okay.  All right.  Ms. Groh, any

21     problem with that concept?

22             JUROR NO. 8:  None at all.

23             MR. HUTTING:  Ms. Parker?

24             JUROR NO. 5:  No.

25             MR. HUTTING:  The rest of the jury, any problems

1       any questions about that concept?

2                       JUROR NO. 7:  No.

3                       JUROR NO. 6:  No.

4                       PROSPECTIVE JURY PANEL:  No.

5                       MR. HUTTING:  Okay.  I'm almost done.  Ms.

6       Felek.

7                       JUROR NO. 10:  Yes.

8                       MR. HUTTING:  I said we would come back to you,

9       remember, because you were pretty honest and expressed

10      concerns.  Have you been able to think about that or do

11      you still basically feel that you just don't know if you

12      could sit?

13                      JUROR NO. 10:  I understand everything that you

14      have said.

15                      MR. HUTTING:  Sure.  Okay.

16                      JUROR NO. 10:  I guess it would depend on what

17      was presented.  And if things get presented that, you

18      know, goes like the person is guilty, I mean, I would be

19      inclined to lean that way.  I don't know.

20                      MR. HUTTING:  You still don't know?

21                      JUROR NO. 10:  I really don't know.  I mean,

22      because, to this day, I have problems because of what

23      happened to me and my son, especially, and I really don't

24      know.

25                      MR. HUTTING:  All right.  I appreciate that.

```
1       Okay.  All right.  Thank you very much.

2               I have nothing further, your Honor.

3               THE COURT:  Thank you, Mr. Hutting.

4               Mr. Kinney.

5               MR. KINNEY:  Thank you, your Honor.

6               THE COURT:  You're welcome.

7               MR. KINNEY:  Good afternoon, ladies and

8       gentlemen.

9               JURY PANEL:  Good afternoon.

10              MR. KINNEY:  I really believe I would like to

11      start off with the fact that what we're doing here, we

12      call it voir dire, but we're looking for fair and

13      impartial jurors.  That's the basis of voir dire.  We want

14      -- Mr. Dantzler wants a fair trial.  And if anybody

15      disagrees with me, let me know, but there's not a

16      possibility for him to get a fair trial unless he gets a

17      jury that's made up of only fair and impartial jurors.

18      Anybody disagree?

19              PROSPECTIVE JURY PANEL:  No.

20              MR. KINNEY:  All right.  So that's the reason

21      why we're going through this.  It's not anything personal

22      with any of you all, and we appreciate your honesty,

23      because without it, we could not have a fair and impartial

24      jury.  So with respect to that, does anybody here believe

25      that Mr. Dantzler has to say anything?  Anybody here?
```

88

1          Okay, I don't see any hands.  I don't see anybody shaking

2     their heads so --

3               Yes, sir, Mr. Alvarado?

4               JUROR NO. 2:  Yes.  Yes, sir.  I think he -- I

5     don't know, I mean, if somebody would accuse me of doing

6     something, I mean, I would want to have my say.  I just

7     wouldn't want to sit there and not say anything, because I

8     would take that as, you know, him --

9               MR. KINNEY:  You would take the fact that Mr.

10    Dantzler is sitting there as a sign of guilt; is that what

11    you're saying?

12              JUROR NO. 2:  I guess I'd have to say that, yes.

13              MR. KINNEY:  Okay.  Well, that's -- See, me and

14    Mr. Hutting, we've been knowing each other for over 25

15    years and we never agree.  I don't know how many trials

16    we've had together where we rarely agree on what the law

17    is, so that's why we have Judge Bill.

18              JUROR NO. 12:  Yes.

19              MR. KINNEY:  He's the judge.  So the first thing

20    is that you're going to hear from me, you're going to hear

21    from Mr. Hutting, we're going to tell you what we think

22    the facts are.  We are going to be telling you what we

23    think the law is.  But guess what?  It's what Judge Bill

24    says the law is that we've got to follow.

25              JUROR NO. 2:  Right.

1                    MR. KINNEY:  So if Judge Bill told you that he

2        has a right to remain silent, Mr. Dantzler does --

3                    JUROR NO. 2:  Right.

4                    MR. KINNEY:  -- and you can't hold that against

5        him --

6                    JUROR NO. 2:  I won't hold it -- Go ahead.

7                    MR. KINNEY:  That, what you just said, would you

8        agree with me that that's holding it against Mr. Dantzler?

9                    JUROR NO. 12:  What I said?

10                   MR. KINNEY:  Yes.  If you say that -- Well,

11       correct me if I'm wrong, I thought you said that you would

12       hold it as a sign of guilt if he's charged and he didn't

13       want to present his side.

14                   JUROR NO. 2:  Well, to be honest with you I'd

15       have to say yes.

16                   MR. KINNEY:  Okay.  But if Judge Bill told you

17       that that's not the law, that wouldn't give us a fair

18       trial --

19                   JUROR NO. 2:  Right.

20                   MR. KINNEY:  -- would you accept what Judge Bill

21       says and treat Mr. Dantzler fairly?

22                   JUROR NO. 2:  Yes, sir.

23                   MR. KINNEY:  Okay.  Well, then, that means that

24       you've now changed your mind --

25                   JUROR NO. 2:  I haven't changed my mind.  I'm

```
 1        going to take the Judge at the Judge's word, but I'm just
 2        trying to be honest with you.
 3                MR. KINNEY:  I appreciate that.  That's what --
 4        I need that.
 5                THE COURT:  Mr. Kinney, to provide amplification
 6        at this point, I'm wondering if I should read 3.3.
 7                MR. KINNEY:  Thank you, Judge.
 8                THE COURT:  Would you like that, gentlemen?  Mr.
 9        Hutting?
10                MR. HUTTING:  Yeah.  No problem with that,
11        Judge.
12                THE COURT:  Ladies and gentlemen, just so you're
13        clear on what the law is; okay?
14                Every defendant has the absolute right not to
15        testify.  When you decide the case, you must not consider
16        the fact that he did not testify if he chooses not to
17        testify, and it should not affect -- it must not affect
18        your verdict in any way.
19                So in trials where a defendant elects not to
20        testify, I read this instruction.  Okay?
21                JUROR NO. 2:  Yes.
22                THE COURT:  They have that right.  Every person
23        has that right.
24                Satisfied, Mr. Hutting, Mr. Kinney?
25                MR. KINNEY:  Yes, sir.
```

91

1           MR. HUTTING:  Yes, your Honor.

2           THE COURT:  I just want them to understand what

3     the law is; okay?

4           JUROR NO. 2:  Yes, sir.

5           MR. KINNEY:  Now on the other hand, if Mr.

6     Dantzler felt that he wanted to testify and he took the

7     stand and he testified, just because he's the defendant,

8     should there be any more requirements on him than any

9     another witness?  Is there anybody here that believes that

10    because he's a defendant, he should be held to a higher

11    standard than any other witness?  Anybody?

12          JUROR NO. 2:  No.

13          MR. KINNEY:  Okay.  What about police officers?

14    Just -- Mr. -- is it Gayeski?

15          JUROR NO. 7:  Yes.

16          MR. KINNEY:  Do you believe that a police

17    officer has any more reason to be truthful than any other

18    person just because he's a police officer?

19          JUROR NO. 7:  I do, yes.

20          MR. KINNEY:  You believe he does?

21          JUROR NO. 7:  Yes.  You have to be honest and

22    you have to be held to a higher standard.

23          MR. KINNEY:  Okay.  Then this police officer

24    that testifies, does that mean that you would believe his

25    testimony any greater than any other person just because

```
 1        he's a police officer?
 2                JUROR NO. 7:  No.  I would take his testimony as
 3        what he said.
 4                MR. KINNEY:  You would take the police officer's
 5        testimony as what he said?
 6                JUROR NO. 7:  I would think that being honest,
 7        and if he's under oath to be honest, to state that what he
 8        said is the honest truth, that you would have to take that
 9        testimony.
10                MR. KINNEY:  All right.  Well, me and Mr.
11        Hutting, we're lawyers.
12                JUROR NO. 7:  Okay.
13                MR. KINNEY:  And we're professionals.
14                JUROR NO. 7:  Okay.
15                MR. KINNEY:  If I took the stand and I swore to
16        tell the truth, the whole truth and nothing but the truth
17        and then I told you my side of the story, would you take
18        what I said as being truthful just because I'm a lawyer?
19                JUROR NO. 7:  No.
20                MR. KINNEY:  So you're hiding -- you're holding,
21        but giving a police officer credibility just because he's
22        a police officer; is that what you're saying?
23                JUROR NO. 7:  I think it's an oath as an officer
24        to be held at a higher standard.  I do it myself.
25                MR. KINNEY:  But holding them at a higher
```

1    standard is making it more difficult.  What you're saying

2    is that I'm going to believe him just because he's an

3    officer.

4              JUROR NO. 7:  No.

5              MR. KINNEY:  You're not saying that?

6              JUROR NO. 7:  No, I'm saying that he should do

7    the right thing.  I mean there's a difference between

8    right and wrong.

9              MR. KINNEY:  That's true.

10             JUROR NO. 7:  And that's what I believe.  And

11   part of that is a higher standard, so I have to believe

12   that I'm held at a higher standard to do my job, you know,

13   because if I'm challenged, I wouldn't do the same thing

14   that somebody else did, meaning that I hold myself at a

15   higher standard.

16             MR. KINNEY:  What about doctors?  You're going

17   to hear testimony from doctors, expert doctors.  A DNA

18   expert is going to testify.

19             JUROR NO. 7:  Yes.

20             MR. KINNEY:  Would you give that doctor, because

21   he's going to be called an expert, more credibility than

22   any other witnesses?

23             JUROR NO. 7:  You'd have to take his testimony

24   as what he knows to be honest and to the point of factual

25   material or data, and the -- and what he's learned.

1              MR. KINNEY:  Well, let's get to credibility.

2       That credibility is -- In your mind, what is credibility?

3              JUROR NO. 7:  Honesty.

4              MR. KINNEY:  Okay.  So do you take it as each

5       and every individual juror's responsibility to decide

6       credibility?

7              JUROR NO. 7:  I think I would, yes.

8              MR. KINNEY:  Okay.  So this is not the police

9       officer's responsibility, it's not the doctor's

10      responsibility, it's your responsibility to determine

11      whether the police officer is lying or not; correct?

12             JUROR NO. 7:  If that's the point.

13             MR. KINNEY:  All right.

14             JUROR NO. 7:  If that's the question.

15             MR. KINNEY:  Pardon?  I can't hear you.

16             JUROR NO. 7:  If that is the point that is

17      questioned.

18             MR. KINNEY:  Every time somebody takes the stand

19      and gives us testimony, do you think it's your

20      responsibility to determine whether that particular person

21      is credible or not, whether he's telling the truth or not?

22             JUROR NO. 7:  If we're here to judge if a person

23      is innocent or credible or -- I think that's a point that

24      we have to take as -- to do our job.

25             MR. KINNEY:  All right.  So then you agree with

1     me that we've -- you've got to determine every witness

2     that takes that stand, you have an obligation to determine

3     whether that witness is telling the truth or not.

4             JUROR NO. 7:  And with the six parts of the

5     crime that was just, you know, presented by the

6     Prosecutor.

7             MR. KINNEY:  Okay.

8             JUROR NO. 7:  In making a decision as to factual

9     material.

10            MR. KINNEY:  All right.  So in order to place

11    evidence into those different elements to see whether Mr.

12    Hutting has made up -- has reached his burden of proof --

13            JUROR NO. 7:  Correct.

14            MR. KINNEY:  -- you have to determine what

15    evidence you believe is truthful, first.

16            JUROR NO. 7:  Correct.

17            MR. KINNEY:  Okay.  And then after you do that,

18    you've got to determine what weight to give that evidence

19    that you determine to be credible.

20            JUROR NO. 7:  That's true.

21            MR. KINNEY:  Do you agree with that?

22            JUROR NO. 7:  I agree.

23            MR. KINNEY:  Okay.

24            JUROR NO. 7:  And the others?

25            PROSPECTIVE JURY PANEL:  Yes.

1            MR. KINNEY:  See, I'm getting ready to ask.  I

2       appreciate you replying to me.  Everybody's got to agree;

3       right?

4            PROSPECTIVE JURY PANEL:  Yes.

5            MR. KINNEY:  Mr. Alvarado, you agree with us;

6       right?

7            JUROR NO. 2:  Yes, sir.

8            MR. KINNEY:  I have a hypothetical that I

9       learned when I was much younger and this actually

10      determines what I'm trying to get you to understand is the

11      difference between credibility and then what weight you

12      give that credibility.

13           JUROR NO. 7:  Okay.

14           MR. KINNEY:  There was a young man who actually

15      worked in this building, and every Friday when he got his

16      paycheck, he went to the bar.  This one particular Friday,

17      he went to the bar and he laid his paycheck on the bar.

18      He told the bartender to keep them coming.  A few hours

19      later, the bartender says that's the end of your paycheck.

20           Okay.  He gets up and he struggles out the door.

21      And when he gets out the door, bam, there's an accident.

22      The police officer comes over to him and asks him, did you

23      see that accident?  He says, yes, I did.  What did you

24      see?  I saw a pink elephant in that big bus ran into this

25      car.  The police officer said you saw what?  I saw a pink

```
1        elephant in this bus run into this car.  He says okay.
2                 Now, question number one, do you think that
3        gentleman was trying to be truthful with the police
4        officer, or do you think he was actually trying to lie to
5        the police officer?
6                 JUROR NO. 7:  At that state, he had to say what
7        he could only say, he saw a pink elephant in a yellow bus
8        try to run into something.
9                 MR. KINNEY:  So he's not trying to lie?
10                JUROR NO. 7:  I don't believe so.
11                MR. KINNEY:  So in terms of credibility, this
12       gentleman is credible, he's telling what he believes the
13       truth to be; correct?  He's trying to tell the truth.
14                JUROR NO. 7:  No, we agreed.
15                MR. KINNEY:  Okay.  But you're going to believe
16       that that's what happened?
17                JUROR NO. 6:  No.
18                JUROR NO. 7:  No.
19                MR. KINNEY:  Why not?
20                JUROR NO. 7:  Because there's no pink elephants
21       and other things running into each other.
22                MR. KINNEY:  That's reasonable and rational, but
23       we also know what about this gentleman?
24                JUROR NO. 7:  He's intoxicated.
25                MR. KINNEY:  He's drunk.  So that's a reason for
```

```
 1       us not to say he's not being credible, he's not trying to
 2       lie, but we can't give it much weight because he was
 3       drunk.
 4              Everybody agree?
 5              JUROR NO. 7:  Yes.
 6              MR. KINNEY:  You understand the difference
 7       between weight and credibility?
 8              JUROR NO. 7:  Yes.
 9              MR. KINNEY:  Okay.  So you got more than just
10       determining who's up there and who's telling the truth.
11       Sometimes there's certain things about us that makes us
12       realize when you bring your own common sense here that we
13       just can't rely on that beyond a reasonable doubt.
14              Anybody disagree?
15              PROSPECTIVE JURY PANEL:  No.
16              MR. KINNEY:  Anybody feel that they can't do
17       that?
18              PROSPECTIVE JURY PANEL:  No.
19              MR. KINNEY:  Okay.
20              JUROR NO. 7:  It's a gut feeling.
21              MR. KINNEY:  Okay.  And it's kind of impossible
22       for you not to bring your life experiences in here when
23       you come; is that correct?
24              JUROR NO. 6:  Right.
25              MR. KINNEY:  Everybody understands you can't act
```

99

```
 1        like you don't know anything when you do?

 2                 JUROR NO. 7:  No.

 3                 MR. KINNEY:  And you use that to determine who's

 4        telling the truth and who's not telling the truth.

 5                 You agree?

 6                 JUROR NO. 7:  I agree.

 7                 MR. KINNEY:  Okay.  Well, we've got to get to

 8        what has happened to Ms. Felek.  I understand that and

 9        that's a tragic situation, Ms. Felek.  But as Mr. Hutting

10        says, I'm black or African-American, and it just wasn't

11        me, Ms. Felek, it just wasn't me; do you agree?

12                 JUROR NO. 10:  Yes.

13                 MR. KINNEY:  Okay.  So it wouldn't be fair for

14        you to sit -- or it wouldn't be, if you do sit, it

15        wouldn't be fair for you to say that Mr. Dantzler is

16        guilty in this case just because of what he -- his skin

17        color.  It might not be fair and impartial; you

18        understand?

19                 JUROR NO. 10:  I understand that.

20                 MR. KINNEY:  Okay.  Everybody understands that

21        now; right?

22                 JUROR NO. 2:  Yes.

23                 PROSPECTIVE JURY PANEL:  Yes.

24                 MR. KINNEY:  So that just wouldn't be fair.  And

25        it also wouldn't be fair to hold it against him that he's
```

100

1        sitting here.  Everybody agree?

2                   PROSPECTIVE JURY PANEL:  Yes.

3                   MR. KINNEY:  Because if you do that, then what

4        you're doing is convicting him and not presuming that he's

5        innocent and not holding Mr. Hutting to his burden of

6        proof, which is, as Mr. Hutting said --

7                   JUROR NO. 13:  Beyond a reasonable doubt.

8                   MR. KINNEY:  -- as to each and every --

9                   JUROR NO. 3:  Element.

10                  MR. KINNEY:  There we go.  It's not an element

11       of the crime to be sitting here, but we've got to be

12       careful because what we want to do is give him what?

13                  JUROR NO. 3:  A fair trial.

14                  JUROR NO. 7:  An honest trial.

15                  MR. KINNEY:  A fair trial, an honest trial, yes.

16       But as fair and impartial as Judge Bill, I hope.  But

17       whatever Judge Bill says, that's what we're going to

18       follow?

19                  PROSPECTIVE JURY PANEL:  Yes.

20                  MR. KINNEY:  Anybody disagree?

21                  JUROR NO. 2:  No.

22                  PROSPECTIVE JURY PANEL:  No.

23                  MR. KINNEY:  Okay.  Ms. Parker, we have a

24       distinguished judge and a distinguished lawyer in this

25       building with same last name you have.  Are you related to

1      them?

2              JUROR NO. 5:  No, I'm not.

3              MR. KINNEY:  A number of you had indicated that

4      you had police officers in the family; right?  Okay.

5              Mr. Alvarado, those police officers in your

6      family, do you talk to them about their cases?

7              JUROR NO. 2:  About their cases?

8              MR. KINNEY:  Yeah.

9              JUROR NO. 2:  Not about the cases.  Sometimes

10     they mention things, but I don't talk about any specific

11     case or anything.

12             MR. KINNEY:  All right.  So anything that you

13     talk about, because, you know, I assume police officers

14     generally talk about how they arrested somebody.

15             JUROR NO. 2:  I've never heard them talk about

16     that.

17             MR. KINNEY:  Have you ever heard any of them

18     talk about the convictions that they got?

19             JUROR NO. 2:  No.

20             MR. KINNEY:  Okay.  So anything that you talk

21     about wouldn't make you partial in this case, you still

22     could be impartial?

23             JUROR NO. 2:  Yes, sir.

24             MR. KINNEY:  You still believe you could be

25     fair?

1                    JUROR NO. 2:  Yes, sir.

2                    MR. KINNEY:  Okay.  And Mr. Ketvirtis.

3                    JUROR NO. 3:  Yeah.

4                    MR. KINNEY:  What about you?

5                    JUROR NO. 3:  As to I think I could be

6        impartial?

7                    MR. KINNEY:  Yes.  Even concerning --

8                    JUROR NO. 3:  Yes.

9                    MR. KINNEY:  -- whatever conversations --

10                   JUROR NO. 3:  My cousin's dad is, both on the

11       state force, one's on the bomb squad, one works at the

12       crime lab in Livonia.

13                   MR. KINNEY:  All right.  That's the Michigan

14       State crime lab.

15                   JUROR NO. 3:  Yes.

16                   MR. KINNEY:  Okay.  Well, Mr. Hutting has

17       already indicated that we're going to have some officers

18       testify, we're going to have some individuals testify

19       about DNA.  What if one of them is from the Michigan State

20       crime lab?

21                   JUROR NO. 3:  I still think I can be impartial.

22                   MR. KINNEY:  You still think you can be

23       impartial?

24                   JUROR NO. 3:  I know I can.

25                   MR. KINNEY:  But that means that you're telling

103

```
 1        me that you're not going to believe this person just

 2        because he's from the Michigan State Police?

 3                  JUROR NO. 3:  I'm going to -- That's a good --

 4                  MR. KINNEY:  You're going to be fair and

 5        impartial?

 6                  JUROR NO. 3:  Yes.

 7                  MR. KINNEY:  You're going to listen to what each

 8        witness says, including those from the Michigan State

 9        Police?

10                  JUROR NO. 3:  And then I can determine my own --

11        sort through the facts.

12                  MR. KINNEY:  Yes.

13                  JUROR NO. 3:  Listen to what each one has to

14        bring to the table and say, and make my own decision from

15        there.

16                  MR. KINNEY:  So that means that if you

17        personally believe that this person from the Michigan

18        State Police is not being truthful, you're going to be one

19        of the ones that says I can't believe what he's saying?

20                  JUROR NO. 3:  Yeah.

21                  MR. KINNEY:  Okay.  And if he's just mistaken in

22        the outcome that he got, you're going to be one of the

23        ones that says, I can't give this particular evidence that

24        much weight; is that correct?

25                  JUROR NO. 3:  Yeah.
```

1              MR. KINNEY:  You're not going to believe him

2      just because he's a member of the Michigan State Police;

3      correct?

4              JUROR NO. 3:  Correct.

5              MR. KINNEY:  Mr. Gayeski.

6              JUROR NO. 7:  Yes, sir.

7              MR. KINNEY:  We're back to the same subject.

8      We're not going to believe a police officer just because

9      he's a police officer?

10             JUROR NO. 7:  That's what he just said, he said

11     yeah.

12             MR. KINNEY:  And you agree?

13             JUROR NO. 7:  I agree.

14             MR. KINNEY:  Okay.  So a DNA expert from the

15     Michigan State Police, DNA expert from some personal crime

16     lab, we're going to treat him like a witness; is that

17     correct?

18             JUROR NO. 7:  Yes, sir.

19             MR. KINNEY:  He gets no special treatment just

20     because he says he's a doctor?  No special treatment just

21     because he's a police officer?

22             JUROR NO. 3:  No.

23             MR. KINNEY:  Everybody?

24             PROSPECTIVE JURY PANEL:  Yes.

25             MR. KINNEY:  Okay.  So, Mr. Stradling.

1           JUROR NO. 14:  Yes.

2           MR. KINNEY:  Am I saying it correctly?

3           JUROR NO. 14:  Yes.

4           MR. KINNEY:  All right.  Mr. Stradling, I think

5      that Mr. Hutting had talked to you about aiding and

6      abetting.

7           JUROR NO. 14:  Yes.

8           MR. KINNEY:  Okay.  I got a hat on, it's my hat.

9      My DNA should be in there; right?

10          JUROR NO. 14:  Possibly.

11          MR. KINNEY:  Do I have that hat on now?

12          JUROR NO. 14:  You do not.

13          MR. KINNEY:  Shouldn't my DNA still be in it?

14          JUROR NO. 14:  Possibly.

15          MR. KINNEY:  Okay.  So if the testimony is that

16     there's DNA in a hat, and the hat is somewhere that I'm

17     not, does that, in and of itself, mean that I was wherever

18     this hat was?

19          JUROR NO. 14:  It's possible.

20          MR. KINNEY:  It's possible.  That means that

21     it's possible that I wasn't where this hat ended up being.

22          JUROR NO. 14:  That's true.

23          MR. KINNEY:  Is that true?  Okay.  So then that

24     means that when it comes to all of the elements, just

25     because DNA is in a hat doesn't, in and of itself, by

```
 1      itself, without listening to all the rest of the evidence,

 2      mean that I'm guilty?

 3               JUROR NO. 14:  No.

 4               MR. KINNEY:  Okay.  Mean that I'm an aider and

 5      abetter?

 6               JUROR NO. 14:  No.

 7               MR. KINNEY:  We need to listen to all the

 8      evidence; correct?

 9               JUROR NO. 14:  Yes.

10               MR. KINNEY:  And no one piece of this evidence?

11               JUROR NO. 14:  Right.

12               MR. KINNEY:  Then I think we heard Judge Bill

13      say earlier that we don't want you all -- or Judge Bill

14      says, ordering that you all, don't start deliberating

15      until when?

16               PROSPECTIVE JURY PANEL:  We've heard all the

17      evidence.

18               MR. KINNEY:  We heard him say that; right?  That

19      means that's what we all are promising to do in order to

20      be fair and impartial jurors; do we agree?

21               PROSPECTIVE JURY PANEL:  Yes.

22               MR. KINNEY:  Okay.  All right.  Defendant's

23      statement.  If a witness comes in here and says that the

24      Defendant said something, what do we do about that

25      witness?  What's the first thing we do?  Determine whether
```

107

1      he is credible?

2              JUROR NO. 7:  He will be under oath, first of

3      all.

4              MR. KINNEY:  He will be under oath, yes.  So the

5      fact that he's under oath means that he promised to do

6      what?

7              JUROR NO. 7:  Tell the truth.

8              MR. KINNEY:  But our job as jurors is to make

9      sure that he's --

10             JURY PANEL:  Credible.

11             MR. KINNEY:  So that means that some people will

12     take that stand, swear to tell the truth and --

13             JURY PANEL:  Lie.

14             MR. KINNEY:  Lie.  And then when you determine

15     credibility, the Judge, Judge Bill, is probably going to

16     give you some examples of what you do and examples to

17     determine credibility.  He's going to help you.  He's

18     going to -- When he instructs you, he's going to give you

19     an outline of how to determine who's credible and who's

20     not credible.  All we have to do is follow it.

21             So just because a person says that Mr. Dantzler

22     said something to them, well, we agree that we have to

23     determine, first, whether or not we can believe that Mr.

24     Dantzler actually said that to him.  That would be the

25     first thing; correct?

```
 1                    PROSPECTIVE JURY PANEL:  Right.
 2                    MR. KINNEY:  And then we are going to listen to
 3          all of the testimony and all of the circumstances
 4          surrounding this case to determine if we can believe that.
 5          And then, if we can believe it, how much weight do we give
 6          it?  But you've got to listen to everything before you
 7          start; do you agree?
 8                    PROSPECTIVE JURY PANEL:  Yes.
 9                    MR. KINNEY:  All right.  So then the most
10          important thing for us to do here is to make sure that Mr.
11          Dantzler gets a fair and impartial jury so that we can all
12          give him a fair trial.  Everybody agrees?
13                    PROSPECTIVE JURY PANEL:  Yes.
14                    MR. KINNEY:  Thank you, ladies and gentlemen.
15                    THE COURT:  Thank you, Mr. Kinney.
16                    Challenges for cause, Mr. Hutting?
17                    MR. HUTTING:  Judge, I would ask that the Court
18          thank and excuse Mrs. Felek in seat 10.
19                    THE COURT:  Any objection?
20                    MR. KINNEY:  I would join in.
21                    THE COURT:  All right.  Remain seated until I
22          tell you it's time.  Ms. Felek, thank you for being
23          forthcoming in your answers and your beliefs.  You're
24          going to be excused for cause; okay?
25                    Anyone else for cause, Mr. Hutting?
```

```
1              MR. HUTTING:  No, your Honor.

2              THE COURT:  For cause, Mr. Kinney?

3              MR. KINNEY:  None, your Honor.  Thank you.

4              THE COURT:  Peremptories, Mr. Hutting?

5              MR. HUTTING:  Yes, your Honor.  We would ask the

6    Court to please thank and excuse the juror in seat 4, Ms.

7    Davis.

8              THE COURT:  4, Ms. Davis.

9              Anyone else at this time?

10             MR. HUTTING:  Not at this time, your Honor.

11             THE COURT:  Mr. Kinney, any peremptories?

12             MR. KINNEY:  Yes, your Honor.  I would ask the

13   Court to thank and excuse the juror in seat number 1.

14   Please forgive me, ma'am, but I don't think I can say your

15   name right now.

16             JUROR NO. 1:  I'm Vera Lynn Ciavaglia.

17             MR. KINNEY:  Ciavaglia.  Sounds like the coffee.

18             JUROR NO. 1:  You can take it either way.

19             THE COURT:  Anyone else at this time?

20             MR. KINNEY:  No, your Honor.  Thank you.

21             THE COURT:  Okay.  Juror Number 1, Juror Number

22   4, Juror Number 10, we thank you for spending the day with

23   us.  At this time, you're excused.  Would you visit with

24   Corporal Shippee or Jenkins at the door?  Thank you.

25             COURT CLERK:  For seat number 1, Stephen Clark
```

1         Comstock.

2                    Seat number 4, Latricia Renae Hall.

3                    Seat number 10, Robert James Griggs, Junior.

4                    THE COURT:  Good afternoon.

5                    JUROR NO. 1:  Good afternoon.

6                    THE COURT:  Mr. Comstock, where are you from,

7         sir?

8                    JUROR NO. 1:  Livonia, Michigan.

9                    THE COURT:  Are you employed?

10                   JUROR NO. 1:  I am not.

11                   THE COURT:  Anyone in your family with law

12        enforcement?

13                   JUROR NO. 1:  No.

14                   THE COURT:  Ever serve as a juror?

15                   JUROR NO. 1:  No.

16                   THE COURT:  Have you had any direct contact with

17        the criminal justice system where you were a defendant,

18        witness or victim?

19                   JUROR NO. 1:  Nope.

20                   THE COURT:  Thank you much.

21                   Hello, Ms. Hall.

22                   JUROR NO. 4:  Hi.

23                   THE COURT:  Where are you from?

24                   JUROR NO. 4:  Detroit, Michigan.

25                   THE COURT:  Are you employed, ma'am?

```
1              JUROR NO. 4:  No.

2              THE COURT:  Anyone in your family employed by

3    law enforcement?

4              JUROR NO. 4:  My stepfather is a Wayne County

5    sheriff.

6              THE COURT:  Have you ever been a juror?

7              JUROR NO. 4:  No.

8              THE COURT:  And Ms. Hall, have you had any

9    direct contact with our criminal justice system where you

10   were a defendant, witness or victim?

11             JUROR NO. 4:  No.

12             THE COURT:  Thank you, Ms. Hall.

13             Also joining us is Mr. Griggs, Junior.

14             JUROR NO. 10:  From Wyandotte.  I'm an auto

15   worker.

16             THE COURT:  I'm sorry?

17             JUROR NO. 10:  From Wyandotte, I'm an

18   autoworker, auto line.

19             THE COURT:  Anyone in your family with law

20   enforcement?

21             JUROR NO. 10:  My wife's aunt and uncle,

22   retired.

23             THE COURT:  All right, thank you.  And have you

24   ever served as juror?

25             JUROR NO. 10:  No.
```

112

```
 1                    THE COURT:  And have you had any direct contact

 2        with the criminal justice system where you've been a

 3        defendant, witness or victim?

 4                    JUROR NO. 10:  No.

 5                    THE COURT:  Thank you.

 6                    Okay.  Mr. Kinney, you may go first.

 7                    MR. KINNEY:  Thank you.

 8                    THE COURT:  You're welcome.

 9                    MR. KINNEY:  Am I saying it right if I'm saying

10        Comstock?

11                    JUROR NO. 1:  Comstock.

12                    MR. KINNEY:  Okay, Mr. Comstock, good afternoon,

13        first of all.  And you said you don't have any police

14        officers --

15                    JUROR NO. 1:  Correct.

16                    MR. KINNEY:  -- in your family?

17                    You've been a victim of a crime?

18                    JUROR NO. 1:  Twice in the past.  Once, victim

19        of a home invasion.

20                    MR. KINNEY:  Okay.  Was that a home invasion

21        where you were home?

22                    JUROR NO. 1:  Yes.

23                    MR. KINNEY:  Okay.

24                    JUROR NO. 1:  Well, I actually walked in and

25        they were there.
```

```
1                    MR. KINNEY:  You didn't hurt nobody?

2                    JUROR NO. 1:  No.

3                    MR. KINNEY:  And is that the only one?

4                    JUROR NO. 1:  And the second time, I was robbed

5          coming out of a funeral for a friend.

6                    MR. KINNEY:  Okay.  Was there a resolution to

7          these particular incidents?

8                    JUROR NO. 1:  Neither one.

9                    MR. KINNEY:  Neither one.

10                    Do you -- You don't hold me responsible for

11         that; right?

12                    JUROR NO. 1:  No.

13                    MR. KINNEY:  Do you have any problems with the

14         criminal justice system at all?

15                    JUROR NO. 1:  No.

16                    MR. KINNEY:  Did the police try?

17                    JUROR NO. 1:  Yep.

18                    MR. KINNEY:  And you can be a fair and impartial

19         juror?

20                    JUROR NO. 1:  I believe so.

21                    MR. KINNEY:  Okay.  So Mr. Dantzler, at this

22         particular time, if you had to give a verdict, it could

23         only be one thing; right?

24                    JUROR NO. 1:  I'm sorry?

25                    MR. KINNEY:  Mr. Comstock, as a juror --
```

114

1              JUROR NO. 1:  Right.

2              MR. KINNEY:  -- right now, if Judge Bill asked

3         you for a verdict, it could only be one verdict; correct?

4              JUROR NO. 1:  Correct.

5              MR. KINNEY:  What would that be?

6              JUROR NO. 1:  Not guilty.

7              MR. KINNEY:  Okay.  Ms. Hall, good afternoon.

8              JUROR NO. 4:  Good afternoon.

9              MR. KINNEY:  Are you a student?

10             JUROR NO. 4:  Yes.

11             MR. KINNEY:  Wayne State?

12             JUROR NO. 4:  No, Alabama State.

13             MR. KINNEY:  I was just playing with you.  I see

14        that.  So you understand the difference between being a

15        fair and impartial juror and being somebody messing up the

16        system and not being a fair and impartial juror?

17             JUROR NO. 4:  Yes.

18             MR. KINNEY:  You can be a --

19             JUROR NO. 4:  Fair and impartial juror.

20             MR. KINNEY:  And that means that you're going to

21        determine the credibility of every witness that takes the

22        stand?

23             JUROR NO. 4:  Yes.

24             MR. KINNEY:  All right.

25             And let's say that, Mr. Comstock, when you are

```
 1          in there deliberating, you're going to, of course, discuss

 2          everything among the rest of the jurors; correct?

 3                  JUROR NO. 4:  Yes.

 4                  MR. KINNEY:  But your own beliefs, do you give

 5          them up just because somebody else said something?

 6                  JUROR NO. 4:  No.

 7                  MR. KINNEY:  And in doing that, you are ensuring

 8          a fair and impartial jury?

 9                  JUROR NO. 4:  Yes.

10                  MR. KINNEY:  All right.  But you're not going to

11          run and get into the bathroom and lock yourself in there

12          and just don't -- you can't deliberate if you do anything

13          like that.

14                  JUROR NO. 4:  Right.

15                  MR. KINNEY:  You have to talk to the rest of the

16          jurors.

17                  JUROR NO. 4:  Yes.  I'm very outspoken.

18                  MR. KINNEY:  All right.  Is it Mr. Griggs?

19                  JUROR NO. 10:  Yes.

20                  MR. KINNEY:  Mr. Griggs, is there anything about

21          you that makes you believe that you couldn't be fair and

22          impartial?

23                  JUROR NO. 10:  No.

24                  MR. KINNEY:  Is there anything about the

25          discussions that we've had so far that makes you think
```

116

1          that you wouldn't agree with everybody else that's sitting

2          up there with you?

3                    JUROR NO. 10:  No.

4                    MR. KINNEY:  Okay.  So then, you believe that

5          Mr. Dantzler is --

6                    JUROR NO. 10:  Innocent.

7                    MR. KINNEY:  At this particular point; correct?

8                    JUROR NO. 10:  Yep.

9                    MR. KINNEY:  Okay.  And, you know,

10         circumstantial evidence is another term that Judge Bill is

11         going to define for you.  There's a hypothetical that's

12         generally used.  You know there's no windows here; right?

13                   JUROR NO. 10:  Right.

14                   MR. KINNEY:  And we've been here -- well, after

15         lunch, we've been here an hour or so; right?

16                   JUROR NO. 10:  Yes.

17                   MR. KINNEY:  Can you tell me what's happening

18         outside?

19                   JUROR NO. 10:  No.

20                   MR. KINNEY:  Well, what if an individual walked

21         in that door with an umbrella and shook it on Ms. O'Rourke

22         and water got on her, and took his coat off and it was

23         soaking wet, is that evidence of anything?

24                   JUROR NO. 10:  No.

25                   MR. KINNEY:  Well, what if -- Huh?

117

1              JUROR NO. 10:  Not for being outside, he could

2       have went outside smoking.  He could have got it from

3       outside the room.

4              MR. KINNEY:  He could have gotten his umbrella

5       wet from outside the room?

6              JUROR NO. 10:  Fire alarm could go off, water

7       could go off.

8              MR. KINNEY:  Okay.  All right.  But that's

9       evidence that he got some water from somewhere; right?

10             JUROR NO. 10:  Right.

11             MR. KINNEY:  And the umbrella, itself, kind of

12      means that he was trying to keep from getting wet.

13             JUROR NO. 10:  Right.

14             MR. KINNEY:  And on a snowy day like today, I

15      didn't bring my umbrella.  Did you bring yours?

16             JUROR NO. 10:  No.

17             MR. KINNEY:  It's something that you have to

18      consider because it's evidence.  That's what they call

19      circumstantial evidence.  It's circumstantial evidence

20      that something is going on where he just came from.

21             JUROR NO. 10:  Yes.

22             MR. KINNEY:  Could be a fire alarm which just

23      went off.  I like that.  But you understand that it's

24      still your job, no matter what the testimony is --

25             JUROR NO. 10:  Yes.

                              118

1           MR. KINNEY:  -- is to consider all the evidence

2      that's presented in the case?

3           JUROR NO. 10:  Yes.

4           MR. KINNEY:  All right.  Now, you know

5      sometimes, you know, and Mr. Hutting might say that these

6      are the Prosecutor's witnesses, and then want to say that

7      over here is the Defense witnesses.  A witness is a

8      witness.

9           JUROR NO. 10:  Yes.

10          MR. KINNEY:  We take our witnesses as they come.

11     It depends on what happens out there.  The facts of the

12     case depends on what witnesses take the stand; correct?

13          JUROR NO. 10:  Yes.

14          MR. KINNEY:  So when you're determining the

15     witnesses, just because someone named them a Prosecutor's

16     witness, doesn't give them any more credibility than

17     anyone else.

18          JUROR NO. 10:  No.

19          MR. KINNEY:  He's just a witness in a case.

20          JUROR NO. 10:  Yes.

21          MR. KINNEY:  Do you agree?

22          JUROR NO. 10:  Yes.

23          MR. KINNEY:  Anybody disagree?

24          JUROR NO. 7:  No.

25          PROSPECTIVE JURY PANEL:  No.

```
 1                    MR. KINNEY:  This is something that still goes

 2         back to the fact that Mr. Dantzler really doesn't have to

 3         put up a Defense.  It's kind of hard for me to do this

 4         because I like to talk, but actually what if I decided to

 5         just sit here and, for the next three days, all you saw me

 6         do was sit here.  Is that a reason to say that Mr.

 7         Dantzler is guilty for anything?

 8                    PROSPECTIVE JURY PANEL:  No.

 9                    MR. KINNEY:  Because we still got to listen to

10         all the evidence that's being presented.  And what if I

11         was a bad lawyer?  What if I just didn't do what you

12         thought that I should be doing here; do you hold that

13         against Mr. Dantzler?  No matter how much you don't like

14         me, we still want to give Mr. Dantzler a what?

15                    PROSPECTIVE JURY PANEL:  A fair trial.

16                    MR. KINNEY:  Thank you.  Well, then, I'll

17         apologize now if there's something that you don't like

18         about what I do.  I know you won't hold that against Mr.

19         Dantzler; is that correct?

20                    PROSPECTIVE JURY PANEL:  Right.  Yes.

21                    MR. KINNEY:  And by the same token, that means

22         that if Mr. Hutting presents twenty witnesses and we

23         present one, it's not like a football game, that can't be

24         21.  We do understand that; right?  We got to take each

25         and every witness and determine whether there was enough
```

1    witness or not to prove if Mr. Dantzler did anything.  And

2    the only person that we're concerned with, there's nobody

3    else sitting up here as a defendant, no matter what you

4    hear about anybody else, we're here to determine whether

5    there was enough evidence to prove that Mr. Dantzler is

6    guilty of a crime.

7              PROSPECTIVE JURY PANEL:  Yeah.

8              MR. KINNEY:  Everybody agree?

9              PROSPECTIVE JURY PANEL:  Yes.

10             MR. KINNEY:  Thank you, your Honor.

11             THE COURT:  Thank you, Mr. Kinney.

12             Mr. Hutting?

13             MR. HUTTING:  Yes.  Good afternoon, Mr.

14   Comstock.

15             JUROR NO. 1:  Good afternoon.

16             MR. HUTTING:  You know, I was involved with

17   something else when the Judge asked you the first couple

18   questions.

19             What County do you reside in?

20             JUROR NO. 1:  Livonia.

21             MR. HUTTING:  Okay.  And at the present time,

22   you're not working; is that correct?

23             JUROR NO. 1:  Correct.

24             MR. HUTTING:  In the recent past have you worked

25   in a field?

```
1                    JUROR NO. 1:  Oh, yeah.  I'm a research

2          biochemist.

3                    MR. HUTTING:  Okay.  And you've not been on a

4          jury before?

5                    JUROR NO. 1:  Correct.

6                    MR. HUTTING:  Okay.  All right.  You were the

7          victim of a home invasion?

8                    JUROR NO. 1:  Correct.

9                    MR. HUTTING:  How long ago was that?

10                   JUROR NO. 1:  Probably 18 years ago.

11                   MR. HUTTING:  Oh, quite a while.

12                   JUROR NO. 1:  A while.

13                   MR. HUTTING:  Was anybody arrested as a result

14         of that?

15                   JUROR NO. 1:  They were not.

16                   MR. HUTTING:  They got away?

17                   JUROR NO. 1:  Out the back door.

18                   MR. HUTTING:  Out the back door.  Okay.  I take

19         it a police report was made?

20                   JUROR NO. 1:  Yes.

21                   MR. HUTTING:  Were you satisfied -- I understand

22         that, you know, they didn't arrest anybody and nobody got

23         charged or convicted.  Were you satisfied with what the

24         police did, at least on the case, or not?

25                   JUROR NO. 1:  Well, I heard six, eight months
```

```
1        later that they were found guilty for some other crime and
2        they somehow, you know, just wanted to let me know that.
3                   MR. HUTTING:  So they came back and told you
4        that?
5                   JUROR NO. 1:  It's a small town.
6                   MR. HUTTING:  All right.  You feel, if we asked
7        you to, you could sit here for the three or four days, two
8        or three days, whatever it takes, and give both sides a
9        fair trial?
10                  JUROR NO. 1:  Um-hmm.
11                  MR. HUTTING:  Okay.  Thank you, sir.
12                  Ms. Hall.
13                  JUROR NO. 4:  Yes.
14                  MR. HUTTING:  Alabama State University.
15                  JUROR NO. 4:  Yes.
16                  MR. HUTTING:  What year are you in?
17                  JUROR NO. 4:  Sophomore.
18                  MR. HUTTING:  Are you home for Christmas?
19                  JUROR NO. 4:  Yes, I'm on Christmas break.
20                  MR. HUTTING:  Great.  When do you go back?
21                  JUROR NO. 4:  I go back on January the 9th.
22                  MR. HUTTING:  Okay.  All right.  Pretty good
23        break.
24                  JUROR NO. 4:  Yes.
25                  MR. HUTTING:  Where is Alabama State?
```

```
1                    JUROR NO. 4:  Montgomery, Alabama.

2                    MR. HUTTING:  All right.  And you're a

3          sophomore.  What's your field --

4                    JUROR NO. 4:  Chemistry/forensic science.

5                    MR. HUTTING:  A lot of people in the sciences

6          here.  That's why I became a lawyer because I couldn't do

7          a job in the sciences.  All right.

8                    Never been on a jury before?

9                    JUROR NO. 4:  No.

10                   MR. HUTTING:  Do you have a minor?

11                   JUROR NO. 4:  Psychology.

12                   MR. HUTTING:  Okay.  All right.  Could you sit

13         with a fair and open mind, give both sides a fair trial?

14                   JUROR NO. 4:  Yes.

15                   MR. HUTTING:  You understand that -- Let's say

16         you were chosen.  When you got in the jury room, there's

17         going to be twelve of you in there, you know, there's

18         probably going to be at least six or eight, maybe even

19         twelve different opinions; right?

20                   JUROR NO. 4:  Yes.

21                   MR. HUTTING:  It's the job of the jurors to kind

22         of, you know, have some give and take back and forth, sort

23         things out, listen to what your other jurors have to say,

24         okay, express your opinions, also.  Okay?  You may have an

25         opinion about the case that another juror may have a
```

124

```
 1          different opinion.  After you listen to his or her
 2          opinion, you might change your opinion and agree with that
 3          person.
 4                  Do you understand that?
 5                  JUROR NO. 4:  Yes.
 6                  MR. HUTTING:  Okay.  You're willing to at least
 7          keep an open mind about that?
 8                  JUROR NO. 4:  Yes, always.
 9                  MR. HUTTING:  You won't just walk in there and
10          say I think this and that's it and I'm not changing.  On
11          the other hand, that person, after he listens to you, or
12          she listens to you might say, no, no, you got a real point
13          there, I accept that point.  So you're willing to do the
14          give and take that it takes to be a juror in
15          deliberations?
16                  JUROR NO. 4:  Yes, sir.
17                  MR. HUTTING:  Okay.  Very good.  All right.
18                  And Mr. Griggs.
19                  JUROR NO. 10:  Griggs.
20                  MR. HUTTING:  Okay.  From Wyandotte.  You said
21          that -- you did tell us what field are you in?
22                  JUROR NO. 10:  Autoworker, auto line.
23                  MR. HUTTING:  Okay.  Didn't get that written
24          down.  All right.
25                  Ever been called to serve before?
```

1              JUROR NO. 10:  I've been called but never

2       picked.

3              MR. HUTTING:  Did you ever get up in the box?

4              JUROR NO. 10:  No.

5              MR. HUTTING:  So the first time in the box, huh?

6              JUROR NO. 10:  Yep.

7              MR. HUTTING:  All right.  You never had to

8       testify before in any way, shape or form?

9              JUROR NO. 10:  No.

10             MR. HUTTING:  Okay.  All right.  Let me ask the

11      three of you, do you feel that you can sit with a fair and

12      open mind, give both sides a fair trial?

13             JUROR NO. 10:  Yes.

14             MR. HUTTING:  Okay.  Let me ask the three of you

15      this one question.  The Judge asked any close friends or

16      relatives who've ever been accused, charged or convicted

17      of a serious crime?

18             JUROR NO. 10:  No.

19             JUROR NO. 4:  No.

20             JUROR NO. 1:  No.

21             MR. HUTTING:  Okay.  All right.  Thank you all

22      very much.

23             THE COURT:  Challenges for cause, Mr. Kinney?

24             MR. KINNEY:  None, your Honor.  Thank you.

25             THE COURT:  For cause, Mr. Hutting?

                              126

```
1                    MR. HUTTING:  None.

2                    THE COURT:  Peremptories, Mr. Kinney?

3                    MR. KINNEY:  Your Honor, I'd ask the Court to

4        thank and excuse Mr. Gayeski.

5                    THE COURT:  In seat number 7?

6                    MR. KINNEY:  Yes, sir.

7                    THE COURT:  Anyone else at this time?

8                    MR. KINNEY:  No, your Honor, thank you.

9                    THE COURT:  Mr. Hutting, any peremptories?

10                   MR. HUTTING:  Judge, we're satisfied, no.

11                   THE COURT:  No peremptories?

12                   MR. HUTTING:  No, sir.

13                   THE COURT:  Mr. Gayeski, thank you for your

14       honest answers.  Would you visit with our deputies at the

15       door?

16                   JUROR NO. 7:  Thank you.

17                   MR. KINNEY:  Your Honor, if we may, I would ask

18       the Court to thank -- first of all, may we?

19                   THE COURT:  Yes, go ahead.

20                   MR. KINNEY:  Juror in seat number 12, Ms. Lozon.

21                   THE COURT:  Ms. Lozon.  So you're excusing 7 and

22       12; is that right, Mr. Kinney?

23                   MR. KINNEY:  Yes, your Honor.

24                   THE COURT:  Okay.  Mr. Gayeski is gone.

25                   Ms. Lozon, thanks to you.  Have a great holiday;
```

1      okay?

2                  JUROR NO. 12:  You, too.

3                  THE COURT:  Anyone else at this time?  Either of

4      you, gentlemen?

5                  MR. HUTTING:  No, sir.

6                  THE COURT:  Mr. Kinney, anyone else at this

7      time?

8                  MR. KINNEY:  No, your Honor, not at this time.

9                  THE COURT:  All right.  Would you call the names

10     of two prospective jurors?

11                 COURT CLERK:  For seat number 7, Lora Stanley

12     King.  Is that Lora?

13                 JUROR NO. 7:  Yes.

14                 COURT CLERK:  And for seat number 12, Richard

15     Herbert, is it Lewthwaite?

16                 THE COURT:  Good afternoon.

17                 JUROR NO. 12:  Good afternoon.

18                 JUROR NO. 7:  Good afternoon.

19                 THE COURT:  Mr. King, where you from, sir?

20                 JUROR NO. 7:  Detroit, Michigan.

21                 THE COURT:  Are you employed?

22                 JUROR NO. 7:  Yes, I am.

23                 THE COURT:  What do you do, Mr. King?

24                 JUROR NO. 7:  I'm a hi-lo driver.

25                 THE COURT:  All right, thank you.  Is anybody in

                                    128

1          your immediate family with law enforcement?

2                    JUROR NO. 7:  No.

3                    THE COURT:  Have you ever served as a juror?

4                    JUROR NO. 7:  No.

5                    THE COURT:  Any direct contact with the criminal

6          justice system where you were a defendant, witness or

7          victim?

8                    JUROR NO. 7:  I believe I would be a defendant.

9          I was accused of carrying a concealed weapon, so I'm

10         assuming I was a defendant.

11                   THE COURT:  All right.  Thank you very much.

12                   Also joining us -- How do you pronounce your

13         last name?

14                   JUROR NO. 12:  Lewthwaite.

15                   THE COURT:  Where are you from, sir?

16                   JUROR NO. 12:  Canton, Michigan.

17                   THE COURT:  Are you employed?

18                   JUROR NO. 12:  I'm retired.

19                   THE COURT:  What did you do?

20                   JUROR NO. 12:  I was an engineer at Ford Motor

21         Company.

22                   THE COURT:  All right.  Thank you.  Is anyone in

23         your immediate family employed by law enforcement?

24                   JUROR NO. 12:  No.

25                   THE COURT:  Have you ever served as a juror?

```
 1                    JUROR NO. 12:  No.

 2                    THE COURT:  And have you had any direct contact

 3        with the criminal justice system where you were a

 4        defendant, witness or victim?

 5                    JUROR NO. 12:  No.

 6                    THE COURT:  All right.  Thank you.

 7                    Mr. Hutting.

 8                    MR. HUTTING:  Thank you, your Honor.

 9                    THE COURT:  You're welcome.

10                    MR. HUTTING:  Okay.  Mr. King.

11                    JUROR NO. 7:  Yes.

12                    MR. HUTTING:  I've got to get my cheat sheet out

13        here.  How are you this afternoon, sir?

14                    JUROR NO. 7:  I'm good.

15                    MR. HUTTING:  Okay.  All right.  You indicated

16        to the -- one of the Judge's questions that you were

17        accused of CCW.

18                    JUROR NO. 7:  Yes.

19                    MR. HUTTING:  That's carrying a concealed

20        weapon?

21                    JUROR NO. 7:  Yes.

22                    MR. HUTTING:  How long ago was that?

23                    JUROR NO. 7:  I believe it was right about the

24        mid '80s.

25                    MR. HUTTING:  Mid '80s.  Okay.  All right.
```

1                    Was that here in Detroit or Wayne County or some

2        place else?

3                    JUROR NO. 7:  It was Greektown.

4                    MR. HUTTING:  In Greektown?

5                    JUROR NO. 7:  Yes.

6                    MR. HUTTING:  Okay.  All right.  Ultimately, was

7        a warrant issued against you?

8                    JUROR NO. 7:  A warrant?  Yes, it was.

9                    MR. HUTTING:  Okay.  All right.  And the first

10       step is a -- Did you come to this building?

11                   JUROR NO. 7:  I don't believe it was this

12       building, but I did go to court.

13                   MR. HUTTING:  Okay.  Where do you think you went

14       to court?

15                   JUROR NO. 7:  I don't remember.

16                   MR. HUTTING:  Okay.  All right.  Ultimately what

17       happened to that case?

18                   JUROR NO. 7:  I was convicted and had to pay a

19       fine.

20                   MR. HUTTING:  Okay.  CCW?

21                   JUROR NO. 7:  Yes.

22                   MR. HUTTING:  Okay.  Did you feel that you were

23       treated fairly by the system?

24                   JUROR NO. 7:  No.

25                   MR. HUTTING:  No.  Okay.  Why do you feel that

1       you were not treated fairly?

2              JUROR NO. 7:  Because I was under the impression

3       at the time that, you know, it was okay to carry.  It

4       wasn't concealed.  I was wearing a little case that you

5       wear on the side of your belt, and they still convicted me

6       of it.

7              MR. HUTTING:  Did you have a jury trial or a

8       judge trial?

9              JUROR NO. 7:  No, just a judge trial.

10             MR. HUTTING:  Okay.  All right.  Because that

11      happened, do you feel that you would not be able to sit

12      here with a fair and impartial mind and give both sides a

13      fair trial, or can you separate that out?

14             JUROR NO. 7:  I could try.  I could try.

15             MR. HUTTING:  Okay.  Well, I understand that you

16      can try.  Okay.  But, you know, like we asked Ms. Felek

17      who was up there in seat 10 awhile back, she said that she

18      would try but, you know, she ultimately in the end really

19      wasn't able to.

20             You know, do you feel because of that

21      incident -- sometimes people think, you know, I couldn't

22      be fair; okay?  The case is being brought by the police,

23      brought by the Prosecutor's office, I don't feel I got

24      treated fairly, I might hold that against them.

25             Do you feel that way?

132

1                    JUROR NO. 7:  No.

2                    MR. HUTTING:  No?  You think -- Okay.  You can

3          separate it out; is that what you're saying?

4                    JUROR NO. 7:  Yes.

5                    MR. HUTTING:  Okay.  All right.  Mr. Lewthwaite.

6                    JUROR NO. 12:  Lewthwaite.

7                    MR. HUTTING:  Okay.  How long you been retired?

8                    JUROR NO. 12:  Since -- Supposedly since 2005,

9          but I went back for a year or two.

10                    MR. HUTTING:  Okay.  Very good.  Feel that you

11          could sit with a fair and open mind, give both sides a

12          fair trial?

13                    JUROR NO. 12:  Yes.

14                    MR. HUTTING:  Okay.  Let me -- Never been a

15          juror before?

16                    JUROR NO. 12:  No.

17                    MR. HUTTING:  Let me ask you and Mr. Hall this

18          question:  Do you have any close friends or relatives who

19          have ever been accused, charged or convicted of a crime?

20                    JUROR NO. 12:  My son was convicted of kidnaping

21          and served time, approximately three years.  And then a

22          year-and-a-half after that, he violated his probation by

23          having three DUIs.

24                    MR. HUTTING:  Probation or parole?  He got out,

25          served time --

                              133

```
1              JUROR NO. 12:  Parole.  I'm not sure which it
2      would be, but he --
3              MR. HUTTING:  That's okay.
4              JUROR NO. 12:  It was parole.  Okay.  And then
5      he served another six months, also, at Milan.
6              MR. HUTTING:  How long ago was that?
7              JUROR NO. 12:  I think he was done with it all
8      by 2003.
9              MR. HUTTING:  Okay.
10             JUROR NO. 12:  So he came out then, and he's
11     been pretty straight since.
12             MR. HUTTING:  So if he went to Milan, that's a
13     federal penitentiary.
14             JUROR NO. 12:  Right.
15             MR. HUTTING:  So he would have been charged
16     federally over in U.S. District Court.
17             JUROR NO. 12:  Right.  He was also charged on
18     the three DUIs, he was charged here, but he served them at
19     the same time.
20             MR. HUTTING:  Concurrent.
21             JUROR NO. 12:  Concurrent.  All right.
22             MR. HUTTING:  Did you attend any of the
23     proceedings with him?
24             JUROR NO. 12:  Yes.
25             MR. HUTTING:  Okay.  Was his case resolved at a
```

134

1    trial or before trial?

2              JUROR NO. 12:  Without a jury.  There was a

3    trial.  He went before a judge and the judge sentenced

4    him.

5              MR. HUTTING:  Judge trial, okay.  Did you feel

6    that he was treated fairly?

7              JUROR NO. 12:  Yes.

8              MR. HUTTING:  Okay.  Would the fact that your

9    son has had this problem with law enforcement -- how old

10   was he at the time?

11             JUROR NO. 12:  This started when he was 18 and

12   he pretty much was done with all this trouble by the time

13   he was 22.

14             MR. HUTTING:  Okay.  All right.  Because your

15   son has had these problems in the past with law

16   enforcement, do you feel that would prevent you from being

17   a fair and impartial juror, or is that something you can

18   separate out?

19             JUROR NO. 12:  I think I can separate it out.

20             MR. HUTTING:  Okay.  All right.  Anything else,

21   or is that it?

22             JUROR NO. 12:  I guess that's it, as far as

23   fairness.

24             MR. HUTTING:  No.  I mean in terms of my

25   question, close friends or relatives.

```
 1                    JUROR NO. 12:  That's it.

 2                    MR. HUTTING:  Okay.  All right.

 3              Mr. Hall, any response to close friends or

 4         relatives who have ever been accused, charged or convicted

 5         of a crime?

 6                    JUROR NO. 7:  King.

 7                    MR. HUTTING:  Other than you.  You told us about

 8         that.

 9                    JUROR NO. 7:  I'm saying my last name is King.

10                    MR. HUTTING:  I'm sorry.  I don't know why I

11         keep calling you Hall.  Mr. King, excuse me, yes, close

12         friends or relatives who have ever been accused, charged

13         or convicted of a crime?

14                    JUROR NO. 7:  No.

15                    MR. HUTTING:  Okay.  Thank you very much.

16              Nothing further.

17                    MR. KINNEY:  Thank you.  First of all, Mr. King

18         and Mr. Lewthwaite, good afternoon.  And my biggest

19         concern from both of you all is that you heard our

20         concern, I and Mr. Hutting, as to getting a fair and

21         impartial jury so we can have a fair trial.

22                    JUROR NO. 7:  Right.

23                    MR. KINNEY:  You understand?  Okay.

24              Both of you all indicated basically that you

25         would try.  And my concern with that is, is that if you
```

1    don't know or have that belief that you can't tell us that

2    you can be fair and impartial, then, how are we going to

3    know?  I need to hear it.  Can you be fair and impartial

4    in this case?  If you're not confident, I'm scared to be.

5              JUROR NO. 12:  I would just look at the

6    credibility of the witnesses, make my decision based on

7    that.

8              MR. KINNEY:  Okay.  What about anything else

9    that Judge Bill tells you -- orders you to do?  I mean is

10   there something that you -- he's presumed innocent; is

11   that correct?  Mr. Dantzler.  Is there anything that

12   you've heard Judge Bill say that makes you think you

13   cannot follow his directions?

14             JUROR NO. 7:  No.

15             MR. KINNEY:  Mr. King?

16             JUROR NO. 7:  No.

17             MR. KINNEY:  Mr. Lewthwaite?

18             JUROR NO. 12:  No.

19             MR. KINNEY:  All of these principles of law that

20   he gives you, you can abide by?

21             JUROR NO. 12:  Yes, sir.

22             MR. KINNEY:  Mr. King?

23             JUROR NO. 7:  Yes.

24             MR. KINNEY:  Mr. Lewthwaite?

25             JUROR NO. 12:  Yes.

1              MR. KINNEY:  Nothing further.

2              THE COURT:  Challenges for cause.

3              MR. HUTTING:  May we please have permission to

4         approach?

5              THE COURT:  Of course, you may.

6              (At about 2:55 p.m., brief sidebar.)

7              (At about 2:56 p.m., back on the Record.)

8              THE COURT:  All right.  Ladies and gentlemen,

9         we're going to have a brief -- this is your brief

10        afternoon break; okay?  Go to the bathroom, get a drink,

11        I'll see you in just a few minutes.  Thank you.  Don't

12        discuss the case, wear your badges.

13             DEPUTY SHERIFF:  All rise for the jury.

14             (At about 2:56 p.m., brief recess;

15             At about 3:14 p.m., back on the Record.)

16             THE COURT:  Ladies and gentlemen, I'm going to

17        be talking to the lawyers about an issue that does not

18        involve you or require your presence.  It's going to take

19        a little bit of time.  So you arrived this morning at,

20        what, 7:30, quarter to 8:00; is that right?

21             PROSPECTIVE JURY PANEL:  Yes.

22             THE COURT:  All right.  So we were unlikely to

23        complete the process for today anyway, quite frankly, so

24        here's our schedule that we'll adhere to here on in for

25        those of you that are selected.

1              Now, tomorrow, the lawyers have other

2    commitments that have been scheduled for a long time and

3    have requested -- and it's their request that we start

4    tomorrow at 11:30; is that right, gentlemen?

5              MR. KINNEY:  Yes, sir.

6              MR. HUTTING:  Yes, sir.

7              THE COURT:  And I've accommodated their request.

8    It's for a good cause.  And we're starting tomorrow at

9    11:30.  We'll continue with the jury selection process.

10   Those of you that are not selected will be excused.  Those

11   of you who are selected will be sworn and the trial will

12   begin tomorrow, okay, in all likelihood.  So that's what

13   remains.

14             But the schedule will be -- after that, will be

15   like this:  You'll arrive by 8:45 in the morning.

16   Certainly not 7:30; okay?  We will start at nine o'clock.

17   We will go for about 90 minutes or so, you'll get a break.

18   My staff and I will do some other matters.  Your break

19   will be about 15 or 20 minutes.  We'll come back, we'll go

20   until about for another 90 minutes or so.  You'll go to

21   lunch for an hour and 15 minutes.  It will resume for

22   about 90 minutes.  You'll get an afternoon break for about

23   ten minutes.  We'll go until about four o'clock.  Okay?

24   So that will be the schedule.

25             We will not be meeting on Friday unless you're

139

1          in deliberations; is that understood?  So that's the

2          schedule that we'll adhere to.

3                    Do not discuss the case.  Wear you badges at all

4          times.  You report outside of this courtroom tomorrow.

5          You don't go to the jury commission.  Outside of this

6          courtroom tomorrow morning and I'd like you here at 11:00,

7          11:15.  Okay?  So I'll see you tomorrow morning at 11:15

8          to 11:30.  Thank you.

9                    DEPUTY SHERIFF:  All rise for the jury.

10                    (At about 3:16 p.m., prospective jurors

11                    excused.)

12                    THE COURT:  You all come back tomorrow,

13         everybody.  We do not have a jury yet.  You all come back

14         and report outside this courtroom at 11:15; all right?

15         Thank you.  All of you prospective jurors return.

16                    DEPUTY SHERIFF:  Please be seated.

17                    MR. HUTTING:  What's the Court rule number

18         again, Judge?

19                    THE COURT:  2.511.  2.511.

20                    MR. KINNEY:  I think it's D.

21                    MR. HUTTING:  Here it is.

22                    MR. KINNEY:  Your Honor --

23                    THE COURT:  Hold on.

24                    MR. HUTTING:  There's a statute, too, Judge.

25                    THE COURT:  Under Michigan Court rules, a person

```
1         who's been convicted of a felony has no right to serve on
2         a jury, United States versus Butler.
3              The Court rule requiring the exclusion of juror
4         challenge for cause is convicted felon constitutes part of
5         Michigan law demonstrating the convicted felon's civil
6         rights have not been restored when released from
7         incarceration so that such felon remains within the
8         purview of federal criminal statute, prohibiting him to
9         possess a firearm by any person.  Go on, go on, go on.
10             MR. HUTTING:  There's a statute that Baughman's
11        book cites, too, Judge.
12             THE COURT:  Okay.  My inclination is that I'm
13        not sure why the jury commission didn't catch this.
14        That's why they screen people and have questionnaires.
15             MR. KINNEY:  Well, one of problems here is that
16        he said he never got to this building and there was a
17        fine.  I'm not ready to say that it's a felony.  CCW
18        felony is, usually, you come over here at some point.
19        It's a five-year felony.
20             MR. HUTTING:  Well, that's true.  Okay.  But he
21        also said that it was -- he didn't really remember where
22        he went.
23             MR. KINNEY:  I thought he said he didn't
24        remember where he went, but it wasn't here.
25             MS. O'ROURKE:  That's correct.
```

141

```
 1                    MR. KINNEY:  I thought he ended after that, but
 2        it wasn't --
 3                    MS. O'ROURKE:  He said he wasn't in this
 4        building.
 5                    THE COURT:  Right.  So there's some confusion as
 6        to whether or not Mr. King is -- and you're talking about
 7        Mr. King, seat number 7?
 8                    MR. KINNEY:  Mr. King, yes.
 9                    THE COURT:  Whether or not he's a convicted
10        felon.  I really don't know if I want to embarrass the
11        gentleman at this point.
12                    MR. KINNEY:  It is, in fact, is --
13                    THE COURT:  We can invite him -- bring him in
14        separately if you want to explore this further, if it's an
15        issue, or we can proceed, gentlemen.  I'll proceed however
16        you'd like tomorrow morning.  But it appears if he is a
17        convicted felon that we haven't established, to my
18        satisfaction, he's a convicted felon.
19                    Mr. Hutting, your office should be able to
20        identify whether he is or not rather quickly.
21                    MR. HUTTING:  If I have a date of birth, I can
22        take care of it.
23                    THE COURT:  So, it should be in the jury
24        questionnaire.
25                    MR. HUTTING:  Could your clerk get that for us?
```

1                    THE COURT:  Do we have anything on the jurors'

2          dates of birth?

3                    COURT CLERK:  I don't know if they keep that in

4          the jury office or not.  I can find that out.

5                    THE COURT:  All right.  I'll see you tomorrow

6          morning between 11:15 and 11:30 then?

7                    MR. HUTTING:  Yes, your Honor, you sure will.

8                    MR. KINNEY:  Yes.

9                    THE COURT:  Okay.  Good night.

10                   (At about 3:31 p.m., proceedings concluded.)

11                              *      *      *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        C E R T I F I C A T E

 2

 3       STATE OF MICHIGAN)

 4                        )

 5       COUNTY OF WAYNE  )

 6

 7

 8            I, Becky L. Bauer, Certified Court Reporter of the

 9       Third Judicial Circuit Court, Criminal Division, Wayne

10       County, State of Michigan, do hereby certify that the

11       foregoing 145 pages comprise a full, true and correct

12       transcript of the proceedings and testimony taken in the

13       matter of the People of the State of Michigan versus

14       SAMUEL LEE DANTZLER, on December 14, 2010.

15

16

17

18                            _____

19                            Becky L. Bauer, CSR-3326

20                            Official Court Reporter

21

22

23       Date: _____

24

25
```

144

```
 1                        INDEX TO EXAMINATIONS

 2

 3        Witness                                    Page

 4

 5        (Witnesses not presented)

 6

 7

 8

 9

10

11

12                        INDEX TO EXHIBITS

13

14        Exhibit                                    Page

15

16        (Exhibits not offered)

17

18

19

20

21

22

23

24

25
```