# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 26, 2012

Robert P. Young, Jr.,
*Chief Justice*

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra,
*Justices*

145738 & (65)(66)


PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellee,

v

        SC:  145738
        COA:  303252
        Wayne CC:  10-003521-FC

SAMUEL LEE DANTZLER,
      Defendant-Appellant.

_____/

      On order of the Court, the application for leave to appeal the June 19, 2012 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.  The motions for appointment of counsel and to remand are DENIED.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 26, 2012
_____

_____
Clerk

s1217

STATE OF Michigan
IN The SUPREME Court

People of the State of Michigan
                    Plaintiff-Appellee,

NS

Samuel Lee Dantzler,
                    Defendant-Appellant,                /

Samuel L. Dantzler #518107
IN PRO-PER

    Jon P. Wojtala (P-49474)
Assistant Prosecuting Attorney
11th Floor, 1441 St. Antoine
Detroit, Michigan 48226

Supreme Ct No. _____ 006-19-12
Court of Appeal No: 303252
Lower Ct no. 10-003521-FC
            Wayne CRt
            G. Bill

(ORAl Arguments Requested)


145738 (65) (66)   Application For leave to Appeal
        apts    removed   IN The SUPREME Court
        cnusel   tr ct

9/25

TP

Samuel lee Dantzler
#518107
1500 Caberfae Hwy
Manistee, Mich 49660-9200

**FILED**

AUG 2 3 2012

CORBIN R. DAVIS
CLERK
MICHIGAN SUPREME COURT

Date: Aug 6, 2012

## Jurisdiction Statement

In this matter, Defendant-Appellant Samuel Lee Dantzler seeks leave to Appeal pursuant to: MCR 7.203(B) Jurisdiction over this matter is Conferred by MCR 7.302(A)

Defendant-Appellant is unskilled in the workings of the law and relies on the sound discretion of this Honorable Court to take that fact into consideration in the Aforemented matter.

The Jurisdiction of this Honorable Court is invoked Pursuant to: MCR 7.302(A) when the Court of Appeals for the State of Michigan Rendered a decision denying the defendant-Appellant Appeal on June, 19, 2012 in a unpublished opinion (see Appendix)

Wherefore, For the issues contained herein, Defendant Respectfully Asks this Honorable Court to grant the enclosed Application For leave.

Dated: Aug 6, 2012

Respectfully submitted

Samuel L. Dantzler

STATE OF Michigan

In The Supreme Court

People of the state of michigan,

         Plaintiff-Appellee

VS

Samuel Lee Dantzler

         Defendant-Appellant, /

Samuel Lee Dantzler

  In Pro-Per

Supreme Ct No. _____

Court of Appeals No: 303252

Lower Ct No. 10-003521-FC

Application For Leave to Appeal
In the supreme court

    Now Comes Defendant-Appellant <u>Samuel Lee Dantzler</u>
by And through Pro-Per, And Respectfully says:

    Defendant-Appellant is An inmate in the state of michigan
And is currently confined At the Oaks correctional Facility
1500 Caberfae Hwy, Manistee Michigan 49660-9200
Inmate No. 518109

1. Defendant-Appellant was convicted Following A Jury trial
in Wayne County on December 22, 2010 of First degree
murder.

2. Defendant was sentenced on January 20, 2011 to life
in prison without parole

3. Defendant on day of sentencing requested Appellate
counsel.

4. Defendant was appointed counsel on April 7, 2011 Represented by Neil J. Leithauser

5. A brief was filed in the Court of Appeals on December 27, 2011 Case No: 303252

6. The Court of Appeals issued an unpublished opinion affirming the defendant's conviction and sentence on June 19, 2012

7. Defendant-Appellant filed a motion for reconsideration on June 27, 2012

8. Order for Reconsideration was denied on Aug 9, 2012

9. The decision of the court of Appeals is clearly erroneous

10. That the issues raised in this brief are important to the Jurisprudence of the State of Michigan.

11. That the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

## Relief Requested

The Defendant seeks this Honorable Court to order a remand back to the court of Appeals for a evidentiary hearing pursuant to Ginther to expand the Record before deciding on this application to adequately address appellate counsel performance. Assign new counsel to conduct these proceedings And grant leave to Appeal the decision of the court of Appeals in this Honorable Court.

Respectfully submitted

Samuel Dantzler

SAMUEL L. DANTZLER

STATE OF MICHIGAN

In The Supreme Court

People of the State of Michigan,

                       Plaintiff-Appellee

vs                                     Supreme Ct no. _____

Samuel Lee Dantzler,         Court of Appeals no: 303252

               Defendant-Appellant,     Lower Ct no: 10-003521-Fc

Samuel L. Dantzler #518107

In Pro-Per

1500 Caberfae Hwy

Manistee, Mich 49660-9200

## Request For Appointment of Counsel

I, the undersigned, hereby certify under the penalty of perjury that the following facts are true and correct to the best of my knowledge, information and belief.

In support of this motion: Defendant states;

1, I am the Defendant-Appellant in the above entitled cause and desire the assistance of counsel in these proceedings. That i am a lay-person in the internal working of the judicial process, and further i need assistance to prepare this and will be unable to get assistance further

2. The defendant-Appellant feels that Appellate counsel in his Representation According to the Record WAS deficient.

3. Defendant-Appellant has currently two Active investigations going Against appellate counsel deficient Representation, one from The Grievance Commission And Also one from (MAACS) who Assigned him to my CASE,

4. In this CASE, the issues RAised on Appeal is complex, has considerable merit And involves legal principles of major significance in the AREA OF Due Process Violation.

5. The Federal courts have held that counsel should be Appointed to An indigent defendant in proceedings where the interest of justice requires, where the defendant does not understand the issues or incapable of presenting proper Arguments, is incapable of investigating the facts of the CASE or the Arguments Are factually or legally complex. Bashor V Risley 730 F.2d 1228, 1234 (9th cir 1984) Nachtigall V Class 48 F.3d 1076, 1082 (8th cir 1995) Lamere V Risley, 827 F.2d 622, 627 9th cir (1987) McBride V Sharpe, 25 F.3d 962, 971 (11th cir 1994) Harris V champion, 15 F.3d 1538, 1567 (10th cir 1994)

6. I Represent to the court that i Am without money or means to Retain counsel for myself.

7. When serious Allegations Are made by indigent criminal defendant on Appeal the Record should be Reviewed de novo

7. In Addition, the ends of justice would best be served by Appointing the defendant-Appellant counsel in this proceeding because, in this Area of law learned counsel will prove essential to the fair and proper Administration of justice, thus maintaining the integrity of the court preserving the already strained Appellate court resources,

8. Defendant-Appellant is indigent, he has no money, stock, bonds, or other tangible Assets with which he may utilize to Retain counsel in this cause,

9. Defendant-Appellant futher incorperates here by reference His memorandum in support of his application

Wherefore, Defendant Respectfully requests this Honorable court to Appoint counsel to supplement this Pro-se Application

Dated: Aug 6, 2012

Respectfully submitted

Samuel L. Dantzler

VERIFICATION And AFFIDAVIT of Indigency

Defendant declares he is indigent, he has no money, stocks, bonds or other tangible Assets with which he may utilize to Retain counsel in this matter.

RONALD GRAMBAU
Notary Public, State of Michigan
County of Manistee
My Commission Expires May. 25, 2018
Acting in the County of MANISTEE

8-6-12

STATE OF Michigan
IN The Supreme Court

People of the state of Michigan,

                    Plaintiff-Appellee,

Vs

Samuel L. Dantzler,

                    Defendant-Appellant

Samuel Lee Dantzler #518107
In Pro-Per
1500 Caberfae Hwy
Manistee, Mich 49660-9200

Supreme Ct No. _____

Court of Appeals No: 303252

Lower Ct No. 10-003521-FC

Motion For Evidentiary Hearing

Dated: Aug 6, 2012

<u>Declaration Affidavit of Sa el L. Dantzler</u>

I, Samuel L. Dantzler, doposes And says as Follows:

1. That i <u>Samuel L. Dantzler</u>, am referred to in this Affidavit as the affiant.

2. That affiant is incarcerated at the Oaks Correctional Facility At 1500 Caberfae Hwy, Manistee Mich 49660-9200

3. That affiant is represented on direct appeal by attorney Neil J. Leithauser (P-33976)

4. That affiant was denied oral arguments due to a untimely brief filed by mr Leithauser

5. That affiant recieved the Prosecutor's brief on April 9, 2012 with only 3 days left to reply

6. That as of today i have not recieved my transcripts or any relevant documents to futher my appeal from mr Leithauser.

7. Affiant has been hampered in his ability to properly perfect an appeal by appellate cousel.

I, Samuel L. Dantzlee, declare under the penalty of persey that the statements made within the body of this Affidavit are true and accurate and factual and if called upon before a court of law to testify, I would aveb to the same.

Executed on: 8-6- 2012

By: Samuel Dant
Samuel L. Dantzler

RONALD GRAMBAU
Notary Public, State of Michigan
County of Manistee
My Commission Expires May, 25, 2018
Acting in the County of Manistee

8-6-12

In Support of his motion, Defendant states:

1. Defendant-Appellant has filed an application for leave to appeal in this Honorable Court.

2. The Court of Appeals denied the defendant relief on appeal affirming defendant's conviction and sentence on June 19, 2012

3. Defendant now seeks an evidentiary hearing in this Honorable Court before deciding leave in this appeal pursuant to: People V Ginther, 390 mich 436, 442-443 (1973)

4. Defendant wishes to develope a testimonial record to support his claims of ineffective assistance of Appellate counsel. To the extent that the claim raised depends on facts not of record.

5. Defendant has filed a complaint on Appellate counsel Neil J. Leithauser with the (Michigan Appellate Assigned counsel) System) [See Exhibit 1]

6. Defendant maintains that Appellate counsel neglected to follow proper procedures in the steps he took properly Argue defendant's cause, making his performance deficient.

7. Defendant futher states that Appellate counsel violated defendant's sixth and 14th Amendment rights where he did not forward the prosecutor's brief in a timely manner in order for the Defendant to respond. [See exhibit 2]

8. DEFENDANT Futher incorporates that AFTER being denied in the court of Appeals, defendant requested his transcripts to Futher his Appeal in this Honorable Court. [See exhibit 3]

9. Appellate counsel three days AFTER the denial Returned all the transcripts back to the trial court [See exhibit 4]

10. Appellate counsel did in Fact prejudice the defendant Appeal by the steps he took in A critical stage of the proceedings

11. It is incumbent on defendant to make A testimonial Record At this level to support his claim.

<u>In conclusion</u>

Look At <u>Couch</u> v <u>Booker</u>, 632 F.3d 241 (6th cir 2011) Id. At 245

" In All criminal prosecution the sixth Amendment " Says the Accused shall enjoy the right to Assistance of counsel for his defense, U.S. Const. Amend VI, A Requirement that Applies to the state through the Fourteenth Amendment. <u>Gideon</u> v <u>WAINWRIGHT</u>, 372 U.S. 335, 342-43 83 S. ct 792, 9 L Ed 2d 799 (1963)

Also see <u>Stokes</u> v <u>Scott</u>, 821 F. Supp 2d 898 (E.D. mich 2011) that says; " When serious allegations Are made by. indigent criminal defendant that his Appointed counsel is not providing Adequate Representation they should not be taken lightly."

Wherefore Defendant prays this Honorable Court will Remand this For A hearing in the court of Appeals to Expand the Record to get All the facts on Record.

Respectfully submitted
Samuel Pant

STATE OF Michig

In The Supreme Court

People of the state of michigan

Plaintiff-Appellee,

Vs

Samuel L. Dantzler

Defendant-Appellant,  /

Supreme ct no. _____

Court of Appeal no. 303252

Lower ct No: 10-003521-FC

Samuel L. Dantzler #518107

In pro-per

1500 Caberfae Hwy

Manistee, Mich 49660-9200

PROOF OF SERVICE

Defendant Samuel L. Dantzler

I certify that on this 20th day of August 2012
I mailed one copy of supreme court Application
for leave to Appeal to; Jono P. Wojtala Assistant
Prosecuting Attorney At 11th Floor, 1441 St. Antoine
Street, Detroit, michigan 48226 Also one Copy
to The michigan supreme court, located At
P.O. Box 30052 Lansing Mich 48909. Via First
Class postage pre-paid,

Samuel Dant
Samuel L. Dantzler

— 26 —

# Michigan Appellate Assigned Counsel System



14573

**THOMAS M. HARP**
ADMINISTRATOR

**LYLE N. MARSHALL**
DEPUTY ADMINISTRATOR

August 3, 2012

Mr. Neil Leithauser
Attorney at Law
101 W. Big Beaver Road    14th Floor
Troy, MI  48084

RE:    *People v Samuel Dantzler*
Court of Appeals No. 303252
Wayne Circuit Court No. 10-3521-01

Dear Mr. Leithauser,

Thank you for your July 28, 2012 response letter to my letter to you dated July 17, 2012.  In my letter to you I informed you that your client in the above-captioned case, Samuel Dantzler, wrote to this office complaining about the representation he said you were affording him. He wrote that he "was denied counsel in a critical stage of my proceeding of my appeal due to the deficient performance of my assigned counsel." He said that you did not appear for oral argument. He requested that this office investigate his allegation.

I told you in my letter that it is the responsibility of this office to investigate inquiries from clients about the representation being afforded them by MAACS roster attorneys. I wrote that the Court of Appeals record indicated that you requested oral argument when you filed Mr. Dantzler's brief on appeal, but you did not timely file the brief. I informed you that MAACS Minimum Standard 6 requires that counsel "preserve the right to oral argument by timely filing the defendant's brief on appeal," and I reminded you that MCR 7.212(A)(4) provides that "[a]ny party failing to timely file and serve a brief required by this rule forfeits the right to oral argument." I determined, based on Mr. Dantzler's allegation and the Court's record that a violation of Minimum Standard 6 was implicated. I requested a written response that addressed the alleged violation of the Minimum Standards. I invited you to provide any information or documentation you felt necessary to convey a fair and accurate picture of your representation of Mr. Dantzler.

In your July 28th reply you wrote that drafting a brief in Mr. Dantzler's appeal that included the best substantive issues proved to take much longer than you had hoped. You said you faced a "Hobson's Choice" between preserving the right to oral argument by filing the brief timely or taking more time and completing it in as full a form as you thought was required and appropriate. You wrote that even though a motion for oral argument could have been filed, you felt confident that you had prepared the issues for review.

Mr. Dantzler was convicted on December 22, 2010 by a Wayne County jury of first degree murder. On January 20, 2011 he was sentenced to life in prison without parole. Mr. Dantzler

Mr. Neil Leithauser
August 3, 2012                                                                 Page 2

requested appointment of appellate counsel on January 20, 2011. On April 7, 2011, in an amended order, you were appointed to represent Mr. Dantzler on appeal. On about October 6, 2011, you filed a stipulation to extend the time within which to file the appellant's brief. On November 11, 2011 you filed a motion to extend the time within which to file the appellant's brief, which the Court granted until December 1, 2011. The Court of Appeals issued an Involuntary Dismissal Warning Letter to you on December 6, 2011. The Court informed you that its "records indicate that you filed an appeal in this matter but you have failed to perfect the appeal by timely filing appellant's brief. The appeal is now eligible for INVOLUNTARY DISMISSAL or other action under MCR 7.217. You must file appellant's brief within 21 days from the date of this letter to avoid the assessment of $250 costs and the possible dismissal of the appeal. Filings received after the 21st day may be accepted if the matter has not yet been submitted to the Court for dismissal, but costs will be assessed. Because the due date for appellant's brief has passed, briefs filed within 21 days will not be considered timely for purposes of oral argument." You filed the Brief on Appeal on December 27, 2011. The prosecution filed a brief on March 30, 2012. On June 19, 2012, the Court of Appeals issued an unpublished opinion *per curiam* affirming Mr. Dantzler's conviction and sentence.

Again, according to Section 2(5) of the MAACS Regulations, it is the responsibility of this office to "investigate allegations of noncompliance by roster attorneys with the Minimum Standards for Indigent Criminal Appellate Defense Services and take appropriate action." My review of Mr. Dantzler's letter, the Court of Appeals record, and your letter to me implicate a violation of Minimum Standard 6. Minimum Standard 6 provides that "[c]ounsel should request oral argument, and preserve the right to oral argument by timely filing the defendant's brief on appeal. Oral argument may be waived if counsel subsequently concludes that the defendant's rights will be adequately protected by submission of the appeal on the briefs alone."

The Court of Appeals web site docket entries reveal that Mr. Dantzler's brief on appeal was not timely filed. In your July 28th letter to me you acknowledged that you did not timely file Mr. Dantzler's brief. Standard 6 "emphasizes the need for counsel to request oral argument, and preserve the right to oral argument by timely filing the defendant's brief on appeal." Oral argument, as the MAACS Comment stresses, is important because it provides counsel the opportunity to present recent cases to the Court, respond to the prosecution's argument, and to answer the Court's questions about the case. Oral argument further offers one final opportunity to persuade the Court of the merits of the appeal and the "correctness" of the appellant's position.

MAACS is not unsympathetic to the "Hobson's Choice" with which you said you were faced, and as much as this office appreciates your efforts and the fine quality of briefs that result, the Minimum Standards do not provide for the choice you described. Not unlike MCR 7.214(A), which in part provides that "failure of a party to properly request oral argument or to timely file and serve a brief waives the right to oral argument," Minimum Standard 6 requires timely filing of the brief on appeal.

You also explained in your letter that your "choice, or decision," allowed for filing a motion for oral argument if it appeared necessary. You said that you felt confident that you had prepared the issues for review without the need for oral argument. But again, the Minimum Standards do not

Mr. Neil Leithauser
August 3, 2012                                                                                   Page 3

provide for such a contingency or "choice." Timely filing of the brief is required to preserve oral argument. Only after timely filing the brief, may "[o]ral argument [] be waived if counsel subsequently concludes that the defendant's rights will be adequately protected by submission of the appeal on the briefs alone." According to your letter, you chose to file untimely, then chose not to file a motion for oral argument. Again, the Standard does not provide for that choice.

You did not timely file Mr. Dantzler's brief. The important purposes supporting Minimum Standard 6 went unfulfilled, and Mr. Dantzler's appellate rights went unprotected. Consequently, you failed to fulfill the requirements of Minimum Standard 6. Accordingly, MAACS finds that you violated Minimum Standard 6 in this matter.

Mr. Dantzler also complained in his June 25th letter to MAACS, and in a subsequent letter to this office dated July 23, 2012, that you did not timely forward to him a copy of the prosecutor's brief, resulting in Mr. Dantzler's inability to respond to the prosecutor's arguments. You wrote in your July 28th letter to me that the prosecutor's brief was filed in the Court of Appeals on March 30, 2012, and you forwarded a copy to Mr. Dantzler on April 7, 2012. The Court of Appeals web site indicates that the prosecutor's brief was filed on March 30, 2012. Mr. Dantzler provided this office with a copy of "(Exhibit A) Stamped envelope from attorney Neil J. Leithauser," which is an appendix to his *pro per* "Motion For Extension To Reply To Plaintiff-Appellee's Brief On Appeal." The photostatic copy of the stamped envelope Mr. Dantzler provided MAACS shows your return address, a post mark of Saturday, April 7, 2012, and an "ECF MAILROOM" stamp indicating it was received on April 9, 2012. The record indicates that you timely forwarded a copy of the prosecutor's brief to Mr. Dantzler, and Oaks Correctional Facility received it two days after you mailed it.

Mr. Dantzler's complaint, and the implication of a Minimum Standard violation, has been resolved informally with this letter instead of with a formal Complaint Determination. The violation of Minimum Standard 6 in this matter, although serious and of concern to this office, would not have resulted, standing alone, in your removal from the MAACS roster. It is MAACS's responsibility to establish and maintain records of roster attorney performance. A record of these findings will be maintained in your file with this office for use in any future evaluation of your eligibility for MAACS roster membership. In addition to fulfilling this purpose, I hope this letter is of use to you and will inform your MAACS practice. Do not hesitate to contact me if you have any questions or concerns about this matter.

Sincerely,

Lyle N. Marshall
Deputy Administrator

LNM/mle
c: Samuel Dantzler, #518107

Exhibit 2

Defendant's motion for Extension

Samuel L. Datzler

( 181074

1500 Caberfae Hwy

Manistee, Mich 49660-9200

4-12-2012

TO: Clerk

Court of Appeals                    CASE NO: 303252

RE: Motion Filing

Dear Clerk,

Enclosed you will find one orginal and one copy of

motion for extension to reply to Plaintiff-Appellee's

brief on appeal, could you please file these documents

on my behalf. Thank you for your time.

Respectfully

**RETURNED**

APR 20 2012

COURT OF APPEALS
FIRST DISTRICT
LARRY S. ROYSTER
CHIEF CLERK

STATE OF MICHIGAN

In The Court of Appeals

People of the State of Michigan

        Plaintiff-Appellee,

V

Samuel Lee Dantzler

        Defendant-Appellant,

Court of Appeal No: 303252

Lower ct No: 10-3520

RECEIVED 2012 APR 18 AM 9:55
COURT OF APPEALS
DETROIT OFFICE
LARRY S. ROYSTER
CHIEF CLERK

Samuel Lee Dantzler

In Pro-Per

Jon P. Wojtala (P-49474)
Assistant Prosecuting Attorney
11th Floor, 1441 St. Antoine
Detroit Mich 48226

RECEIVED 2012 APR 16 AM 11:43
COURT OF APPEALS
LANSING OFFICE
LARRY S. ROYSTER
CHIEF CLERK

Motion for Extension
to Reply to Plaintiff-Appellee's
Brief on Appeal

**RETURNED**

APR 20 2012

COURT OF APPEALS
FIRST DISTRICT
LARRY S. ROYSTER
CHIEF CLERK

Samuel Lee Dantzler
#518107
1500 Caberfae Hwy
Manistee, Mich 49660-9200

Date: 4-10-12

STATE of Michigan

In The Court of Appeals

People of the state of michigan

         Plaintiff-Appellee,

V

Samuel Lee Dantzler

        Defendant-Appellant,

Court of Appeals No: 303252

Lower Ct no: 10-3521

Samuel Lee Dantzler
In Pro-Per

**RETURNED**

APR 20 2012

COURT OF APPEALS
FIRST DISTRICT
LARRY S. ROYSTER
CHIEF CLERK

Motion For Extension to
Reply to plaintiff-Appellee's
Brief on Appeal

      Pursuant to: MCR 7.216(B)

In support of his motion, Defendant states:

   1. Defendant has Filed An appeal in this Honorable court threw his Assigned counsel Neil J. Leithauser, on or about December 27, 2011

   2. That the Plaintiff-Appelle File a Response dated March 21, 2012

-1-

3. That the Plaintiff-Appelle Response was not timely Filed Pursuant to; MCR 7.212 (A)i)

4. At no time did the Defendant Recieve A motion From the Plaintiff-Appelle to extend the time For Filing

5) That Plaintiff has Forfeit the Right to Oral Arguments in these Proceedings Pursuant to: MCR 7.212 (4)

6) That the Defendant-Appellant Recieved the plaintiff Response on April 9, 2012 (see Attached exhibit to Verify date)

7) That Defendant-Appellant Appellate Attorney did not Forward the plaintiff Response in A timely manner.

8) That the Defendant-Appellant would like to Reply to the Plaintiff-Appellee Brief in Accordance with MCR 7.212 (G)

9) That Due to Defendant Counsel not being timely in Forwarding the Plaintiff Response, he cannot conform to the Rules of MCR 7.212 (G)

10) That since plaintiff was not timely in their Response to the Defendant-Appellants brief

11) That the Defendant-Appellant be Afforded An Extension to Respond to the plaintiff-Appelle Response.

12) That this Honorable court Grant this Request Pursuant to MCR 7.216 (B)

— 2 —

13. Defendant is seeking an order for an extension to give the Defendant his due Process under the law

14. That Failure to file A timely Response was not the fault of the Defendant Negligence or Defendant Attempt to Delay the process of this Honorable court

14. In this case, the issues Raised on Appeal is complex, has considerable merit And involves legal principles of major significance.

15. In Addition, the ends of Justice would best be served by granting this motion, thus maintaining the integrity of the court.

Wherefore, Defendant-Appellant prays this court will grant this motion and issue its order pursuant to MCR 7.216 (B) in this cause.

Dated: 4-11-12

Respectfully submitted

Samuel L. Dantzler

— 3 —

**RETURNED**

APR 20 2012

COURT OF APPEALS
FIRST DISTRICT
LARRY S. ROYSTER
CHIEF CLERK

Declaration Affidavit of Samuel L. Dantzler

I, Samuel L. Dantzler, deposes and says as Follows:

1. That I Samuel L. Dantzler, am Referred to in this Affidavit as the Affiant.

2. That Affiant is incarcerated at the Oaks Correctional Facility at 1500 Caberfae Hwy, Manistee Mich 49660-9200

3. That Affiant is Represented on direct Appeal by Attorney Neil J. Leithauser (P-33976)

4. That Affiant Recieved a Response brief from his Attorney Neil J. Leithauser on April 9, 2012

5. That at no time before April 9, 2012 was Affiant made Aware of plaintiff-Appellee brief.

6. That this Affiant Samuel L. Dantzler, is willing to testify to these Facts in a court of law.

I, Samuel L. Dantzler, declare under the Penalty of Perjury that the statements made within the body of this Affidavit are true and Accurate and Factual and if called upon before a court of law to testify, I would Aver to the s**RETURNED**

**RETURNED**

APR 20 2012

COURT OF APPEALS
FIRST DISTRICT
LARRY S. ROYSTER
CHIEF CLERK

Executed on: 4-11 2012

By: _Samuel Dantzler_
Samuel L. Dantzler

— 4 —

( Exhibit A )

Stamped Envelope From

Attorney Neil J. Leithauser

Neil J. Leithause
Attorney at Law
101 W. Big Beav
Troy, MI 48084



RECEIVED

APR - 9 2012

ECF MAILROOM



Metroplex MI 480 ZIP
SAT 07 APR 2012 PM

7-102L

Samuel L. Dantzler
#818107
1500 Caberfae Hwy.
Manistee, MI 49660-9200

STATE OF Michigan

The Court of Appeals

People of the state of michigan

        Plaintiff-Appelle,

V

Samuel Lee Dantzler

        Defendant-Appellant

Samuel Lee Dantzler # 518107

1500 Caberfae Hwy

Manistee, Mich 49660-9200

Court of Appeal No: 303252

Lower Ct No: 10-3521

RONALD GRAMBAU
Notary Public, State of Michigan
County of Manistee
My Commission Expires May. 25, 2018
Acting in the County of MANISTEE

4-11-12

**RETURNED**

APR 20 2012

COURT OF APPEALS
FIRST DISTRICT
LARRY S. ROYSTER
CHIEF CLERK

Proof of Service

Defendant Samuel L. Dantzler

    I Eertify that on this ____ day of April 2012,
I mailed one copy of motion for extension to
Reply to plaintiff-Appellee's brief to: Jon P.
Wojtala Assistant prosecuting Attorney At 11th
Floor, 1441 St. Antoine Street, Detroit mich
48226 Also one orginal And one copy to:
The michigan court of Appeals via First class
mail.

          —6—

                      Samuel L. Dantzler

2012 APR 18 AM 9:55

COURT OF APPEALS
DETROIT OFFICE
LARRY S. ROYSTER
CHIEF CLERK

RECEIVED

Exhibit 3

defendant Request for transcript

Samuel L. Dantzler
# 518107
1500 Caberfae Hwy
Manistee, Mich 49660-9200

TO: Neil J. Leithauser          7-16-12
101 W. Big Beaver Rd
14th Floor
Troy, Mich 48084

RE: Transcripts

Dear MR Leithauser,

I am writting you in regards to my transcripts, could you please Forward me all my transcripts and discovery documents that is revelant to my case, so that i may perfect my appeal in the supreme court. Thank you for your time on my behalf.

Respectfully
Samuel Dantzler

c/c/o

Exhibit 4

Response From Appellate
Counsel on Transcripts

**NEIL J. LEITHAUSER**
**Attorney at Law**
**(248) 687-1404**

101 W. Big Beaver Rd., 14th Floor
Troy, MI 48084

July 28, 2012

Samuel L. Dantzler
#518107
1500 Caberfae Hwy.
Manistee, MI 49660-9200

re: **People v Samuel Dantzler**
    Court of Appeals: 307341

Dear Mr. Dantzler:

This is in response to your recent letter requesting transcripts, etc.   I do not have any transcripts they were returned to the court 6/22/2012-- as required by Wayne County -- for transmittal to you; you should have received them by now.  Your trial counsel should be able to provide you with any additional discovery you might need that you were not previously given.  You already were sent the court-file (12/30/2012); if there are additional documents or materials you need from the court you can write to the court, as I mentioned in previous correspondence, and request them.  I do still have a copy of the presentence report; let me know if you need that and I will be happy to send it to you.

Sincerely yours,

Neil J. Leithauser

STATE OF Michigan

In The Supreme Court

People of the state of michigan
                    Plaintiff-Appellee,

- Vs -

    Samuel Lee Dantzler
                    Defendant-Appellant,

SUPREME ct no._____
Court of Appeals no: 303252
Lower ct no: 10-003521-FC

Brief in Support of
Application for Leave to Appeal

By: Samuel Lee Dantzler
    In Pro-Per
    Inmate no. 518107
    1500 Caberfae Hwy
    Manistee, Mich 49660-9200

# TABLE of Contents

INDEX OF Authorities . . . . . . . . . . . 1, 2

Statement of QUESTIONS Presented . . . . . . . . . . . 3, 4

STATEMENT of FACTS . . . . . . . . . . . . 5, 6, 7

ARGUMENT I

The COURT OF APPEALS ruling that the trial
court's sua-sponte modification to a requested
Adverse-inference instruction following destruction
of material evidence did not violate the defendant's
state And FEDERAL constitutional Rights without merit . . . 7 THRU 11

ARGUMENT II

The EVIDENCE WAS INSUFFICIENT to prove the defendant
Participated in the crime, As principal or Aider And
Abettor, And the Resulting conviction is violative
of his due process guarantee's under the 14th Amend
And Const 1963, Art I sec. 17 And must be Reversed. . . 12 THRU 16

ARGUMENT III

Did the trial court's denial of necessary funds for
An independent expert to review the DNA evidence
denied the defendant due process guarantees under
the 14th Amendment And Const 1963 Art I sec. 17. . . . . . . 16 THRU 20

Exhibits

Exhibit-A  Defendant's brief on APPEAL. . . . . . . . 21

Exhibit B  Plaintiff brief in RESPONSE . . . . . . . 22

Exhibit C – Court of Appeals opinion . . . . . . 23

Exhibit D  motion FOR Reconsideration . . . . . . 24

Exhibit E  order denying motion for Reconsideration . . . . . 25

PROOF OF SERVICE . . . . . . . . . 26

# Index of Authorities

## Court of Appeals

People v Couch, 49 Mich App 69, 211 NW2d 250 (1973) . . . . 6

People v Degraffenreid, 19 Mich App 702, 713, 173 NW2d 317 (1969) . 8

In Re Klevorn, 185 Mich App 672 (1990) . . . . . . . . . 20

People v McCain, 84 Mich App 210, 215; 269 NW2d 528 (1988) . 6

People v McPherson, 263 Mich App 124, 131 (2004) . . . . . . 19

People v Stone, 195 Mich App 600, 605, 491 NW2d 628 (1992) . 18

## Supreme Court

People v Anderson (After Remand) 446 Mich 392 (1994) . . . . . 19

People v Carines, 460 Mich 750, 763; 597 NW2d 130 (1999) . . 7, 19

People v Crawford, 458 Mich 376, 398, 582 NW2d 785 (1998) . . 10

People v Hampton, 407 Mich 354, 368; 205 NW2d 284 (1979) . . 14

People v Jolly, 442 Mich 458, 502 NW2d 177 (1993) . . . . 15

People v Lukity, 460 Mich 484-495-496; 596 NW2d 607 (1999) . 19

People v Nowack, 462 Mich 392, 399-400; 614 NW2d 78 (2000) . 13

Sitz v Department of State Police, 443 Mich 744 (1993) . . . 17

People v Timmons, 300 Mich 653, 2 NW2d 804 (1942) . . . 8

People v Tombs, 472 Mich 446, 459, 697 NW2d (2005) . . . 12

## Authorities Continued

People v Vaughn, 447 Mich 217, 222 N 1 (1994) . . . . . . . 17

Wakin v Chamberlain, 467 Mich 329; 333, 653 Nwed 176 (2002) . 9


### Federal

Brecht v Abrahamson, 507 U.S. 619, 623, 113 S.ct 1710, 123 Liedzd 353 (1993) . . . . . . . . . . . . . . . . . 11

Chapman v California, 386 US 18 (1967) . . . . . . . . 19

Doan v Carter, 548 F.3d 449-459 (6th cir 2008) . . . 11

Fields v Howes, 617 F.3d 813, 823 (6th cir 2010) . . . 11

In Re Winship, 397 US 358 (1970) . . . . . . . . . 14

Jackson v Virginia, 443 US 307, 99 S.ct 2781; 61 Ledzd 860 (1979) . . . . . . . . . . . . . . . . 15

LeLand v Oregon, 343 US 790; 802-803; 72 S.ct 1002; 96 Ledzd 1302 (1952) . . . . . . . . . . . . . . 15

Sochor v Flordia, 504 U.S. 527, 541 (1992) . . . . . . .


### Misc / Law

US, Const Amend 14th . . . . . . . . . . . . 12

Michigan Const 1963 Art 1 sec 17 . . . . . . . . 12, 16

MCL 775.15 . . . . . . . . . . . . . . 20

MSA 28.1252 . . . . . . . . . . . . . 20

STATEMENT OF QUESTION Presented

1) Did the trial court's SUA-sponte modification to A Requested Adverse Inference instruction following destruction of material evidence denied the defendant of his state And federal constitutional Rights to A Fair trial by A properly instructed Jury, sixth Amendment Right of Confrontation, And fourteenth Amendment due process Right to defend Against the charges.

The plaintiff Answers NO
Defendant-Appellant says yes

2) The evidence was insufficient to prove the defendant Participated in the crime, As principal or Aider And Abettor, And the Resulting conviction is violative of his due process guarantees under the fourteenth Amendment And Const 1963, ARt 1 Sec.17 And must be Reversed.

The plaintiff Answers NO

Defendant-Appellant says yes

3) Did the trial court's denial of necessary funds
For An indigent expert to Review the DNA evidence
denied the defendant due Process guarantees under
the Fourteenth Amendment And Const. 1963, Art. 1
Sec. 17 And must be Reversed.

The Plaintiff Answers NO

Defendant -Appellant says yes

-4-

# STATEMENT of FACTS

Defendant-Appellant incorporates the statement of facts in his (Exhibit A) of Defendant's brief on Appeal but, Also would point out that the michigan Court of Appeals mis-stated some Facts in their opinion, if you look at PAGE 3 of their opinion the 4th PARAGRAPH they state: "Defendant's explanation that Another PERSON placed his DNA in the hat was implausible and the Jury was FREE to REJect that testimony."

The Court of Appeals Failed to mention the whole context of the Defendant explanation, because the defendant stated during trial if you Review the Record that he NEVER denies EVER WEARING the hat, but tent he could have worn it at one time OR someone planted his DNA. So to Just say he FELT SOMEONE planted the DNA was not Factual, And to only State that Part of the defendant's testimony was misleading by the Court of APPEALS. As you Review this CASE, take in the Fact that there was at least two other people DNA on this hat as well as the Victim And there is no direct testimony linking the defendant to this crime or Any Real evidence, Only a hat that he could have worn at one time. The michigan Court of APPEALS suggest there was strong circumstantial evidence in this CASE, this is Also misleading After looking at All the facts.

—5—

## OVERVIEW OF MATERIAL FACTS

Defendant-Appellant would First like to point out, that the Prosecutor in their Response to the Court of Appeals has Prejudiced the defendant by stating in their brief evidence that was never introduced at trial, if you look at the plaintiffs brief on page (5) the prosecution Reference to information that they FELT could have impeached the defendant's witness but, could not be presented to the Jury. This kind of tatic is prosecutorial misconduct because a prosecuter may not argue the effect of testimony that was not entered into evidence at trial People V McCain 84 mich App 210, 215; 269 Nw2d 528 (1988) If you look at previous Rulings in the Court of Appeals you will see that they have Ruled on this issue when dealing with a prosecuter's conduct. Here in his case the witness at trial was never impeached And this information was not proven to be true or Factual And After trial in direct Appeal the prosecutor Prejudice the defendant by bolstering for credibility of Facts And evidence not in the case. (see) People V Couch 49 mich App 69, 211 Nw2d 250 (1973) A Prosecuter can argue the Record, highlight the inconsitencies or inadequacies of the defense

— 6 —

But, they CANNOT Put forth their opinion as to credibility of a witness, therefore, this court should consider how the prosecution present the facts in their arguments when using improper suggestings of evidence not presented on the record.

## ARGUMENT I

The court of appeals ruling that the trial court's sua-sponte modification to a requested adverse-inference instruction following destruction of material evidence did not violate the defendant's state and federal constitutional rights is without merit.

## Summary of Argument

The court of appeals claim under the plain error rule is People V Carines, 460 mich 750, 763; 597 NW2d 130 (1999) that the error did not affect the outcome of the lower court proceeding. In order to address this issue properly under Carines, supra we must look at counsel's performance from the existing record and if it was an error made in not challenging the evidence to be suppressed in a motion during the pre-trial stages of the proceedings.

—7—

Because, here in the Prosecutor's answer on appeal they are in the position that the defendant waived away challenge to the trial court's instruction by trial counsel expressing thanks to the trial court for their decision on the instruction. If you look at People v Timmons, 300 mich 653, 2nd wrd 804 (1942) and also People v Degraffenreid, 19 mich app 702, 713, 173 Nwrd 317 (1969) where it sads a "counsel's consent does not overcome a defendant's right, and certain rights are so essential to due process, that no lawyer can waive those rights for a defendant."

In this present case trial counsel was aware that the evidence was no longer available and was destroyed and not to have the evidence surpress or attempt to by trial counsel was deficient performance. because trial counsel has an overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions. This was not done by counsel here, because, to allow evidence in the proceedings that were basically of no value, severally Prejudice the defendant. The evidence should have been excluded because it had no probative value and was more prejudicial then (Probative). This was an error by trial counsel

As well as trial court to Allow this evidence in AFTER it has been destroyed or missing. And when An ERROR OF Constitutional magnitude has occurred is A criminal case [The beneficiary of the ERROR must show beyond A REASONABLE doubt that there is no possibility that the ERROR contributed to the conviction]. And the ERROR cannot be deemed harmless even under the CARINES Standard.

Here is this case there was evidence that was destroyed or missing that could have helped the defense or help the prosecution theory, but, it was not available to examine, And if you look at the standards set forth in DEGRAFFENRIED SUPRA Id. At 715-718, you will see the sham trial standard, where the standard focuses Attention on the lawyer And the totality of his Representation of his client. And here for counsel to Allow this Evidence in the trial when it was not Relevant to establish Anything OF Value, if you look At WAKIN V Chamberlain, 467 mich 329, 333, 653 nw2d 176 (2002) where it saids evidence is Revelant if it has Any tendency to make the existence of A Fact that is of Consequence to the Action more probable or less probable than it would be without the evidence MRE 401; WAKNIN SUPRA At 333.

-9-

And the trial court also has discretion to exclude even Relevant evidence if it's Probative value is substantially outweighed by the danger of unfair Prejudice, confussion of the issues, misleading the Jery, undue delay, waste of time, or needless presentation of cumulative evidence. MRE 403; Evidence is unfairly Prejudicial when there exists a danger that marginally probative evidence will be given undue or Pre-emptive weight by the Jery WAKMIN, supra At 334 N 3, (Quoting) People V Crawford, 458 Mich 376, 398; 582 NW2d 785 (1998)" And when such preliminary questions of law are At issue, the court must bear in mind that, it is an abuse of discretion to admit evidence that is inadmissible as a matter of law. And the courts have granted relief where A substantial right of a defendant in a criminal case was not recognized and protected at trial even though this failure may properly be attributed to the fault of the defendant lawyer, As the case here. A new trial should be granted for exactly the prejudice shown by the Admission of the evidence, Also this error by trial counsel does amount to error that could have affected the outcome even under CARINES, supra And the defendant should be granted relief for the Prejudiced of the evidence. because,

—10—

The question is, thus whether the trial court's error was harmless or Prejudicial. An error is not harmless if it had A substantial And injurious effect or influence in determining the outcome of the case. Brecht V Abrahamson, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.E.d 2d 353 (1993) Doran V Carter, 548 F.3d 449-459 (6th Cir 2008). Even if there is only grave doubt About whether A trial error of Federal law has substantial And injurious effect or influence in determining the Jury's verdict that error is not harmless. Fields V Howes, 617 F.3d 813, 823 (6th Cir 2010) As in this case the evidence being Admitted was a clear due Process violation that the trial court should not have Allowed in And Prejudice should be Presumed And the conviction should be Reversed.

## ARGUMENT II

The evidence was insufficient to prove the defendant participated in the crime, as principal or aider and abettor, and the resulting conviction is violative of his due process guarantee's under the Fourteenth Amendment and Const 1963, Art 1 sec.17 and must be reversed.

## Summary of Argument

Here in this case the court of Appeals claim that the prosecution presented circumstantial evidence for a reasonable jury to conclude that the defendant participated in the breaking and entering and hills murder.

## Standard of Review

<u>Denovo</u> A court reviews a claim regarding the sufficiency of the evidence <u>People</u> V <u>Tombs</u>, 472 mich 446; 459; 697 Nw2d (2005)

## Discussion

First, when reviewing the record, the prosecution claims that because the Defendant DNA was on a hat, this proves he was present during the time of the crimes being committed. This hat had not only his DNA but, also others on it, and this in of itself does not show that the defendant was present or aided and abetted.

As the court of Appeals stated it's true that circumstantial evidence And REASONABLE INFERENCES drawn from the evidence may be sufficient to prove the elements of a crime. INFERENCES however, must raise more than a possibility. And the hat Found in the home, only RAISES the Fact, that At one time the defendant may have worn it, not that he committed A crime And inferences cannot be based on speculative or uncertain evidence And this hat does not prove the defendant's guilt. Here the prosecution never proved every Element to For A rational trier of Fact to Find guilty beyond A reasonable doubt.

 A reviewing court should ASSESS the merits of A claim with the evidence Presented by the prosecution to determine whether the elements of the crime were proven beyond A reasonable doubt. Defendant recognizes A reviewing court will not interfere with the trier of Facts Role in determing the weight of evidence And All conflicts in the evidence must be resolved in Favor of the prosecution. And while the defendant recognizes the prosecutor need Not negate every Reasonable theory consistent with innocence but, the prosecution is bound to [prove] the elements of the crime beyond A reasonable doubt. People v Nowack, 462 mich 392, 399-400; 614 Nw2d 78 (2000)

—13—

If you look at the Court of Appeals opinion, they are stating that "the defendant does not argue that the prosecution failed to present sufficient evidence establishing that the assailants committed a felony when they broke and entered into the apartment, Additionally, defendant does not dispute that the men intentionally killed Hill during the commission of that felony" This kind of language here has no merits, the defendant does not argue these facts because he has always maintained his innocence, therefore, why would the defendant dispute allegations of the perpetrators of the crime and their actions. Constitutional due process requires that a verdict be supported by legally sufficient evidence for each element of the offense. US Const, Am XIV; Const 1963 Art 1, Sec 17 In Re Winship, 397 US 358 (1970). The existence of some evidence, no matter how minimal, no longer satisfies this requirement. If you look at People v Hampton, 407 Mich 354, 368; 205 NW2d 284 (1979) made clear in Rejecting the "Any Evidence" standard. Michigan courts must now conduct an additional inquiry [The test is not simply whether there is any evidence to support the prosecutor's position regarding each element of the offense. Rather, the question is whether the evidence is sufficient to permit a rational trier of fact to find the essential elements is relevant, i.e, has some tendency

to make A FACT MORE OR LESS PROBABLE, does not NECESSARILY mean that it would JUSTIFY A REASONABLE JUROR in concluding the existence of that FACT beyond A REASONABLE doubt] Hampton, SUPRA At 368.

Here the hat USED AT trial did not make it A FACT that he the defendant WAS present At the time of the crime, only Fact that CAN be ASCERTAIN from the hat, is that he might have worn it At one time BECAUSE this hat Also had others DNA besides the Victim. The court of Appeals goes on in their opinion to state that the prosecution presented circumstantial evidence FOR A REASONABLE Jury to conclude that the defendant PARTICIPATED in this crime but, does not give some Facts to Sustain this conclusion,

<u>In conclusion</u>

Justice FRANK FURTER Stated that it is the duty of the government to establish guilt beyond A REASONABLE doubt, This notion basic IN OUR LAW. And rightly one of the boasts OF A FREE society is A requirement And A safeguard of due process of law in the historic, Procedural content of due process <u>LELAND</u> <u>V OREGON</u>, 343 US 790, 802-803; 72 S.Ct 1002; 96 LEd2d 1302 (1952) (dissenting opinion) SEE Also <u>PEOPLE</u> V <u>Jolly</u>, 442 mich 458; 802 NWed 177 (1993) <u>Jackson</u> V <u>Virginia</u>, 443 US 307; 99 Sct 2781; 61 LEd2d 560 (1979) US Const 6, 14th; Const 1963 ART 1 SEC. 17.

— 15 —

Jackson demands that proof beyond a reasonable doubt be established for the "existence of every elements of the offense" Jackson, 443 US at 316-318. Defendant was made to suffer the onus of a criminal conviction "without sufficient proof". Here, the vital role of proof beyond a reasonable doubt was subverted. The prosecutions evidence, even when viewed in a light most favorable to the prosecution, failed to establish defendant's guilt. Accordingly, Defendant's conviction cannot constitutionally stand and should be reversed.

## ARGUMENT III

Did the trial court's denial of necessary funds for an independent expert to review the DNA evidence denied the defendant due process guarantees under the Fourteenth Amendment and Const 1963 Art I sec. 17.

## Summary of Argument

Here in this present case, the defendant was denied equal protection under the law, because the prosecutions sole theory of the case was built around some DNA that was found on that at the scene of the crime that was a probably match for the defendant.

Even though there was other DNA Found on this hat, this was the sole basis of the prosecutions case that the defendant was present during the Alleged crime being committed. And For the defendant being denied an Expert to examine the DNA evidence independent of the prosecutions expert is A Constitutional Violation that hampers the defendant from properly defending himself, which is A clear due process violation.

## Standard of Review

Because the errors involved here infringed on defendant's Constitutional Right to A Fair trial, this court should use A de novo Standard of Review Sitz v Department of State police, 443 Mich 744 (1993) People v Vaughn, 447 Mich 217, 222 n 1 (1994) Error which might at First Appear to be non-constitutional may have constitutional dimensions.

## Argument

If you examine the opinion of the court of Appeals they state there was no error warranting Relief, their Argument is without merit, because instinly in the trial court they Agreed to pay For an expert to Analyze the DNA evidence on the defendant's behalf, therefore, this Fact is not of dispute, the court of Appeals base their Ruling their was no error committed because the first expert had previously worked For the Prosecution.

—17—

therefore, he could not possibly work for the defendant, And second, the next expert wanted A Retainers Fee, which the trial court deemed exorbitant. This here was a clear error by the trial court when the Record shows that they had already paid FOUR THOUSAND FOR AN EXPERT that they felt the defendant could have used, if it were not for the fact that they already used him. Also the DEFENSE EXPERT RETAINERS FEE WAS ONLY TWENTY FIVE HUNDRED DOLLARS, there is no way this fee could have been exorbitant Compared to what the County already paid. And even in their own opinion the COURT OF APPEALS Acknowledge that "GENERALLY, EQUAL PROTECTION Requires that the State AFFORD AN indigent defendant AN EXPERT Witness when the witness Remains important to the defendant's preparation of a defense. [People V Stowe, 195 Mich App 600, 605; 491 nw2d 628 (1992)] they go on to say this requirement does not Allow the defendant to hire an Expert of his choosing. this is correct, but the experts that were selected came from the trial court, the defendant did not select them the court did. And to claim the fee was to high, was an abuse of discretion. And this error cannot be deemed harmless when the trier of fact only heard the prosecution theory of the case. HERE, the prosecution cannot possibly meet its burden of establishing that this preserved constitutional error was harmless

−18−

Beyond A Reasonable doubt As would be required to uphold the convictions People v Anderson (After Remand) 446 mich 392 (1994) People v Carines, 460 mich 750, 774 (1999) Also look At People v McPherson, 263 mich App 124, 131 (2004) Chapman v California, 386 US 18 (1967) because to prove that A constitutional violation is harmless beyond A Reasonable doubt, the beneficiary of the error [must] prove, And the court [must] determine, beyond A Reasonable doubt that there is no possibility that the evidence complained of might have contributed to the conviction Anderson, supra, 406 quoting Chapman v California, 386 US At 23.

Here there is n't A way that the prosecution or the court can say that the DNA evidence did not contributed to the conviction because this was the evidence, that the case was built Around. And to deny the defendant the Funds in this case After it was Already granted by the trial court Affected the outcome because the defendant was denied his right to Refute the evidence see people v Lukity, 460 mich 484-495-496; 596 nw2d 607 (1999)

-19-

<u>In Conclusion</u>

If you look at previous rulings in the Court of Appeals in <u>In Re Klevorn</u>, 185 mich app 672 (1990), here the trial court erred in refusing an indigent defendant's request for the appointment of an expert at public expense, where the defendant argued that the expert was necessary to respond to the testimony of the prosecutor's expert and argued that the test and conclusions of the prosecution's expert were faulty and that the testing procedures were inadequate <u>MCL</u> 775.15 <u>MSA</u> 28.1252

The Sixth Amendment to the United States Constitution provides that the accused in criminal cases is entitled to have compulsory process for obtaining witnesses in his favor, this was denied to the defendant here and when dealing with the harmless standard it's not a mere formulation to be appended to an opinion, but <u>must</u> be supported by a detailed explanation based on the record see <u>Sochor</u> v <u>Florida</u>, 504 U.S 527, 541 (1992) the court of appeals argument is without merit and this a structural error that mandates that this conviction must be reversed.

—20—

Exhibit A

Defendant's brief in Court of Appeals

—21—

# COURT OF APPEALS, STATE OF MICHIGAN

## Brief Cover Page – Proof of Service

COA Case Name: **PEOPLE OF MICHIGAN v SAMUEL LEE DANTZLER**

COA Case No.: **303252**                 Lower Court Case No.: **10-003521-01-FC**

1. Brief Type (select one): ☑ APPELLANT(S)    ☐ APPELLEE(S)         ☐ REPLY
   ☐ CROSS-APPELLANT(S)   ☐ CROSS-APPELLEE(S)   ☐ AMICUS CURIAE
   ☐ OTHER [*identify*]: _____

2. This brief is filed by or on behalf of [*insert party name(s)*] : **Samuel Lee Dantzler**

3. ☐ This brief is in response to a brief filed on _____ by _____

4. ORAL ARGUMENT:    ☑ REQUESTED    ☐ NOT REQUESTED

5. ☐ THE APPEAL INVOLVES A RULING THAT A PROVISION OF THE CONSTITUTION, A STATUTE, RULE OR REGULATION, OR OTHER STATE GOVERNMENTAL ACTION IS INVALID. [*See MCR 7.212(C)(1) to determine if this applies.*]

6. As required by MCR 7.212(C), this brief contains, in the following order: [*check applicable boxes to verify*]
   - ☑ Table of Contents [MCR 7.212(C)(2)]
   - ☑ Index of Authorities [MCR 7.212(C)(3)]
   - ☑ Jurisdictional Statement [MCR 7.212(C)(4)]
   - ☑ Statement of Questions [MCR 7.212(C)(5)]
   - ☑ Statement of Facts (with citation to the record) [MCR 7.212(C)(6)]
   - ☑ Arguments (with applicable standard of review) [MCR 7.212(C)(7)]
   - ☑ Relief Requested [MCR 7.212(C)(9)]
   - ☑ Signature [MCR 7.212(C)(9)]

7. This brief is signed by [*type name*]: **Neil J. Leithauser**    Signing Attorney's Bar No. [*if any*]: **P-33976**
   Address: **101 W. Big Beaver Rd., 14th Floor, Troy, MI 48084**    **(248) 687-1404**

**Proof of Service:** I certify that a copy of this brief and all attachments were served on the following attorneys of record or pro per parties by ☑ regular mail or ☐ personal service at the addresses shown below. *To ensure proper service of the brief, the parties of record in the case may be verified through the Case Inquiry option on the Court's web site at http://courtofappeals.mijud.net/resources/public.htm.*

Date of Service: **December 27, 2011**

Type Name: **Neil J. Leithauser**    Signature: _____

| | | |
|---|---|---|
| **Attn: Appellate Section** Prosecutor's Office 1441 St. Antoine, 12th Flr. Detroit, MI 48226 | **Attn: Appeals Div.** Wayne County Circuit Court 1441 St. Antoine, 9th Flr. Detroit, MI 48226 | |

[*Attach additional pages as needed to complete proof of service.*]

MCOA Brief Cover Page (8/2007)

## TABLE OF CONTENTS

Table of Contents     i

Index of Authorities     ii

Statement of Appellate Jurisdiction     vi

Questions Presented     vi

Statement of Facts     1

Argument I     12

The Trial Court's *sua sponte* modification to a requested adverse-inference instruction following destruction of material evidence denied Mr. Dantzler of his state and federal constitutional rights to a fair trial by a properly-instructed jury, Sixth Amendment right of confrontation, and Fourteenth Amendment due process right to defend against the charges.

Argument II     22

The evidence was insufficient to prove Mr. Dantzler participated in the crime, as principal or aider and abettor, and the resulting conviction is violative of his due process guarantees under the Fourteenth Amendment and Const. 1962, art. 1, §17, and must be reversed.

Argument III     28

The trial court's denial of necessary funds for an independent expert to review the DNA evidence denied Mr. Dantzler due process guarantees under the Fourteenth Amendment and Const. 1962, art. 1, §17, and must be reversed.

Relief Requested     30

# INDEX OF AUTHORITIES

**Federal cases.**

*Ake v Oklahoma*, 470 US 68; 105 S Ct 1087; 84 LEd2d 58 (1985)      29

*Arizona v Youngblood*, 488 US 51; 109 S Ct 333; 102 L Ed 2d 281 (1988)     17, 18, 19, 20

*Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963)     16, 17, 18, 19

*Britt v North Carolina*, 404 US 226; 92 S Ct 431; 30 L Ed 2d 400 (1971)     29

*Cage v Louisiana*, 498 US 39; 111 S Ct 328; 112 L Ed 2d 339 (1990)     27

*California v Trombetta*, 467 US 479; 104 S Ct 2528; 81 L Ed 2d 413 (1984)     17, 18, 19, 20

*Chambers v Mississippi*, 410 US 284; 93 S Ct 1038; 35 L Ed 2d 297 (1973)     13, 14, 19

*Davis v Alaska*, 415 US 308; 94 S Ct 1105; 39 L Ed 2d 347 (1974)     15

*De Freece v State*, 848 SW2d 150, 159, (Tex Crim App 1993), cert. denied,

126 L Ed 2d 234, 114 S Ct 284 (US 1993)     29

*Gideon v Wainwright*, 372 US 335 (1963)     29

*Griffin v Illinois*, 351 US 12; 76 S Ct 585; 100 L Ed 891 (1956)     29

*Holmes v South Carolina*, 547 US 319; 126 S Ct 1727; 164 L Ed 2d 503 (2006)     13

*Illinois v Fisher*, 540 US 544; 124 S Ct 1200; 157 L Ed 2d 1060 (1984)     20

*In re Winship*, 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970)     24, 27

*Jackson v Virginia*, 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979)     23, 24

*Levin v Katzenback*, 124 US App DC 158; 363 F2d 287 (1966)     19

-ii-

*Napue v Illinois*, 360 US 264; 79 S Ct 1173; 3 L Ed 2d 1217 (1959)                19

*Powell v Alabama*, 287 US 45 (1932)                29

*United States v Bryant*, 142 US App DC 132; 439 F2d 642 (1971)                19

*United States v Jobson*, 102 F3d 214 (CA 6, 1996)                13, 18

*United States v Valenzuela-Bernal*, 458 US 858; 102 S Ct 3440;

73 L Ed 2d 1193 (1982)                17, 19

**Michigan Cases.**

*Craig v Oakwood Hosp.*, 471 Mich 67; 684 NW2d 296 (2004)                28

*People v Anderson (After Remand)*, 446 Mich 392; 521 NW2d 538 (1994)                13

*People v Atley*, 392 Mich 298; 220 NW2d 465 (1974)                24

*People v Blackburn*, 135 Mich App 509; 354 NW2d 807 (1984)                28

*People v Carines*, 460 Mich 750; 597 NW2d 130 (1999)                13, 24

*People v DeMeyers*, 183 Mich App 286; 454 NW2d 202 (1990)                16

*People v Dumas*, 454 Mich 390; 563 NW2d 31 (1997)                12

*People v Dungey*, 147 Mich App 83; 383 NW2d 128(1985)                18, 20

*People v Dye*, 431 Mich 58; 427 NW2d 501 (1988)                12

*People v Eccles*, 260 Mich App 379; 677 NW2d 76 (2004)                15, 21

*People v Fox (After Remand)*, 232 Mich App 541; 591 NW2d 384 (1998)                16, 17

*People v Hampton*, 407 Mich 354; 285 NW2d 284 (1979)                22

*People v Hardiman*, 466 Mich 417; 646 NW2d 158 (2002)   24

*People v Hess*, 214 Mich 23 App 33; 543 NW2d 332 (1995)   14

*People v Ho*, 231 Mich App 178; 585 NW2d 357 (1998)   12

*People v Hubbard*, 217 Mich App 459; 552 NW2d 493 (1996)   12

*People v Jolly*, 442 Mich 458; 502 NW2d 177 (1993)   24

*People v Lane*, 127 Mich App 663; 339 NW2d 522 (1983)   19

*People v Lester*, 232 Mich App 262; 591 NW2d 267 (1998)   16

*People v Ligett*,  378 Mich 706; 148 NW2d 785 (1967)   12

*People v Lukity*, 460 Mich 484; 596 NW2d 607 (1999)   13

*People v Moldenhauer*, 210 Mich App 158; 533 NW2d 9 (1995)   12

*People v Morris*, 77 Mich App 561; 258 NW2d  559 (1977)   16

*People v Nowack*, 462 Mich 392; 614 NW2d 78 (2000)   23

*People v Paquette*, 214 Mich App 336; 543 NW2d 342 (1995)   12

*People v Patterson*, 428 Mich 503; 410 NW2d 733 (1987)   23

*People v Perez*, 469 Mich 415; 670 NW2d 655 (2003)   15, 21

*People v Richardson*, 409 Mich 126; 293 NW2d 332 (1980)   14

*People v Riddle*, 467 Mich 116; 649 NW2d 30 (2002)   21

*People v Riley*, 468 Mich 135; 659 NW 2d 611 (2003)   26, 27

*People v Robinson*, 475 Mich 1; 715 NW2d 44 (2006)   25, 26, 27

*People v Schumacher*, 276 Mich App 165 (2007)        12

*People v Tanner*, 469 Mich 437; 671 NW2d 728 (2003)      28

*People v Vaughn*, 447 Mich 217; 524 NW2d 217 (1994)     14

*People v Wolfe*,  440 Mich 508; 489 NW2d 748 (1992)     22, 23, 24

**Constitutional Provisions and Statutes.**

US Const, AM V      29, 30

US Const, AM VI      12, 14, 30

US Const, AM XIV      passim

Const. 1963, art. 1, §15      29

Const 1963, art. 1, §17      13, 22, 27, 28, 30

Const, 1963, art. 1, §20      14, 29, 30

MCL 768.29      12, 14, 21

**Other.**

CJI2d 5.12      15, 16

## STATEMENT OF APPELLATE JURISDICTION

Jurisdiction was conferred through Const 1963, art. 1, §20; MCL 600.308(1); MCL 770.3; MCR 7.203(A); MCR 7.204(A)(2)(a); and MCR 6.425(F)(3).  The final judgment was January 20, 2011, petition for counsel was made on March 3, 2011, and pursuant to MCR 6.425(F)(3) the Claim of Appeal issued March 22, 2011.

## QUESTION PRESENTED

I.   Did the Trial Court's *sua sponte* modification to a requested adverse-inference instruction following destruction of material evidence deny Mr. Dantzler of his state and federal constitutional rights to a fair trial by a properly-instructed jury, Sixth Amendment right of confrontation, and Fourteenth Amendment due process right to defend against the charges?

Defendant-Appellant answers        "yes"

Plaintiff-Appellee would answer       "no"

II.   Was the evidence legally sufficient to prove Mr. Dantzler participated in the crime, as principal or aider and abettor?

Defendant-Appellant answers        "no"

Plaintiff-Appellee would answer       "yes"

-vi-

III.    Did the trial court's denial of necessary funds for an independent expert to review the DNA evidence deny Mr. Dantzler due process guarantees under the Fourteenth Amendment and Const. 1962, art. 1, §17?

    Defendant-Appellant answers       "yes"

    Plaintiff-Appellee would answer     "no"

## STATEMENT OF FACTS

**Background.**

This is an appeal of right by Samuel Dantzler following a jury-tried conviction of first-degree felony murder, MCL 750.316(1)(b), in the Wayne County Circuit Court (Trial transcript ["TT"], verdict, 12/22/2010, 40).    Mr. Dantzler was sentenced by Wayne County Circuit Judge Gregory Bill to the mandatory life in prison sentence (Sentence transcript, 1/20/2011, 9).

**Trial.**

The charge arose following events occurring on January 16, 2006, at and in the area of an apartment at 20415 W. Seven Mile Road in Detroit.   Twenty-two year-old Bernard Hill was shot and died from a single gunshot wound to the head; the bullet was recovered (TT, 12/15/2010, 63, 70-71, testimony of Deputy Chief Medical Examiner Cheryl Loewe).    Mr. Hill also suffered some blunt force injuries, a laceration and abrasions (*Id.* at 64-65).    Fingernail clippings were taken at autopsy and held for police (*Id.* at 81).

The prosecution theory was that Mr. Hill was beaten and killed by family members of Quiana Turner, after Hill had beaten Turner, who was hospitalized, and that Mr.

Dantzler aided and abetted in the crime.  The defense theory was that Mr. Dantzler was not present, did not participate, was elsewhere at the time of the incident, and the prosecution proofs were insufficient to prove Mr. Dantzler guilty of the offense.

Janet Burt testified that she was the mother of Mr. Hill (TT, 12/16/2010, 66).  Her son had been a boyfriend of Quiana Turner, who, Ms. Burt said, was like a daughter to her, and who had lived with Ms. Burt since Turner was fourteen years-old, after it was discovered that Ms. Turner had a child by Mr. Hill (*Id.* at 66).   Ms. Turner lived with Ms. Burt for at least three years (*Id.* at 68).  By the year 2006, Hill and Turner had broken up, and Hill had a new girlfriend, Nikitta McKenzie (*Id.* at 71).

Over the years, Ms. Burt had met some of Ms. Turner's relatives, including her brother, Rodney Turner, her uncle, Mr. Dantzler, and her cousin Samuel Lamare Dantzler, Mr. Dantzler's son, who was a friend of Mr. Hill (*Id.* at 69-70).

In the evening of January 15, 2006, Ms. Burt said she was at home.  Ms. Turner came by at about 10:30 or 11:00 p.m., to drop off the baby; Mr. Hill was also there at Burt's house (*Id.* at 71).  Ms. Turner subsequently left, and Hill left about twenty minutes later.  Ms. Burt later learned that her son had "jumped on" and beaten Ms. Turner (*Id.* at 72-73).  She tried calling Hill, but he would not accept her calls; she was very angry.  She did reach him via a three-way call with Hill's father, but Bernard Hill hung up on her

2

(*Id.* at 73).   Mr. Hill had jumped on Ms. Turner in the past (*Id.* at 97).

At about 12:30 a.m. - 1:00 a.m. she heard a pounding at her door.  She looked through the peephole and saw Rodney Turner (Ms. Turner's brother) and Samuel Lamare Turner (Ms. Turner's cousin) outside; she did not open the door and the two subsequently left.  Ms. Burt said the two got into a gold-colored car, which she said was a gold-colored car belonging to Mr. Dantzler.  Although she could see other people in the car, she could not identify who they were (*Id.* at 74-77, 77-78).   She did not see Mr. Dantzler (*Id.* at 82).

Ms. Burt said she had seen Mr. Dantzler drive that car in the past, and had never seen anyone else drive it.  Mr. Dantzler had, more than five or six months previously, brought Ms. Turner and the baby to Ms. Burt's house in that car (*Id.* at 85-86).

Sometime after the two men left, Ms. Turner's mother, Ruth, came to Ms. Burt's house to pick up the baby (*Id.* at 80, 105-106).  About fifteen minutes after Ruth Turner left, Ms. McKenzie called Ms. Burt, at about 1:30 a.m. - 1:45 a.m., and told her that Hill had been killed (*Id.* at 80-81, 106).

Ms. McKenzie testified that she and Mr. Hill were a couple in January, 2006 (*Id.* at 157).   She lived in apartment 302 in the apartment building on W. Seven Mile.   Mr. Hill brought a friend over in the evening of January 15, 2006; they hung out.  Mr. Hill

brought up the incident with Ms. Turner, and he seemed upset about it. The friend left at about 12:45 a.m., and Ms. McKenzie and Mr. Hill got ready for bed. Hill was pacing and acting "pretty nervous" (*Id.* at 158-160, 161-162). At one point he came into the bedroom and told her he saw shadows by the front door; Hill then hid in the bedroom closet (*Id.* at 162). Ms. McKenzie went into the living room and about six males, all dressed in black, one armed with a gun and others with gold clubs, broke into the apartment asking, "Where's Bernard?" Ms. McKenzie told them he was not there, but Hill came out of the bedroom. The men started fighting and Ms. McKenzie rant to the bathroom with her phone; she could hear fighting and tussling, and things getting knocked over (*Id.* at 163, 165-166). At one point she heard Hill scream, and then heard gunshots. When the apartment was quiet she peeked out and saw someone come back into the apartment and do something to the stereo boombox; the person then left. Ms. McKenzie saw blood outside and followed it downstairs where she saw Hill's body (*Id.* at 166-167).

She was unable to make any identifications of the perpetrators (*Id.* at 167). She saw a black knit cap on the floor of the apartment, which she said did not belong to Hill (*Id.* at 171).

Police found two fired .380 caliber shell-casings at the scene; one was on the third-

4

floor walkway just outside the apartment entrance, the other was down further in the stairwell.  Mr. Hill's body was at the bottom of the stairwell near the front door of the 22-unit apartment building (*Id.* at 7, 9-10, 36, testimony of Detroit Police evidence technician William Niarhos).   The outer door of the apartment was damaged and the outer glass door was broken.   There was broken and overturned furniture in the apartment, and the TV was broken.   A head and other pieces from a golf club were found.  A black knit cap was on the floor near the TV (*Id.* at 13-14, 16; TT, 12/15/2010, 113-114).  A blood trail existed from outside the apartment down the stairwell to where Mr. Hill's body was found (TT, 12/15/2010, 113; TT, 12/16/2010, 54).  Officer did not attempt to lift any fingerprints from the apartment, and, specifically, not from the stereo boombox (TT, 12/16/2010, 38, 41).   A different evidence technician was sent to the scene two days later to process the boombox for fingerprints; latent prints were lifted, but were not connected to any individual (TT, 12/16/2010, 60-61; TT, 12/21/2010, 6-7, stipulation concerning the findings of latent print expert Marcia McCleary).

Detroit Police Homicide Investigator Dwight Pearson testified that he went to the scene, saw Mr. Hill's body, saw the damage to the front door of the apartment, saw a black knit cap on the floor, and spoke with Ms. McKenzie.  The area was canvassed, but there were no other witnesses with information.  Pearson had Mr. Hill's hands bagged to preserve evidence (TT, 12/16/2010, 190-194, 197-198).

Christopher Steary testified that in 2006 he was a civilian forensic scientist with the Detroit Police (Id. at 110-111).  He took a cutting from the interior rim of a black hat and stored the sample in February, 2007 (Id. at 117-118, 122, 130).  There did not appear to be any blood on the hat (Id. at 127).  He also looked and then stored a buccal swab of a suspect, Patrick Grunewald, and a sample of Mr. Hill's blood (Id. at 112, 114).

Jeffrey Nye testified that he was the DNA tech leader and biology program coordinator for the Michigan State Police Forensic Science Division (Id. at 134).  The DNA profile from the black hat was input into the CODIS database, and an association was found in January, 2010, that it was consistent with Mr. Dantzler (Id. at 148).  When such an association is found, then the procedure is that another DNA sample of the suspect be obtained for testing (Id. at 149).

Rebecca Preston testified that she was a DNA Analyst with Bode Technology, a firm in Virginia that did contract work for the Michigan State Police and Detroit Police Department.  She received the black hat and took three new cuttings, or scrapings, and processed the results, generating three DNA profiles; she also received buccal swab samples, from which she generated DNA profiles (TT, 12/20/2010, 13, , 34-35, 37, 78).

Ms. Preston said the first cutting [processed earlier by another] yielded a mixture of at least two individuals, including a major male donor, which was Mr.

6

Dantzler, with a statistical probability of 1 in 2 quadrillion in the African American population (*Id.* at 37, 45-47).    From her three cuttings, she found a partial DNA profile in her first cutting, which showed the results were consistent with a mixture of at least two individuals, and including a major male donor (*Id.* at 37-38).  Mr. Hill could not be excluded from that partial profile, and Mr. Dantzler could not be included or excluded (*Id.* at 48-50, 102).

Her second cutting from the hat yielded a DNA profile, consistent with a mixture of at least two individuals, including at least one male donor (*Id.* at 37-38, 51).  Neither Mr. Hill nor Mr. Dantzler could be excluded (*Id.* at 51, 103-104).  Her third cutting yielded a partial DNA profile showing it was consistent with at least two individuals, neither Mr. Hill nor Mr. Dantzler could be included or excluded (*Id.* at 37-38, 52, 80-81, 105).

Ms. Preston could not say if anyone else's DNA was on the hat (*Id.* at 82).  She said that if the fingernail clippings had been properly preserved, and had DNA to begin with, then she would expect testing to yield results (*Id.* at 89-90).  For the three cutting sand her analysis Bode Technology was paid $3972.75 (*Id.* at 71, 74, 90-91).

Nicole Kaye testified that she was a DNA analyst with the D.C. Metropolitan Police, but in 2007 she worked at Bode Technology (*Id.* at 115, 120).  In June, 2007, she received from the Michigan State Police a cutting from the black hat and obtained a mixture

7

DNA profile; Mr. Hill could not be excluded, but Patrick Grunewald could be excluded (*Id.* at 125, 128).

Detroit Police Sergeant Charles Clark testified that in 2007 Detroit Police received a federal grant to create a cold case unit (TT, 12/21/2010, 13-14). The Cold Case Squad was created in 2009, when the current aspect of this investigation began (*Id.* at 14-15). In the fall of 2009, buccal swabs were obtained from Omar Dantzler, Michael Dantzler, Samuel Lamare Dantzler, Mr. Dantzler, and Grunewald (*Id.* at 19, 37). Following the CODIS association to Mr. Dantzler in 2010, a warrant was obtained in March, 2010 (*Id.* at 20-21).

Sgt. Clark said that in 2006 he worked at Homicide in Squad 2, and he and others who worked the case in 2006 were still with the investigation (*Id.* at 30). The protocol for bagging the victim's hands was followed in January, 2006, and fingernail clippings were taken and preserved during autopsy (*Id.* at 24, 27). In 2007, Mr. Hill's blood sample was obtained from the Medical Examiner's Office and DNA testing was done on the blood (*Id.* at 25). The fingernail clippings were not retrieved from the morgue, and Sgt. Clark said a request for that evidence was not made to the Medical Examiner's Office until November or December 2009, when he learned that the morgue had destroyed the evidence on October 19, 2009 (*Id.* at 20, 27, 48-49).

Marie Simpson testified that she knew, and was a friend of, Mr. Dantzler, and he was the father of her daughter (*Id.* at 57-58). She remembered January 15, 2006, because she had been at work from 8:00 a.m. - 8:00 p.m. in a manager training program, and Mr. Dantzler had watched the child that day, and was to spend the night at Ms. Simpson that night and watch the child the next day (*Id.* at 58-59, 60). She picked up Mr. Dantzler and her daughter at about 9:00 p.m. - 10:00 p.m., and took them to her home, where Mr. Dantzler remained through the night (*Id.* at 59-60).

Ms. Simpson had never seen Mr. Dantzler drive a gold-colored car, not had she seen him wear a black stocking cap; she said he usually wore caps with brims (*Id.* at 85, 93-94). She had visited Mr. Dantzler every couple of weeks at the jail, between 5-6, or closer to twenty times total, since his arrest in March, 2010 (*Id.* at 68-69, 72, 74).

Mr. Dantzler testified that he was 45 years-old and that Ms. Turner was his niece, his sister's daughter (*Id.* at 96-97, 100). He knew, and was a friend of, Mr. Hill (*Id.* at 97). On January 15, 2006, someone -- he thought his sister -- told him that Hill had jumped on Ms. Turner; Hill had done that in the past, possibly at least eight times (*Id.* at 98, 128). Mr. Dantzler never confronted Hill and did not do anything about it (*Id.* at 98-99). About two days later, he learned that Hill had been killed (*Id.* at 102).

In the evening of January 15, 2006, he waited for Ms. Simpson to pick him up. She

9

arrived and picked him and their daughter up and drove them to her house sometime between 10:00 p.m. and 11:00 p.m. (*Id.* at 103, 107).

Mr. Dantzler denied going to Mr. Hill's that night, and he denied having anything to do with it (*Id.* at 111, 117). He denied ever owning a 'gold' car, and stated that when he answered affirmatively to a question from his lawyer during direct examination, he thought the lawyer asked if he had an 'old' car (*Id.* at 108, 131). He could affirmatively say that black cap was his, and he could not explain how his DNA ended up on the hat at Hill's apartment (*Id.* at 161-162).

**Instructions.**

The defense requested a missing-evidence instruction (patterned after CJI2d 5.12). The trial court agreed, noting that the fingernail evidence should have been preserved, but the court decided to change the wording of the instruction, removing "infer" and replacing it with "consider," as shown by the following:

> THE COURT: I don't like the language as it's is (sic), Mr. Kinney. I would consider -- I'm only considering changing one word. And that's instead of infer, consider. And perhaps I would have said, you may consider whether this evidence would have been unfavorable to the Prosecution's case and favorable to the Defendant's case ...

10

... I think that's fair and I think that evidence could have been preserved -- should have been.  I'm going to change the may to consider.  You may consider whether this evidence would have been unfavorable to the Prosecution's case and favorable to the Defendant's case (TT, 12/22/2010, 11-12).

**Verdict.**

Mr. Dantzler was convicted as charged of felony murder (TT, 12/22/2010, verdict, 40).

11

## ARGUMENT I

The Trial Court's *sua sponte* modification to a requested adverse-inference instruction following destruction of material evidence denied Mr. Dantzler of his state and federal constitutional rights to a fair trial by a properly-instructed jury, Sixth Amendment right of confrontation, and Fourteenth Amendment due process right to defend against the charges.

### Standard of Review and Preservation of Issue

Claims of instructional error are reviewed **de novo** and as a whole to determine whether the instructions properly protected the defendant's rights. *People v Dumas*, 454 Mich 390, 396; 563 NW2d 31 (1997); *People v Moldenhauer*, 210 Mich App 158; 533 NW2d 9 (1995); *People v Hubbard*, 217 Mich App 459, 487; 552 NW2d 493 (1996). A trial court must instruct the jury "as to the law applicable to the case." MCL 768.29; *People v Ligett*, 378 Mich 706, 714; 148 NW2d 785 (1967). Whether a specific instruction is supported by the evidence and should be given is reviewed for an abuse of discretion. *People v Ho*, 231 Mich App 178, 189; 585 NW2d 357 (1998).

A trial court's determination of due diligence is reviewed for an **abuse of discretion**. *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998); *People v Dye*, 431 Mich 58; 427 NW2d 501 (1988); cert den 109 S Ct 541 (1971); *People v Paquette*, 214 Mich App 336; 543 NW2d 342 (1995). Also, a defendant's claim of a constitutional due process violation is generally reviewed **de novo**. *People v Schumacher*, 276 Mich App 165, 176 (2007); *see also*

12

*United States v Jobson,* 102 F3d 214, 217 (CA 6, 1996) (loss-of-evidence due process claim).

Preserved claims of nonconstitutional error are subject to **harmless error** analysis, to determine whether or not it is more probable than not the error was outcome determinative. *People v Carines,* 460 Mich 750, 774; 597 NW2d 130 (1999); *People v Lukity,* 460 Mich 484, 495-496; 596 NW2d 607 (1999); *People v Anderson (After Remand),* 446 Mich 392, 404-405; 521 NW2d 538 (1994).

A hearing was conducted during the trial; the trial court noted that the evidence should have been preserved and agreed to give the missing-evidence instruction requested by the defense; however, the court which replaced a key word (TT, 12/22/2010, 12).

## Analysis

Mr. Dantzler was prevented from fully exercising his Sixth Amendment rights of confrontation and effective assistance of counsel, due to counsel's inability to fully mount a challenge to the evidence against Mr. Dantzler. He was denied his full due process rights to present a defense, as guaranteed him under the Fourteenth Amendment, Const. 1963, art. §17, and well-settled case-law. See, for example, *Chambers v Mississippi,* 410 US 284, 294; 93 S Ct 1038; 35 L Ed 2d 297 (1973), *Holmes v South Carolina,* 547 US 319; 126 S Ct 1727; 164 L Ed 2d 503 (2006)("... the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate

13

purpose or that are disproportionate to the ends that they are asserted to promote...").
Additionally, in the end, the jury was not properly instructed by the trial court, thereby
depriving Mr. Dantzler of his constitutional rights to have a properly instructed jury
determine the facts.  US Const, AM VI, AM XIV; Const 1963, art. 1, §20; and see MCL
768.29.  Those deprivations resulted from the trial court substituting a word in -- and,
therefore, substituting the meaning of -- the missing-evidence instruction.

The due process right ensures a defendant be given a "fair opportunity" to defend
against the charges, and a failure to allow a fair opportunity "calls into question the
ultimate integrity of the fact-finding process", *Chambers*, at 295.  To that end, the jury
must be allowed to properly assess the credibility of a witness or accuser, and
determine the significance of the testimony in light of all of the evidence, and lack of
evidence, at trial.  Further, "[j]ustice requires that ... the jury [have] the option of
convicting the defendant consistently with the defendant's testimony, evidence, and
theory of the case." See *People v Hess*, 214 Mich 23 App 33, at 39; 543 NW2d 332 (1995),
lv den 450 Mich 962 (1995)(citing *People v Richardson*, 409 Mich 126; 293 NW2d 332
(1980)); *People v Vaughn*, 447 Mich 217, 226; 524 NW2d 217 (1994)(" ... well established
that the criminal defendant has a right to have a properly instructed jury consider the
evidence presented against him").  A "fair opportunity" involves effective cross-
examination of the witnesses against an accused, and the Sixth Amendment right of

14

confrontation means more than merely being able to physically face the accuser. See, for example, *Davis v Alaska*, 415 US 308, 320; 94 S Ct 1105; 39 L Ed 2d 347 (1974)(where the Supreme Court held that a state's statute protecting confidentiality of juvenile records "must fall before the right of petitioner to seek out the truth in the process of defending himself. The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness"). The missing evidence deprived Mr. Dantzler of a full opportunity to confront the case against him; the trial court's modified instruction him due process of law and a fair trial by a properly instructed jury. Without a proper legal framework to assess and determine the strength of the prosecutor's case and the defense arguments, the jury was not properly equipped to render a reliable verdict.

Where due diligence is not exercised in locating or producing requisite witnesses or evidence, the jury may properly be instructed with CJI 2d 5.12 [" ... You may infer that this witness's testimony would have been unfavorable to the prosecution's case"]; *People v Eccles*, 260 Mich App 379, 388; 677 NW2d 76 (2004), lv den 471 Mich 867; 683 NW2d 672 (2004)("If the trial court finds a lack of due diligence, the jury should be instructed that it may infer that the missing witness' testimony would have been unfavorable to the prosecution's case..."); *People v Perez*, 469 Mich 415, 418-421; 670 NW2d 655 (2003), which held:

" ... CJI2d 5.12 may be appropriate if a prosecutor fails to secure the presence at trial of a listed witness who has not been properly excused ... Accordingly, if a prosecutor falls short of providing such assistance, it might be appropriate to instruct a jury that the missing witness would have been unfavorable to the prosecution. There may be other occasions that warrant the jury instruction; in every instance, the propriety of reading CJI2d 5.12 will depend on the specific facts of that case ... we affirm that part of the Court of Appeals opinion holding that the trial court did not err in omitting CJI2d 5.12, but vacate that part of the opinion holding that there is no justification for the continued viability of this jury instruction."

Additionally, where law enforcement lacked diligence or made no reasonable efforts, such failure is attributable to the prosecution. *People v DeMeyers*, 183 Mich App 286, 293; 454 NW2d 202 (1990); and see *People v Morris*, 77 Mich App 561, 563; 258 NW2d 559 (1977)(egregious police misconduct irreparably tainted the prosecution of the case).

Due process further requires, of course, that the prosecution disclose material evidence that is favorable to the defense. *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963); *People v Lester*, 232 Mich App 262, 280-281; 591 NW2d 267 (1998); *People v Fox (After Remand)*, 232 Mich App 541, 549; 591 NW2d 384 (1998).

To establish a *Brady* violation, a defendant must show:

"(1) that the state possessed evidence favorable to the

16

defendant; (2) that he did not possess the evidence nor could he have obtained it himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different." *Fox (After Remand)*, 232 Mich at 549.

Also, due process requires that the police or the prosecution not act in bad faith to dispose of potentially exculpatory evidence:

"Under the Due Process Clause, the Supreme Court has developed 'what might loosely be called the area of constitutionally guaranteed access to evidence.' *California v Trombetta*, 467 US 479, 485; 104 S Ct 2528; 81 L Ed 2d 413 (1984) (quoting *United States v Valenzuela-Bernal*, 458 US 858, 867; 102 S Ct 3440; 73 L Ed 2d 1193 (1982)). Under *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963), suppression of material exculpatory evidence violates a defendant's due process rights, irrespective of the good faith or bad faith of the prosecution. However, where the government fails to preserve evidence whose exculpatory value is indeterminate and only 'potentially useful' to defendant, we apply a different test. *Arizona v Youngblood*, 488 US 51, 57-58; 109 S Ct 333; 102 L Ed 2d 281 (1988). In such a case, the defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to

17

obtain comparable evidence by other reasonably available means." See *Youngblood,* 488 US at 57-58; *Trombetta,* 467 US at 488-89. *United States v Jobson,* 102 F3d 214, 218 (CA 6, 1996).

Mr. Dantzler does not suggest that the prosecution deliberately suppressed or withheld exculpatory evidence; there is no allegation here of such a 'brightline' *Brady* violation. However, there was preventable destruction of key and crucial evidence: fingernail clippings from a decedent likely to contain evidence after a violent struggle, particularly significant in this case where the prosecution alleged that Mr. Dantzler's black cap was knocked from his head during the struggle. Clearly, if someone else's DNA were found under Mr. Hill's fingernails, then there is little likelihood that it was Mr. Dantzler wearing that cap during the assault.

In general, where a defendant has established a due process violation involving the destruction of potentially exculpatory evidence, the remedy is dismissal, rather than a new trial, because a new trial will not cure the prejudice resulting from the inability to present a defense without the lost evidence. *See People v Dungey,* 147 Mich App 83; 383 NW2d 128(1985)(remanding for dismissal where unexcused seven month pre-arrest delay resulted in decay of rape kit samples from the complainant, making further comparison with the defendant's known blood and saliva samples impossible following arrest). Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. The

18

United States Supreme Court has interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense; that right necessarily includes access to material evidence. *Chambers, supra,* 410 US at 295; *United States v Valenzuela-Bernal,* 458 US 858; 102 S Ct 3440; 73 LEd2d 1193 (1982); *Brady, supra.* "Evidence is material if the evidence 'could ... in any reasonable likelihood have affected the judgment of the jury'. Favorable evidence is defined as all 'evidence which ... might have led the jury to entertain a reasonable doubt about ... guilt'. *People v Lane,* 127 Mich App 663, 670; 339 NW2d 522 (1983), quoting from *Napue v Illinois,* 360 US 264, 271; 79 S Ct 1173; 3 L Ed 2d 1217 (1959), *Levin v Katzenback,* 124 US App DC 158, 162; 363 F2d 287, 291 (1966), and *United States v Bryant,* 142 US App DC 132, 138; 439 F2d 642 (1971).

In *Arizona v Youngblood,* 488 US 51; 109 S Ct 333; 102 L Ed 2d 281 (1988), and *California v Trombetta,* 467 US 479; 104 S Ct 2528; 81 L Ed 2d 413 (1984), the Supreme Court determined that the government is not required to preserve all evidence that could plausibly be construed as exculpatory with respect to a defendant's trial or sentencing. *Youngblood, supra* at 58. Rather, the government violates a defendant's due process rights where the government acts in bad faith in destroying "potentially useful" evidence. *Id.* The Supreme Court defined "potentially useful" evidence as evidence "which might have exonerated the defendant." *Id.* at 57. In order to establish bad faith a defendant must show that the government destroyed evidence (1) whose exculpatory

19

significance was "apparent before" its destruction; and (2) the defendant remains
unable to "obtain comparable evidence by other reasonably available means."
*Trombetta, supra* at 489; see also *Illinois v Fisher,* 540 US 544; 124 S Ct 1200; 157 L Ed 2d
1060 (1984)(applying a "bad faith" test to the destruction of potentially exculpatory
evidence after discovery request where drugs, which had been tested four times by
police after the defendant's arrest, were destroyed during the ten-years period before
the defendant was apprehended after fleeing while out on pre-trial bail; the U.S.
Supreme Court found no due process violation).   However, in the *Trombetta, Fisher,* and
*Youngblood* case, the evidence had already been tested.   Indeed, the Court in Fisher,
where the drug-evidence had been tested four times, suggested that a fifth test would
be expected to afford a different result.

As noted above, no intentional suppression is suggested.   However, the prejudice
to Mr. Dantzler remains.   The *Dungey* case, *supra,* is helpful:

> "According to the hearing testimony, the delay in these proceedings and the
> failure timely to submit the known blood and saliva samples to the crime lab was
> essentially the result of the heavy caseload of the prosecution's staff.   This
> explanation, however, does not excuse the delay and neglect in this case.
>
> The secretion typing tests could not prove that defendant was guilty
> of the act, but offered the possibility of excluding him from the class of
> suspects.   The prosecutorial delay and neglect made it impossible to
> obtain the potentially exculpatory evidence, and therefore the prejudice to

20

defendant is clear." *Dungey*, 147 Mich App at 88.

Jury instructions must cover any material issues, including defenses and defense theories that are supported by the evidence, and properly instruct jurors as to the law. *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002); MCL 768.29.   The trial court improvised instruction removed from the jury the option of using the missing-evidence through inference to measure the proofs at trial.   Instead of allowing the jury, consistent with caselaw, see *Eccles* and *Perez, supra*, to 'infer' that the evidence was unfavorable to the prosecution and favorable to the defense, the jury was instead allowed only to 'consider' whether it was.   Then what? one might ask.   If the jury is not allowed *to use* that evidence as a tool (something the trial court's modified instruction precluded), then the jury lacks all requisite tools to render a reliable and constitutional verdict, and the defendant has unfairly been 'short-changed' in the trial proceeding.   If the jury were permitted to infer the missing-evidence was unfavorable to the prosecution and favorable to the defense, particularly in so key a piece of evidence as fingernail clippings which likely could most definitively lead to a suspect (in contrast to the DNA from the hat, which included profiles of *at least* two males, and there was no direct evidence of involvement by Mr. Dantzler), the jury could then have used that inference to conclude Mr. Dantzler was not the person involved in the struggle with Mr. Hill, and

21

was not the person who left the cap on the floor of the apartment. Given the lack of other incriminating evidence, such a conclusion by the jury could have resulted in a different verdict.

Due to the trial court's sua sponte modification to the instruction, the verdict cannot be trusted, and must be reversed.


## ARGUMENT II

**The evidence was insufficient to prove Mr. Dantzler participated in the crime, as principal or aider and abettor, and the resulting conviction is violative of his due process guarantees under the Fourteenth Amendment and Const. 1962, art. 1, §17, and must be reversed.**


### Standard of Review and Preservation of Issue

A claim of insufficient evidence is reviewed **de novo**, in the light most favorable to the prosecution, to determine whether or not a rational trier of fact could find that all of the elements of the charged offense could be found beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508; 489 NW2d 748 (1992); *People v Hampton*, 407 Mich 354, 366; 285

22

NW2d 284, cert den 449 US 885; *Jackson v Virginia*, 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979); *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000).

Preservation is not generally required for sufficiency issues. *Wolfe, supra*, at 516, n 6; *People v Patterson*, 428 Mich 503, 514; 410 NW2d 733 (1987).   There was no separate action below.

## Analysis

The prosecutor's circumstantial case against Mr. Dantzler was primarily based upon inferences derived from: 1) Ms Burt's testimony that a gold-colored car she had seen Mr. Dantzler drive *five or six months previously* came to her house on January 15, 2006 (TT, 12/16/2010, 85-86); the fact that Mr. Dantzler was related to Ms. Turner; and the existence of his DNA on a black hat found in the apartment.   However, as Ms. Preston testified, *in all of the four* cuttings there was a mixture of *at least* two individuals. Further, of the four cuttings, there was a DNA profile for Mr. Dantzler as primary donor on one; in her first cutting, Mr. Dantzler could not be included or excluded (TT, 12/20/2010, 48-50, 102).   In her second cutting, Mr. Dantzler could not be excluded (*Id.* at 51, 103-104). In her third cutting, Mr. Dantzler could not be included or excluded (*Id.* at 37-38, 52, 80-81, 105).   Ms. Preston could not say if anyone else's DNA was on the hat (*Id.* at 82).   Obviously, the evidence of guilt is not overwhelming.

23

More to the point, there was no direct evidence connecting Mr. Dantzler to the crime, and there were no eyewitnesses. Ms. Burt did not see Mr. Dantzler on January 15, 2006. Ms. McKenzie did not identify Mr. Dantzler as one of the perpetrators. There was a lack of evidence. There was insufficient evidence to support the guilty verdict.

The elements of a charged offense may be proven by circumstantial evidence and by reasonable inference, even an inference upon an inference. See, for example, *People v Jolly*, 442 Mich 458, 465; 502 NW2d 177 (1993); *Wolfe, supra*, 440 Mich at 524-526; *People v Carines*, 460 Mich 750, 758; 597 NW2d 130 (1999); *People v Hardiman*, 466 Mich 417; 646 NW2d 158 (2002)(overruling prior prohibition against stacking inferences found in *People v Atley*, 392 Mich 298; 220 NW2d 465 (1974)).

However, while reasonable inferences may be used, all of the elements must be proven by the prosecution beyond a reasonable doubt to obtain a valid verdict of guilt. *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970); *Jackson, supra*, 443 US at 317. When the sufficiency of the proofs are challenged the evidence, including reasonable inferences, is reviewed in the light most favorable to the non-moving party (*i.e.*, the prosecution) to determine whether a rational trier of fact could find that all of the elements had been proven beyond a reasonable doubt. *Jackson, supra*, 443 US at 317; *Wolfe, supra*; *Hampton, supra*, 407 Mich at 366; *Jolly, supra*, 442 Mich at 465.

24

In the case of *People v Robinson*, 475 Mich 1, 15; 715 NW2d 44 (2006), the Michigan Supreme Court held that:

> "A defendant is criminally liable for the offenses the defendant specifically intends to aid or abet, or has knowledge of, as well as those crimes that are the natural and probable consequences of the offense he intends to aid or abet. Therefore, the prosecutor must prove beyond a reasonable doubt that the defendant aided or abetted the commission of an offense and that the defendant intended to aid the charged offense, knew the principal intended to commit the charged offense, or, alternatively, that the charged offense was a natural and probable consequence of the commission of the intended offense." *Robinson*, 475 Mich at 15.

In the instant case, there is no proof Mr. Dantzler knew of the actions of Rodney Dantzler of Samuel Lamare Dantzler, there is no proof he drove the gold-colored car to Ms. Burt's house, and there is no proof he was at the McKenzie/Hill apartment, other than the speculation or inference that it was he who wore the black hat. There is no proof he wore it on that day, however, and no proof that someone else did not grab it from the gold-colored car that someone else may have been driving. There is no proof that Mr. Dantzler shared or knew of the intent of the perpetrators. "In accordance with the common-law principles incorporated in the statute ... the aider and abettor is liable for the crime he or she had the intent to commit." *Robinson*, 475 Mich at 14. That is, the

aider and abettor is only liable for those crimes he intended to commit, or that were within the probable consequences of an intended crime. The prosecution must prove that intent, and that participation, and the prosecution here did not.

The facts in *Robinson, supra,* and in *People v Riley,* 468 Mich 135; 659 NW 2d 611 (2003), are helpful, by analogy, and distinguishable in relevant part. In *Robinson,* the defendant had intended some physical harm to the victim, and aided the codefendant in an aggravated assault. The Supreme Court found that even though the codefendant subsequently shot and killed the victim, and the defendant did not share that same intent to kill, "the trial court found that defendant intended to inflict great bodily harm. That intent is sufficient for a conviction of aggravated assault or second-degree murder. Alternatively, defendant is liable for the homicide because death is one of the natural and probable consequences of aggravated assault, the crime defendant committed and aided. Either analysis is sufficient to support defendant's conviction." 475 Mich at 3-4, 15.

In *Riley,* the Michigan Supreme Court found sufficient proof of aiding and abetting a murder. The defendant admitted to taking the principal to the victim's apartment, and to being present at the time of the murder. The principal strangled the victim, who was then bound, and then strangled a second time after he had resumed breathing. A

26

neighbor, suspicious of the events, knocked on the door twice, with the defendant each time answering and providing a story. The defendants tried to leave in the victim's car, into which they had placed various items taken from the apartment, but then fled together when the car would not start. The Court noted that the defendant necessarily would have become aware of the principal's intent before the second strangling incident, even if he had not previously been aware; also, the defendant's acts at the door further facilitated the completion of the crime and the defendants' escape.

Key facts in both *Robinson* and *Riley*, distinguishing the instant case from them, are that in those cases there was proof the accused participated in some criminal act. This record does not contain such proof.

Due Process guarantees are violated where the evidence does not prove guilt beyond a reasonable doubt. The prosecution failed to prove beyond a reasonable doubt that Mr. Dantzler aided and abetted the murder, or, even that he participated in any of the criminal activity occurring January 16, 2006. That conviction is therefore constitutionally defective and must be reversed. *In re Winship, supra; Cage v Louisiana,* 498 US 39; 111 S Ct 328; 112 L Ed 2d 339 (1990); US Const, AM XIV; Const. 1963, art.1, §17.

## ARGUMENT III

The trial court's denial of necessary funds for an independent expert to review the DNA evidence denied Mr. Dantzler due process guarantees under the Fourteenth Amendment and Const. 1962, art. 1, §17, and must be reversed.

### Standard of Review and Preservation of Issue

A trial court's decision concerning allocation of funds is generally reviewed for an **abuse of discretion**. See, for example, *People v Blackburn*, 135 Mich App 509, 520-21; 354 NW2d 807 (1984); *People v Tanner*, 469 Mich 437; 671 NW2d 728 (2003). However, constitutional issues are reviewed **de novo**. *Craig v Oakwood Hosp.*, 471 Mich 67, 76; 684 NW2d 296 (2004).

Defense counsel moved for the appointment of an expert, and the trial court issued an order permitting an independent expert to review the evidence, but ordered the expert be paid at the County fee schedule rate. The trial court would not allow the expert's requested amount of $2500.00 (TT, 12/14/2010, 6-7).

### Analysis

The People paid almost $4000.00 for their expert from Bode Technology (TT, 9/09/2010, 3; TT, 12/20/2010, 74, 90-91). The County rate allowed $200.oo for evaluation, and $150.00 for testimony (TT, 12/20/2010, 68-69). The defense expert

28

wanted $2500.00 (TT, 12/14/2010, 6-7), which the trial court found "exorbitant, unrealistic" (*Id.* at 8).

An accused's state and federal rights of due process of law is violated when the ability of an accused to present a defense is undermined by his poverty. US Cons Am V, XIV; Const 1963 art 1, §§ 15, 20; *Gideon v Wainwright*, 372 US 335 (1963); *Powell v Alabama*, 287 US 45 (1932). Accordingly, an indigent defendant is constitutionally entitled to "the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." *Britt v North Carolina*, 404 US 226, 227, 92 S Ct 431, 30 LEd.2d 400 (1971), citing *Griffin v Illinois*, 351 US 12, 76 S Ct 585, 100 L Ed 891 (1956); *Ake v Oklahoma*, 470 US 68; 105 S Ct 1087; 84 Led2d 58 (1985); *De Freece v State*, 848 SW2d 150, 159, (Tex Crim App 1993), cert. denied, 126 L Ed 2d 234, 114 S Ct 284 (US 1993)("In an adversarial system due process requires at least a reasonably level playing field at trial"). There was no reasonably level playing field in this case.

The DNA evidence was the prosecutor's key evidence, from which the prosecutor argued inferentially that Mr. Dantzler had been one of the perpetrators at the apartment. Mr. Dantzler recognizes that this is an era of tightened-budgets, but he also recognizes that he was on trial for murder in a case with a mandatory non-parolable life sentence upon conviction. because of the Court/County's wish to save money, he was unfairly deprived of the right to test that key piece of evidence. He was unable to fully present his defense and challenge that evidence against him. He was deprived of those

29

constitutional guarantees found in the US Const, AM V, VI, and XIV, and Const. 1963, art. 1, §17 and §20, that the verdict cannot stand, and a re-trial is required.

## RELIEF REQUESTED

WHEREFORE, Mr. Dantzler respectfully requests this Honorable Court reverse his felony-murder conviction.

Respectfully submitted,

NEIL J. LEITHAUSER P-33976
Attorney for Defendant-Appellant
101 W. Big Beaver Rd., 14th Flr.
Troy, MI 48084
(248) 687-1404

Dated: _December 27, 2011_

30

Exhibit B

Plaintiff Brief in Response
Dated on Last (page 21)
March 21, 2012

— 22 —

STATE OF MICHIGAN
IN THE COURT OF APPEALS

THE PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee

vs

SAMUEL LEE DANTZLER,

Defendant-Appellant.

Court of Appeals
No. 303252

Third Circuit Court No. 10-3521

PLAINTIFF-APPELLEE'S BRIEF ON APPEAL
NO ORAL ARGUMENT REQUESTED

KYM L. WORTHY
Prosecuting Attorney
County of Wayne

TIMOTHY A. BAUGHMAN
Chief of Research,
Training and Appeals

**JON P. WOJTALA (P-49474)**
Assistant Prosecuting Attorney
11th Floor, 1441 St. Antoine
Detroit, Michigan 48226
Phone: (313) 224-5748

# TABLE OF CONTENTS <span style="float:right">Page</span>

Index of Authorities ................................................................. iii

Counterstatement of Jurisdiction ................................................ 1

Counterstatement of Questions Presented ....................................... 1

Counterstatement of Facts ......................................................... 3

Argument

I.     A defendant's expressed satisfaction with the trial court's instruction to the jury waives any appellate claim that the instruction was erroneous. Here, after the trial court agreed to instruct the jury as requested by the defense, although in modified language, defendant's counsel repeatedly thanked the judge and later expressed his satisfaction with the instruction as read to the jury. Defendant has waived any claim of error from the instruction. ...................... 8

     Standard of Review ............................................... 8

     Discussion ........................................................ 8

II.    As applicable here, the offense of Felony Murder requires proof beyond a reasonable doubt that the defendant aided and abetted in the killing of the victim with malice and during the commission of a felonious entry of the victim's residence. Here, after the victim assaulted defendant's niece, members of the niece's family hunted for the victim in defendant's car, broke into the victim's apartment, assaulted him with golf clubs, and eventually shot him in the head. One of the murderers' knit hat that was left at the scene of the murder was determined to contain defendant's DNA. The prosecution presented sufficient evidence to support defendant's conviction.. .......................................................... 13

     Standard of Review ............................................... 13

     Discussion ........................................................ 13

## TABLE OF CONTENTS

Page

III.   A trial court may provide public funds reasonably necessary for an indigent defendant to retain an expert witness.  Here, the trial court approved the appointment of a defense expert and agreed to pay that expert's hourly rate but not the "exorbitant" retainer that the expert insisted upon being paid. The trial court did not abuse its discretion in appointing an expert and agreeing to provide only those public funds reasonably necessary for that expert to prepare and testify at trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Relief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## INDEX OF AUTHORITIES

<u>CASE</u>                                                                                          <u>PAGE</u>

*Arizona v. Youngblood,*
    488 US 51, 109 S Ct 333, 102 L Ed 2d 281 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In Re Klevorn,*
    185 Mich App 672  (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Jackson v. Virginia,*
    443 US 307,  99 S Ct 2781, 61 L Ed 2d 560 (1979) . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Babcock,*
    469 Mich 247 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*People v. Carter,*
    462 Mich 206  (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*People v. Cornell,*
    466 Mich 335  (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Davis,*
    199 Mich App 502  (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17

*People v. Fields,*
    450 Mich 94 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Gayheart,*
    285 Mich App 202  (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Hardiman,*
    466 Mich 417  (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Kern,*
    6 Mich App 406 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Lueth,*
    253 Mich App 670 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*People v. McPherson,*
    263 Mich App 124  (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## INDEX OF AUTHORITIES

<u>CASE</u> <u>PAGE</u>

*People v. Nelson,*
    234 Mich App 454 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Riddle,*
    467 Mich 116 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Stone,*
    195 Mich App 600 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*People v. Tanner,*
    469 Mich 437 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*People v. Tombs,*
    472 Mich 446 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Wolford,*
    189 Mich App 478 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Jobson,*
    102 F3d 214 (CA 6, 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## <u>STATUTE</u>

MCL 769.26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

MCL 775.15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## <u>COURT RULE</u>

MCR 2.613(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## Counterstatement of jurisdiction

The People accept defendant's statement of jurisdiction.

## Counterstatement of questions presented

### I.

A defendant's expressed satisfaction with the trial court's instruction to the jury waives any appellate claim that the instruction was erroneous. Here, after the trial court agreed to instruct the jury as requested by the defense, although in modified language, defendant's counsel repeatedly thanked the judge and later expressed his satisfaction with the instruction as read to the jury. Has defendant waived any claim of error from the instruction?

The People answer: "YES."
Defendant answers: "NO."
The trial court did not address this question.

### II.

As applicable here, the offense of Felony Murder requires proof beyond a reasonable doubt that the defendant aided and abetted in the killing of the victim with malice and during the commission of a felonious entry of the victim's residence. Here, after the victim assaulted defendant's niece, members of the niece's family hunted for the victim in defendant's car, broke into the victim's apartment, assaulted him with golf clubs, and eventually shot him in the head. One of the murderers' knit hat that was left at the scene of the murder was determined to contain defendant's DNA. Did the prosecution present sufficient evidence to support defendant's conviction?

The People answer: "YES."
Defendant answers: "NO."
The trial court answered: "YES."

1

**Counterstatement of questions presented**

## III.

A trial court may provide public funds reasonably necessary for an indigent defendant to retain an expert witness.  Here, the trial court approved the appointment of a defense expert and agreed to pay that expert's hourly rate but not the "exorbitant" retainer that the expert insisted upon being paid. Did the trial court abuse its discretion in appointing an expert and agreeing to provide only those public funds reasonably necessary for that expert to prepare and testify at trial?

The People answer: "NO."
Defendant answers: "YES."
The trial court answered: "NO."

## Counterstatement of facts

On the evening of January 15, 2006, the victim, Bernard Hill, was at his mother Janet Burt's house.  While the victim was at the house, his former girlfriend and mother of his child, Quiana Turner, arrived to drop the child off.  (12/16, 71-72)[1] Burt was going to watch the child that evening.  Turner and the victim left the house separately but eventually met up together again that evening.  When the victim and Turner met again, the victim allegedly assaulted her. (12/16, 73)  Turner reported the assault to her mother and word of the assault made its way around to other members of Turner's family.  (12/21,128)

At approximately 1:00 a.m. on January 16, 2006, two members of Turner's family, Rodney Turner and Samuel Lamare Dantzler, banged on Burt's door.  (12/16, 75) Burt looked out the window and saw a gold car parked outside her home.  (12/16, 77)  Burt recognized the car as belonging to defendant, Samuel Lee Dantzler.  (12/16, 77)  When Burt did not answer the door, Rodney Turner and Samuel Lamare Dantzler walked to the gold car.  When the men opened the door of the car, Burt could see several other people inside.  (12/16, 78) The car then drove away.

At approximately the same time, the victim returned to his apartment at 20415 West Seven Mile in Detroit.   The victim shared the apartment with his girlfriend, Nikitta McKenzie. The victim told McKenzie that something had happened between Quiana Turner and him. (12/16, 160) The victim seemed very nervous.  (12/16, 161) McKenzie and the victim got ready for bed.  Before going to bed, the victim walked into the living room area of the apartment before

---

[1]References to the trial court record will be cited by the date of the hearing followed by the page number.

3

returning back to the bedroom. The victim stated that he saw shadows outside the apartment. (12/16, 162) The victim hid inside a closet. (12/16, 162) McKenzie started to walk into the living room. As McKenzie entered the room, the door to the apartment was busted down and approximately six African-American males entered. (12/16, 163) One of the men was carrying a firearm and another was carrying a golf club. (12/16, 163-165) The men were dressed in black and at least one of them was wearing a black knit hat. (12/16, 163) The man with the fireman pointed it at McKenzie and asked where the victim was at. McKenzie said that the victim lived in the apartment but he was not there at the time. The man with the firearm asked again and the victim came out of the bedroom. (12/16, 165) A fight ensued between the victim and the men. McKenzie ran into the bathroom and closed the door. From inside the bathroom, McKenzie heard fighting occur inside the apartment. (12/16, 166) McKenzie then heard the victim scream and then gunshots. After not hearing anything for a short period of time, McKenzie came out of the bathroom. McKenzie saw a person enter the apartment and break the television. (12/16, 167) The person dropped a stereo onto the floor and ran out of the apartment.

McKenzie walked out of the apartment. On her way out, McKenzie saw a black hat on the floor. (12/16, 168) The hat was not in the apartment prior to the men forcibly entering. McKenzie noticed a trail of blood leading out of the apartment. McKenzie followed the trail to the first floor of the apartment building and found the victim lying by the entrance. (12/16, 168) McKenzie called the police but, by the time the police and an ambulance arrived, the victim was already dead. Police found two spent .380 caliber casings and two golf club shafts along the route the victim traveled from the apartment to the front door of the building. (12/16, 113-119)

4

The victim died from a single gunshot wound to the back of his head. (12/15, 63) The

bullet traveled through the skull, the brain, the spine, and the brain stem. (12/15, 63) The victim

also suffered blunt force injuries to his body including an injury strong enough to leave an

imprint of a diamond on his skull and another that created a divot in his skull. (12/15, 65) The

victim had defensive wounds on his forearms indicating that he struggled with his attackers.

(12/15, 69)

The police were unable to determine any suspects in the months after the murder and the

case went cold.  In 2009, the case was reopened and the black hat left in the apartment was

checked for DNA.  A sample of the DNA in the hat was entered into the CODIS database and

was determined to match the DNA profile of defendant. (12/16, 148) The initial sample of DNA

and three additional samples from the hat were compared to known samples from defendant.  It

was determined that defendant was the major contributor of DNA in the initial sample. (12/20,

46) In a random sample of the population, only 1 in 2 quadrillion people would match the initial

DNA sample found on the hat. (12/20, 47) Defendant could neither be included or excluded as

the contributor of the other three DNA samples found on the hat. (12/20, 48-52)

On December 14, 2010, a jury trial commenced in the Third Circuit Court for Wayne

County, the Honorable Gregory Bill presiding.  The criminal information charged defendant with

one count of First Degree Felony Murder.  The mother of defendant's child, Marie Simpson,

testified on defendant's behalf.  Simpson testified that, after she got off work,  she picked

defendant up from a house on Blackstone in Detroit on the night of January 15, 2006.[2] (12/21,

---

[2]The prosecution had received information impeaching Simpson's testimony about her
employment on January 15, 2006 but were prevented from presenting it to the jury.  The
information was that, months before the murder, Simpson had been terminated from the job she

5

59) Simpson and defendant went to her residence and defendant stayed the night. Simpson testified that defendant did not leave the home that night and was still there at 6:00 a.m. on January 16, 2006. (12/21, 60) Simpson further testified that she had never seen defendant wear a black knit hat like the one found in the victim's apartment. (12/21, 94)

Defendant also testified on his behalf. Defendant repeated Simpson's testimony that he stayed the night at her home on January 15, 2006. (12/21, 106-107) Defendant testified that he was aware that the victim had beaten Quiana Turner on January 15, 2006, but denied that he decided to do anything about it. (12/21, 97-98) Defendant denied being with Rodney Turner or Samuel Lamare Dantzler on the night of January 15, 2006 or going to either Burt's home or the victim's apartment. (12/21, 101) Defendant testified that he did not even discover that the victim was dead until two days later. (12/21, 102) On direct examination, defendant testified that he once owned a gold car like the one described by Burt but that he gave it to his brother-in-law in 2005. (12/21, 108) On cross-examination defendant denied that he ever owned a gold car and insisted that he said an "old" car. (12/21, 158) Defendant indicated that he had worn black knit hats in the past but provided no explanation for how a hat with his DNA on it was found in the victim's apartment. (12/21, 161)

On December 22, 2010, the jury found defendant guilty as charged. On January 20, 2011, Judge Bill sentenced defendant to the mandatory term of life imprisonment without the possibility of parole.

Defendant now appeals as of right. Defendant claims that the trial court erred when providing the jury an adverse instruction on evidence that was destroyed prior to trial. Defendant

---

alleged to have on January 15, 2006. (12/21, 167)

6

also asserts that the prosecution failed to present sufficient evidence to support his guilt beyond a

reasonable doubt.  Defendant finally claims that the trial court denied him the use of an

independent expert on DNA evidence by refusing to provide public funds to pay the expert's

retainer.

## Argument

## I.

**A defendant's expressed satisfaction with the trial court's instruction to the jury waives any appellate claim that the instruction was erroneous. Here, after the trial court agreed to instruct the jury as requested by the defense, although in modified language, defendant's counsel repeatedly thanked the judge and later expressed his satisfaction with the instruction as read to the jury. Defendant has waived any claim of error from the instruction.**

**Standard of review**

A party whose own conduct directly causes alleged error waives the right to appellate review of the error.[3] A defense counsel's affirmative approval of the trial court's jury instructions waives any claim of error.[4]

**Discussion**

Defendant claims that the trial court erred when it modified a requested adverse inference instruction to the jury. During trial, it was revealed that the Wayne County Medical Examiner had preserved clippings of the victim's fingernails. (12/15, 81) The clippings were collected based upon the possibility that tissue samples from one or more of the attackers may have transferred to the victim while he struggled prior to his murder. (12/15, 81) The clippings were not picked up by the Detroit Police at the same time that a sample of the victim's blood was retrieved. The clippings remained at the Medical Examiner's Office until 2009 when they were

---

[3]*People v. McPherson*, 263 Mich App 124, 139 (2004).

[4]*People v. Carter*, 462 Mich 206, 216 (2000); *People v. Lueth*, 253 Mich App 670, 688 (2002).

destroyed by that office. (12/21, 105) Defendant's trial counsel requested that Judge Bill instruct the jury that it could "infer" that the potential evidence missing due to the destruction of the fingernail clippings was unfavorable to the prosecution and favorable to the defendant. (12/22, 7) The prosecution objected to the requested instruction because there was no showing that the clippings were destroyed in bad faith. (12/22, 9) Despite the absence of bad faith, Judge Bill felt that it would be fair to defendant to have some type of instruction addressing the missing fingernail clippings. The trial court decided that, rather than informing the jury that it could "infer" that the evidence would have been unfavorable to the prosecution, it would read an instruction that the jurors "may consider whether this evidence would have been" unfavorable to the prosecution and favorable to the defendant. (12/22, 12)

Defendant has waived any challenge to the trial court's instruction. After Judge Bill expressed his preference regarding the language of the instruction, defendant's counsel expressed his agreement with the trial court's decision by thanking the court. (12/22, 12) The prosecutor replied by expressing his objection to any instruction due to the lack of bad faith. Judge Bill then repeated the exact language he intended to use when instruction the jury, replacing "may infer" with "may consider whether." Again, defendant's counsel expressed his agreement by thanking the court for the ruling. After Judge Bill read the instruction to the jury, defendant indicated that he was satisfied with the instruction as read. (12/22, 36) At no point did trial counsel ever indicate that he disagreed with or objected to the instruction as read to the jury. Defendant's declared agreement and satisfaction with the trial court's chosen language for the instruction

waives any claim that the instruction was error. The effect of a waiver is the preclusion of any review by this Court because no error exists to review.[5]

Defendant is unable to show that, even if he had expressed an objection to the trial court's chosen language, he was denied a fair trial. If an applicable instruction that was properly requested by a defendant was not given, the defendant will not be afforded relief unless he can demonstrate a miscarriage of justice.[6] The validity of the verdict is presumed, and defendant bears the burden of showing that, after examination of the entire case, it affirmatively appears that it is more probable than not that the error was outcome determinative.[7]

Defendant benefitted from the reading of the trial court's instruction regardless of its language because he was not entitled to any instruction at all on the missing evidence. The fingernail clippings themselves were not important evidence. It was the potential tissue or blood under those nails that may have been important to either, both, or neither the prosecution or defense. However, due to the destruction of the evidence, the value of the evidence is not apparent. There is no evidence that any biological material was actually under the clippings. There is no evidence that, if material was under the fingernails, it could be properly extracted in order to test. There is no evidence that, if the material could have been tested, the results would have been exculpatory for defendant. It can just as reasonably be presumed that the results would have been inculpatory or inconclusive. Since the fingernail clippings were only potentially exculpatory, defendant bears the burden of showing that the police acted in bad faith by

---

[5]*Carter*, supra.

[6]*People v. Riddle*, 467 Mich 116, 124 (2002).

[7]*People v. Cornell*, 466 Mich 335, 362 (2002); MCL 769.26; MCR 2.613(A).

10

destroying the evidence.[8] Courts are unwilling to impose on the police an absolute duty to preserve everything that might possibly be favorable to a defendant. A finding of bad faith rests on whether the police knew of the apparent exculpatory value of the evidence at the time it was destroyed.[9]

A defendant is only entitled to an adverse inference jury instruction regarding the failure to produce evidence when bad faith has been shown.[10] An adverse instruction is permitted "only when the connection between the circumstances of the case and the inference that the evidence would be adverse is so logical that the factfinder is permitted to make the connection."[11] Here, defendant does not attempt nor can he establish that the fingernail clippings were destroyed in bad faith. Bad faith requires a conscious effort to suppress exculpatory evidence.[12] The police here did not make a conscious effort to destroy the fingernail clippings. The police took efforts in 2006 to preserve the evidence at the scene of the murder. The police had bags placed over the victim's hands for the specific purpose of having the fingernails preserved so clippings could be taken by the medical examiner. (12/16, 197) The medical examiner examined the victim's hands and did not detect any blood on them but still proceeded with taking samples of the fingernails so the police could do any additional testing that deemed appropriate. (12/15, 83, 98)

---

[8] *Arizona v. Youngblood*, 488 US 51, 58, 109 S Ct 333, 102 L Ed 2d 281 (1988).

[9] *Id.* at 56.

[10] *People v. Davis,* 199 Mich App 502, 515 (1993).

[11] *People v. Fields,* 450 Mich 94, 105-106 (1995).

[12] *United States v. Jobson,* 102 F3d 214, 218 (CA 6, 1996).

11

Unfortunately, the clippings were not picked up in 2006 when a sample of the victim's blood was retrieved from the medical examiner.

There is no indication that the failure to pick up the clippings was anything other than an oversight. Despite the failure of the police to retrieve the clippings in 2006, the evidence remained preserved and available at the Medical Examiner's Office until October, 2009. (12/15, 105) During this time, any leads in the murder investigation dried up and the case went cold. Defendant was not a focus of the investigation either before or during the time that the case went cold. When the investigation re-opened in 2009, efforts were taken to have the available evidence collected and re-analyzed. At that time, the police discovered that they did not have the fingernail clippings. The police contacted the medical examiner in November or December of 2009 requesting the clippings, but the evidence had already been destroyed. (12/21, 20)

At the time that the clippings were requested in 2009, the police had an acute interest in the evidence to help them settle a case that had gone unsolved for three years. The desire of the police to use the evidence to find any lead that would assist in arresting and convicting the rightful murderer weighs against any inference that the police acted intentionally or with bad faith to destroy the evidence. At the time that the clippings were collected up to the time that they were destroyed, the police had a great interest in retaining the evidence as an investigative tool. Defendant could not and cannot establish any bad faith on the part of the police in the destruction of the fingernail clippings. Absent this bad faith, an adverse instruction to the jury was inappropriate. Defendant cannot complain that he received such an adverse instruction even if it did not contain the exact language that he initially requested.

12

## II.

**As applicable here, the offense of Felony Murder requires proof beyond a reasonable doubt that the defendant aided and abetted in the killing of the victim with malice and during the commission of a felonious entry of the victim's residence. Here, after the victim assaulted defendant's niece, members of the niece's family hunted for the victim in defendant's car, broke into the victim's apartment, assaulted him with golf clubs, and eventually shot him in the head. One of the murderers' knit hat that was left at the scene of the murder was determined to contain defendant's DNA. The prosecution presented sufficient evidence to support defendant's conviction.**

**Standard of review**

The standard for determining whether sufficient evidence was presented at trial to support a conviction focuses on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[13]

**Discussion**

Defendant next claims that the prosecution failed to prove his guilt beyond a reasonable doubt. Defendant makes no challenge to the jury's finding that the crime of Felony Murder was committed when a group of men broke into the victim's apartment, assaulted him, and killed him. Defendant's challenge is solely to the sufficiency of the evidence identifying him as one of the murderers.

---

[13]*Jackson v. Virginia*, 443 US 307, 319, 99 S Ct 2781, 61 L Ed 2d 560 (1979)(emphasis in original); *People v. Tombs*, 472 Mich 446, 459 (2005).

Defendant's identity as one of the murderers was sufficiently established with circumstantial evidence. The prosecution is not required to present direct evidence linking the defendant to the crime.[14] Identity may be sufficiently proven by circumstantial evidence alone.[15] The trier of fact is free to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences.[16] Here, in the early morning hours of January 16, 2006, shortly after the victim had physically assaulted Quiana Turner, members of Turner's family went to the victim's mother's house. (12/16, 75) Quiana Turner is defendant's niece. Two of the family members, Rodney Turner and defendant's son, Samuel Lamare Dantzler, went to the mother's house and loudly banged on the door. When the victim's mother did not answer the door, the men retreated to a gold car where other people were waiting for them. (12/16, 78) The victim's mother recognized the gold car as one that she had seen defendant, and only defendant drive, when he would come to the house to visit the victim and Quiana Turner. (12/16, 77, 86) The gold car pulled away from the house. Unexpectedly, defendant's sister, Ruth Turner, also arrived at the victim's mother's house that early morning. (12/16, 80) Unexplainedly, Ruth Turner demanded that Quiana's child be turned over to her although the plan was for the child to stay at the house for a few days. At this time, the victim's mother had not yet been informed that her son had been killed. (12/16, 80)

---

[14]*People v. Wolford,* 189 Mich App 478, 480 (1991).

[15]*People v. Nelson*, 234 Mich App 454, 459 (1999); *People v. Kern*, 6 Mich App 406, 409 (1967).

[16]*People v. Gayheart,* 285 Mich App 202, 216 (2009); *People v. Hardiman*, 466 Mich 417, 428 (2002).

14

A short time after the gold car left his mother's house, the victim was in his apartment

with his girlfriend, Nikitta McKenzie. The victim was nervous following the incident with

Quiana Turner and was pacing around the room. (12/16, 160-161) The victim noticed shadows

outside his door and hid in the closet. (12/16, 162) It could be reasonably inferred from the

victim's behavior that he was expecting something bad to happen and was afraid that the

shadows were an indication that, whatever bad thing he feared, was about to happen.

Unfortunately, the victim was correct in his expectation and belief. Approximately six African-

American men broke through the door of the apartment. (12/16, 163) At least one of the men

was wearing a black knit hat. (12/16, 165) After threatening McKenzie, the men attacked

defendant inside the apartment. McKenzie, as she hid in the bathroom, could hear the sounds of

a struggle occur in the apartment. The men eventually succeeded in beating the victim with golf

clubs and shooting him in the back of the head killing him. When McKenzie emerged from the

bathroom, she noticed a black knit hat on the floor that was not there prior to the men breaking

into the apartment. Testing of the cap revealed a DNA profile that, within a scientific certainty,

matched defendant's DNA profile. (12/20, 47) Defendant admitted to owning knit hats similar

to the one found in the apartment but could not explain how one of those hats could have wound

up in the victim's apartment at the time of the murder. (12/21, 161)

Piecing the circumstances together, the jurors reasonably could infer, beyond a reasonable

doubt, that defendant was one of the men involved in the victim's murder. Quiana Turner's

family, defendant included, had a motive to confront and assault the victim after he physically

assaulted her. The victim apparently felt that someone was going to seek some retribution

against him that night. Quiana Turner's family members sought out the victim to confront him.

15

For no other reason, members of the family, including defendant's son, went to the victim's mother's house. The family members were transported to the house in a car that defendant was known to own and operate. That defendant's car was used to transport his son to the victim's mother's house during the early morning hours in order to confront the victim raises a reasonable inference that defendant was one of the several other people inside the car. It was no coincidence that, shortly after the group of people left the victim's mother's house, a group of men broke into the victim's apartment also looking to confront him. Defendant was aware from previous visits that the apartment was where the victim was living. At least one of the men that broke into the apartment was wearing a black knit hat like that defendant admitted to owning. That hat was left behind at the apartment after the murderers had accomplished what they came to do. That hat contained DNA that matched, within a scientific certainty, defendant. The presence of defendant's DNA at the scene of the murder, his close connection with the family members that had a motive to assault the victim, his personal knowledge of the places where the victim lived, and the use of a car he was known to possess as the means of transporting the family members in their hunt for the victim could all be considered in concluding that defendant was one of the men that participated in the home invasion of the victim's apartment and the murder. The prosecution presented sufficient circumstantial evidence to establish defendant's identity as one of the murderers.

16

## III.

**A trial court may provide public funds reasonably necessary for an indigent defendant to retain an expert witness. Here, the trial court approved the appointment of a defense expert and agreed to pay that expert's hourly rate but not the "exorbitant" retainer that the expert insisted upon being paid. The trial court did not abuse its discretion in appointing an expert and agreeing to provide only those public funds reasonably necessary for that expert to prepare and testify at trial.**

**Standard of review**

This Court reviews the trial court's decision regarding defendant's request for the apportionment of additional funds for an expert witness at public expense for an abuse of discretion.[17] An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes.[18]

**Discussion**

Defendant finally claims that he was denied the use of an expert witness on DNA evidence. MCL 775.15 allows a trial court to provide public funds reasonably necessary for an indigent defendant to retain an expert witness.[19] The statute does not mandate that the trial court approve all requests for public funds to appoint an expert witness.[20] An indigent defendant's right

---

[17]*People v. Tanner*, 469 Mich 437, 442 (2003); *In Re Klevorn*, 185 Mich App 672, 678 (1990).

[18]*People v. Babcock*, 469 Mich 247, 269 (2003).

[19]*Davis*, supra at 518.

[20]*Tanner,* supra at 443.

17

to appointment of an expert does not entitle him to appointment of a particular expert but only one who is competent in his or her field.[21]

The trial court did not preclude defendant from obtaining or presenting an expert witness on DNA evidence. Prior to trial, Judge Bill issued an order appointing defendant an expert witness. (12/14, 6) Defendant's counsel attempted to retain the services of one expert but was prevented because the expert had already done work in this case for the prosecution. (12/14, 6) Defendant's counsel returned to the trial court and received an order appointing an expert by the name of Ann E. Chamberlain. (12/14, 6) Chamberlain informed the defense that she was willing to take the appointment. Before doing any work on this case, Chamberlain indicated what her hourly rate would be for preparing for trial. (12/14, 7-8) The trial court approved of the hourly rate proposed by the expert and agreed to pay Chamberlain's costs for preparing to testify. (12/14, 8)   However, Chamberlain also insisted on a flat retainer of $2500 for her testimony. (12/14, 7) Judge Bill believed that the flat retainer was exorbitant but referred the request to the Chief Judge of the bench. (12/14, 7) The Chief Judge also believed the fee to be extraordinary and denied the request. The trial court made it clear that it was willing to reimburse the expert for the time she actually worked on the case and her time for testifying at the hourly rate she requested, in addition to reimbursing her for her costs associated with this case, but he would not pay her the $2500 retainer. (12/14, 7-9) Chamberlain refused to take the appointment without being paid the retainer. (12/14, 8) Defendant did not seek the appointment of another expert and did not present expert testimony at trial.

---

[21]*People v. Stone*, 195 Mich App 600, 606 (1992).

Judge Bill's decision that the appointed expert should be paid only for the work that she performed was not outside the range of principled outcomes. The trial court ordered the appointment of an expert for defendant and went as far to approve the hourly rate requested by that expert. The only thing that the trial court refused to do was to pay a flat fee, especially a flat fee of $2500 that it felt was exorbitant and unrealistic. Although the court's decision resulted in the expert refusing the appointment and defendant proceeding to trial without expert testimony, the rationale for that decision was legitimate. Judge Bill's decision appointing an expert witness at public expense, allowing that expert to be paid by the hour at her requested rate, but refusing to allow an exorbitant flat fee retainer was not an abuse of discretion.

Moreover, the trial court's limitation on the reimbursement of the expert did not deny defendant a fair trial. Defendant's counsel, relying upon some generous evidentiary rulings by the trial court, was able to use the lack of an expert to his advantage at trial. Defendant's counsel, before the jury, was able to inquire into the amount of money the prosecutor was able to spend on the DNA testing. (12/20, 91) Judge Bill also required the prosecution to determine the amount of the contracts that the Michigan State Police and Detroit Police had with Bode Technology to handle any outsourced DNA testing. (12/20, 73-74) Defendant's counsel was allowed to question the DNA experts about who paid for their flights to Detroit. (12/20, 78) Counsel was also allowed to examine the experts about whether the amount they were paid by Bode Technology to analyze DNA evidence was above what an expert appointed by the court would be paid. (12/20, 132) Defendant's counsel was able to use the leeway that was allowed him to inquire into the money spent by the police and prosecution, both generally and specifically to this case, to argue to the jury that he was handicapped in combating the DNA evidence.

19

Counsel made the jury aware that the prosecution spent a lot of money to get the DNA results and the defendant was limited in the funds he could spend to have the DNA independently examined.  (12/21, 203) Defendant's counsel then turned the argument to show that, despite spending thousands of dollars on DNA testing, the prosecution's evidence was weak.  Counsel brought out that, of the four locations tested on the knit hat, only one location could be identified as containing defendant's DNA.  Counsel also raised the issue that the DNA evidence could not identify when defendant wore the hat and could not say whether defendant was wearing the hat at the time of the murder.  In short, because there was evidence of other DNA profiles on the hat, it could have been anyone wearing the hat at the time of the murder.  Counsel was also able to argue that the evidence that should have been tested and would have better revealed who was present during the murder - the fingernail clippings forgotten at the Medical Examiner's Office - was never tested.  (12/21, 201-202) Despite the trial court's limitation on the amount of money that would be paid to the expert, defendant's counsel was able to present his theory of the case, and the DNA evidence specifically, to the jury.  Defendant was not denied a fair trial or due process as a result of the trial court's decision to pay the appointed expert an hourly rate rather than an exorbitant flat fee.

## RELIEF

**WHEREFORE**, the People respectfully request this Honorable Court to affirm

defendant's conviction.

Respectfully submitted,

KYM L. WORTHY
Prosecuting Attorney
County of Wayne

TIMOTHY A. BAUGHMAN
Chief of Research, Training, and Appeals


**/S/ JON P. WOJTALA (P49474)**
Assistant Prosecuting Attorney
11th Floor, 1441 St. Antoine
Detroit, Michigan 48226
Phone: (313) 224-5748

Dated: March 21, 2012.


H:\Uwojtala\b.dantzler,samuel senior.boa.wpd

21

Exhibit C

Court of Appeals opinion

—23—

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v

SAMUEL LEE DANTZLER,

     Defendant-Appellant.

UNPUBLISHED
June 19, 2012

No.   303252
Wayne Circuit Court
LC No.   10-003521-FC

Before: GLEICHER, P.J., and M. J. KELLY and BOONSTRA, JJ.

PER CURIAM.

Defendant Samuel Lee Dantzler appeals by right his jury conviction of first-degree felony murder. MCL 750.316(1)(b). The trial court sentenced defendant to life imprisonment without the possibility of parole. Because we conclude that there were no errors warranting relief, we affirm.

This case arises from the January 2006, savage beating and murder of Bernard Hill. That night, Hill "jumped on" his ex-girlfriend, Quiana Turner, with whom he had a child. After assaulting Turner, Hill went to Nikitta McKenzie's apartment; McKenzie was Hill's current girlfriend. Sometime after 12:45 a.m., Hill looked out a window and saw shadows moving about. He hid in the living room closet and someone kicked in the front door. Six black men wearing black clothing, including black hats, rushed into McKenzie's apartment. One of the men shoved a gun in McKenzie's face and demanded to know if Hill lived there. McKenzie told the men that Hill lived in the apartment, but was not home. The man with the gun again demanded to know if Hill lived there and she repeated her response. Hill then emerged from the closet. McKenzie retreated to the bathroom and waited for the men to leave. She heard loud crashes, furniture falling, and the men fighting. Finally, she heard Hill scream, followed by gunshots. The room fell silent. She discovered Hill's body nearby; he died from a single gunshot wound to the back of his head. A jury convicted defendant of first-degree felony murder on the theory that he either killed Hill or aided and abetted in Hill's murder while participating in breaking and entering McKenzie's apartment.

Defendant first argues that the trial court denied him his due process rights by refusing to instruct the jury that is could infer that missing fingernail evidence would have exonerated him. At trial, defendant's lawyer successfully argued—over the prosecutor's objection—that the trial court should give the jury an adverse inference instruction with regard to missing fingernail evidence. The trial court agreed to give the instruction, but decided to alter the standard instruction by changing the word "infer" to "consider." Thus, the trial court instructed the jury that it could consider whether, rather than infer that, the evidence would have exonerated defendant. Defendant's trial lawyer thanked the court for the instruction and later expressed agreement with the instruction. By affirmatively approving the instruction, defendant's lawyer waived any claim that the instruction was erroneous. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000). Hence, there is no error to review. *Id.* at 216.

Even if defendant's trial lawyer had not waived this claim of error, we would nevertheless conclude that the trial court did not plainly err in giving this instruction. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Under the plain error rule, the defendant must show that (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected defendant's substantial rights. *Id.* To establish the third element, the defendant must generally show that the error affected the outcome of the lower court proceeding. *Id.*

In general, a defendant is not entitled to an adverse jury instruction unless he can demonstrate that the police destroyed evidence in bad faith. *People v Davis*, 199 Mich App 502, 515; 503 NW2d 457 (1993). Defendant failed to introduce any evidence of bad faith, and the prosecution offered evidence indicating that the destruction resulted from a mishap or standard procedures for discarding evidence in unsolved cases, rather than bad faith. The medical examiner maintained the evidence for over three years before its inadvertent destruction, and defendant failed to show any indication that the medical examiner colluded with police to destroy the evidence. The law did not require the trial court to grant defendant any instruction regarding the fingernails, and because defendant benefited from the instruction, the trial court's refusal to include the defendant's preferred language did not amount to error, let alone error that affected the outcome. *Carines*, 460 Mich at 763.

Defendant next argues that the prosecution presented insufficient evidence to sustain the jury's verdict. When reviewing a challenge to the sufficiency of the evidence, this Court "reviews the record evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009).

In order to convict defendant of felony murder, the prosecution had to prove that defendant killed Hill, that when he did so he had the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], and did so while committing, attempting to commit, or assisting in the commission of (in relevant part) breaking and entering. See *People v Smith*, 478 Mich 292, 318-319; 733 NW2d 351 (2007) (stating the elements of felony murder); MCL 750.316(1)(b). The prosecution could also convict defendant under the theory that he aided and abetted another in committing felony-murder; to meet its burden under this theory, the prosecution had to present evidence that "(1) the crime charged was committed by the defendant

or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement." *Carines*, 460 Mich at 757 (quotation marks and citation omitted).

Defendant does not argue that the prosecution failed to present sufficient evidence establishing that the assailants committed a felony when they broke and entered into the apartment. Additionally, defendant does not dispute that the men intentionally killed Hill during the commission of that felony. Defendant's sole argument is that the prosecutor presented insufficient evidence for a reasonable jury to conclude, beyond a reasonable doubt, that he participated in the breaking and entering and murder.

Identity is an element of every crime. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Thus, the prosecution must prove, beyond a reasonable doubt, that defendant committed or aided and abetted the acts in question. *Id.* However, the prosecution may meet its burden to prove identity by presenting either direct or circumstantial evidence. *Carines*, 460 Mich at 757.

The prosecution presented sufficient circumstantial evidence for a reasonable jury to conclude that defendant participated in the breaking and entering and Hill's murder. Most telling, the prosecution presented DNA evidence from the black knit cap found at the scene of the murder, showing that defendant wore the hat. The hat also contained DNA from Hill. From this evidence, a jury could rationally find that defendant was present at McKenzie's apartment on the night in question and that he physically participated in the attack on Hill, which ultimately ended with Hill's murder. Defendant's explanation that another person placed his DNA in the hat was implausible and the jury was free to reject that testimony as incredible. See *Roper*, 286 Mich App at 88.

The prosecution also presented other strong circumstantial evidence that defendant participated in Hill's murder. The prosecution established that Hill had beaten Turner the night of his murder. Hill's mother testified that two of defendant's relatives visited her house looking for Hill, and that they arrived in defendant's car. When she did not answer the door, the men left in defendant's car, which was full of men. Thereafter, a group of men broke down McKenzie's front door before beating and murdering Hill. Although Hill's mother and Turner had agreed that Hill's mother would watch Turner's baby for the remainder of the weekend, Turner's cousin picked her up later that morning after Hill's murder but before Hill's mother learned of her son's death. Based on these facts, the jury could rationally infer that Turner's relatives, including defendant, were the men that killed Hill. In his defense, defendant stated that he and Hill remained friendly despite the fact that Hill had beaten Turner several times in the past. But the jury was free to disregard that testimony.

The prosecution presented sufficient evidence to sustain defendant's conviction.

Defendant finally argues that the trial court denied him his due process rights by refusing to pay an expert to independently analyze the DNA evidence. "This Court reviews a trial court's decision whether to grant an indigent defendant's motion for the appointment of an expert for an abuse of discretion." *People v Tanner*, 469 Mich 437, 442; 671 NW2d 728 (2003). A trial court

-3-

abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Roper*, 286 Mich App at 84.

Generally, equal protection requires that the state afford an indigent defendant an expert witness when the witness remains important to the defendant's preparation of a defense. *People v Stone*, 195 Mich App 600, 605; 491 NW2d 628 (1992). However, this requirement does not allow the defendant to hire an expert of his choosing, and the state may satisfy this requirement by providing defendant access to any competent expert. *Id* at 606.

The trial court entered an order in which it agreed to pay for an expert to analyze the DNA evidence on defendant's behalf. The trial court agreed to pay the expert's hourly fee and expenses. Defendant then attempted to hire two experts. The first could not work for defendant because he previously worked on this case for the prosecution. The second would not work on the case without a retainer fee, which the trial court refused to authorize, because it deemed the $2,500 fee exorbitant. The trial court consulted the court's chief judge, who agreed that the fee amounted to an extraordinary cost that the court should not pay. Defendant did not seek another expert and did not enter any evidence to establish that other experts were unavailable. Because the trial court agreed to pay for an expert on defendant's behalf, the state satisfied its obligation to provide defendant with the means to prepare his defense. Defendant's unilateral decision not to take advantage of the opportunity did not amount to a violation of his right to equal protection. And the trial court did not abuse its discretion in refusing to pay the expert's retainer fee.

There were no errors warranting relief.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly
/s/ Mark T. Boonstra

Exhibit D

Motion For Re-consideration

—24—

STATE of Michigan

N The Court of Appeals

People of the state of Michigan

           Plaintiff-Appellee,

V

SAMUEL lee DANTZLER

          Defendant-Appellant,  /

COURT of APPEAL NO: 303252

LOWER ct NO: 10-3521

SAMUEL lee DANTZLER

IN PRO-PER

Jon P. WOSTALA (P-49474)

Assistant prosecuting Attorney

11th Floor, 1441 St. Antoine

Motion For Re-Consideration

Pursuant to: MCR No. 215(I)

RespectFully submitted

SAMUEL lee DANTZLER

#518107

1500 CABERFAE Hwy

MANISTEE, Mich 49660-9200

DATE: 6-27-12

STATE OF Michigan

( IN The Court OF Appel

People of the state of Michigan

V                    Plaintiff-Appellee

Samuel lee Dantzler

            Defendant-Appellant
                                        /

Court of Appeal No: 303252

Lower Ct No: 10-3521

Samuel L. Dantzler

   In Pro-Per

Motion For Re-Consideration

Pursuant to: MCR 7, 215 (I)

In support of his motion, Defendant states:

1. Defendant has Filed An Appeal in this Honorable Court theru his Assigned Counsel Neil J. Leithauser, on or About December 27, 2011.

2. That this Honorable court made A Ruling on June 19, 2012 of Unpublished Opinion Affirming the defendant conviction of First-degree Felony-murder MCL 750, 316 (1)(b)

3. Defendant-Appellant Respectfully would Request that this Honorable court Re-consider this Appeal For the Following Reasons:

— 1 —

4) Defendant-Appellant was denied Effective Assistance of counsel on direct Appeal at a critical part of the proceedings, causing the defendant to be Prejudiced by counsel deficient Performance during the Appellate process.

## Discussion

ONE, Appellate counsel Failed to Represent the defendant at a critical stage of the proceedings. The defendant in his initial Appeal requested oral Arguments and this request was granted by this Honorable court. Appellate Counsel failed to be present to Argue the defendant cause, which is a total Abandonment of the issues, because the Prosecutor could not orally Argue because of their untimely filing a Response to the defendant brief. Therefore, for counsel not to be present to Argue his cause was deficient Performance.

TWO, Appellate counsel Prejudiced the defendant during the appeal, when the plaintiff filed a Response and the defendant was unable to submit a Reply because he Recieved the Response, THREE days before the deadline to Reply to the plaintiff. he Recieved the brief from Appellate Counsel (see Exhibits) This in turn Futher Prejudice the defendant Violating his sixth Amendment to Effective Assistance of Counsel.

— 2 —

## Standard of Review

When looking at all the issues of Appellate Counsel errors, you can look to Strickland V Washington, 466 US 668; 104 S.Ct 2052 80 L.Ed.2d 674 (1984) Although Strickland is designed for trial type proceedings, can be adapted for application to Appellate ineffectiveness claims and have guided other courts. Strickland provides that bench mark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the Adversarial process that the trial appeal cannot be relied on as having produced a just result 104. S.Ct 2064 Strickland Requires a two part non-sequential analysis into Attorney's performance and the Prejudice resulting therefrom.

## Deficient Performance

First, we must look at the steps of Appellate Counsel, to determine their performance in relationship to the defendant's appeal. This Review is limited to the facts on the record People V Wilson, 242 Mich App 350, 352; 619 NW2d 413 (2000) de novo, Here in these proceedings the record will show that in the initial brief for the defendant-Appellant counsel requested oral arguments and this request was granted by this Honorable Court. Therefore, for counsel to be absent at this critical stage, is clearly deficient performance, when their was a possibility to argue that the DNA Evidence was tainted by mis-appreciation of the crime lab. (See Exhibits).

— 3 —

Because here as the Record will show the Plaintiff Requested no oral Arguments, it's clear by the date of their Response to the defendant's brief that the Plaintiff had failed to make a timely Response, thus Forfieting their Right to Argue According to MCR 7.212 (4). So for Appellate Counsel not to be present is an Abandonment of the issue And Rendered Constitutionally ineffective Assistance And effectively Abandoned his client Cause, look At People V Watson, 245 mich APP 572 (2001) Id. At 587.

"An Appellant may not merely Announce his Position" And leave it to this court to discover And Rationalize the basis for his claims, nor may he give only A cursory treatment of And issue. (see) People V McDonald 237 mich App 2d At 197 (1999)

And For Appellate Counsel in A very crucial hearing dealing with A defendants Appeal only gave the issues A cursory treatment causes the defendant to have Actual or constructive denial of counsel, see Also Morse V Trippett, 102 F. Suppad 392 E.D. mich (2000) 2d At 410 where it saids:

"A defendant has An Absolute Right" to be Represented by counsel on his First Appeal of Right from his conviction

And for Counsel not to Appear And Argue the issues At this critical stage violated his Sixth And Fourteenth Amendment Rights. Especially when there's no one to Rebut his Argument,

—4—

Also appellate counsel failed the defendant on appeal by not consulting with his client in a timely manner, especially during a crucial part of the appellate process. The plaintiff filed a late response and not only was the response late, the defendant was unable to file a reply due to the negligence of appellate counsel. As you will see in the (exhibit) The defendant was unable to properly respond because he only got a copy of the plaintiff's brief only with THREE days left to file a reply or rebuttal. This conduct by counsel was not only deficient performance but, also a violation of the Michigan rules of professional conduct. SEE RULE 1.3 OF MRPC, where it states:

"A lawyer should pursue a matter in behalf of a client" despite opposition, obstruction or personal inconvenience to the lawyer, And may take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf."

Here, counsel did not follow these rules, because counsel hindered the defendant ability to defend himself on appeal.

Prejudice

Here Appellate counsel severely Prejudiced the defendant by his deficient performance during his direct appeal, if you look At Penson v Ohio, 488 U.S. 75, 83-109 S.Ct 346 102 L.Ed.2d 300 (1988)

-5-

Here in Penson, the United states Supreme Court has held that the need for forceful advocacy does not come to an abrupt halt as the legal proceedings moves from the trial to the Appellate stage. Both stages of the prosecution, Although perhaps involving unique legal skills, require careful Advocacy to ensure that rights are not forgone and substantial legal and factual arguments are not inadvertently passed over at 85.

Counsel did not protect his client's rights during the Appellate process and the defendant does not have to show that his counsel deficient conduct more likely than not altered the outcome in the case. The question is whether Counsel's errors were serious enough to deprive the defendant of a proceeding, the result of which was reliable. And when determining prejudice, the Court must consider the errors of counsel in total, against the totality of the proceeding Strickland, supra.

And you can see that Appellate counsel did in fact Prejudice the defendant in every aspect of the Appeal by decisions made during the whole Process. The U.S. Supreme Court Acknowledged the concern for avoiding a fundamental miscarriage of Justice, Particularly regarding ineffective assistance of counsel claims. If you look at Stokes V Scutt, 821 F. supp2d 898 (E.D mich, 2011) where it said;

— 6 —

" when serious allegations are made by indigent "
criminal defendant that his appointed counsel is
not providing adequate representation, they
should not be taken lightly.

This case goes on to say, Id. At 909 that:

" The U.S. Supreme Court has clearly established that
the complete denial of counsel during a critical stage of
a judicial proceeding mandates a presumption of prejudice "
        So here the record is clear by counsel failure to appear
At a critical hearing and to fail to properly forward the
plaintiff brief in response was a complete denial of counsel
during a critical stage of the appellate process. Counsel
performance did fall below an objective standard of
reasonableness and this error was sufficiently egregious and
Prejudicial People v Reed, 198 Mich App 639 (1993)
    The appeal cannot be deemed to be reliable based upon
ineffective assistance of counsel under the sixth and Fourteenth,
Amendments to the United States Constitution and under Article
1, Sec 20, Michigan Constitution 1963 counsel's performance
is deficient if, under an objective standard of reasonableness,
he made an error so serious that he was not functioning as
an attorney as guaranteed by the sixth Amendment. People v
Briseno, 211 Mich App 11, 17 (1995)

-7-

## Conclusion

Here Appellate Counsel was not giving Constitutionally Effective Assistance of Counsel, Appellate Counsel's Performance was deficient And that deficient Performance Prejudiced the Appeal, Carpenter v Mohr, 163 F.3d 938, 946 (CA6 1998) And it is counsel's duty to provide Competent Assistance And to Avoid serious mistakes, People v Garcia, 398 mich 250, 247 NW2d 547 (1976)

Wherefore, Defendant Appellant Request that this Honorable court Assign counsel And Allow the defendant to File Another Appeal of Right And or Re-consider the issues that were Raised Seeking Relief because of the errors of Appellate counsel that there is A Probability the Results would have been different.

Respectfully submitted

Samuel Dantzler

Samuel L. Dantzler
In Pro-Per

— 8 —

## Exhibits

1) motion For Extension to Reply to
   Plaintiff - Appellee's brief on Appeal

2) Letter From Court of Appeals clerk.

3) Letter From Prosecutor office dealing with DNA At lab

4) Correspondence to Appeal Attorney concerning DNA

STATE of Michigan

The Court of Appeals

People of the state of michigan

      Plaintiff-Appellee,

         Court of Appeal No: 303252

         Lower ct No: 10-3521

  V

Samuel Lee Dantzler

      Defendant-Appellant,

Samuel Lee Dantzler

In pro-per

Jon P. Wojtala (P-49474)
Assistant prosecuting Attorney
11th Floor, 1441 St. Antoine
Detroit mich 48226

**RETURNED**

APR 20 2012

COURT OF APPEALS
FIRST DISTRICT
LARRY S. ROYSTER
CHIEF CLERK

Motion for extension
to Reply to Plaintiff-Appellee's
Brief on Appeal

Samuel Lee Dantzler
#518107
1500 caberfae Hwy
Manistee, Mich 49660-9200

Date: 4-10-12

STATE OF MICHIGAN

In The Court of Appl.

People of the State of Michigan

    Plaintiff-Appellee,

V

Samuel Lee Dantzler

    Defendant-Appellant,

_____

Samuel Lee Dantzler
 In Pro-Per
_____

Court of Appeals No: 303252

Lower Ct No: 10-3521

Motion For Extension to
Reply to Plaintiff-Appellee's
Brief On Appeal

Pursuant to: MCR 7.216(B)

 In support of his motion, Defendant states:

1. Defendant has Filed An Appeal in this Honorable Court threw his Assigned counsel <u>Neil J. Leithauser</u>, On or About December 27, 2011

2. That the Plaintiff-Appelle File A Response dated March 21, 2012

-1-

3. That the Plaint-Appelle Response was not timely Filed Pursuant to: MCR 7.212(A)i)

4. At no time did the Defendant Recieve a motion From the Plaintiff-Appelle to extend the time For Filing

5) That Plaintiff has Forfeit the Right to oral Arguments is these Proceedings Pursuant to: MCR 7.212(4)

6) That the Defendant-Appellant Recieved the plaintiff Response on April 9, 2012 (see Attached exhibit to verify date)

7) That Defendant-Appellant Appellate Attorney did not Forward the plaintiff Response in a timely manner.

8) That the Defendant-Appellant would like to Reply to the Plaintiff-Appellee Brief in Accordance with MCR 7.212(G)

9) That Due to Defendant Counsel not being timely is Forwarding the Plaintiff Response, he cannot conform to the Rules of MCR 7.212(G)

10) That since plaintiff was not timely in their Response to the Defendant-Appellants brief

11) That the Defendant-Appellant be Afforded An Extension to Respond to the plaintiff-Appelle Response.

12) That this Honorable court Grant this Request Pursuant to MCR 7.216(B)

-2-

13. Defendant is seeking an order for an extension to give the Defendant his due Process under the law

14. That Failure to File A timely Response was not the Fault of the Defendant Negligence or Defendant Attempt to Delay the process of this Honorable court

14. In this case, the issues Raised on Appeal is complex, has considerable merit and involves legal principles of major Significance.

15. In Addition, the ends of Justice would best be served by granting this motion, thus maintaining the integrity of the court.

Wherefore, Defendant-Appellant prays this court will grant this motion and issue its order Pursuant to MCR 7.216 (B) in this cause.

Dated: 4-11-12

Respectfully submitted

_Samuel Dantzler_
Samuel L. Dantzler

— 3 —

Exhibit E

Order Denying motion for
Re-consideration

−25−

## Court of Appeals, State of Michigan

## ORDER

People of MI v Samuel Lee Dantzler

Docket No.    303252

LC No.    10-003521-FC

Elizabeth L. Gleicher
Presiding Judge

Michael J. Kelly

Mark T. Boonstra
Judges

---

The Court orders that the motion for reconsideration is DENIED.

Presiding Judge

---

A true copy entered and certified by Larry S. Royster, Chief Clerk, on



AUG 09 2012

Date



Chief Clerk

STATE of Michigan

IN THE SUPREME COURT

People of the state of michigan,

              Plaintiff-Appellee

vs

Samuel lee Dantzler

            Defendant-Appellant.

SUPREME Ct No. 145738

Court of Appeal No. 303252

Lower ct No. 10-003521-FC

Samuel L. Dantzler # 818107
In pro-per
1500 CABERFAE Hwy
Manistee, Mich 49660-9200

Jon P. Wojtala (P-49474)
Assistant prosecuting Attorney
11th Floor, 1441 St. Antoine
Detroit, mich 48226

145738 (68)

1/22

IP

Motion for Re-Consideration
Pursuant to: MCR 7.313(E)

Dated: 1-4-13

FILED

JAN 10 2013

CORBIN R. DAVIS
CLERK
MICHIGAN SUPREME COURT

Respectfully submitted

Samuel Dant

SAMUEL lee DANTZLER

STATE OF Michigan

In The Supreme Court

People of the state of michigan

           Plaintiff-Appellee

vs

Samuel Lee Dantzler

           Defendant-Appellant

Supreme Ct No. 145738

           (65)(66)

Court of Appeals No. 303252

Lower Ct No. 10-003521-FC

Samuel L. Dantzler
In Pro-per

## Motion For Reconsideration
### Pursuant to: MCR 7.313(E)

In Support of his motion, Defendant States:

1. Defendant Filed an Application For leave to Appeal with this Honorable Court on or About September 5, 2012

2. That this Honorable court made a Ruling denying the Application in a order on December 26, 2012

3. Defendant-Appellant Respectfully would Request that this Honorable Court to Re-consider this Appeal For the Following Reasons:

4. Defendant has Recently Found case law From the Court of Appeals that has merit dealing with Argument III on his Application that he would like For this Court to Review.

-1-

5. Defendant's Argument in brief is:

" Did the trial court's denial of necessary funds "
For An independent expert to Review the DNA
Evidence denied the defendant due Process
guarantee's under the 14th Amendment And
Const 1963 Art 1 sec. 17... ?

6. Defendant-Appellant would like to point out to
this Honorable court to look At the Record dealing with
issue <u>III</u>.

7. The Record will Reflect that the trial court intially
granted the defendant's Request For An independent expert
but, could not provide An expert because of the budget
Restraints on the court's.

8. So this case that is being Reviewed has merit dealing
with DNA Expert subject matter, that Relates to the Present
case And this case was Remanded back by this Honorable
Court to have An independent expert to Review the DNA.
court of Appeals No. 30517 <u>People</u> V <u>Davarrio Deonte-webb</u>,
michigan supreme ct No. 80511

9. Defendant would also point out that this case that the defendant Due process Rights were violated by the trial court

10. Also that the Ruling of this Honorable court in Webb, supra was dealing with the exact same subject matter in this issue.

Wherefore, Defendant-Appellant Ask this Honorable court Pursuant to: MCR 7.313(E) to Reconsider granting leave to Appeal for the trial court's violating the defendant's due process to a fair trial.

— 3 —

Respectfully

Samuel Dantzler

SAMUEL L. DANTZLER

Exhibit - A

People V Davarrio Deonte Webb

Unpublished Opinion

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 16, 2012

Plaintiff-Appellee,

v

No.   305017
Saginaw Circuit Court
LC No.   10-034573-FC

DAVARRIO DEONTE WEBB,

Defendant-Appellant.

---

Before:  TALBOT, P.J., AND WILDER AND RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree home invasion, MCL 750.110a(2), two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, safe breaking, MCL 750.531, and felon in possession of a firearm, MCL 750.224f.  Defendant was sentenced to 10 to 20 years for first-degree home invasion, two years for each count of felony-firearm, 10 to 20 years for safe breaking, and 10 to 20 years for felon in possession of a firearm.[1]  We reverse and remand for further proceedings.

## I. FACTUAL BACKGROUND

Richard Schomaker returned home in Saginaw Township after an evening away.  Upon entering his house, Schomaker immediately noticed that it had been ransacked, there were blood drops on the floor, a living room window broken, and the safe had been pried open.  The safe's entire contents of a wedding ring set, five long guns, and $1,600 cash were missing.  Schomaker called the police who arrived and collected a sample of the blood from the kitchen floor.  The blood sample was then run through CODIS, the nationwide law enforcement DNA database, and resulted in a match to defendant's DNA profile that was in the system for an unrelated matter.

Pursuant to a search warrant, the police collected another DNA sample from defendant, which corroborated the first DNA test.  The DNA expert testified that there were astronomical odds that the blood from the kitchen floor would have come from anyone other than defendant.

---

[1] Defendant's sentences for the two counts of felony-firearm run consecutively.

The DNA evidence was the only evidence linking defendant to the crime. Before trial, defendant requested the appointment of a DNA expert witnessed, which the trial court denied. The jury found defendant guilty of first-degree home invasion, safe breaking, felon in possession of a firearm, and two counts of felony-firearm. Defendant now appeals.

## II. STANDARD OF REVIEW

"We review the decision whether to appoint an expert for an abuse of discretion." *People v Lueth*, 253 Mich App 670, 689; 660 NW2d 322 (2002). "[A]n abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *People v Carnicom*, 272 Mich App 614, 617; 727 NW2d 399 (2006) (internal quotations and citation omitted).

## III. ANALYSIS

"Under the Due Process Clause, states may not condition the exercise of basic trial and appeal rights on a defendant's ability to pay for such rights." *People v Leonard*, 224 Mich App 569, 580; 569 NW2d 663 (1997). MCL 775.15 provides that an indigent defendant may request that the judge, "in his discretion[,] . . . make an order that a subpoena be issued" for a material witness favorable to defendant "without whose testimony [defendant] cannot safely proceed to a trial[.]" As reflected in this permissive language, it is a discretionary decision and "a trial court is not compelled to provide funds for the appointment of an expert on demand." *People v Tanner*, 469 Mich 437, 442; 671 NW2d 728 (2003). "[A] defendant must show a nexus between the facts of the case and the need for an expert." *Leonard*, 224 Mich App at 582. Also, "[i]t is not enough for the defendant to show a mere possibility of assistance from the requested expert. Without an indication that expert testimony would likely benefit the defense, a trial court does not abuse its discretion in denying a defendant's motion for appointment of an expert witness." *Tanner*, 469 Mich at 443 (internal quotations and citation omitted).

The trial court abused its discretion in denying defendant's request for an expert witness. The only evidence linking defendant to the crime was the DNA evidence. Thus, there was a nexus between the facts of the case and the need for a DNA expert, *Leonard*, 224 Mich App at 582, as the DNA evidence was the only evidence the prosecutor presented that defendant was guilty of the charged crime. Without the ability to have an independent DNA expert examine the blood samples, defendant was deprived of an opportunity to present a defense to the charged crimes. "[F]undamental fairness requires that the state not deny [indigents] an adequate opportunity to present their claims fairly within the adversary system." *Leonard*, 224 Mich App at 580 (internal quotations and citation omitted). In spite of this concern for fundamental fairness, the trial court failed to articulate any reasons justifying the denial of defendant's request for an independent DNA expert. Therefore, we find that the trial court abused its discretion in denying defendant's request for a DNA expert.

## IV. CONCLUSION

The trial court abused its discretion in denying defendant's motion for an expert witness. We reverse and remand for further proceedings. We do not retain jurisdiction.


/s/ Michael J. Talbot
/s/ Kurtis T. Wilder
/s/ Michael J. Riordan

STATE OF Michigan

IN THE SUPREME COURT

People of the State of Michigan

              Plaintiff-Appellee,

Vs

Samuel Lee Dantzler

            Defendant-Appellant

Supreme Ct No. 145738

Court of Appeal No. 303252

Lower Ct No. 10-003521-FC

Samuel Lee Dantzler # 518107

In Pro-Per

1500 Cabertae Hwy

Manistee, Mich 49660-9200

## PROOF OF SERVICE

Defendant Samuel L. Dantzler

I certify that on this 4 day of January 2012, I mailed one copy of Motion for Reconsideration for leave to appeal to:

Jon P. Wostala Assistant prosecuting attorney At 11th Floor, 1441 St Antoine, Street, Detroit mich 48226

P. MCCARY
Notary Public, State of Michigan
County of Mason
My Commission Expires Jan. 12, 2015
Acting in the County of MANISTEE

01-04-13

- 5 -

Samuel L. Dantzler

STATE OF Michigan

IN The Supreme Court

People of the state of Michigan

Plaintiff-Appellee,

Vs

Samuel Lee Dantzler

Defendant-Appellant,

Supreme Ct No. 145738

Court of Appeal No: 303252

Lower Ct No. 10-003521-FC

Samuel L. Dantzler # 518107

In Pro-per

1500 Caberfae Hwy

Manistee, Mich 49660-9200

Jon P. Wojtala (P-49474)

Assistant Prosecuting Attorney

11th Floor, 1441 St. Antoine

Detroit, Michigan 48226

Motion to Amend Application

For leave to Appeal to Add to

the Record

RETURNED
DEC 27 2012
CORBIN DAVIS
SUPREME COURT CLERK

Dated: 12-17-12

RECEIVED
DEC 26 2012
CORBIN R. DAVIS
CLERK SUPREME COURT

From: MI Supreme Court Clerk's Office
We are returning the attached pleading
because it arrived too late to be considered.
Order issued on: 12-26-12

Respectfully Submitted

L. Dantzler

# Order

**Michigan Supreme Court**
**Lansing, Michigan**

April 29, 2013

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano,
Justices

145738(68)

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellee,

v
                                  SC:  145738
                                  COA:  303252

SAMUEL LEE DANTZLER,
      Defendant-Appellant.
_____/
                                  Wayne CC:  10-003521-FC

       On order of the Court, the motion for reconsideration of this Court's December 26, 2012 order is considered, and it is DENIED, because it does not appear that the order was entered erroneously.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

April 29, 2013

                                 Clerk

d0422