UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL LEE DANTZLER,

     Petitioner,

v.

                            CASE NO. 2:13-CV-14764

CINDI CURTIN,
                            HON. LAURIE J. MICHELSON

     Respondent.
                            MAG. MONA K. MAJZOUB

_____

## Answer in Opposition to Petition for Writ of Habeas Corpus

## Introduction

Petitioner, Samuel Lee Dantzler, and several other relatives murdered Bernard Hill, savagely beating him and then shooting him in the back of the head because Hill had previously assaulted Dantzler's adult niece.

As a result of his Wayne County jury conviction of first degree felony murder (Mich. Comp. Laws § 750.316(1)(b)), Warden Cindi Curtin now holds Dantzler in custody in the Michigan Department of Corrections. Dantzler is currently serving sentence of life imprisonment for his murder conviction.

Dantzler commenced this action under 28 U.S.C. § 2254 by filing a

petition with this Court.  The State understands the petition to be

raising the following claims:

I.   The trial court's sua sponte modification to a requested
     adverse-inference instruction following destruction of
     material evidence denied Mr. Dantzler his state and
     federal constitutional rights to a fair trial by a properly
     instructed jury, sixth amendment right of
     confrontation, and fourteenth amendment due process
     right to defend against the charges.

II.  The prosecution failed to provide constitutionally
     sufficient evidence to prove that Mr. Dantzler
     participated in the crime, as a principal or aider and
     abettor, and the resulting conviction violates his due
     process guarantees under the fourteenth amendment
     and Mich. Const. 1936, art. 1, § 17.

III. The trial court's denial of necessary funds for an
     independent expert to review the DNA evidence denied Mr.
     Dantzler due process guarantees under the Fourteenth
     Amendment and Mich. Const. 1963 art. 1, § 17.

IV.  Appellant [sic] counsel was deficient for failing to preserve
     opportunity for oral arguments, for failing to forward
     response brief to Mr. Dantzler in a timely manner, and for
     failure to raise a reversible issue on appeal.

Should the Court interpret the petition to be raising different claims,

the State requests an opportunity to file a supplemental pleading.

The State now answers the petition and requests that it be denied. With respect to the bars that preclude habeas review, the State asserts the following in conformance with Habeas Rule 5(b):

## A.    Statute of Limitations

The State is not arguing that the statute of limitations bars any of Dantzler's habeas claims.

## B.    Exhaustion

The State asserts that Dantzler has not exhausted claim four, that appellate counsel was ineffective, in the state courts as more fully discussed below.  Dantzler also failed to exhaust any claim that the DNA evidence used at his trial was not reliable.

## C.    Procedural Default

 The State asserts that Dantzler's first claim is procedurally defaulted as argued below.

## D.    Non-retroactivity Doctrine

Dantzler may not rely on rules of law that were recognized after his conviction became final.  The State is not arguing that any of Dantzler's claims are barred by the non-retroactivity doctrine.

3

## Statement of the Case

### A.   Trial Facts

On the evening of January 15, 2006, Bernard Hill, was at his mother, Janet Burt's house.  While Hill was there, his former girlfriend and mother of his child, Quiana Turner, arrived to drop the child off. (12/16/10 Trial Tr. at 71-72.)  Burt was going to watch the child.  Turner and Hill left the house separately but eventually met up later that evening.  When Hill and Turner met the second time, Hill assaulted Turner. (12/16/10 Trial Tr. at 73.)  Turner reported the assault to her mother and word of the assault made its way to other members of Turner's family. (12/21/10 Trial Tr. at128.)

At approximately 1:00 a.m. on January 16, 2006, two members of Turner's family, Rodney Turner and Samuel Lamare Dantzler (Dantzler's son), banged on Burt's door. (12/16/10 Trial Tr. at 75.)  Burt looked out the window and saw a gold car parked outside her home. (12/16/10 Trial Tr. at 77.)  Burt recognized the car as belonging to Dantzler.  (12/16/10 Trial Tr. at 77.)  When Burt did not answer the door, Rodney Turner and Samuel Lamare Dantzler walked to the gold

4

car.  When the men opened the car door, Burt saw several other people inside.  (12/16/10 Trial Tr. at 78.) The car then drove away.

In the meantime, Hill had returned to the apartment he shared with his girlfriend, Nikitta McKenzie.  Hill told McKenzie that something had happened between himself and Quiana Turner. (12/16/10 Trial Tr. at 160.)  Hill seemed very nervous.  (12/16/10 Trial Tr. at 161.)  McKenzie and Hill got ready for bed.  Before going to bed, Hill walked into the living room area of the apartment.  Hill said that he saw shadows outside the apartment and hid inside a closet. (12/16/10 Trial Tr. at 162.)

As McKenzie started to walk into the living room, the door to the apartment was busted down; approximately six African-American males entered. (12/16/10 Trial Tr. at 163.)  One of the men carried a firearm; another carried a golf club.  (12/16/10 Trial Tr. at 163-165.) The men were dressed in black and at least one of them wore a black knit hat.  (12/16/10 Trial Tr. at 163.)  The man with the firearm pointed it at McKenzie and asked where Hill was.  McKenzie said Hill lived in the apartment but was not there at the time.  The man with the firearm

asked again and Hill came out of the bedroom.  (12/16/10 Trial Tr. at 165.)

A fight ensued between Hill and the men.  McKenzie ran into the bathroom and closed the door.  From inside the bathroom, McKenzie heard fighting inside the apartment.  (12/16/10 Trial Tr. at 165-166.) McKenzie then heard Hill scream followed by gunshots.  After not hearing anything for a short period of time, McKenzie left the bathroom.  She saw a person enter the apartment and break the television.  The person dropped a stereo onto the floor and ran out of the apartment.  (12/16/10 Trial Tr. at 167.)

McKenzie walked out of the apartment.  On her way out, McKenzie saw a black hat on the floor.  (12/16/10 Trial Tr. at 168.)  The hat was not in the apartment before the men forcibly entered. McKenzie noticed a trail of blood leading out of the apartment.  She followed the trail to the first floor of the apartment building where she found Hill lying by the entrance.  (12/16/10 Trial Tr. at 168.)  McKenzie called the police but, by the time an ambulance arrived, Hill was dead. (12/16/10 Trial Tr. at 183-184.)

Police located two spent .380 caliber casings and two golf club shafts along the route Hill traveled from the apartment to the front door of the building.  (12/16/10 Trial Tr. at 6-19.)  There was evidence of a fight in the apartment.  (12/16/10 Trial Tr. at 192.)

Hill died from a single gunshot wound to the back of his head. (12/15/10 Trial Tr. at 63.)  The bullet traveled through his skull, brain, spine, and brain stem.  (12/15/10 Trial Tr. at 63.)  Hill also suffered blunt force injuries to his body; one injury was strong enough to leave the imprint of a diamond on his skull; another that created a divot in his skull.  (12/15/10 Trial Tr. at 65.)  Hill had defensive wounds on his forearms, which indicated that he struggled with his attackers. (12/15/10 Trial Tr. at 69.)

In the months after Hill's murder, Police investigation yielded no suspects and the case went cold.  In 2009, police reopened the investigation and tested the black hat that was left in the apartment for DNA.  A sample of the DNA located in the hat was entered into the CODIS database; it matched Dantzler's DNA profile.  (12/16/10 Trial Tr. at 148.)  The initial sample of DNA and three additional samples from the hat were compared to Dantzler's known samples.  Testing

7

determined that Dantzler was the major contributor of DNA in the initial sample. (12/20/10 Trial Tr. at 46.)  In a random sample of the population, only 1 in 2 quadrillion people would match the initial DNA sample from the hat.  (12/20/10 Trial Tr. at 47.)  Dantzler could neither be included, nor excluded as the contributor of the remaining three DNA samples taken from the hat.  (12/20/10 Trial Tr. at 48-52.)

At trial, the mother of Dantzler's child, Marie Simpson, testified that, after she got off work, she picked Dantzler up from a house on Blackstone in Detroit on the night of January 15, 2006.  (12/21/10 Trial Tr. at 59.)  She and Dantzler went to her residence where they stayed the night.  Dantzler did not leave the home that night and was still there at 6:00 a.m. on January 15, 2006.  (12/21/10 Trial Tr. at 60.)  Simpson had never seen Dantzler wear a black knit hat like the one located in Hill's apartment.  (12/21/10 Trial Tr. at 94.)

Dantzler also testified that he spent the night at Simpson's home on January 15, 2006.  (12/21/10 Trial Tr. at 106-107.)  Dantzler was aware that Hill had beaten Quiana Turner on January 15, 2006, but denied that he did anything about it.  (12/21/10 Trial Tr. at 97-98.)  Dantzler denied that he was with Rodney Turner or Samuel Lamare

Dantzler on the night of January 15, 2006.  He also denied going to Burt's home or Hill's apartment.  (12/21/10 Trial Tr. at 101.)

Dantzler claimed that did not know Hill was dead until two days later.  (12/21/10 Trial Tr. at 102.)  Dantzler admitted that he once owned a gold car like the one described by Burt, but claimed that he gave it to his brother-in-law in 2005.  (12/21/10 Trial Tr. at 108.)  He later denied that he ever owned a gold car and insisted that he said an "old" car. (12/21/10 Trial Tr. at 158.)

Dantzler had worn black knit hats in the past.  His only explanation as to how a hat with his DNA was located at Hill's apartment was that somebody put it there or he had worn the hat before.  His explanation for Hill's DNA being on the hat was that Hill "most likely wore that hat before."  (12/21/10 Trial Tr. at 161-162.)

A Wayne County jury found Dantzler guilty of first-degree felony murder. (Mich. Comp. Laws § 750.316(1)(b)).  (12/22/10 Trial Tr. at 40-41.)  On January 20, 2011, Dantzler was sentenced to life in prison without parole for his murder conviction.  (1/20/11 Sentencing Tr. at 9.)

The Michigan Court of Appeals accurately summarized the facts adduced at trial as follows:

> This case arises from the January 2006, savage beating and murder of Bernard Hill. That night, Hill "jumped on" his ex-girlfriend, Quiana Turner, with whom he had a child. After assaulting Turner, Hill went to Nikitta McKenzie's apartment; McKenzie was Hill's current girlfriend. Sometime after 12:45 a.m., Hill looked out a window and saw shadows moving about. He hid in the living room closet and someone kicked in the front door. Six black men wearing black clothing, including black hats, rushed into McKenzie's apartment. One of the men shoved a gun in McKenzie's face and demanded to know if Hill lived there. McKenzie told the men that Hill lived in the apartment, but was not home. The man with the gun again demanded to know if Hill lived there and she repeated her response. Hill then emerged from the closet. McKenzie retreated to the bathroom and waited for the men to leave. She heard loud crashes, furniture falling, and the men fighting. Finally, she heard Hill scream, followed by gunshots. The room fell silent. She discovered Hill's body nearby; he died from a single gunshot wound to the back of his head. A jury convicted defendant of first-degree felony murder on the theory that he either killed Hill or aided and abetted in Hill's murder while participating in breaking and entering McKenzie's apartment.

*People v. Dantzler*, No. 303252, 2012 WL 2335913 at *1 (Mich. Ct. App. June 19, 2012). This recitation of the facts is entitled to the presumption of correctness under § 2254(e)(1), and Dantzler has not demonstrated through clear and convincing evidence that this summary is incorrect.

10

The presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records.  *Treesh v. Bagley*, 612 F.3d 424, 430 n.1 (6th Cir. 2010); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001) (*citing Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).  *See also McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous"); *Goodwin v. Johnson*, 632 F.3d 301, 308 (6th Cir. 2011) ("[W]here factual findings are challenged, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings are correct."); *Wainwright v. Goode*, 464 U.S. 78, 82-83 (1983) (writing that because "[a]t best, the record is ambiguous" and more than one "conclusion[ ] find[s] fair support in the record," the federal appellate court "erred in substituting its view of the facts for that of the [state court]").  *See also Tinsley v. Borg*, 895 F.2d 520, 526 (9th Cir. 1990) ("Even though the state appellate court is, in a sense, in no better position than we are to evaluate the state trial court record, [the habeas statute] requires us to accord the same presumption of correctness to its factual findings.");

11

*Goodwin v. Johnson*, 132 F.3d 162, 183-84 (5th Cir. 1997) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.").

The State opposes any factual assertions made by Dantzler that are not directly supported by—or consistent with—the state court record, because Dantzler has failed to overcome the presumption of factual correctness under 28 U.S.C. § 2254(e)(1) or meet the requirements of 28 U.S.C. § 2254(e)(2).

## B.   Procedural History

Following his conviction and sentence, Dantzler filed a claim of appeal in the Michigan Court of Appeals, that raised the following claims:

I.   The trial court's *sua sponte* modification to a requested adverse-inference instruction following destruction of material evidence denied Mr. Dantzler of his state and federal constitutional rights to a fair trial by a properly instructed jury, Sixth Amendment right of confrontation, and Fourteenth Amendment due process right to defend against the charges.

II.   The evidence was insufficient to prove Mr. Dantzler participated in the crime, as principal or aider and abettor, and the resulting conviction is violative of his due process guarantees under the Fourteenth

Amendment and Const. 1962, art. 1, §17, and must be reversed.

III.   The trial court's denial of necessary funds for an independent expert to review the DNA evidence denied Mr. Dantzler due process guarantees under the Fourteenth Amendment and Const. 1962, art. 1, §17 and must be reversed.

The Michigan Court of Appeals affirmed Dantzler's conviction in an unpublished opinion. *Dantzler*, 2012 WL 2335913, at *4.

Dantzler subsequently filed an application for leave to appeal in the Michigan Supreme Court that raised the same claims as in the Michigan Court of Appeals. He also filed a motion to remand for an evidentiary hearing, claiming that appellate counsel was ineffective. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court, and also denied the motion to remand. *People v. Dantzler*, 493 Mich N.W.2d 918 (Mich. 2012) (unpublished table decision). Dantzler filed a motion for reconsideration that was also denied. *People v. Dantzler*, 493 Mich N.W.2d 971 (Mich. 2013) (unpublished table decision).

Dantzler  did not appeal to the United States Supreme Court or seek collateral review before the trial court.  Rather, he filed the instant petition for habeas relief.

## Standard of Review Pursuant to AEDPA

Congress mandated the standards of review in federal habeas proceedings in 1996 in AEDPA and it "prevent[s] federal habeas 'retrials'" and ensures that state-court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  AEDPA "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  "The limitations imposed by AEDPA are several and significant."  *Rice v. White*, 660 F.3d. 242, 250 (6th Cir. 2011).[1]  The requirements of AEDPA "create an

---

[1] The Supreme Court has emphasized that federal courts must adhere to AEDPA's stringent and limiting standards, reversing no fewer than 21 appellate AEDPA decisions since 2010.  *See Metrish v. Lancaster*, 133 S. Ct. 1781 (2013); *Marshall v. Rodgers*, 133 S. Ct. 1446 (2013) (per curiam); *Johnson v. Williams*, 133 S. Ct. 1088 (2013); *Ryan v. Gonzales*, 133 S. Ct. 696 (2013); *Parker v. Matthews*, 132 S. Ct. 2148 (2012) (per curiam); *Coleman v. Johnson*, 132 S. Ct. 2060 (2012) (per curiam); *Howes v. Fields*, 132 S. Ct. 1181 (2012); *Hardy v. Cross*, 132 S. Ct. 490 (2011) (per curiam); *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011) (per curiam); *Cavazos v. Smith*, 132 S. Ct. 2 (2011) (per curiam); *Bobby v. Mitts*, 131 S. Ct. 1762 (2011) (per curiam); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011); *Felkner v. Jackson*, 131 S. Ct. 1305 (2011) (per curiam); *Swarthout v. Cooke*, 131 S. Ct. 859 (2011) (per curiam); *Premo v. Moore*, 131 S. Ct. 733 (2011); *Harrington v. Richter*, 131 S. Ct. 770, 781 (2011); *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2265 (2010); *Renico v. Lett*, 559 U.S. 766, 776 (2010); *Berghuis v. Smith*, 559 U.S. 314 (2010); *Thaler v. Haynes*, 559 U.S. 43 (2010) (per curiam); *Smith v. Spisak*, 558 U.S. 139 (2010); *McDaniel v. Brown*, 558 U.S. 120 (2010) (per curiam).

independent, high standard to be met before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007). "Federal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983). "A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Smith v. Phillips*, 455 U.S. 209, 221 (1982).

Congress has limited the availability of federal habeas corpus relief "with respect to any claim" the state courts "adjudicated on the merits." 28 U.S.C. § 2254(d). Habeas relief may not be granted to Dantzler under § 2254(d) unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunction in the state criminal justice systems, not a

substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  Federal courts performing habeas review do not act as "super-appellate state courts." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002).  "The federal habeas court does not act as an additional state appellate court to review a state court's interpretation of its own law or procedure." *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987).  A federal court's "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

AEDPA restricts the body of law a habeas court may consider.  By its terms AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d)(1).  Because "[s]tate courts are not bound by the dictates of the lower federal courts," "a lower federal court's application of Supreme Court precedent is not inherently any more 'right' or 'correct' than that of state courts." *Evans v. Thompson*, 518 F.3d 1, 8 (1st Cir. 2008).  "It is the Supreme Court, and the Supreme Court alone, that has the 'revising authority' to 'control [the state courts'] jarring and discordant judgments, and harmonize

them into uniformity.'" *Id.* at 8 n.3 (*quoting Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 348 (1816)); *see also Thayer v. Haynes*, 559 U.S. 43, 49 (2010) ("[W]e hold that no decision of this Court clearly establishes the categorical rule on which the Court of Appeals appears to have relied.").  Thus, under AEDPA, if there is no "clearly established Federal law, as determined by the Supreme Court" that supports a habeas petitioner's legal argument, the argument must fail.  *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

As the Supreme Court explained in *Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), "clearly established Federal law" referred to in § 2254(d)(1) includes Supreme Court decisions at the time of the state-court adjudication on the merits but does not include Supreme Court decisions issued after the state court merits decision but before Dantzler's conviction becomes final.  This is so because the purpose of federal collateral review is to uphold final state court judgments that were valid when entered, not as a "mechanism for the continuing reexamination of final judgments." *Sawyer v. Smith*, 497 U.S. 227, 234 (1990).

The only federal law that can be clearly established under §
2254(d) is Supreme Court precedent interpreting the Constitution.
*Early v. Packer*, 537 U.S. 3, 10 (2002).  Indeed, Supreme Court decisions
not based on constitutional grounds, e.g., decisions based on the Court's
supervisory powers, are "off the table as far as § 2254(d) is concerned."
*Id.*  Moreover, "[c]learly established law" under 28 U.S.C. § 2254(d)(1) is
"the *holdings*, as opposed to the dicta, of this Court's decisions."
*Metrish v. Lancaster*, 133 S. Ct. 1781, 1792 (2013) (*quoting Taylor*, 529
U.S. at 412 (2000)).  And merely distinguishing Supreme Court
precedent is insufficient to establish the entitlement to habeas relief.
*Lancaster*, 133 S. Ct. at 1792.

With respect to § 2254(d)(1), a state court decision is "contrary to"
federal law only "if the state court arrives at a conclusion opposite to
that reached by [the Supreme] Court on a question of law or if the state
court decides a case differently than [the Supreme] Court has on a set of
materially indistinguishable facts."  *Taylor*, 529 U.S. at 412-13.  A state
court decision "involves an unreasonable application of clearly
established Federal law" pursuant to § 2254(d)(1) if "'the state court
identifies the correct governing legal principle from [the Supreme]

Court decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413).

It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas review." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Further, "'[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (*quoting Visciotti*, 537 U.S. at 24-25). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). A federal habeas court "fails to give proper deference to state courts by conflating error (even

20

clear error) with unreasonableness." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Deference must be given even in cases "where the state court's reasoning is flawed or abbreviated." *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009). In habeas review, the federal courts look at the "result that the state court reached, not 'whether [its decision] [was] well reasoned.'" *Robinson v. Polk*, 438 F.3d 350, 358 (4th Cir. 2006) (*quoting Wilson v. Ozmint*, 352 F.3d 847, 855 (4th Cir. 2003)).

Moreover, "[u]nder *Johnson v. Williams* and *Richter*, it is clear that a bad reason does not necessarily mean that the ultimate result was an unreasonable application of established doctrine. A state court could write that it rejected a defendant's claim because Tarot cards dictated that result, but its decision might nonetheless be a sound one. If a state court's rationale does not pass muster . . . , the only consequence is that further inquiry is necessary." *Brady v. Pfister*, 711 F.3d 818, 827 (7th Cir. 2013).

Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is

possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Richter*, 131 S. Ct. at 786. Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87; *accord Lancaster*, 133 S. Ct. at 1786-87.

The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 131 S. Ct. at 786. Furthermore, the Court reiterated that the AEDPA requires federal habeas courts to review state court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 785-86 (*quoting Yarborough*, 541 U.S. at 664). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

When a federal claim has been presented to a state court, and the state court denies relief, a rebuttable presumption arises that the state court adjudicated the federal claim on its merits, irrespective of whether the court explicitly discusses the federal claim. *Johnson v. Williams*, 133 S. Ct. 1088, 1094-98 (2013). Indeed, it is the result to which deference is owed, not the opinion expounding it. As explained in *Rashad v. Walsh*, 300 F.3d 27, 45 (1st Cir. 2002), "[i]t is not our function . . . to grade a state court opinion as if it were a law school examination." Even if "the state court clearly applied an incorrect standard," then we must nonetheless decide whether "it reached the correct outcome." *West v. Bell*, 550 F.3d 542, 554 (6th Cir. 2008). A federal habeas court ultimately "review[s] for reasonableness the state court's ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001).

The Supreme Court has also consistently drawn a distinction between state court decisions applying a broad constitutional standard and those that apply a narrow rule. As explained in *Yarborough v. Alvarado*, where a general standard is at issue, state court decisions are given greater leeway:

> If a legal rule is specific, the range may be narrow.
> Applications of the rule may be plainly correct or incorrect.
> Other rules are more general, and their meaning must
> emerge in application over the course of time.  Applying a
> general standard to a specific case can demand a substantial
> element of judgment.  As a result, evaluating whether a rule
> application was unreasonable requires considering the rule's
> specificity.  The more general the rule, the more leeway
> courts have in reaching outcomes in case by case
> determinations.

*Yarborough*, 541 U.S. at 664; *accord Renico v. Lett*, 559 U.S. 766, 776

(2010).  Open-ended standards give states wide berth on habeas review.

*Richter*, 131 S. Ct. at 786.  Thus, in *Knowles v. Mirzayance*, 556 U.S.

111, 114 (2009), the Court held that ineffective-assistance-of-counsel

claims must be given extra latitude in light of the general nature of the

rule:  "[B]ecause the *Strickland* standard is a general standard, a state

court has even more latitude to reasonably determine that a defendant

has not satisfied that standard."

Furthermore, with respect to § 2254(d)(2), a determination of a

factual issue made by the state courts shall be presumed correct and

may be rebutted only by clear and convincing evidence.  28 U.S.C. §

2254(e)(1); *Landrigan*, 550 U.S. at 473-74.  Facts found by a state

appellate court enjoy the same presumption.  *Lundgren v. Mitchell*, 440

F.3d 754, 763 (6th Cir. 2006).  Where a state court's factual findings are

24

not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." *Campbell v. Vaughn*, 209 F.3d 280, 289 (3d Cir. 2000) ("[A]n implicit finding of fact is tantamount to an express one, such that deference is due to either determination." *Id.* at 286 (*citing Parke v. Raley*, 506 U.S. 20, 35 (1992)). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id.* (*citing Marshall v. Lonberger*, 459 U.S. 422, 433 (1982)).

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Rice v. Collins*, 546 U.S. 333, 339 (2006) (noting that even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination"). And, as explained in *Daniels v. Lafler*, 501 F.3d 735, 740 (6th Cir. 2007), a state court's resolution of an issue in the Dantzler's favor is not entitled to deference

under AEDPA because the "standard of review is a precondition to the grant of habeas relief . . . not an entitlement to it."

Lastly, the Supreme Court has held that "review under § 2254(d)(1) focuses on what a state court knew and did." *Pinholster*, 131 S. Ct. at 1399.  Therefore, review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* at 1398.

If the state court adjudicated any of Dantzler's claim on the merits, this Court must deny any attempt by Dantzler  to supplement the state court record, whether through an evidentiary hearing, discovery, or the presentation of new evidence in light of United States Supreme Court precedent.  *Pinholster*, 131 S. Ct. 1388 (2011); *accord Ballinger v. Prelesnik*, 709 F.3d 558, 562 (6th Cir. 2013) ("While allowing a petitioner to supplement an otherwise sparse trial court record may be appealing, especially where he diligently sought to do so in state court, the plain language of *Pinholster* and *Harrington* preclude it.").

If any of Dantzler's claims were procedurally defaulted or otherwise not adjudicated on the merits, he has not demonstrated

26

entitlement to a federal evidentiary hearing because the petition may be denied based on the existing record.  *See* 28 U.S.C. § 2254(e)(2).  *See also Pinholster*, 131 S. Ct. at 1398 (holding that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").  In *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007), the United States Supreme Court held that "[b]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate."  The Court held that "[i]t follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  *Id.*

# Argument

**I.    Dantzler's claim that the trial court's adverse inference instruction was flawed is waived, procedurally defaulted and partially non-cognizable.  But, even if Dantzler could overcome those procedural impediments, the Michigan Court of Appeals alternate merits analysis is entitled to AEDPA deference.**

For his first habeas claim, Dantzler  asserts that the trial court improperly modified an adverse inference jury instruction.  To the extent that Dantzler claims the language the trial court used was incorrect, he states a non-cognizable issue of state law.   Further, this claim was waived by Dantzler as his trial attorney specifically approved of the instruction.  However, even if this waiver is overlooked, Dantzler's claim is procedurally defaulted because he did not object to the instruction at trial.  Lastly, to the extent to the claim is cognizable, the Michigan Court of Appeals alternate merits adjudication of this issue, that Dantzler was not even entitled to the instruction, is entitled to AEDPA deference and was not an unreasonable application of clearly established Supreme Court precedent.  Dantzler is not entitled to habeas relief on this claim.

### A. To the extent that Dantzler claims any state law violation regarding the language of the jury instruction, his claim is not cognizable.

The extraordinary remedy of habeas corpus lies only for a violation of the United States Constitution, federal laws, or treaties of the United States. 28 U.S.C. § 2254(a). "A necessary predicate for the granting of federal habeas relief ... is a determination by the federal court that [the applicant's] custody violates the Constitution, laws, or treaties of the United States." *Rose v. Hodges*, 423 U.S. 19, 21 (1975). *See also Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010) (per curiam) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."); *Swarthout v. Cooke*, 131 S. Ct. 859, 862–63 (2011) (per curiam) (federal habeas relief does not lie for errors of state law); *Rivera v. Illinois*, 556 U.S. 148, 158 (2009) ("[a] mere error of state law . . . is not a denial of due process.") (internal quotation marks omitted).

Both the United States Supreme Court and the Sixth Circuit Court of Appeals have held that errors in the application of state law are not to be questioned on habeas review and that federal habeas courts have no authority to interfere in matters of state law. *See Estelle*

29

*v. McGuire*, 502 U.S. 62, 67–68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990).  *See also Crane v. Kentucky*, 476 U.S. 683, 689 (1986) (noting the Court's "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts"); *Dowling v. United States,* 493 U.S. 342, 352 (1990) (indicating that introduction of improper evidence does not amount to a violation of due process unless the evidence "is so extremely unfair that its admission violates 'fundamental conceptions of justice'").  "A state court's evidentiary ruling is generally not cognizable in federal habeas corpus, unless the decision was so fundamentally unfair that it amounts to a due process violation."  *Henness v. Bagley*, 644 F.3d 308, 326 (6th Cir. 2011).

As the Sixth Circuit has explained, "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive Petitioner of due process under the Fourteenth Amendment."  *McAdoo*

*v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (*quoting McGuire*, 502 U.S. at 69–70).

A federal habeas court must accept as correct a state court's interpretation of the statutes and rules of practice of that state. *Estelle*, 502 U.S. at 67-68. Thus, the Sixth Circuit has held that federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (*quoting Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)).

In a federal habeas action, errors in jury instructions are generally not cognizable unless they deprive petitioner of a fundamentally fair trial." *Weese v Turner*, 187 F.3d 639 (6th Cir. 1999) (*citing Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986)). "Alleged errors in jury instructions normally do not rise to the level of federal constitutional violations if they are not objected to at trial." *Weese*, 187 F.3d at 4 (*citing Engle v. Isaac*, 456 U.S. 107 (1982)). In *Henderson*, the Supreme Court noted the difficulty in sustaining a collateral attack of a state court judgment regarding a jury instruction:

31

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal.  The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process", *Cupp v. Naughten*, 414 U.S. 141, 147; 94 S. Ct. 396, 400; 38 L. Ed. 2d 368 (1973), not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,'" *Id*., at 146, 94 S. Ct. at 400.  *Henderson*, 431 U.S. at 154.

Thus, to the extent that Dantzler claims the instruction violated state law, his claim is not cognizable.

### B.    Dantzler's claim is waived

During trial, it was revealed that the Wayne County Medical Examiner had preserved clippings of the victim's fingernails. (12/15/10 Trial Tr. at 81.)  The clippings were collected because of the possibility that tissue samples from one or more of the attackers may have transferred to the victim while he struggled prior to his murder. (12/15/10 Trial Tr. at 81.)  The clippings were not picked up by the

Detroit Police at the same time that a sample of the victim's blood was retrieved and remained at the Medical Examiner's Office until 2009 when they were destroyed by that office. (12/21/110 Trial Tr. at 105.)

Based on that testimony, Dantzler's trial counsel requested an instruction that the jury that it could "infer" that the potential evidence missing due to the destruction of the fingernail clippings was unfavorable to the prosecution and favorable to the defendant. (12/22/10 Trial Tr. at 7.) The prosecution objected to the proposed instruction because there was no showing that the clippings were destroyed in bad faith. (12/22/10 Trial Tr. at 9.) Despite the absence of bad faith, the trial judge determined it would be fair to Dantzler give some type of instruction addressing the missing fingernail clippings. The trial court decided that, rather than informing the jury that it could "infer" that the evidence would have been unfavorable to the prosecution, it would read an instruction that the jurors "may consider whether this evidence would have been" unfavorable to the prosecution and favorable to the defendant. (12/22/10 Trial Tr. at 12.)

As correctly noted by the Michigan Court of Appeals, Dantzler waived any claim of error regarding the jury instruction because his attorney approved the instruction:

> Defendant first argues that the trial court denied him his due process rights by refusing to instruct the jury that is could infer that missing fingernail evidence would have exonerated him. At trial, defendant's lawyer successfully argued—over the prosecutor's objection—that the trial court should give the jury an adverse inference instruction with regard to missing fingernail evidence. The trial court agreed to give the instruction, but decided to alter the standard instruction by changing the word "infer" to "consider." Thus, the trial court instructed the jury that it could consider whether, rather than infer that, the evidence would have exonerated defendant. Defendant's trial lawyer thanked the court for the instruction and later expressed agreement with the instruction. By affirmatively approving the instruction, defendant's lawyer waived any claim that the instruction was erroneous. *People v. Carter,* 462 Mich. 206, 215–216; 612 NW2d 144 (2000). Hence, there is no error to review. *Id.* at 216.

*Dantzler*, 2012 WL 2335913, at *1. Waiver is an "intentional relinquishment or abandonment of a known right." *People v. Riley*, 465 Mich. 442, 449 (2001) (*quoting United States v. Olano*, 507 U.S. 725, 733 (1993)). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *United States v. Griffin*, 84 F3d 912, 924 (7th Cir. 1996) (*citing Olano*, 507 U.S. at 733-734). Forfeiture is "the

failure to make the timely assertion of a right" and, unlike waiver, forfeiture does not extinguish an error.  *Riley*, 465 Mich at 449, *citing Olano*, 507 US at 733.

As the Seventh Circuit explained in *United States v. Griffin*, because waiver precludes review by extinguishing error, its operative force depends upon the context in which it is made and its character. *Griffin*, 84 F.3d at 924.  "The right to object to jury instructions on appeal is waived if the record illustrates that the defendant approved of the instructions at issue."  *Griffin*, 84 F.3d at 924.  The court need not directly address the issue to the defendant, nor is defendant required to personally waive objection.  The waiver must, however, arise out of voluntary affirmative conduct – it must be an "intentional relinquishment or abandonment."  *Griffin*, 84 F.3d at 924.

Extinguishment of error through waiver was well established under state and federal law at the time of the proceedings in this case. Dantzler's trial counsel was satisfied with the instruction that the court was inclined to give to the jury, thus waiving the issue.

## C.    Alternatively, Dantzler's claim is procedurally defaulted

Although waiver of an issue goes beyond a procedural default by actually extinguishing error, defense counsel's failure to object to the instructions as given was also a procedural default.  See *Cordell v. Warren*, No. 5:07-cv-10830, 2007 WL 4287543, at *3 (E.D. Mich. Dec. 5, 2007) (O'Meara, J.) (Where the Michigan Court of Appeals relied on the parties' expression of approval of the jury instructions as given to reject the petitioner's instructional error claim, the petitioner's claim was procedurally defaulted), *citing McKissic v. Birkett*, 200 Fed. Appx. 463, 471 (CA 6, 2006); cert. den. 127 S. Ct. 1383; 167 L. Ed. 2d 162 (2007).

To the extent a petitioner deprives the state court of the opportunity to review his claims by failing to follow reasonable state-court procedures, review of the claims is barred.  "[P]rocedural default results where three elements are satisfied:  (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim; (2) the state courts actually enforced the procedural rule in the petitioner's case; and (3) the procedural forfeiture is an 'adequate and independent' state ground foreclosing review of a federal constitutional

claim." *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (*quoting*

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

In this case, Dantzler's claim is procedurally defaulted because,

aside from waiving the issue, trial counsel did not object to the jury

instruction at the time of trial. Thus, Dantzler failed to comply with a

state court procedural rule that requires defendants to object at the

time of trial before raising an issue on appeal. *See People v. Carines*,

460 Mich. 750, 761-64 (1999) (unpreserved constitutional error); *People*

*v. Grant*, 445 Mich. 535, 546 (1994) (unpreserved non-constitutional

error).

The last state court to issue a reasoned opinion on his claim was

the Michigan Court of Appeals, which denied Dantzler relief, in part,

because he failed to object to the instruction at trial, reviewing his claim

for plain error. *Dantzler*, 2012 WL 2335913, at *1. This reason for

denying relief constitutes a procedural default.

A State prisoner who fails to comply with a State's procedural rule

waives the right to federal habeas review absent a showing of cause for

noncompliance and actual prejudice resulting from the alleged

constitutional violation, or a showing of a fundamental miscarriage of

justice. *Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *See, e.g.*, *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Haliym v. Mitchell*, 492 F.3d 680, 690-91 (6th Cir. 2007). A petitioner must present a substantial reason to excuse the default. *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994); *see also Amadeo v. Zant*, 486 U.S. 214, 222-23 (1988) (reviewing a claim that a document was concealed by officials).

One recognized reason includes attorney error rising to the level of ineffective assistance of counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991). Dantzler's procedural default is not excused because as later explained, trial counsel was not ineffective for failing to object to the instruction as given, and appellate counsel was not ineffective for failing to raise a claim of ineffective assistance of trial counsel. Because Dantzler cannot demonstrate good cause, this Court need not address whether he has shown actual prejudice.

The narrow exception for fundamental miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Carrier*, 477 U.S. at 496. A claim of actual innocence "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). To show that his case is the "extraordinary" one warranting application of this exception, Dantzler must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S. at 321, 327. Dantzler has not presented any new, reliable evidence in support of a claim of actual innocence. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to consider the substantive merits of Dantzler's claim. Dantzler's claim is procedurally defaulted, and habeas relief is barred.

39

**D.    Dantzler is not entitled to habeas relief even if his waiver/ procedural default of the issue is excused or otherwise bypassed because the Michigan Court of Appeals alternate merits analysis, to the extent cognizable, was not contrary to, nor an unreasonable application of clearly established Supreme Court precedent.**

Aside from finding that Dantzler waived the jury instruction issue, and that it was procedurally defaulted, the Michigan Court of Appeals also considered the claim, discussed the merits on plain error review, and found the claim meritless.  This alternative merits discussion is entitled to AEDPA deference to the extent cognizable if this Court does not enforce the waiver or procedural default.  *Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009).  A lower court's merits adjudication is entitled to AEDPA deference "despite the fact that the reasoning was given as an alternative to a primary ground for decision."  *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010).  "[A]n alternative procedural-bar ruling does not alter the applicability of AEDPA."  *Brooks v. Bagley*, 513 F.3d 618, 624-625 (6th Cir. 2008).

The Michigan Court of Appeals alternatively rejected Dantzler 's claim on plain error review as follows:

> Even if defendant's trial lawyer had not waived this claim of
> error, we would nevertheless conclude that the trial court

40

did not plainly err in giving this instruction. See *People v. Carines,* 460 Mich. 750, 763; 597 NW2d 130 (1999). Under the plain error rule, the defendant must show that (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected defendant's substantial rights. *Id.* To establish the third element, the defendant must generally show that the error affected the outcome of the lower court proceeding. *Id.*

In general, a defendant is not entitled to an adverse jury instruction unless he can demonstrate that the police destroyed evidence in bad faith. *People v. Davis,* 199 Mich.App 502, 515; 503 NW2d 457 (1993). Defendant failed to introduce any evidence of bad faith, and the prosecution offered evidence indicating that the destruction resulted from a mishap or standard procedures for discarding evidence in unsolved cases, rather than bad faith. The medical examiner maintained the evidence for over three years before its inadvertent destruction, and defendant failed to show any indication that the medical examiner colluded with police to destroy the evidence. The law did not require the trial court to grant defendant any instruction regarding the fingernails, and because defendant benefited from the instruction, the trial court's refusal to include the defendant's preferred language did not amount to error, let alone error that affected the outcome. *Carines,* 460 Mich. at 763.

*Dantzler*, 2012 WL 2335913, at *1-2. Any facts recited by the Michigan Court of Appeals are entitled to the presumption of correctness under § 2254(e)(1), and Dantzler has not demonstrated through clear and convincing evidence that this summary is incorrect.

41

Because Dantzler was not entitled to an adverse inference instruction under state law in the first instance, any change in the language of the instruction given did not deprive him of a fair trial.  *Cf.*, *Bailey v. Smith*, No. 06-14099, 2008 WL 2607830, at *14 (E.D. Mich. June 30, 2008) (Hood, J.) (Because petitioner was not entitled to an adverse inference instruction under state law, the failure of the trial court to give the instruction did not deprive petitioner of a fair trial.)

### E.   Even Dantzler could demonstrate error, it was harmless.

A habeas petitioner is not entitled to relief based on State trial-court error unless he demonstrates that the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993).  This is so even where the state appellate court did not recognize the error and review the claim for harmlessness.  *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).

A showing of "substantial and injurious effect or influence" means "actual prejudice."  *Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012) (*citing Brecht*, 507 U.S. at 637).  This means that the habeas court is left in "grave doubt" over a matter so "evenly

42

balanced" that the court concludes it is in a "virtual equipoise" as to the harmlessness of the error. *Forensic v. Birkett,* 501 F.3d 469, 481 (6th Cir. 2007).

Here, as previously noted, Dantzler was not entitled to the instruction, so any change in the language would have been harmless. Additionally, instructing the jury that they could infer, rather than consider, that the evidence would have exonerated Dantzler would have made little difference. Here even if it is assumed the victim's fingernail clipping bore another person's DNA, that does not exonerate Dantzler. He was prosecuted under an aiding and abetting theory that he assisted in perpetrating a home invasion and Hill's death with a group of other men. Thus even if Dantzler were not the person who pulled the trigger or and was never close enough for Hill to have his DNA, he could still be found guilty. Also, the evidence was that golf clubs were used to beat Hill. Use of such a weapon could keep Dantzler at a distance so as not to have been close to Hill's fingers. In short, even if the clippings contained another's DNA, Dantzler would not be exonerated. Any possible error in the instruction was harmless.

II.    **The Michigan Court of Appeals merits adjudication that there was sufficient evidence to support Dantzler's felony murder conviction is entitled to AEDPA deference.**

For his second habeas claim, Dantzler asserts that there was insufficient evidence to support his conviction.  To the extent that Dantzler claims the DNA evidence linking him to the crime was improperly handled, this claim is unexhausted as Dantzler did not raise it in the state courts.  Dantzler's general claim that there was insufficient evidence linking him to the murder and home invasion does not entitle him to relief.  The Michigan Court of Appeals rejection of this claim on the merits is entitled to AEDPA deference and was not contrary to, nor an unreasonable application of clearly established Supreme Court precedent.

A.    **Dantzler did not exhaust his state court remedies for the claim that the DNA evidence was improperly handled.**

Dantzler makes a brief argument that the DNA evidence used at his trial was not properly handled.  Because he did not present this claim to the state courts, that portion of his claim is not exhausted.

Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To fulfill the exhaustion requirement, the prisoner must have fairly presented the federal claims to all levels of the state appellate system. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). *See* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."). If the prisoner fails to present his claims to the state courts, but has no remaining state remedy, the claims are considered exhausted, but procedurally defaulted. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Landrum v. Mitchell*, 625 F.3d 905, 918 (6th Cir. 2010).

Here, Dantzler claims that the DNA evidence used against him was improperly handled and unreliable. Because he never raised this claim in state court, the claim is not exhausted.

Dantzler has not requested a stay, but even if he had, one should not be granted. Ordinarily, a habeas court should not adjudicate a

45

mixed petition, that is, a petition, like this one, that contains both exhausted and unexhausted claims. *Rhines*, 544 U.S. at 273–74 (*citing Rose v. Lundy*, 455 U.S. 509 (1982)).  In "limited circumstances," a federal court may stay a habeas petition and hold it in abeyance to allow the petitioner to return to State court to present the claims. *Id.* at 277. "Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.*

Here, Dantzler has not shown good cause for his failure to raise this issue in state court.  For that reason alone, which is unrelated to the question of the merit of the claims, it would not be a proper exercise of this Court's discretion to stay and abey the petition.

Further, a district court "would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." *Rhines*, 544 U.S. at 277.  As Dantzler's claims are meritless, denial or dismissal is appropriate, and a stay is not.

Because a stay is inappropriate in this case, this Court "should allow the petitioner to delete the unexhausted claim and to proceed

with the exhausted claims, if dismissal of the entire petition would
unreasonably impair the petitioner's right to obtain federal relief."
*Rhines*, 544 U.S. at 278.  Or it can simply deny the unexhausted claim
on the merits.  *See* 28 U.S.C.§ 2254(b)(2) ("An application for a writ of
habeas corpus may be denied on the merits, notwithstanding the failure
of the applicant to exhaust the remedies available in the courts of the
State.")  Further, Dantzler attaches Exhibits 2 and 3 in support of his
claim.  However, these exhibits were not part of the state court record.
There is nothing to show they were considered by the Michigan Courts
during Dantzler's direct appeal.  Accordingly, they cannot be considered
on habeas review.

The Supreme Court has held that "review under § 2254(d)(1)
focuses on what a state court knew and did." *Pinholster*, 131 S. Ct. at
1399.  Therefore, review "is limited to the record that was before the
state court that adjudicated the claim on the merits." *Id.* at 1398;
*accord Ballinger v. Prelesnik*, 709 F.3d 558, 562 (6th Cir. 2013) ("While
allowing a petitioner to supplement an otherwise sparse trial court
record may be appealing, especially where he diligently sought to do so

in state court, the plain language of *Pinholster* and *Harrington* preclude

it.").

**B. Habeas relief is not warranted on Dantzler's sufficiency of the evidence claim because the state court's decision on that claim was not an unreasonable application of clearly established Supreme Court precedent, nor was it an "extreme malfunction" as described in Richter.**

### 1. The federal sufficiency standard

The applicable rule or standard for reviewing sufficiency claims

was set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). In *Jackson*,

the Supreme Court held that in reviewing sufficiency claims, the

relevant question is whether—after viewing all of the evidence in the

light most favorable to the prosecution—*any* rational trier of fact could

have found the essential elements of the crime beyond a reasonable

doubt. *Jackson*, 443 U.S. at 319. The Supreme Court emphasized that

it is the trier of fact's responsibility to resolve conflicts in the testimony,

to weigh the evidence, and to draw reasonable inferences from basic

facts to ultimate facts. The Michigan Court of Appeals in this case

applied the rule set forth by *Jackson* in this case so the question on

habeas is whether its application was objectively unreasonable.

48

As noted above, when assessing reasonableness, a federal habeas court may not grant a writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable.  Further, 28 U.S.C. § 2254(d) imposes an enhanced deferential standard for evaluating state court rulings on habeas review and demands that state court decisions be given the benefit of the doubt.  A fundamental concept for this collateral review is that habeas relief may not be granted under AEDPA by a federal habeas court conducting its "own independent inquiry whether the state court was correct as a de novo matter." *Yarborough*, 541 U.S. at 665.

In *Jackson*, the Supreme Court held that critical inquiry on sufficiency claims must determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  The inquiry is not whether the reviewing court itself believes that the evidence at trial established guilt beyond a reasonable doubt.  Instead, "the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could

49

have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318-319 (emphasis in original). Thus, under *Jackson*, a habeas petitioner is entitled to relief on a sufficiency claim "if it is found that upon the record evidence adduced at the trial that no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324.

The Supreme Court emphasized that *all of the evidence* is to be considered in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319 (emphasis in original). This standard was to be applied regardless of whether the evidence of guilt was direct or circumstantial. Circumstantial evidence is entitled to equal weight as direct evidence, and the prosecution may meet its burden entirely through circumstantial evidence. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003); *Holland v. United States*, 348 U.S. 121, 140 (1954). Moreover, "[p]ieces of evidence are not to be viewed in a vacuum; rather, they are viewed in relation to the other evidence in the case." *Davis v. Lafler*, 658 F.3d 525, 533 (6th Cir. 2011) (en banc).

Under *Jackson*, the prosecutor does not have an affirmative duty to rule out every hypothesis except that of guilt. *Jackson*, 443 U.S. at

50

326.  And, it is the province of the fact-finder—here the jury—to weigh the probative value of the evidence and resolve any conflicts in testimony.  *Jackson*, 443 U.S. at 318-319.  The result is that when "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not appear affirmatively in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Jackson*, 443 U.S. at 326.

Federal habeas courts reviewing sufficiency claims were cautioned not to reweigh the evidence or re-determine the credibility of witnesses whose demeanor had been observed by the finder of fact.  *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  Indeed, the Supreme Court has admonished and reversed the Ninth Circuit Court of Appeals for substituting its judgment for that of a California jury.  *See e.g., Cavazos v. Smith*, 132 S. Ct. 2 (Oct. 31, 2011) (per curiam) (*Jackson* "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial.")

The Sixth Circuit has noted that the *Jackson* standard is so demanding that a defendant who challenges the sufficiency of the

evidence to sustain his conviction faces a nearly insurmountable hurdle. *Davis*, 658 F.3d at 534 (internal quotations and citations omitted).  In reviewing a sufficiency claim, deference is required at two levels: first, to the jury's verdict as contemplated by *Jackson*, and second, deference should be given to the state court's consideration of the jury's verdict as dictated by AEDPA.  *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *see also Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) ("In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference. . . ."); *Moreland v. Bradshaw*, 699 F.3d 908, 916-917 (6th Cir. 2012) ("We apply two layers of deference in reviewing habeas claims challenging evidentiary sufficiency").

And, as noted above, "evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  *Yarborough*, 541 U.S. at 664.  The Sixth Circuit has stated that the standard for sufficiency claims is "exceedingly general."  *Davis*, 658 F.3d at 535.

## 2.    No unreasonable application

The Michigan Court of Appeals considered the merits of Dantzler's

sufficiency claim and rejected it:

> Defendant next argues that the prosecution presented insufficient evidence to sustain the jury's verdict. When reviewing a challenge to the sufficiency of the evidence, this Court "reviews the record evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v. Roper,* 286 Mich.App 77, 83; 777 NW2d 483 (2009).
>
> In order to convict defendant of felony murder, the prosecution had to prove that defendant killed Hill, that when he did so he had the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], and did so while committing, attempting to commit, or assisting in the commission of (in relevant part) breaking and entering. See *People v. Smith,* 478 Mich. 292, 318–319; 733 NW2d 351 (2007)(stating the elements of felony murder); MCL 750.316(1)(b). The prosecution could also convict defendant under the theory that he aided and abetted another in committing felony-murder; to meet its burden under this theory, the prosecution had to present evidence that "(1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement." *Carines,* 460 Mich. at 757(quotation marks and citation omitted).
>
> Defendant does not argue that the prosecution failed to present sufficient evidence establishing that the assailants

committed a felony when they broke and entered into the apartment. Additionally, defendant does not dispute that the men intentionally killed Hill during the commission of that felony. Defendant's sole argument is that the prosecutor presented insufficient evidence for a reasonable jury to conclude, beyond a reasonable doubt, that he participated in the breaking and entering and murder.

Identity is an element of every crime. *People v. Yost,* 278 Mich.App 341, 356; 749 NW2d 753 (2008). Thus, the prosecution must prove, beyond a reasonable doubt, that defendant committed or aided and abetted the acts in question. *Id.* However, the prosecution may meet its burden to prove identity by presenting either direct or circumstantial evidence. *Carines,* 460 Mich. at 757.

The prosecution presented sufficient circumstantial evidence for a reasonable jury to conclude that defendant participated in the breaking and entering and Hill's murder. Most telling, the prosecution presented DNA evidence from the black knit cap found at the scene of the murder, showing that defendant wore the hat. The hat also contained DNA from Hill. From this evidence, a jury could rationally find that defendant was present at McKenzie's apartment on the night in question and that he physically participated in the attack on Hill, which ultimately ended with Hill's murder. Defendant's explanation that another person placed his DNA in the hat was implausible and the jury was free to reject that testimony as incredible. See *Roper,* 286 Mich.App at 88.

The prosecution also presented other strong circumstantial evidence that defendant participated in Hill's murder. The prosecution established that Hill had beaten Turner the night of his murder. Hill's mother testified that two of defendant's relatives visited her house looking for Hill, and that they arrived in defendant's car. When she did not answer the door, the men left in defendant's car, which was full of men. Thereafter, a group of men broke down McKenzie's front door before beating and murdering Hill.

54

> Although Hill's mother and Turner had agreed that Hill's
> mother would watch Turner's baby for the remainder of the
> weekend, Turner's cousin picked her up later that morning
> after Hill's murder but before Hill's mother learned of her
> son's death. Based on these facts, the  the jury could
> rationally infer that Turner's relatives, including defendant,
> were the men that killed Hill. In his defense, defendant
> stated that he and Hill remained friendly despite the fact
> that Hill had beaten Turner several times in the past. But
> the jury was free to disregard that testimony.
>
> The prosecution presented sufficient evidence to sustain
> defendant's conviction.

*Dantzler*, 2012 WL 2335913, at *2-3.  The Michigan Court of Appeals

did not unreasonably apply clearly established Supreme Court

precedent.  Here, giving proper deference to the jury's verdict, the court

determined that there was sufficient evidence to support Dantzler's

participation in the crime.

Dantzler's identity as one of the murderers was sufficiently

established with circumstantial evidence.  In the early morning hours of

January 16, 2006, shortly after Hill physically assaulted Quiana

Turner, members of Turner's family went Hill's mother's house.

(12/16/10 Trial Tr. at 75.)  Quiana Turner is defendant's niece.  Two

other family members, Rodney Turner and defendant's son, Samuel

Lamare Dantzler, went to Hill's mother's house and loudly banged on

the door.  When the Hill's mother did not answer, the men retreated to

55

a gold car where other people were waiting for them. (12/16/10 Trial Tr. at 78.)  Hill's mother recognized the gold car as one that she had seen defendant, and only defendant drive, when he would come to the house to visit Hill and Quiana Turner.  (12/16/10 Trial Tr. at 77, 86.)  The gold car left her house.

Unexpectedly, Dantzler's sister, Ruth Turner, also arrived at the Hill's mother's house early that morning. (12/16/10 Trial Tr. at 80.) Ruth Turner demanded that Quiana's child be turned over to her even though the original plan was for the child to stay with Hill's mother for a few days.  Ruth Turner offered no explanation for the change of plans. At this time, Hill's mother did not yet know her son was dead. (12/16/10 Trial Tr. at 80.)

A short time after the gold car left Hill's mother's house, the Hill was in his apartment with his girlfriend, Nikitta McKenzie.  Hill was nervous following the incident with Quiana Turner and paced around the room. (12/16/10 Trial Tr. at 160-161.)  Hill noticed shadows outside his door and hid in the closet.  (12/16/10 Trial Tr. at 162.)

The jury could reasonably infer from Hill's behavior that he was expecting something bad to happen; unfortunately, Hill's expectation

56

was correct.  Approximately six African- American men broke through the door of the apartment. (12/16/10 Trial Tr. at 163.)  At least one of the men wore a black knit hat.  (12/16/10 Trial Tr. at 165.) After threatening McKenzie, the men attacked Hill inside the apartment.  As McKenzie hid in the bathroom, she heard the sounds of a struggle in the apartment.

The men eventually succeeded in beating the Hill with golf clubs and shooting him in the back of the head killing him.  When McKenzie emerged from the bathroom, she noticed a black knit hat on the floor that was not there prior to the men breaking into the apartment.

Testing of the cap revealed a DNA profile that, within a scientific certainty, matched defendant's DNA profile. (12/20/10 Trial Tr. at 47.) Dantzler admitted owning knit hats similar to the one found in the apartment and his only explanation was that someone must have planted his DNA.  (12/21/10 Trial Tr. at 161.)

The very strong circumstantial evidence established beyond a reasonable doubt, that Dantzler was one of the men responsible for Hill's murder.   The Michigan Court of Appeals conclusion that Dantzler's felony murder conviction was supported by sufficient

evidence was not an unreasonable application of clearly established

Supreme Court precedent and is entitled to AEDPA deference.

Dantzler is not entitled to habeas relief on that issue.

III.   **The Michigan Court of Appeals merits adjudication that Dantzler was not denied his due process rights when the trial court granted Dantzler's request for an expert, but Dantzler chose one whose fees were excessive and then decided proceed to trial without expert testimony is entitled to AEDPA deference.  But Dantzler cannot show that the state appellate court unreasonably applied Supreme Court precedent when no specific holding of that Court applies to this situation.**

For his third habeas claim, Dantzler asserts he was denied his due process right to present a defense when the trial court would not approve funds for the expert Dantzler sought.  The Michigan Court of Appeals rejected this claim on the merits.  And because that merits adjudication was not contrary to, nor an unreasonable application of clearly established Supreme Court precedent, Dantzler is not entitled to relief.

### A.    Clearly established Supreme Court precedent

The constitutional right to present a defense is contained in both the Sixth Amendment and the due process clause of the Fourteenth Amendment.  *Wong v. Money*, 142 F. 3d 313 (6th Cir. 1998); *Rock v. Arkansas*, 483 U.S. 44 (1987).  Just as it is incontrovertible that a defendant has a right to present a defense, so, too, it is incontrovertible

59

that such a right is not unfettered.  *Allen v. Morris*, 845 F. 2d 610, 615 (6th Cir. 1988).   A defendant's right to present relevant evidence is not unlimited and is subject to reasonable restrictions.  *Wong*, 142 F. 3d at 325, *citing United States v. Scheffer*, 523 U.S. 303 (1998).

As the United States Supreme Court has explained, "In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence."  *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *see also Scheffer*, 523 U.S. at 308.  The reason for this requirement is that states have a weighty interest in the orderly conduct of criminal trials, thereby justifying the imposition and enforcement of firm, although not inflexible, rules relating to the presentation of evidence.  *Taylor v. Illinois*, 484 U.S. 400, 411 (1988).

Dantzler has failed to cite any United States Supreme Court precedent that requires appointment of a DNA expert, let alone precedent that requires a court to pay the expert an excessive fee for his or her services.  The only case that arguably stands for the proposition

that a trial court is required to appoint an expert is *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985).  But the holding in that case was limited:

> We therefore hold that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.

*Ake*, 470 U.S. at 83.  The *Ake* Court did not discuss a defendant's entitlement to other court-appointed experts outside the context of an insanity defense.  *See Conklin v. Schofield*, 366 F.3d 1191, 1206 (11th Cir. 2004) (noting that the Supreme Court has not extended *Ake* to non-psychiatric experts); *Hampton v. Ludwick*, No. 2:09-12842, 2010 WL 4683909 at *3 (E.D. Mich. Nov. 10, 2010) (Borman, J.) (*citing Ake* and stating that the Supreme Court "has never extended the rule in *Ake* to apply to the appointment of non-psychiatric experts.")  Subsequent to *Ake*, the Supreme Court explicitly declined to answer whether defendants were entitled to experts in other circumstances.  *See Caldwell v. Mississippi*, 472 U.S. 320, 323, n. 1 (1985).

**B.    Because the Michigan Court of Appeals merits adjudication was not contrary to clearly established Supreme Court precedent, it is entitled to AEDPA deference.**

The Michigan Court of Appeals rejected Dantzler claim on the

merits:

> Defendant finally argues that the trial court denied him his due process rights by refusing to pay an expert to independently analyze the DNA evidence. "This Court reviews a trial court's decision whether to grant an indigent defendant's motion for the appointment of an expert for an abuse of discretion." *People v. Tanner,* 469 Mich. 437, 442; 671 NW2d 728 (2003). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Roper,* 286 Mich.App at 84.
>
> Generally, equal protection requires that the state afford an indigent defendant an expert witness when the witness remains important to the defendant's preparation of a defense. *People v. Stone,* 195 Mich.App 600, 605; 491 NW2d 628 (1992). However, this requirement does not allow the defendant to hire an expert of his choosing, and the state may satisfy this requirement by providing defendant access to any competent expert. *Id* at 606.
>
> The trial court entered an order in which it agreed to pay for an expert to analyze the DNA evidence on defendant's behalf. The trial court agreed to pay the expert's hourly fee and expenses. Defendant then attempted to hire two experts. The first could not work for defendant because he previously worked on this case for the prosecution. The second would not work on the case without a retainer fee, which the trial court refused to authorize, because it deemed the $2,500 fee exorbitant. The trial court consulted the court's chief judge, who agreed that the fee amounted to an extraordinary cost that the court should not pay. Defendant did not seek

another expert and did not enter any evidence to establish
that other experts were unavailable. Because the trial court
agreed to pay for an expert on defendant's behalf, the state
satisfied its obligation to provide defendant with the means
to prepare his defense. Defendant's unilateral decision not to
take advantage of the opportunity did not amount to a
violation of his right to equal protection. And the trial court
did not abuse its discretion in refusing to pay the expert's
retainer fee.

*Dantzler*, 2012 WL 2335913, at *3-4.

To the extent that Dantzler claims the trial court's actions

violated Mich. Comp. Laws § 600.2164; Mich. Comp. Laws § 775.15 and

Mich. R. Evid. 706, his claims are not cognizable and fail to state

grounds upon which habeas relief can be granted.  *See Estelle*, 502 U.S.

at 67–68.

To the extent Dantzler's claim is cognizable, he is not entitled to

relief.

First, as noted above, the Supreme Court has not held that due

process or the constitutional right to present a defense is implicated in a

situation such as this where the defense is requesting the appointment

of a DNA expert, let alone held that a court is required to pay the expert

an excessive fee for his or her services.  As the Supreme Court has

recently held, if there is not guiding precedent from the Court, and the

63

precise contours of a right remain unclear, state courts enjoy broad

discretion in their adjudication of a prisoner's claims at issue on federal

habeas review. *White v. Woodall*, 134 S. Ct. 1697, 1705 (2014).

Second, to the extent such a broad right exists, here, as noted by

the Michigan Court of Appeals the trial court *did* grant Dantzler's

request for an expert.  Here, the expert Dantzler chose would not work

for the money the court deemed was a reasonable fee and refused the

appointment.  Dantzler could have sought another expert, but instead

chose to proceed to trial without one and use the amounts the

prosecution paid their expert to his advantage.  Dantzler's trial counsel,

inquired into the amount of money the prosecutor was able to spend on

the DNA testing. (12/20/10 Trial Tr. at 91.)  The trial judge also

required the prosecution to determine the amount of the contracts that

the Michigan State Police and Detroit Police had with Bode Technology

to handle any outsourced DNA testing.  (12/20/10 Trial Tr. at 73-74.)

Trial counsel questioned the DNA experts about who paid for their

flights to Detroit. (12/20/10 Trial Tr. at 78.)  Trial counsel questioned

the experts about whether the amount they were paid by Bode

Technology to analyze DNA evidence was more than a court appointed

expert would have been paid.  (12/20/10 Trial Tr. at 132.)  Dantzler's

trial counsel was able to use the leeway that was allowed him to inquire

into the money spent by the police and prosecution, both generally and

specifically to this case, to argue to the jury that he was handicapped in

combating the DNA evidence.  The state appellate court did not

unreasonably adjudicate any broader due process right or right to

present a defense on the facts of this case.

　　　As with his previous claim, Dantzler attaches materials that were

not part of the state court record on appeal.  See Petition for Habeas

Corpus, Exhibits 5, 6.  For reasons previously stated, these exhibits

cannot be considered. *Pinholster*, 131 S. Ct. 1388; *Ballinger*, 709 F.3d

at 562.

　　　　Because Dantzler cites no clearly established Supreme Court

precedent contrary to the Michigan Court of Appeals merits

adjudication, he has failed to demonstrate that the rejection of his claim

was contrary to or an unreasonable application of such precedent and is

not entitled to habeas relief.  Even presuming the existence of a broader

right to due process or to right to present a defense applicable to this

case, the state appellate court did not unreasonably adjudicate those

claims.

**IV.   Dantzler's failed to exhaust his claim that appellate counsel was ineffective, and as the claim is meritless he should not be granted a stay to exhaust it.**

For his fourth and remaining habeas claim, Dantzler asserts that appellate counsel was ineffective for failing to secure oral argument, failing to forward the prosecutor's brief to Dantzler in time for him to file a reply, and failing to raise ineffective assistance of trial counsel for trial counsel's decision to forgo an objection to the adverse inference jury instruction.  These claims are unexhausted as they were not presented to the state court's on Dantzler's direct appeal.  The claims are also meritless:  Dantzler cannot show that he was prejudiced by the lack of oral argument or reply brief, and cannot show that trial counsel made anything other than a reasonable strategic decision at trial.  He is not entitled to habeas relief.

**A.   Dantzler's claim is unexhausted.**

Dantzler's claim that appellate counsel was ineffective is unexhausted.  The issue was not presented to the Michigan Court of Appeals during petitioner's direct appeal, for obvious reasons.  And, Dantzler did not brief the issue in the Michigan Supreme Court, raising

only in his motion to remand.  Because the issue has not been presented to all levels of state court, it is unexhausted.  *Duncan*, 513 U.S. at 365-66.

Because it appears Dantzler has not filed a motion for relief from judgment, he still has remedies available in state court and this claim is not procedurally defaulted.  *See* 28 U.S.C. § 2254(c); *Gray*, 518 U.S. at 161-62; *Landrum*, 625 F.3d at 918.  However, as with Dantzler's previous claim, a stay and abey order is not warranted for this issue because it is without merit as further explained below.

## B.  Clearly established Supreme Court precedent regarding ineffective assistance of appellate counsel claims.

Under the Sixth and Fourteenth Amendments, a state criminal defendant has a right to the effective assistance of appellate counsel on his first appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387 (1985).  As with an ineffective assistance of trial counsel claim, an ineffective assistance of appellate counsel claim requires a petitioner to show that counsel's performance was deficient, and that the deficient performance was prejudicial.  *See Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (applying *Strickland* framework to appellate counsel claim).  *See also*

68

*Smith v. Robbins*, 528 U.S. 259, 285 (2000) (holding petitioner who argued his appellate counsel rendered ineffective assistance by failing to file a merits brief must satisfy both prongs of *Strickland*). The "deficient performance" prong of the two-part *Strickland* test requires showing that appellate counsel made an objectively unreasonable decision to raise other issues in place of the petitioner's claims. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010).

A petitioner also must establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). To prevail on a claim that appellate counsel was ineffective, a defendant must establish two elements: that "counsel unreasonably failed to discover nonfrivolous issues," and the existence of "a reasonable probability that, but for his counsel's unreasonable failure … he would have prevailed on his appeal." *Robbins*, 528 U.S. at 285. Appellate counsel can only be deemed to have provided ineffective assistance of counsel "if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *Howard*, 405 F.3d at 485 (*citing Greer v.*

69

*Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  A petitioner is required to

show that his appellate attorney was so thoroughly ineffective that

defeat was "snatched from the jaws of victory."  *United States v.*

*Morrow*, 977 F.2d 222, 229, (6th Cir. 1992) (en banc) cert. denied, 508

U.S. 975 (1993); *West v. Seabold*, 73 F.3d 81, 94 (6th Cir. 1996).

 As applied to appellate counsel, that standard is difficult to meet

because, to be effective, "appellate counsel . . . need not (and should not)

raise every non frivolous claim, but rather may select among them in

order to maximize the likelihood of success on appeal."  *Robbins*, 528

U.S. at 285.  Even if a defendant succeeds in showing his appellate

counsel was objectively unreasonable in omitting a claim, he must still

"show a reasonable probability that, but for his counsel's unreasonable

failure to [raise a particular issue], he would have prevailed on his

appeal."  *Id.*  Prejudice, in this context, has been defined as "a

reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different."  *Id.*  Relief is not

available when there is no reasonable probability that, absent appellate

counsel's deficient performance, Petitioner "would have prevailed on his

appeal."  *Id.*

Appellate counsel has no constitutional duty to present every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983); *see also Engle v. Isaac*, 456 U.S. 107, 133-34 (1982) ("We have long recognized ... that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim."). While criminal defendants are entitled to competent representation, the Constitution "does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle*, 456 U.S. at 133–34.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). Appellate counsel may, however, deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue that was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).[2] This is a heavy burden for Petitioner to meet,

---

[2] Affirmed, 104 F. App'x 461 (6th Cir. 2004).

because he must establish that his counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001). The Supreme Court has rejected the claim that counsel is ineffective simply because counsel did not take an action when "there was nothing to lose by pursuing it." *Mirzayance*, 129 S. Ct. at 1418.

### 1.    Lack of oral argument and reply brief

Dantzler claims that appellate counsel was ineffective because he failed to file a timely brief and therefore lost the right to oral argument. He also claims that appellate counsel was ineffective because he failed to timely forward the prosecutor's brief on appeal so that Dantzler could draft a reply. Because Dantzler cannot show he was prejudiced by either of these actions, his claim of ineffective assistance of counsel fails.

Because both prongs must be satisfied to establish ineffective assistance, if Petitioner cannot satisfy one prong of the *Strickland* test, the other need not be considered. *Strickland*, 466 U.S. at 697. The Sixth Circuit has recognized that "*Strickland* specifically holds that the

two prongs of its test need not be applied in order or in totality."
*Stanford v. Parker*, 266 F.3d 442, 454 (6th Cir. 2001).

Here, Dantzler cannot show that oral argument would have changed the outcome of his appeal. Aside from his claim that appellate counsel should have claimed ineffective assistance of trial counsel with respect to the jury instruction, Dantzler takes no issue with the quality of the brief on appeal. He points to nothing that could have been said at oral argument that would have rendered a different result. Where a petitioner fails to demonstrate that submission of his case on the briefs prejudiced his appeal, his claim for ineffective assistance of counsel fails. *See Leggett v. U.S.*, 101 F.3d 702, 2 (6th Cir. 1996.) Given the fact that the prosecutor also filed an untimely brief and did not request oral argument (see Michigan Court of Appeals Docket Entry 43, Plaintiff Appellee's Brief on Appeal), Dantzler simply cannot demonstrate prejudice.

Likewise, Dantzler fails to show prejudice regarding his claim that because he did not timely receive the prosecution's brief he was unable to file a reply. Dantzler gives no specific arguments that would have been made and no reason why the outcome of the appeal would have

been different.  And, it is clear the outcome would have been the same.

There were no significant factual disputes between the parties, nor any

significant differences with respect to the applicable law.  The outcome

would have been no different and because of that, Dantzler cannot show

prejudice.

### 2.    Decision to forgo ineffective assistance of trial counsel claim.

Dantzler also claims that appellate counsel was ineffective for

failing to raise the claim that trial counsel was ineffective because he

did not object to the trial court's adverse inference instruction.  This

claim too is without merit.  As noted by the Michigan Court of Appeals,

Dantzler was not even entitled to such an instruction in the first place.

*Dantzler*, 2012 WL 2335913, at *1-2.  Because Dantzler was not entitled

to the instruction, challenging the trial court's language would have

been pointless.  And, strategically trial counsel made a wise choice—

objecting to the change of a single word when the court agreed to give

an instruction Dantzler was not entitled to could have easily backfired.

Had trial counsel quibbled over the one word change, the trial court

could have reconsidered its decision and not given any instruction.

"In order to avoid second-guessing trial counsel's strategic decisions, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002), *quoting Strickland v. Washington*, 466 U.S. 668, 669 (1984).

Here, Dantzler cannot overcome that presumption. He has not demonstrated that trial counsel performance fell below an objective standard of reasonableness, or that he was prejudiced. Accordingly, he cannot show that appellate counsel was ineffective for failing to raise this issue on appeal.

## Conclusion

Dantzler cannot be granted relief on his claim that DNA evidence used at his trial was unreliable or his claim that appellate counsel was ineffective because he has not exhausted them in the state courts as detailed above.

Dantzler waived and/or procedurally defaulted his claim that the trial court erred by changing a word in the adverse inference instruction given at his trial.  He has not shown cause and prejudice to excuse the default.  In addition, he has not shown failure to review the claim would result in a fundamental miscarriage of justice.  Accordingly, as detailed above, habeas review of Dantzler's first claim should be barred.

The state courts' rejection of Dantzler's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts.  Dantzler was "entitled to a fair trial but not a perfect one."  *Lutwak v. United States*, 344 U.S. 604, 619 (1953); *see also United States v. Hajal*, 555 F.2d 558, 569 (6th Cir. 1977) ("[W]e have yet to review a perfect jury trial.").  The state-court decisions in this case were not "so lacking in

76

justification" that they resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.  The formidable threshold for granting habeas relief has not been met because fairminded jurists could disagree on the correctness of the state court's decision. *Yarborough*, 541 U.S. at 664.  In other words, "if some fairminded jurists could agree with the state court's decision, although others might disagree, federal habeas relief must be denied." *Loggins v. Thomas*, 654 F.3d 1204, 1220 (11th Cir. 2011).  Here, there was no "extreme malfunction." *Richter*, 131 S. Ct. at 786.  Consequently, habeas relief should be denied.

Additionally, the State opposes any requests for bond, oral argument, or any other relief, including a certificate of appealability. And the State asserts that Dantzler is not entitled to habeas relief because he has not established that the alleged errors had a substantial and injurious effect on the verdict in this matter.  *See Brecht v. Abrahamson*, 507 U.S. 619 (1993).

The State also contends that Dantzler has not demonstrated entitlement to discovery.  "Habeas petitioners have no right to

automatic discovery." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). Rule 6(a) permits district courts to authorize discovery in habeas corpus proceedings under the Federal Rules of Civil Procedure only "for good cause." R. Governing 2254 Cases in the U.S. Dist. Cts. 6(a). "Rule 6 embodies the principle that a court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (*quoting Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)). "Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.'" *Williams*, 380 F.3d at 974 (*quoting Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997)). Habeas Rule 6(a). "Conclusory allegations are not enough to warrant discovery under Rule 6, rather, a petitioner must set forth specific allegations of fact." *Williams*, 380 F.3d at 974. Dantzler has not met this burden.

If this Court denies the petition, the State asserts that Dantzler is also not entitled to a certificate of appealability (COA) so as to proceed further. In order to obtain a COA, a petitioner must make "a

substantial showing of the denial of a constitutional right."  28 U.S.C. §
2253(c)(2).  To demonstrate this denial, the petitioner is required to
show that reasonable jurists could debate whether, or agree that, the
petition should have been resolved in a different manner, or that the
issues presented were adequate to deserve encouragement to proceed
further.  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *see also Miller-
El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling
standard, a petitioner must 'sho[w] that reasonable jurists could debate
whether (or, for that matter, agree that) the petition should have been
resolved in a different manner or that the issues presented were
"adequate to deserve encouragement to proceed further."'") (citations
omitted).

When a district court rejects a habeas petitioner's constitutional
claims on the merits, the petitioner must demonstrate that reasonable
jurists would find the district court's assessment of the constitutional
claims to be debatable or wrong.  *Slack*, 529 U.S. at 483-84.  Likewise,
when a district court denies a habeas petition on procedural grounds
without reaching the petitioner's underlying constitutional claims, a
COA should issue, and an appeal of the district court's order may be

79

taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484.

When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*

"The issuance of a COA must not be pro forma or a matter of course," and a habeas petitioner who seeks the issuance of a COA must show more than the absence of frivolity or the presence of good faith on his or her part in order to obtain a COA. *Miller-El*, 537 U.S. at 337-38. Finally, a habeas petitioner's conclusory assertion that jurists of reason would find his or her claims to be debatable is insufficient to warrant the issuance of a COA. *See Bagby v. Saffle*, 53 F. App'x 25, 28 (10th Cir. 2002) (stating that the petitioner's "mere conclusory assertions to the contrary" are not enough to satisfy the burden).

## Relief

For the reasons stated above, this Court should deny the petition. The Court should also deny Dantzler any requested discovery, evidentiary hearings, bond, oral argument, and any other relief he seeks in this action, including a certificate of appealability.

Respectfully submitted,

Bill Schuette
Attorney General

s/Cheri L. Bruinsma

Assistant Attorney General
Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
bruinsmac@michigan.gov
P58673

Dated: May 27, 2014
AG# 20130061292A/Dantzler, Samuel/Answer

**Certificate of Service**

I hereby certify that on May 27, 2014, I electronically filed the

foregoing papers with the Clerk of the Court using the ECF system

which will send notification of such filing to the following:

    HONORABLE LAURIE J. MICHELSON
    MAGISTRATE JUDGE MONA K. MAJZOUB

and I hereby certify that Aimee L. Nelson has mailed by United States

Postal Service the papers to the following non-ECF participant:

    SAMUEL DANTZLER #518107
    OAKS CORRECTIONAL FACILITY
    1500 CABERFAE HIGHWAY
    MANISTEE MI 49660

        Respectfully submitted,

        Bill Schuette
        Attorney General

        s/Cheri L. Bruinsma

        Assistant Attorney General
        Appellate Division
        P.O. Box 30217
        Lansing, MI  48909
        (517) 373-4875
        bruinsmac@michigan.gov
        P58673