UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL DANTZLER, 518107,

      Petitioner,

v.

CASE NO. 13-14764

HON. LAURIE J.
MICHELSON

SHERMAN CAMPBELL,

      Respondent.

MAG. MONA K. MAJZOUB

_____

**ANSWER IN OPPOSITION TO AMENDED PETITION
FOR WRIT OF HABEAS CORPUS**

# TABLE OF CONTENTS

Introduction ....................................................................1

    Statements in Compliance with Habeas Rule 5(b) .........................4

    A.   Statute of Limitations................................................5

    B.   Exhaustion...............................................................5

    C.   Procedural Default ...................................................5

    D.   Non-retroactivity Doctrine.......................................6

Statement of the Case .......................................................6

    A.   Trial Facts .............................................................6

    B.   Procedural History ................................................13

Standard of Review Pursuant to AEDPA...............................18

Argument ....................................................................25

I.    Dantzler's fourth claim alleging a *Brady* violation appears to be untimely and should be dismissed as such.  Dantzler also failed to comply with the front-end condition of this Court's order staying his habeas petition. .................................25

II.    Dantzler's fourth through seventh habeas claims are also procedurally defaulted and without merit. ...................33

    A.   Dantzler's fourth through seventh claims are procedurally defaulted. ........................................33

    B.   Dantzler's defaulted claims also lack merit.........................40

        1.   *Brady* claim. ................................................40

        2.   Allegations that trial counsel was ineffective. ............43

III.    Dantzler's ninth claim is not cognizable on habeas review...........52

IV.    Habeas relief is not warranted on Dantzler's cumulative-error claim because the claim is procedurally defaulted, not cognizable, and lacks merit............................................................53

Conclusion..............................................................................58

Relief .....................................................................................63

Certificate of Service ............................................................64

ii

## INTRODUCTION

During the early morning hours of January 16, 2006, Petitioner Samuel Dantzler and several other relatives murdered 22-year-old Bernard Hill at an apartment in Detroit. Dantzler and the others kicked down the apartment door and savagely beat Hill, who was not armed, and then shot Hill in the back of the head because he had previously assaulted Dantzler's adult niece. Dantzler's DNA was on a black knit cap found at the scene of the murder. A Wayne County jury convicted Dantzler of first-degree felony murder (Mich. Comp. Laws § 750.316(1)(b)), and the State now holds Dantzler in custody in the Michigan Department of Corrections. Dantzler is currently serving a prison term of life imprisonment for his murder conviction.

In November 2013, Dantzler filed a habeas petition under 28 U.S.C. § 2254 where he raised four claims. (ECF #1, Petition.) In May 2014, the State filed an answer in opposition to the petition. (ECF #8, Response.) In June 2014, Dantzler filed a motion to stay his habeas case so he could return to state court to exhaust several claims. (ECF #9, Motion.) On August 20, 2014, this Court granted Dantzler's motion to stay. This Court directed Dantzler to file a motion for relief from

judgment within 30 days of its order, and to then file a motion to re-open his case and an amended petition within 30 days after exhausting his state-court remedies.  (ECF #10, Order.)  Dantzler returned to the state courts but the state trial court ultimately denied Dantzler's motion for relief from judgment and the state appellate courts denied his applications for leave to appeal the denial of his motion.

In September 2016, Dantzler moved to lift the stay and filed an amended habeas petition.  (ECF #11, Motion.)  This Court granted the motion and directed the State to file a response to the amended petition.  (ECF #17, Order.)  The State understands the amended petition to be raising the following claims:

I.  The trial court's sua sponte modification to a requested adverse inference instruction following the destruction of material evidence denied [Dantzler] his state and federal rights to a fair trial by a properly instructed jury, Sixth Amendment right of confrontation, and Fourteenth Amendment due process right to defend against the charges.

II.  The prosecutor failed to provide constitutionally sufficient evidence to prove that [Dantzler] participated in the crime, as a principal or aider and abettor, and the resulting conviction violates his due process guarantees under the Fourteenth Amendment.

III.  The trial court's denial of necessary funds for an independent expert to review the DNA evidence denied

[Dantzler] due process guarantees under the Fourteenth Amendment.

IV.     [Dantzler] was denied the right to a fair trial when the prosecutor committed a *Brady* violation in failing to notify him that the only evidence linking him to the crime could have been tainted or otherwise compromised when it was at the Detroit police crime lab.

V.      [Dantzler] is entitled to reversal due to ineffective assistance of trial counsel where counsel requested funds to hire an independent expert, but after the funds were granted he never hired an expert because he mistakenly believed that funds had been denied and he could not meet the prosecutor's case, which relied solely on the DNA evidence.

VI.     [Dantzler] is entitled to reversal due to ineffective assistance of trial counsel where counsel expressed satisfaction and failed to object when the trial court modified the adverse inference instruction.

VII.    [Dantzler] is entitled to reversal where trial counsel was ineffective when he failed to investigate after [Dantzler] told him he did not own a gold car, which a witness said she saw on the night of the crime.

VIII.   [Dantzler] was denied his Sixth Amendment right to the effective assistance of appellate counsel, and his Fourteenth Amendment right to a full and fair appeal of right where appeal counsel omitted significant and obvious issues on [Dantzler's] appeal of right that were clearly stronger than the issues counsel did raise on [Dantzler's] direct appeal.

IX.     The trial court's adjudication of [Dantzler's] post-conviction claims was contrary to clearly established law and denied [Dantzler] his Fourteenth Amendment right to a full and fair hearing.

X.      [Dantzler's] right to due process was violated where the
        cumulative effect of the errors denied him a fair trial.

Should the Court interpret the amended petition to be raising

different claims, the State requests an opportunity to file a

supplemental pleading.  The State incorporates by reference its

previously filed answer and will rely on that answer for Dantzler's first,

second, and third claims, and will cite to that answer when necessary.

The State now answers the claims that Dantzler raised on post-

conviction review and asks this Court to deny relief on those claims and

on claims raised in his initial petition.[1]

**STATEMENTS IN COMPLIANCE WITH HABEAS RULE 5(b)**

With respect to the bars that preclude habeas review, the State

asserts the following in conformance with Habeas Rule 5(b):

---

[1] To the extent that Dantzler failed to raise any other claims that he
raised in the state courts, those claims are now abandoned.  *See
Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003) (holding that an
issue is abandoned if a party does not present any argument respecting
the issue in his brief).  Habeas review of abandoned claims is barred.

4

## A.     Statute of Limitations

Dantzler's claim alleging a violation of *Brady v. Maryland*, 373 U.S. 86 (1963) appears to be barred by the statute of limitations, as more fully discussed in Argument I below.  This Court may also dismiss the amended petition (or at least Dantzler's newly exhausted claims) because it appears that Dantzler failed to comply with this Court's front-end condition to return to state court within 30 days of this Court's order.

## B.     Exhaustion

The State asserts that Dantzler did not exhaust his cumulative error claim but because he has no means by which to present the claim in the state courts, the claim is procedurally defaulted, as more fully discussed below.

## C.     Procedural Default

The State asserts that Dantzler has procedurally defaulted some of his claims, as more fully discussed below.

### D.    Non-retroactivity Doctrine

The State is not arguing that any of Dantzler's claims are barred

by the non-retroactivity doctrine.

## STATEMENT OF THE CASE

### A.    Trial Facts

As the State noted in its previously filed answer, Dantzler and

several others murdered Bernard Hill.  (ECF #8, Response, 1, 4-10.)  On

the evening of January 15, 2006, Bernard Hill, was at his mother, Janet

Burt's house.  While Hill was there, his former girlfriend and mother of

his child, Quiana Turner, arrived to drop the child off.  Burt was going

to watch the child.  Turner and Hill left the house separately but

eventually met up later that evening.  When Hill and Turner met the

second time, Hill assaulted Turner.  (12/16/10 Tr. at 71-73.)  Turner

reported the assault to her mother and word of the assault made its

way to other members of Turner's family. (12/21/10 Tr. at128.)

At approximately 1:00 a.m. on January 16, 2006, two members of

Turner's family, Rodney Turner and Samuel Lamare Dantzler

(Dantzler's son), banged on Burt's door.  (12/16/10 Tr. at 75.)  Burt

looked out the window and saw a gold car parked outside her home.

Burt recognized the car as belonging to Dantzler.  When Burt did not answer the door, Rodney Turner and Samuel Lamare Dantzler walked to the gold car.  When the men opened the car door, Burt saw several other people inside.  (*Id*. at 77-78.)  The car then drove away.

In the meantime, Hill had returned to the apartment he shared with his girlfriend, Nikitta McKenzie.  Hill told McKenzie that something had happened between himself and Quiana Turner. (12/16/10 Tr. at 160.)  Hill seemed very nervous.  McKenzie and Hill got ready for bed.  Before going to bed, Hill walked into the living room area of the apartment.  Hill said that he saw shadows outside the apartment and hid inside a closet.  (*Id*. at 161-62.)

As McKenzie started to walk into the living room, the door to the apartment was busted down; approximately six African-American males entered. (12/16/10 Tr. at 163.)  One of the men carried a firearm; another carried a golf club.  (*Id*. at 163-65.)  The men were dressed in black and at least one of them wore a black knit hat.  (*Id*. at 163.)  The man with the firearm pointed it at McKenzie and asked where Hill was. McKenzie said Hill lived in the apartment but was not there at the

time.  The man with the firearm asked again and Hill came out of the bedroom.  (*Id*. at 165.)

A fight ensued between Hill and the men.  McKenzie ran into the bathroom and closed the door.  From inside the bathroom, McKenzie heard fighting inside the apartment.  (12/16/10 Tr. at 165-66.) McKenzie then heard Hill scream followed by gunshots.  After not hearing anything for a short period of time, McKenzie left the bathroom.  She saw a person enter the apartment and break the television.  The person dropped a stereo onto the floor and ran out of the apartment.  (*Id*. at 167.)

McKenzie walked out of the apartment.  On her way out, McKenzie saw a black hat on the floor.  (12/16/10 Tr. at 168.)  The hat was not in the apartment before the men forcibly entered.  McKenzie noticed a trail of blood leading out of the apartment.  She followed the trail to the first floor of the apartment building where she found Hill lying by the entrance.  (*Id*. at 168.)  McKenzie called the police but, by the time an ambulance arrived, Hill was dead.  (*Id*. at 183-84.)

Police located two spent .380 caliber casings and two golf club shafts along the route Hill traveled from the apartment to the front

door of the building.  (12/16/10 Tr. at 6-19.)  There was evidence of a
fight in the apartment.  (*Id*. at 192.)

Hill died from a single gunshot wound to the back of his head.
The bullet traveled through his skull, brain, spine, and brain stem.
(12/15/10 Tr. at 63.)  Hill also suffered blunt force injuries to his body;
one injury was strong enough to leave the imprint of a diamond on his
skull; another that created a divot in his skull.  (*Id*. at 65.)  Hill had
defensive wounds on his forearms, which indicated that he struggled
with his attackers.  (*Id*. at 69.)

In the months after Hill's murder, police investigation yielded no
suspects and the case went cold.  In 2009, police reopened the
investigation and tested the black hat that was left in the apartment for
DNA.  A sample of the DNA located in the hat was entered into the
CODIS database; it matched Dantzler's DNA profile.  (12/16/10 Tr. at
148.)  The initial sample of DNA and three additional samples from the
hat were compared to Dantzler's known samples.  Testing determined
that Dantzler was the major contributor of DNA in the initial sample.
(12/20/10 Tr. at 46.)  In a random sample of the population, only 1 in 2
quadrillion people would match the initial DNA sample from the hat.

Dantzler could neither be included, nor excluded as the contributor of the remaining three DNA samples taken from the hat.  (*Id*. at 47-52.)

At trial, the mother of Dantzler's child, Marie Simpson, testified that, after she got off work, she picked Dantzler up from a house on Blackstone in Detroit on the night of January 15, 2006.  (12/21/10 Tr. at 59.)  She and Dantzler went to her residence where they stayed the night.  Dantzler did not leave the home that night and was still there at 6:00 a.m. on January 15, 2006.  (*Id*. at 60.)  Simpson had never seen Dantzler wear a black knit hat like the one located in Hill's apartment. (*Id*. at 94.)

Dantzler also testified that he spent the night at Simpson's home on January 15, 2006.  (12/21/10 Tr. at 106-07.)  Dantzler was aware that Hill had beaten Quiana Turner on January 15, 2006, but denied that he did anything about it.  (*Id*. at 97-98.) Dantzler denied that he was with Rodney Turner or Samuel Lamare Dantzler on the night of January 15, 2006.  He also denied going to Burt's home or Hill's apartment.  (*Id*. at 101.)

Dantzler claimed that did not know Hill was dead until two days later.  (12/21/10 Tr. at 102.)  Dantzler admitted that he once owned a

gold car like the one described by Burt, but claimed that he gave it to his brother-in-law in 2005. (*Id.* at 108.) He later denied that he ever owned a gold car and insisted that he said an "old" car. (*Id.* at 158.)

Dantzler had worn black knit hats in the past. His only explanation as to how a hat with his DNA was located at Hill's apartment was that somebody put it there or he had worn the hat before. His explanation for Hill's DNA being on the hat was that Hill "most likely wore that hat before." (12/21/10 Tr. at 161-62.)

Two-and-a-half hours after it began deliberating (Jury Notes, 8), a Wayne County jury found Dantzler guilty of first-degree felony murder. (12/22/10 Tr. at 40-41.) The trial court later sentenced Dantzler to life in prison without parole for his murder conviction. (1/20/11 Tr. at 9.)

The Michigan Court of Appeals also summarized the facts adduced at trial as follows:

> This case arises from the January 2006, savage beating and murder of Bernard Hill. That night, Hill "jumped on" his ex-girlfriend, Quiana Turner, with whom he had a child. After assaulting Turner, Hill went to Nikitta McKenzie's apartment; McKenzie was Hill's current girlfriend. Sometime after 12:45 a.m., Hill looked out a window and saw shadows moving about. He hid in the living room closet and someone kicked in the front door. Six black men wearing black clothing, including black hats, rushed into McKenzie's apartment. One of the men shoved a gun in McKenzie's face

and demanded to know if Hill lived there. McKenzie told the men that Hill lived in the apartment, but was not home. The man with the gun again demanded to know if Hill lived there and she repeated her response. Hill then emerged from the closet. McKenzie retreated to the bathroom and waited for the men to leave. She heard loud crashes, furniture falling, and the men fighting. Finally, she heard Hill scream, followed by gunshots. The room fell silent. She discovered Hill's body nearby; he died from a single gunshot wound to the back of his head. A jury convicted defendant of first-degree felony murder on the theory that he either killed Hill or aided and abetted in Hill's murder while participating in breaking and entering McKenzie's apartment.

*People v. Dantzler*, No. 303252, 2012 WL 2335913 at *1 (Mich. Ct. App. June 19, 2012). This recitation of the facts is entitled to the presumption of correctness under § 2254(e)(1), and Dantzler has not demonstrated through clear and convincing evidence that this summary is incorrect.[2]

The State opposes any factual assertions made by Dantzler that are not directly supported by—or consistent with—the state court record.

---

[2] The presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Treesh v. Bagley*, 612 F.3d 424, 430 n.1 (6th Cir. 2010); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).

## B.    Procedural History

After he was sentenced, Dantzler filed a claim of appeal in the Michigan Court of Appeals and later raised the following claims in his brief on appeal:

I.     The trial court's sua sponte modification to a requested adverse-inference instruction following destruction of material evidence denied [Dantzler] of his state and federal constitutional rights to a fair trial by a properly instructed jury, Sixth Amendment right of confrontation, and Fourteenth Amendment due process right to defend against the charges.

II.    The evidence was insufficient to prove [Dantzler] participated in the crime, as principal or aider and abettor, and the resulting conviction is violative of his due process guarantees under the Fourteenth Amendment and Const. 1962, art. 1, §17, and must be reversed.

III.   The trial court's denial of necessary funds for an independent expert to review the DNA evidence denied [Dantzler] due process guarantees under the Fourteenth Amendment and Const. 1962, art. 1, §17 and must be reversed.

On June 19, 2012, the Michigan Court of Appeals affirmed Dantzler's conviction in an unpublished opinion.  *Dantzler*, 2012 WL 2335913, at *4.  On August 9, 2012, the Michigan Court of Appeals denied Dantzler's motion for reconsideration.

Dantzler then filed an application for leave to appeal in the Michigan Supreme Court where he raised the same claims as in the Michigan Court of Appeals. He also filed a motion to remand for an evidentiary hearing, claiming that appellate counsel was ineffective. On December 26, 2012, the Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court, and also denied the motion to remand. *People v. Dantzler*, 823 N.W.2d 595 (Mich. 2012). On April 29, 2013, the Michigan Court of Appeals denied Dantzler's motion for reconsideration. *People v. Dantzler*, 829 N.W.2d 219 (Mich. 2013).

In November 2013, Dantzler filed a habeas petition under 28 U.S.C. § 2254 where he raised four claims. (ECF #1, Petition.) In May 2014, the State filed an answer in opposition to the petition. (ECF #8, Response.) In June 2014, Dantzler filed a motion to stay his habeas case so he could return to state court to exhaust several claims. (ECF #9, Motion.) On August 20, 2014, this Court granted Dantzler's motion to stay. This Court directed Dantzler to file a motion for relief from judgment within 30 days of its order, and to then file a motion to re-

open his case and an amended petition within 30 days after exhausting his state-court remedies.  (ECF #10, Order.)

On September 25, 2014, Dantzler filed with the state trial court a motion for relief from judgment and raised the following claims:

I.    [Dantzler] was denied the right to a fair trial when the prosecutor committed a *Brady* violation in failing to notify him that the only evidence linking him to the crime could have been tainted or otherwise compromised when it was at the Detroit police crime lab.

II.   [Dantzler] is entitled to reversal due to ineffective assistance where trial counsel requested funds to hire an independent expert but after the funds were granted, he never hired an expert, and could not meet the prosecutor's case, which was based solely on DNA.

III.  [Dantzler] is entitled to reversal due to ineffective assistance of trial counsel where counsel expressed satisfaction and failed to object when the trial court modified the adverse inference instruction.

IV.   [Dantzler] is entitled to reversal where trial counsel was ineffective when he failed to investigate after [Dantzler] told him he did not own a gold car, which a witness said she saw on the night of the crime.

V.    Appellate counsel was deficient for failing to preserve the opportunity for oral arguments, for failing to forward response brief to [Dantzler] in a timely manner, and for failing to raise a reversible issue on appeal.

VI.   [Dantzler] is entitled to review of issues two, three, and four where cause for failure to present them in a prior appeal was due to the ineffective assistance of counsel.

VII.   [Dantzler] is to review of issues one and five without a showing of case and prejudice under MCR 6.508(D) where the factual bases for the claims were not available to [Dantzler] until almost five months after he had already filed his appellate brief.

On March 4, 2015, the state trial court denied Dantzler's motion for relief from judgment, citing to Mich. Ct. R. 6.508(D)(3) and to a lack of merit.  (3/4/15 Wayne Cir. Ct. Order.)

After the trial court denied the motion for relief from judgment, Dantzler filed a delayed application for leave to appeal in the Michigan Court of Appeals.  On November 4, 2014, the Michigan Court of Appeals denied the delayed application based on Dantzler's failure establish entitlement to relief under Mich. Ct. R. 6.508(D); the Court also denied Dantzler's motion to remand.  (11/4/15 Mich. Ct. App. Order.)

Dantzler then applied for leave to appeal this decision in the Michigan Supreme Court but on September 6, 2016, the Michigan Supreme Court denied his application under Mich. Ct. R. 6.508(D); the Court also denied Dantzler's motion to remand.  *People v. Dantzler*, 883 N.W.2d 752 (Mich. 2016).

16

In September 2016, Dantzler asked this Court to lift the stay and he filed an amended habeas petition.  (ECF #11, Motion.)  This Court granted the motion and directed the State to file a response to the amended petition.  (ECF #17, Order.)  The State understands the amended petition to be raising the claims set forth above.

## STANDARD OF REVIEW PURSUANT TO AEDPA

Before turning to Dantzler's claims it is important to recognize the limited nature of federal habeas court review.  Congress mandated the standards of review in federal habeas proceedings in 1996 in the Antiterrorism and Effective Death Penalty Act (AEDPA).  Recognizing the foundational principle that "[s]tate courts are adequate forums for the vindication of federal rights," "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013); 28 U.S.C. § 2254(d).

Congress has limited the availability of federal habeas corpus relief "with respect to any claim" the state courts "adjudicated on the merits."  28 U.S.C. § 2254(d).[3]  Habeas relief may not be granted to a habeas petitioner under § 2254(d) unless the state court adjudication:

---

[3] The Supreme Court has instructed habeas courts to apply a rebuttable presumption that a "federal claim was adjudicated on the merits" even "[w]hen a state court rejects a federal claim without expressly addressing that claim." *Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013).  *See also Kernan v. Hinojosa*, 136 S. Ct. 1603, 1606 (2016) (per curiam) ("Containing no statement to the contrary, the Supreme Court of California's summary denial of Hinojosa's petition was therefore on the merits.").

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Identifying clearly established federal law is the threshold question under AEDPA and § 2254(d)(1). *Dewald v. Wrigglesworth*, 748 F.3d 295, 299 (6th Cir. 2014) (internal quotations omitted); *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (the starting point in a § 2254(d)(1) inquiry is to identify the relevant "clearly established" law). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta," of the Supreme Court's decisions. *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotations and citations omitted).

With respect to § 2254(d)(1), a state court decision is "contrary to" federal law only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 n.2 (2013) (internal quotation marks and citation omitted). A state court decision involves an unreasonable application of clearly

established Federal law pursuant to § 2254(d)(1) if "the state-court

decision identifies the correct governing legal principle in existence at

the time," but "unreasonably applies that principle to the facts of

prisoner's case." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (internal

quotation marks and citation omitted).

"[A]n *unreasonable* application of federal law is different from an

*incorrect* application of federal law." *Renico v. Lett*, 559 U.S. 766, 773

(2010) (internal quotation marks and citations omitted).  This means

that "a federal habeas court may not issue the writ simply because that

court concludes in its independent judgment that the relevant state-

court decision applied clearly established federal law erroneously or

incorrectly." *Id.*  Instead, the state court's "application must be

objectively unreasonable." *Id.*  That distinction creates "a substantially

higher threshold" to obtain relief than de novo review. *Id.*; *Knowles v.*

*Mirzayance*, 556 U.S. 111, 123 (2009).  Further, "even a strong case for

relief does not mean the state court's contrary conclusion was

unreasonable." *Richter*, 562 U.S. at 102; *Lovell v. Duffey*, 629 F.3d 587,

598 (6th Cir. 2011) (to grant relief, the state-court decision must be so

inadequately supported by the record, or so arbitrary as to be

unreasonable; if a state court's decision on a constitutional question is

"a close call," that militates against the conclusion that the state court's

application of Supreme Court law was objectively unreasonable).

Pursuant to § 2254(d), "a habeas court must determine what

arguments or theories supported or . . . could have supported, the state

court's decision; and then it must ask whether it is possible fairminded

jurists could disagree that those arguments or theories are inconsistent

with the holding in a prior decision" of the Supreme Court. *Richter*, 562

U.S. at 102.  Moreover, "[i]t is not an unreasonable application of clearly

established Federal law for a state court to decline to apply a specific

legal rule that has not been squarely established by this Court."

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation

marks and citation omitted).  And federal court of appeals precedent

cannot "refine or sharpen a general principle of Supreme Court

jurisprudence into a specific legal rule that [the Supreme] Court has not

announced."  *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per

curiam) (citation omitted); *see also Lopez v. Smith*, 135 S. Ct. 1, 4 (2014)

(providing that absent a decision by the Supreme Court addressing "the

specific question presented by [a] case" a federal court cannot reject a

21

state court's assessment of claim).  Where no Supreme Court cases

confront "the specific question presented" by the habeas petitioner, "the

state court's decision [cannot] be contrary to any holding from this

Court."  *Woods v. Donald*, 135 S. Ct. 1372, 1377 (2015) (per curiam)

(internal quotation marks and citation omitted).[4]  *See also Woods v.

Etherton*, 136 S. Ct. 1149, 1152 (2016) (per curiam) (Where "[n]o

precedent of [the Supreme Court] clearly forecloses" a state court's

ruling, it simply cannot be an unreasonable application of Supreme

Court precedent.)

Under § 2254(d)(2), the "unreasonable determination" clause, "a

state-court's factual determination is not unreasonable merely because

the federal habeas court would have reached a different conclusion in

the first instance."  *Titlow*, 134 S. Ct. at 15 (internal quotation marks

and citation omitted).  "Under AEDPA, if the state-court decision was

---

[4] The Supreme Court has specifically warned habeas courts that, "[b]y framing [Supreme Court] precedents at [too] high [a] level of generality, [it] could transform even the most imaginative extension of existing case law into 'clearly established Federal law, as determined by the Supreme Court.'"  That "approach would defeat the substantial deference that AEDPA requires" be given to state-court decisions. *Nevada v. Jackson*, 133 S. Ct. 1990, 1994 (2013) (per curiam).

reasonable, it cannot be disturbed." *Hardy v. Cross*, 132 S. Ct. 490, 495 (2011) (per curiam).

A federal court must refrain from issuing a writ "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Richter*, 562 U.S. at 101. To clear the § 2254(d) hurdle, a habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. The Supreme Court has stated that "[w]hen reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions *only when there could be no reasonable dispute that they were wrong*." *Woods v. Donald*, 135 S. Ct. 1372, 1377 (2015) (Emphasis added).

To recap, the burden that a petitioner must meet in order to obtain the extraordinary remedy of habeas relief is a high one. "[S]tate-court decisions [must] be given the benefit of the doubt." *Pinholster*, 563 U.S. at 181 (internal quotation marks and citation omitted).

"Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S. at 102-03 (internal quotation marks and citation omitted) (Emphasis added).  The petitioner's burden is made even heavier by the fact that a federal court is "limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181.

## ARGUMENT

Habeas relief is an "extraordinary remedy," *Bousley v. United States*, 523 U.S. 614, 621 (1998) and one that is not warranted on any of Dantzler's claims.[5]

**I.    Dantzler's fourth claim alleging a *Brady* violation appears to be untimely and should be dismissed as such.  Dantzler also failed to comply with the front-end condition of this Court's order staying his habeas petition.**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides for a one-year statute of limitations after finalization of direct review:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—
>
> > (A)    the date on which the judgment became final by the conclusion of direct review of the expiration of time for seeking such review;
> >
> > (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed if the applicant was prevented from filing by such State action;

---

[5] As noted above, the State relies its previously filed answer with respect to Dantzler's first, second, and third claims, which he raised in his initial petition.

> (C)   the date on which the constitutional right asserted was originally recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

AEDPA governs the filing date for habeas petitions filed after AEDPA's effective date of April 24, 1996.  *Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The statute of limitations is tolled statutorily by a properly filed motion for post-conviction review or is equitably tolled by the court under limited circumstances.  28 U.S.C § 2244(d)(2).

Where a petitioner appeals to the Michigan Supreme Court, but does not petition the United States Supreme Court for a writ of certiorari, his judgment of conviction is finalized when the time for taking an appeal to the United States Supreme Court expires.  That time is 90 days after the Michigan Supreme Court's decision.  Sup. Ct. R. 13.  The one-year habeas statute of limitations commences running at that time.  *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000).

A petitioner may challenge the validity of the judgment of conviction by filing a motion for relief from judgment under the terms in subchapter 6.500 of the Michigan Court Rules. A properly filed application for post-conviction or other collateral review tolls the running of the one-year habeas statute during the pendency of that application. § 2244(d)(2). "And an application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). However, a petitioner receives tolling for the time that he could have, but did not timely file, an appeal of the denial of his motion in the state courts. *Holbrook v. Curtin*, 833 F.3d 612 (6th Cir. 2016).

When the habeas statute of limitations has already expired, a motion for relief from judgment "does not reset the date from which the one-year statute of limitations begins to run." *Johnson v. Hendricks*, 314 F.3d 159, 161-62 (3d Cir. 2002); *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *Neal v. Bock*, 137 F. Supp. 2d 879, 884 (E.D. Mich. 2001). This is because there is no

remaining period to be tolled.  *Smith v. Stegall*, 141 F. Supp. 2d 779,
782-83 (E.D. Mich. 2001).

After completion of state court collateral review, the statute of
limitations is not tolled during the pendency of a certiorari petition in
the United States Supreme Court seeking review of the denial of state
post-conviction relief.  *Lawrence v. Florida*, 549 U.S. 327, 329 (2007).

The Supreme Court has held that the habeas statute of
limitations is subject to equitable tolling.  *Holland v. Florida*, 560 U.S.
631, 649 (2010).  Equitable tolling is available in habeas challenges to
state court convictions only when a litigant can show "'(1) that he has
been pursuing his rights diligently, and (2) that some extraordinary
circumstance stood in his way . . . .'"  *Holland*, 560 U.S. at 649 (quoting
*Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *accord Hall v. Warden,
Lebanon Corr. Inst.*, 662 F.3d 745, 749-50 (6th Cir. 2011) (holding that
*Holland* replaced the 5-part inquiry of *Dunlap v. United States*, 250
F.3d 1001, 1010 (6th Cir. 2001)).  In order to establish entitlement to
equitable tolling, the petitioner bears the burden of demonstrating both
*Holland* factors.  *Hall*, 662 F.3d at 750; *Robertson v. Simpson*, 624 F.3d
781, 784 (6th Cir. 2010).  Moreover, equitable tolling should only be

granted "sparingly." *Robertson*, 624 F.3d at 784 (citations omitted).

Ignorance of the law, illiteracy, and lack of legal assistance do not

amount to grounds for equitable tolling. *Allen v. Yukins*, 366 F.3d 396,

403 (6th Cir. 2004) ("[I]gnorance of the law alone is not sufficient to

warrant equitable tolling.") (internal quotation marks and citation

omitted); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002)

("[I]nmate's lack of legal training, his poor education, or even his

illiteracy does not give a court reason to toll the statute of limitations.");

*Holloway v. Jones*, 166 F. Supp. 2d 1185, 1189 (E.D. Mich. 2001) (Lack

of "professional legal assistance [is] not an extraordinary circumstance

which would toll the statute of limitations."); *accord Sperling v. White*,

30 F. Supp. 2d 1246, 1254 (C.D. Cal. 1998) (citing cases stating that

ignorance of the law, illiteracy, and lack of legal assistance do not

justify tolling).

A petitioner may also pass through the "impediment" of the

statute of limitations if he or she can *prove* actual innocence.

*McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). "'[A] petitioner

does not meet the threshold requirement unless he persuades the

district court that, in the light of the new evidence, no juror, acting

reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Additionally, the federal habeas court "should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown." *McQuiggin*, 133 S. Ct. at 1928. In other words, the court "may consider how the timing of the submission and the likely credibility of a petitioner's affiants bear on the probable reliability of . . . the evidence of actual innocence." *Id.* at 1935 (quoting *Schlup*, 513 U.S. at 332) (internal quotation marks omitted). For example, if a petitioner waited until an elderly witness died before collaterally attacking his conviction, the timing "should seriously undermine the credibility of the actual-innocence claim." *McQuiggin*, 133 S. Ct. at 1936. But the Supreme Court cautioned: "tenable actual-innocence gateway pleas are rare . . . ." *Id.* at 1928.

In Dantzler's case the expiration of time for seeking direct review under 28 U.S.C. § 2244(d)(1)(A) was July 28, 2013—90 days after the Michigan Supreme Court denied his application for leave to appeal. Since this date is after the enactment of AEDPA, the period of

limitations began running the next day, July 29, 2013.  Dantzler then had one year, until July 29, 2014, within which to file his petition, or to instead properly file an application for state post-conviction or other collateral review, which would toll the one-year statute of limitations period.  Dantzler filed a habeas petition on November 14, 2013; this initial petition was filed on time, with 257 days remaining on the limitations period.  Nearly seven months later, in a motion dated June 11, 2013, Dantzler asked this Court to stay his habeas case so he could return to state court to raise claims that his trial counsel was ineffective for not seeking expert assistance and for failing to object to the modified adverse-inference instruction.  (ECF #9, Motion.)  This Court granted Dantzler's motion to stay so he could return to state court and exhaust these ineffective-assistance claims.  In his motion for relief from judgment, however, Dantzler also alleged a *Brady* violation—a claim that all of the state courts denied.  But Dantzler first presented his *Brady* claim to this Court in his amended petition, which was dated September 12, 2016, despite knowing about the claim when he filed his motion to stay and his initial habeas petition.  (ECF #11, Motion.)  Because Dantzler's *Brady* claim was first presented to this Court well

after the limitations period had expired, the claim is untimely and should be dismissed as such.

This Court could also dismiss Dantzler's amended petition (or at least his new claims) because Dantzler did not comply with this Court's August 20, 2014 order granting his request for a stay and holding his petition in abeyance. In granting Dantzler's motion to stay this Court stated that he "must timely pursue his state court remedies by filing a motion for relief from judgement within thirty (30) days of this order." (ECF #10, Order, 4.) Dantzler did not go back to state court to exhaust his remedies within that 30-day period, or by September 19, 2014; rather, he filed his state-court pleading six days later, on September 25, 2014. Dantzler has failed to show or allege good cause to extend the 30-day deadline imposed by this Court. Dantzler offers no reason to explain or justify the delay. It would not be unreasonable for this Court to find that Dantzler did not act diligently in exhausting his state-court remedies, particularly where the claims he raised were or should have been known to him. The State respectfully asks this Court to dismiss Dantzler's *Brady* claim as untimely, or to dismiss the amended petition (or at least his new claims) because Dantzler failed to comply with this

32

Court's front-end condition to return to state court.  But even if this Court considers the claims, the habeas relief is not warranted.

## II.  Dantzler's fourth through seventh habeas claims are also procedurally defaulted and without merit.

In his fourth claim Dantzler asserts that the prosecution violated *Brady v. Maryland*, 373 U.S. 86 (1963) when it failed to notify him that the evidence linking him to the murder could have been tainted or otherwise compromised when it was at the Detroit Police Crime Lab.  In his fifth, sixth, and seventh claims, Dantzler asserts that his trial counsel was ineffective for three reasons: not hiring an independent DNA expert, not objecting to the trial court's adverse inference instruction, and not investigating when Dantzler told counsel that he did not own a gold car.  Dantzler first raised these claims in his motion for relief from judgment but the trial court denied relief.

### A.  Dantzler's fourth through seventh claims are procedurally defaulted.

A claim has been procedurally defaulted if the petitioner fails to comply with a state procedural rule, enforced by the state courts, that is an independent and adequate state ground for denying review of a

federal constitutional claim.  *Tolliver v. Sheets*, 594 F.3d 900, 928 n. 11 (6th Cir. 2010).  Here, Dantzler failed to comply with the state procedural rule requiring him to raise his fourth through seventh claims at his earliest opportunity, namely, in his direct appeal.  The state procedural rule at issue is Mich. Ct. R. 6.508(D)(3), which provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.  The last state court to issue a reasoned opinion on Dantzler's fourth through seventh habeas claims was the state trial court, which cited to Mich. Ct. R. 6.508(D)(3).[6]  The Sixth Circuit has recognized that enforcement of Mich. Ct. R. 6.508(D)(3) constitutes "an independent and adequate state ground sufficient for procedural default."  *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012).  So Dantzler's fourth claim alleging prosecutorial misconduct and his fifth through seventh claims alleging that his trial counsel was ineffective are procedurally defaulted.

---

[6] The trial court also noted that Dantzler failed to object to the prosecutor's purported misconduct at trial; this failure to contemporaneously object also constitutes a procedural default.

This Court's review of the defaulted claims is thus precluded unless Dantzler can excuse his default—which is "no easy task." *Jones v. Bell*, 801 F.3d 556, 562 (6th Cir. 2015).  A petitioner may escape the consequences of a default only by showing good cause to excuse the default and actual prejudice,[7] or that failure to review the claims will result in a fundamental miscarriage of justice. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  This is the petitioner's burden.

To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule.  *See, e.g.*, *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Haliym v. Mitchell*, 492 F.3d 680, 690-91 (6th Cir. 2007).  A petitioner must present a substantial reason to excuse the default.  *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994); *see also Amadeo v. Zant*, 486 U.S. 214, 222-23 (1988) (reviewing a claim that a document was concealed by officials).  One recognized reason includes attorney error rising to the

---

[7] Prejudice for purposes of procedural default analysis requires a showing that the default of the claim not merely created a possibility of prejudice to the defendant, but that it worked to his actual and substantial disadvantage. *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002); *Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012) (petitioners must show actual prejudice to excuse their default).

level of ineffective assistance of counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991). Stated differently, attorney error will not constitute adequate cause to excuse a procedural default unless it amounts to constitutionally ineffective assistance of counsel under the criteria established in *Strickland v. Washington,* 466 U.S. 668 (1984). An appellate attorney need not raise every nonfrivolous argument on appeal, *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983), and strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). A petitioner is prejudiced by appellate counsel's deficient

36

performance if a reasonable probability exists that, but for counsel's deficient performance, he would have prevailed on appeal.

Dantzler in his eighth claim asserts that his appellate counsel was ineffective for not raising his fifth through seventh habeas claims on direct appeal, for failing to request oral argument, and for not sending Dantzler a copy of the prosecutor's brief in opposition in a timely manner so he could file a reply brief. But the state trial court reasonably determined that appellate counsel was not ineffective because the claims that Dantzler argues his appellate counsel should have raised are meritless. Appellate counsel raised three issues on direct appeal and Dantzler has not shown that the claims he alleges appellate counsel should have presented were clearly stronger than the claims that appellate counsel did present. Further, as the State argued in its prior answer, Dantzler cannot show that having an oral argument would have changed the outcome of his direct appeal, nor can Dantzler show prejudice from when he received the prosecution's direct appeal brief or by not filing a reply brief. (ECF #8, Response, 72-74.) Dantzler has failed to overcome the strong presumption that his appellate counsel was competent, and he cannot show the requisite prejudice.

Where a petitioner has not established cause, it is unnecessary for the Court to reach the prejudice issue.  *Smith v. Murray*, 477 U.S. 527, 533 (1986); see also *Ambrose v. Booker*, 684 F.3d 638, 649 (2012) (A petitioner must show both cause and actual prejudice to excuse the procedural default.).  Dantzler in any event cannot show "actual prejudice" because his defaulted claims lack merit.

Nor has Dantzler shown that failure to consider his defaulted claims would result in a fundamental miscarriage of justice.  The narrow exception for fundamental miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense.  *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Schlup v. Delo*, 513 U.S. 298, 326 (1995); *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  Dantzler has not invoked this exception or met this stringent standard.

As to his fourth claim alleging a *Brady* violation, Dantzler asserts that the facts underlying this claim were not known until several months after his appellate counsel filed his brief on direct appeal in December 2011.  (ECF #11, Motion, 40.)  Dantzler points to an April 25,

38

2012 letter from the prosecutor's office, which he attached to the Appendix of his motion for relief from judgment at page 71, and asserts that the claim could not have been raised on direct appeal. But Dantzler's next Appendix—a letter from SADO to prisoner Derrius Haynes dated 2/11/10—indicates that the Detroit Police Crime Lab was closed in 2008.[8] Dantzler's trial took place in December 2010—several years *after* the Detroit Police Crime Lab was closed. And Dantzler's trial counsel *was* aware that Detroit Police Crime Lab closed in 2008. In fact, he asked one of the prosecution witnesses about the Detroit Crime Lab not existing in 2008. (12/16/10 Tr. at 121-22.)

Dantzler's appellate counsel also knew about the Detroit Crime Lab but did not think there was "any substantive issue" about the DNA testing done in Dantzler's case and thus reasonably decided to not raise this claim on appeal. (See Appendix to Dantzler's motion for relief from

---

[8] And the focus of the audit was on the firearms unit, not the storing of DNA, which is what Dantzler now questions—nearly ten years after his trial. Another federal judge from this district pointed out that "[t]he Detroit Police Department Crime Lab Firearms Unit was suspended from analyzing any firearms evidence in April 2008, after it was discovered that the crime lab was producing results that were potentially unreliable. *People v. Williams*, 2011 WL 6004067 (Mich. Ct. App. Dec. 1, 2011)." *Kennedy v. Mackie*, 2014 WL 4755820, at *3, n.1 (E.D. Sept. 24, 2014) (Cox, J.).

judgment, 111.)  Notably, the April 25, 2012 letter indicates that the
Conviction Integrity Unit reviewed Dantzler's case and determined that
no further action was necessary given that "[t]here was no forensic
evidence tested by the Detroit Police Lab."  This trial record supports
this latter statement.  (12/16/10 Tr. at 112, 128.)  In fact, an accredited
out-of-state technology company tested and analyzed the DNA in
Dantzler's case.  (12/20/10 Tr. at 12-13, 30, 34-67, 114-34.)

In the end, Dantzler has failed to establish good cause to excuse
any of his defaults and he has failed to show actual prejudice, nor has
he shown that reviewing his defaulted claims would result in a
fundamental miscarriage of justice.  Habeas review of his defaulted
claims should therefore be precluded.  But even if this Court considers
the defaulted claims they do not warrant habeas relief.

### B.    Dantzler's defaulted claims also lack merit.

#### 1.    *Brady* claim.

In his fourth claim Dantzler asserts that the prosecution violated
*Brady* when it failed to notify him that the evidence linking him to the
murder could have been tainted or otherwise compromised when it was
at the Detroit Police Crime Lab.  Dantzler first raised this claim in his

motion for relief from judgment but the trial court denied relief, citing to Mich. Ct. R. 6.508(D)(3), noting that Dantzler failed to preserve this claim at trial, and finding an overall lack of merit to the claim.  (3/4/15 Wayne Cir. Ct. Order.)  The trial court's lack-of-merit ruling is entitled to deference, and Dantzler cannot show that there is "no reasonable dispute" that the trial court's ruling was wrong.

*Brady* requires the prosecution to disclose exculpatory and impeachment evidence that is "material either to guilt or to punishment." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *Brady*, 373 U.S. at 87).  "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).  A *Brady* violation has three elements: (1) the evidence "must be favorable to the accused, either because it is exculpatory, or because it is impeaching"; (2) the "evidence must have been suppressed by the state, either willfully or inadvertently"; and (3) "prejudice must have ensued." *Strickler*, 527 U.S. at 281-82.  The petitioner bears the burden of establishing each of the three elements set forth above. *Carter v. Bell*, 218 F.3d 581, 601

(6th Cir. 2000). "Prejudice (or materiality) in the *Brady* context is a difficult test to meet…." *Montgomery v. Bobby*, 654 F.3d 668, 678 (6th Cir. 2011) (quoting *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002)). To establish prejudice "the nondisclosure [must be] so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id.* (quoting *Strickler*, 527 U.S. at 281). "[T]he *Brady* standard is not met if the petitioner shows merely a reasonable possibility that the suppressed evidence might have produced a different outcome; rather, a reasonable probability is required." *Id.* (emphasis in original).

Habeas relief is not warranted on this claim because Dantzler cannot show that the prosecution suppressed evidence favorable to Dantzler or that it suppressed evidence about the Detroit Police Crime Lab. Dantzler also cannot show the requisite prejudice or materiality because, as noted above, the Detroit Police Crime Lab did not even test the forensic evidence in Dantzler's case. In fact, an accredited out-of-state technology company tested and analyzed the DNA in Dantzler's case. (12/16/10 Tr. at 112, 128; 12/20/10 Tr. at 12-13, 30, 34-67, 114-34.) And the focus of the audit was on the firearms unit, not on the handling

42

of DNA evidence.  Dantzler has failed to meet the factual predicate for his claim that the DNA evidence in his case was tainted or otherwise compromised.  His claims about the DNA evidence are conclusory and based on mere speculation.  Dantzler asserts that the "only evidence" against him was the black hat found the crime scene (ECF #11, Motion, 18) but that is not true.  As the State previously argued, there was other evidence pointing to his guilt.  (ECF #8, Response, 54-57.)

The state trial court's denial of Dantzler's *Brady* claim on the merits is entitled to great deference under AEDPA and, where Dantzler has not shown that the state court's ruling was a malfunction, let alone an extreme one as described in *Richter*, habeas relief is not warranted.

### 2.  Allegations that trial counsel was ineffective.

Dantzler's allegations that trial counsel was ineffective fare no better.  In his fifth, sixth, and seventh claims, Dantzler asserts that his trial counsel was ineffective for three reasons: not hiring an independent DNA expert, not objecting to the trial court's adverse inference instruction, and not investigating when Dantzler told him that he did not own a gold car.  Dantzler raised these claims in his motion for relief from judgment but the trial court denied relief, citing

to Mich. Ct. R. 6.508(D)(3) and to a lack of merit.  (3/4/15 Wayne Cir. Ct.
Order.)  As noted above, the trial court's lack-of-merit ruling is entitled
to deference.

To show constitutionally ineffective assistance of counsel,
Dantzler must show that his trial counsel's performance was deficient
and that he was prejudiced by that deficient performance.  *Strickland*,
466 U.S. at 687-88.  Regarding the first prong, judicial scrutiny of
counsel's performance must be "highly deferential" and a reviewing
court "must indulge a strong presumption that counsel's conduct falls
within the wide range of reasonable professional assistance."
*Strickland*, 466 U.S. at 689.  It is "[r]are" that constitutionally
competent representation will require "any one technique or approach."
*Pinholster*, 563 U.S. at 195 (citing *Richter*, 562 U.S. at 106).  The
"absence of evidence" cannot overcome the strong presumption that
counsel's conduct fell within the wide range of reasonable professional
assistance.  *Titlow*, 134 S. Ct. at 17 (internal quotations omitted).

To meet the second prong, Dantzler must show that "there is a
reasonable probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different."  *Strickland*, 466

44

U.S. at 694.  Dantzler must "affirmatively prove" prejudice, *Strickland*,

466 U.S. at 693, and must show that the "likelihood of a different

result" is "substantial, not just conceivable."  *Richter*, 562 U.S. at 112.

"Evidence that would merely benefit a defendant to some possible

degree is not enough to show prejudice."  *Rayner v. Mills*, 685 F.3d 631,

641 (6th Cir. 2011).  *Strickland's* test for prejudice is "a demanding

one."  *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011).

"Surmounting *Strickland's* high bar is never an easy task."  *Padilla v.

Kentucky*, 130 S. Ct. 1473, 1485 (2010).  The standards created by

*Strickland* and § 2254(d) are both highly deferential and when the two

apply in tandem, review is doubly so.  *Richter*, 582 U.S. at 105 (internal

citations and quotations omitted).  But even under de novo review, "the

standard for judging counsel's representation is a most deferential one."

*Richter*, 582 U.S. at 105.

    Dantzler has failed to show that his federal constitutional rights

were violated.  As the State previously explained, trial counsel was not

deficient for not hiring an independent DNA expert:

> [A]s noted by the Michigan Court of Appeals the trial court
> *did* grant Dantzler's request for an expert.  Here, the expert
> Dantzler chose would not work for the money the court
> deemed was a reasonable fee and refused the appointment.

> Dantzler could have sought another expert, but instead chose to proceed to trial without one and use the amounts the prosecution paid their expert to his advantage. Dantzler's trial counsel, inquired into the amount of money the prosecutor was able to spend on the DNA testing. (12/20/10 Trial Tr. at 91.)  The trial judge also required the prosecution to determine the amount of the contracts that the Michigan State Police and Detroit Police had with Bode Technology to handle any outsourced DNA testing.  (12/20/10 Trial Tr. at 73-74.)  Trial counsel questioned the DNA experts about who paid for their flights to Detroit. (12/20/10 Trial Tr. at 78.)  Trial counsel questioned the experts about whether the amount they were paid by Bode Technology to analyze DNA evidence was more than a court appointed expert would have been paid.  (12/20/10 Trial Tr. at 132.) Dantzler's trial counsel was able to use the leeway that was allowed him to inquire into the money spent by the police and prosecution, both generally and specifically to this case, to argue to the jury that he was handicapped in combating the DNA evidence.

(ECF #8, Response, 64-65.)

Trial counsel made a strategic decision to not hire an independent expert, but to instead proceed to trial and challenge the prosecution witnesses.  The Supreme Court has never held that defense counsel must consult with and/or present an expert in every case in which expert opinion testimony could prove useful.  In other words, there is no per se rule that trial counsel seek out an expert.  The Supreme Court has said that "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an

46

equal and opposite expert from the defense." *Richter*, 562 U.S. at 111. And that "[i]n many instances cross-examination will be sufficient to expose defects in an expert's presentation," and when counsel "does not have a solid case, the best strategy can be to say there is too much doubt about the State's theory for a jury to convict." *Id*. Here, trial counsel questioned the prosecution experts about their fees and costs, and about their methods and results of the DNA testing. And in closing argument, he vigorously argued that there were reasons to question the prosecution DNA experts' testimony. (12/21/10 Tr. at 199-204.) Dantzler has not established that his attorney's decision to cross-examine the experts instead of obtaining his own independent expert was so outside of the wide range of reasonable professional conduct that it rendered him constitutionally deficient.

Dantzler cannot show the requisite prejudice. He has never proffered any evidence that there exists an expert who would have provided testimony that the DNA evidence in his case was flawed or who would have otherwise challenged the prosecutor's experts.[9]

---

[9] Indeed, trial counsel reasonably may have determined that any other expert would simply have confirmed presence of Dantzler's DNA on the black hat.

Dantzler has had years to find an expert to assess the DNA evidence but he has failed to do so.  This should be fatal to his assertion of prejudice.  A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir. 2006); see also *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) ("Speculation about what an expert could have said is not enough to establish prejudice"); *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) (rejecting ineffective assistance of counsel claim where petitioner "did not present any evidence or allegations concerning what the expert would have stated, or what results the scientific tests would have yielded").

Dantzler's claim that trial counsel was ineffective for not objecting to the modification of the trial court's adverse inference instruction also does not warrant habeas relief.  As the State previously argued:

> As noted by the Michigan Court of Appeals, Dantzler was not even entitled to such an instruction in the first place. *Dantzler*, 2012 WL 2335913, at *1-2.  Because Dantzler was not entitled to the instruction, challenging the trial court's language would have been pointless.  And, strategically trial counsel made a wise choice—objecting to the change of a single word when the court agreed to give an instruction Dantzler was not entitled to could have easily backfired. Had trial counsel quibbled over the one word change, the

trial court could have reconsidered its decision and not given any instruction.

> "In order to avoid second-guessing trial counsel's strategic decisions, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002), quoting *Strickland v. Washington*, 466 U.S. 668, 669 (1984).

> Here, Dantzler cannot overcome that presumption. He has not demonstrated that trial counsel performance fell below an objective standard of reasonableness, or that he was prejudiced....

(ECF #8, Response, 74-75.)[10]

Finally, Dantzler's claim that trial counsel was ineffective for not investigating when Dantzler told him that he did not own a gold car does not warrant habeas relief. In an affidavit dated 9/15/14, nearly four years after his trial, Dantzler claims that he told trial counsel, before trial, that he sold the car that Janet Burt saw at her home on the night of the murder, that he told trial counsel that he sold the car to Stephen Jennings, and that he told counsel to contact Jennings and the

---

[10] The State addressed Dantzler's claim that the trial court's adverse inference instruction was flawed in its previously filed answer. (ECF #8, Response, 28-43.)

Department of Motor Vehicles (DMV) to confirm transfer of the title. Dantzler says his attorney did not contact either.  As part of his motion for relief from judgment, Dantzler also submitted an undated affidavit from Stephen Jennings, who indicates that he purchased a gold car from Dantzler in September 2003 and that he sold that car to Antwan Smith in August 2004.

At trial, Dantzler testified that he did not have a car in January 2006 and that he sold the gold car he previously drove and had to his brother-in-law before January 2006.  (12/21/10 Tr. at 107-08.)[11]  So the information that Dantzler says counsel should have investigated—that he sold the gold car he previously drove—was presented to the jury. And in closing, trial counsel argued that although Burt said she believed that Dantzler had a gold-colored car, she never testified that she saw Dantzler at her house on the night of the murder.  (12/21/10 Tr. at 204.)  Dantzler cannot establish that trial counsel's failure to investigate or call Jennings or contact DMV was outside the wide range

---

[11] On cross-examination, Dantzler denied owning or driving a gold car, or previously saying he had a gold car.  (12/21/10 Tr. at 130-133, 157-58.)

of reasonable professional assistance, nor can he show the requisite prejudice by counsel's alleged error in this regard.

In the end, Dantzler has failed to meet his high burden of showing that his trial counsel was constitutionally ineffective. The record shows that trial counsel made sound strategic decisions, filed motions on Dantzler's behalf, questioned the prosecution's witnesses, called witnesses on behalf of the defense, and vigorously argued on behalf of his client in an effort to create reasonable doubt regarding his guilt. In fact, the trial court judge went out of its way to thank and commend both the prosecution and trial counsel for their "exemplary work ethic," "professionalism," "[p]reparation for trial," and "zealous[] represent[ation] [of] their clients." (12/22/10 Tr. at 20-21.) Dantzler has not overcome the strong presumption that trial counsel was competent with respect to his claims regarding hiring an independent DNA expert, objecting to the modified adverse inference instruction, and investigating the sale of his gold car, nor can he show the requisite prejudice with respect to these claims. More importantly, Dantzler cannot show that the state trial court's denial of relief on these claims was an extreme malfunction. That Dantzler was ultimately convicted

does not mandate a finding that trial counsel was constitutionally ineffective.  Habeas relief is not warranted on his ineffective-assistance-of-trial-counsel claims.

## III.   Dantzler's ninth claim is not cognizable on habeas review.

In his ninth claim Dantzler challenges the state trial court's handling of his motion for relief from judgment.  This claim is not cognizable on federal habeas review.  The Sixth Circuit Court of Appeals "has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v Palmer*, 484 F.3d 844, 853 (6th Cir. 2007).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  The Sixth Circuit has held that the "'scope of the writ'" does not encompass a "'second tier of complaints about deficiencies in state post-conviction proceedings.'" *Cress*, 484 F.3d at 853 (quoting *Kirby v. Dutton*, 794 F.2d 245, 248 (6th Cir. 1986)).  To the extent Dantzler claims that the state courts should have held a hearing on his

ineffective-assistance-of-counsel claims, this claim also does not

warrant relief. As another federal judge from this district noted:

> Even if that were true, such an error in the manner the state
> court chose to address a post-conviction challenge is not grist
> for the federal habeas mill. See *Cornwell v. Bradshaw*, 559
> F.3d 398, 411 (6th Cir. 2009). Moreover, there is no clearly
> established Supreme Court ruling that recognizes a
> constitutional right to a state court evidentiary hearing to
> develop a claim of ineffective assistance of counsel even on
> direct appeal. *Hayes v. Prelesnik*, 193 F. App'x 577, 584-85
> (6th Cir. 2006).

*Memminger v. McQuiggin*, 2014 WL 3400678, at *4 (E.D. Mich. July 11,

2014) (Lawson, J.). Habeas relief is not warranted on Dantzler's ninth

claim.

## IV. Habeas relief is not warranted on Dantzler's cumulative-error claim because the claim is procedurally defaulted, not cognizable, and lacks merit.

In his tenth claim Dantzler asserts that his right to due process

was violated where the cumulative effect of the errors denied him a fair

trial. But it appears that Dantzler never presented this claim to the

state courts. Under AEDPA, a habeas petitioner is required to fairly

present all of his habeas claims to the state courts before presenting

them in federal court in a habeas action. 28 U.S.C. § 2254(b)(1);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a

petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *Picard v. Connor*, 404 U.S. 270, 275-277 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system. *Duncan*, 513 U.S. at 365-66; *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim. *Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009). Exhaustion is a threshold question that must be resolved before the merits of any claim is reached. *Day v. McDonough*, 547 U.S. 198, 205 (2006) (describing exhaustion of state remedies as a "threshold barrier[]"); *Wagner*, 581 F.3d at 415. The petitioner bears the burden of proving that he has

exhausted his state court remedies. *Caver v. Straub*, 349 F.3d 340, 345 (6th Cir. 2003).

It appears that Dantzler never presented his cumulative-error claim to the state courts. And because he at this point would no longer have an available state court remedy by which to return to the state courts to present this claim—he already filed with the state trial court one motion for relief from judgment—the technically unexhausted claim is procedurally defaulted. In situations in which a petitioner has failed to fairly present federal claims to the state courts, and a state procedural rule now prohibits the state court from considering them, the claims are considered procedurally defaulted. *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009) (citing *Martin v. Mitchell*, 280 F.3d 594, 603 (6th Cir. 2002)); see also *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995) (Where a petitioner "fails to present his claims to the state courts and . . . is barred from pursuing relief there, his petition should not be dismissed for lack of exhaustion because there are simply no remedies available for him to exhaust.") Where a habeas petitioner has procedurally defaulted a claim he may escape the consequences of the default by showing good cause to excuse the default *and* actual

prejudice—or that failure to review the claim will result in a fundamental miscarriage of justice. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). This is the petitioner's burden.

Dantzler has failed to establish or allege good cause to excuse this particular default and actual prejudice, nor can he show that failure to consider this claim would result in a fundamental miscarriage of justice. But even if this Court considers the claim, it does not merit habeas relief.

Dantzler asserts that the effect of the errors deprived him of his federal and state rights to due process. Dantzler's claim that his rights under state law were violated is not cognizable. Nor is he entitled to relief on his claim that his right to federal due process was violated. The United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). And in this Circuit, a claim that the cumulative effect of errors rendered a petitioner's trial fundamentally unfair is not cognizable on habeas review. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005). Moreover, even if

such a claim could merit habeas relief, Dantzler has not established that any errors were committed in his case, whether considered separately or together, that abridged his federal constitutional rights. Relief on this claim is not warranted.

## CONCLUSION

Dantzler's *Brady* claim appears to be barred by the applicable statute of limitations, as detailed above, and this Court should dismiss the claim as untimely.  But even if considered, the claim is procedurally defaulted and without merit.

Dantzler's newly exhausted ineffective-assistance-of-trial-counsel claims are also procedurally defaulted because he first raised them in his motion for relief from judgment.  Dantzler has not shown cause to excuse his default, and actual prejudice—or that failure to review the claims would result in a fundamental miscarriage of justice.  Accordingly, habeas review of the defaulted claims should be barred.  But even if considered, habeas relief is not warranted, for reasons set forth above and in the State's previously filed answer.

Dantzler's cumulative-error claim is defaulted because he never presented it to the state courts and because he has no means by which to do so at this point; this claim also lacks merit.  And his challenge to the trial court's handling of his motion for relief from judgment is not cognizable on federal habeas review.

The state courts' rejection of Dantzler's claims on the merits did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. Dantzler was "entitled to a fair trial but not a perfect one." *Lutwak v. United States*, 344 U.S. 604, 619 (1953); *see also United States v. Hajal*, 555 F.2d 558, 569 (6th Cir. 1977) ("[W]e have yet to review a perfect jury trial."). The state-court decisions in this case were not "so lacking in justification" that they resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. The formidable threshold for granting habeas relief has not been met because fairminded jurists could disagree on the correctness of the state court's decision. *Yarborough*, 541 U.S. at 664. Consequently, habeas relief should be denied.

And Dantzler is not entitled to habeas relief because he has not established that the alleged errors had a substantial and injurious effect on the verdict in this matter. *See Brecht v. Abrahamson*, 507 U.S. 619 (1993).

Additionally, the State opposes any requests for bond, discovery,[12]

oral argument, or any other relief, including a certificate of

appealability (COA) so as to proceed further if this Court denies the

petition.  In order to obtain a COA, a petitioner must make "a

substantial showing of the denial of a constitutional right."  28 U.S.C. §

2253(c)(2).  To demonstrate this denial, the petitioner is required to

show that reasonable jurists could debate whether, or agree that, the

petition should have been resolved in a different manner, or that the

issues presented were adequate to deserve encouragement to proceed

---

[12] Unlike typical civil litigants, "[h]abeas petitioners have no right to automatic discovery." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).  Rule 6(a) permits district courts to authorize discovery in habeas corpus proceedings under the Federal Rules of Civil Procedure only "for good cause."  R. Governing 2254 Cases in the U.S. Dist. Cts. 6(a).  "Rule 6 embodies the principle that a court must provide discovery in a habeas proceeding only 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997)).  "Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.' " *Williams*, 380 F.3d at 974 (quoting *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997)); Habeas Rule 6(a).  "Conclusory allegations are not enough to warrant discovery under Rule 6; the petitioner must set forth specific allegations of fact." *Williams*, 380 F.3d at 974 (internal quotation marks and citation omitted).  Dantzler has not met this burden.

further.  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (citations omitted).

When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong.  *Slack*, 529 U.S. at 483-84.  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claims, a COA should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Id.* at 484.

When a plain procedural bar is present, and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further.  In such a circumstance, no appeal would be warranted.  *Id*.  Dantzler has not established that a COA is warranted in this case.

## RELIEF

For the reasons stated above and in the State's previously filed answer, the State respectfully asks this Court to dismiss Dantzler's fourth claim as untimely, to dismiss Dantzler's amended petition (or at least his new claims) because he failed to comply with this Court's order, or to deny habeas relief—and any other relief that Dantzler seeks or may seek, including but not limited to discovery, evidentiary hearings, bond, oral argument, and a certificate of appealability—on all of Dantzler's claims.

Respectfully submitted,

Bill Schuette
Attorney General

s/Raina Korbakis

Assistant Attorney General
Criminal Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
korbakisr@michigan.gov
P49467

Dated: April 19, 2017

2013-0061292-A/Dantzler, Samuel/Answer in Opposition to Petition for Writ of Habeas Corpus

## CERTIFICATE OF SERVICE

I certify that on April 19, 2017, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

HONORABLE LAURIE J. MICHELSON
MAGISTRATE JUDGE MONA K. MAJZOUB

and I certify that Juliana Lindeman has mailed by United States Postal Service the papers to the following non-ECF participant:

SAMUEL DANTZLER #518107
CARSON CITY CORRECTIONAL FACILITY
10274 BOYER ROAD
CARSON CITY, MI 48811

Respectfully submitted,

Bill Schuette
Attorney General

s/Raina Korbakis

Assistant Attorney General
Criminal Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
korbakisr@michigan.gov
P49467