UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL DANTZLER,

    Petitioner,

v.

RANDEE REWERTS, Warden,[1]

    Respondent.

Case No. 13-14764
Honorable Laurie J. Michelson

---

**OPINION AND ORDER TRANSFERRING SECOND OR SUCCESSIVE HABEAS PETITION [48] TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

---

Samuel Dantzler was convicted of first-degree felony murder in a Michigan jury trial. After his state court appeals were unsuccessful, Dantzler petitioned for a writ of habeas corpus in this Court. (ECF No. 1.) The Court denied Dantzler's petition (ECF No. 27) but granted a certificate of appealability for claims related to ineffective assistance of counsel (*id.* at PageID.2242–2243). The Sixth Circuit affirmed. *Dantzler v. Rewerts*, No. 20-1059, 2021 WL 3754248, at *11 (6th Cir. Aug. 25, 2021).

Now before the Court is Dantzler's motion for relief from judgment filed under Federal Rule of Civil Procedure 60(b). (ECF No. 48.) After careful consideration, the

---

[1] In a habeas case brought by an incarcerated petitioner, the proper respondent is the warden of the facility where the petitioner is incarcerated. *See* Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. § 2254, Rule 2(a) (amended 2019); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–36 (2004). So the Court substitutes Randee Rewerts, the current warden of the Carson City Correctional Facility where Dantzler is currently incarcerated, as the respondent here.

motion will be transferred to the Sixth Circuit as an application for authorization to file a second or successive habeas petition.

I.

A detailed summary of the history of this case was set forth in the opinion affirming the denial of Dantzler's habeas petition. *See Dantzler*, 2021 WL 3754248, at *1–6, *available at* (ECF No. 42, PageID.2320–2321). For present purposes, a shorter account will suffice.

This case arises from the January 2006 murder of Bernard Hill. Hours before his murder, Hill had violently assaulted his former girlfriend, Quiana Turner. *Id.* at *1. Evidence indicated that six men related to Turner carried out a retaliatory attack on Hill. *Id.* Hill died from a gunshot wound to the head. *Id.* Police were unable to identify the perpetrators, and the case went cold. *Id.*

Later DNA testing of a knit cap left at the crime scene tied Dantzler to the murder. *Id.* at *2. A state contractor, Bode Technology, performed DNA testing, which revealed a mixed-DNA profile on the cap from multiple sources including the victim and Dantzler. *Id.* at *3–4. This was the prosecution's key evidence at trial. *Id.*

Since DNA evidence was crucial to the case, the trial court authorized defense counsel to hire an independent DNA defense expert. *Id.* at *7. Defense counsel located an expert, but the trial court denied appointment after it determined that the rates requested by the expert were "exorbitant." *Id.* Defense counsel never obtained another expert, instead relying on cross-examination of the state's experts to challenge the DNA evidence at trial. *Id.* at *4.

Following a jury trial in the Wayne County Circuit Court, Dantzler was convicted of first-degree murder for his participation in the shooting death of Hill. *Id.*; *see People v. Dantzler*, No. 303252, 2012 WL 2335913, at *1 (Mich. Ct. App. June 19, 2012) (per curiam) ("A jury convicted [Dantzler] of first-degree felony murder on the theory that he either killed Hill or aided and abetted in Hill's murder while participating in breaking and entering . . . .").

Dantzler appealed his conviction with counsel, arguing, among other things, that the trial court's decision to deny appointment of the defense's DNA expert violated his due process rights. *Dantzler*, 2021 WL 3754248, at *4. The Michigan Court of Appeals affirmed his conviction, and the Michigan Supreme Court denied review. *Id.*; *see Dantzler*, 2012 WL 2335913, *appeal denied*, 823 N.W.2d 595 (Mich. 2012) (mem.), *and reconsideration denied*, 829 N.W.2d 219 (Mich. 2013) (mem.). Following that unsuccessful direct appeal, Dantzler filed a *pro se* post-conviction motion in state court asserting prosecutorial misconduct, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel. (ECF No. 20-4, PageID.1811.)

Relevant here, Dantzler asserted in his motion for post-conviction relief that his trial counsel was ineffective for failing to hire a defense expert to examine the DNA evidence and that his appellate counsel was ineffective for failing to raise this issue on direct appeal. (ECF No. 20-3, PageID.1672–1674.) Since the crime involved multiple perpetrators who may have been associated with him, Dantzler argued that further testing of the cap might have revealed DNA from another suspect. (*Id.* at

PageID.1697–1699.) Dantzler claimed that such a result would have supported his defense that, while he might have worn the cap at some point in time, it was someone else with access to the cap who was wearing it at the time of the murder. (*Id.*) Thus, he argued, his counsel was deficient by failing to obtain independent testing, and this failure prejudiced him. (*Id.*) The state courts disagreed and denied post-conviction relief. (*See* ECF No. 20-4, PageID.1811–1814; ECF No. 20-5, PageID.1816; ECF No. 20-6, PageID.2006.)

Dantzler then raised the same ineffective assistance of counsel argument in his initial *pro se* habeas petition before this Court (*see* ECF Nos. 1, 11), claiming that independent DNA testing could have implicated another suspect. (ECF No. 11, PageID.1536–1539.) The Court determined that Dantzler could not demonstrate prejudice because the results of hypothetical additional testing were speculative and there was no suggestion that a defense expert would have refuted the finding that Dantzler's DNA was found on the hat. (ECF No. 27, PageID.2239 (noting "misgivings about trial counsel's failure to obtain independent DNA testing and the state court's cursory analysis of the ineffective-assistance-of-counsel claim" but concluding that "[e]ven if the Court were to assume that trial counsel's performance was deficient, Dantzler cannot establish prejudice as required by *Strickland*").)

On appeal to the Sixth Circuit, Dantzler, now represented by counsel, did not advance his argument that further testing might have implicated another suspect.[2]

---

[2] The Court notes that the prosecutor mistakenly touched the hat during trial, such that further DNA testing is no longer possible. *See Dantzler*, 2021 WL 3754248, at *3 n.1 ("During his direct examination of [a DNA expert witness for the state], the

*Dantzler*, 2021 WL 3754248, at *9. Instead, he "shift[ed] the focus to whether [his] DNA was on the hat. Dantzler argue[d] that because his DNA was taken from a multi-source touch sample (i.e., taken from a surface that more than one person had touched) that included the DNA of other people, the government witness's testimony regarding the DNA profiles it had generated was questionable." *Id*. He also asserted that a defense expert might have challenged the prosecutor's characterization of the odds that someone else's DNA would be found on the hat. *Id*. The Sixth Circuit concluded, over a dissent, that Dantzler failed to demonstrate prejudice under either of those theories. *Id*. at *10–11. It explained, for example, that Dantzler's critique of the "pitfalls [of] multi-source touch DNA analysis" was insufficient without "any evidence" or expert testimony on "how those 'pitfalls' applied in his case specifically." *Id*. at *10 (alteration in original). The Sixth Circuit thus affirmed this Court's denial of Dantzler's habeas petition. *Id*. at *11.

## II.

Dantzler, through his court-appointed counsel, now moves for relief from judgment under Federal Rule of Civil Procedure 60(b)(6) on the basis that his habeas proceedings lacked integrity and extraordinary circumstances merit relief. (ECF No. 48.) The Court begins by summarizing Dantzler's arguments before analyzing whether Dantzler has brought a Rule 60(b) motion or, instead, a second or successive habeas petition.

---

prosecutor removed the cap from its bag and touched it. As a result, [the witness] explained, no more DNA testing could be conducted.").

## A.

Dantzler's first argument is that there was a "defect in the integrity of [his] federal habeas proceedings." (*Id.* at PageID.2359.) He points to the Sixth Circuit's basis for rejecting his habeas petition: that he lacked evidence of prejudice resulting from his trial counsel's failure to hire a DNA expert. (*Id.* at PageID.2360–2364.) According to Dantzler, that rationale is flawed because his efforts to obtain such evidence were "stymied for years at every turn." (*Id.* at PageID.2360.) He asserts that, at every level of review, he was denied the opportunity to submit evidence demonstrating that he was prejudiced by his trial counsel's failure to hire a DNA expert. (*Id.* at PageID.2359–2361.)

Dantzler raises three main points to support his argument that the prior proceedings lacked integrity. First, he says he did not have a lawyer helping him to challenge the prosecution's DNA evidence. He summarizes his trial counsel's failure to produce a DNA expert and his appellate counsel's failure to challenge that decision as ineffective assistance of counsel. (*Id.* at PageID.2361–2362.) He also points out that, as a *pro se* litigant, he lacked resources to procure an expert on his own. (*Id.* at PageID.2340.)

Second, Dantzler claims that he could not bring evidence forward because the Michigan State Police did not disclose the relevant DNA files until November 2021, months after the Sixth Circuit had already rejected his habeas petition. (*Id.* at PageID.2356, 2362–2364; *see* ECF No. 52.) His counsel also summarizes the onerous process of obtaining the un-redacted DNA files. He cites a Freedom of Information

Act request to Michigan State Police that returned "743 pages of DNA lab records that had never been turned over to the defense" but which remained highly redacted. (*Id.* at PageID.2356.) After several years of working with the Wayne County Conviction Integrity Unit and the Cooley Law School Innocence Project, his counsel says he was finally able to obtain hundreds of pages of unredacted DNA records. (*Id.* at PageID.2357.)

Third, Dantzler asserts he was denied the opportunity to submit evidence demonstrating prejudice because he repeatedly asked for, and was denied, an evidentiary hearing in state and federal habeas proceedings. (*Id.* at PageID.2362–2364.) Without an evidentiary hearing, Dantzler says he could only cite scientific studies, which the Sixth Circuit concluded did not demonstrate prejudice as to Dantzler specifically. (*Id.* at PageID.2363 (citing *Dantzler*, 2021 WL 3754248, at \*8, \*12).)

All of this, according to Dantzler, made it nearly impossible to meet the evidentiary burden on his ineffective assistance of counsel claim. Dantzler asserts that his motion therefore properly challenges "the integrity of the federal habeas proceedings" and thus does not constitute a second or successive petition. (*Id.* at PageID.2341 (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005)).)

Dantzler also argues that there are "extraordinary circumstances," including "newly discovered evidence, and changes in law" favoring his case, that warrant relief

under Rule 60(b)(6).³ (*Id.* at PageID.2341–2342.) First, Dantzler now produces the very thing that he says prevented him from obtaining relief: a report from an independent DNA expert demonstrating that he was prejudiced by his trial counsel's failure to present one at trial. (*Id.* at PageID.2340–2341 (citing ECF No. 48-2).) That report accepts the prosecution expert's finding that Dantzler's DNA was found on the hat. (*See* ECF No. 48-2, PageID.2373 ("The Bode analysis demonstrates that S. Dantzler, Sr.'s full profile is observed as the major contributor to the cutting from [the] hat. His presence on the hat is not in dispute.").) But it nevertheless opines that a defense expert would have provided useful assistance in Dantzler's defense:

> Without a thorough case review by an independent expert the defense could not introduce and support relevant forensic DNA topics (*e.g.*, DNA transfer), could not hold the State's expert to the most accurate (and correct) language and perhaps more importantly could not force an understanding that the DNA profiling in this case should not be conflated with participating in the assault of the victim.

(*Id.* at PageID.2379.) The report concludes that "[t]he hat may have had contact with both the decedent and Mr. Dantzler, Sr., but how, when and where these contacts might have taken place prior to being collected by law enforcement, is completely outside the ability of forensic DNA." (*Id.*)

Second, Dantzler claims that he has obtained new evidence of his innocence by way of polygraph exams of Dantzler and his son. (ECF Nos. 48-3; 48-4.) According to

---

³ In other words, Dantzler points to new evidence and changes in law that he says create extraordinary circumstances warranting relief under Rule 60(b)(6) (the "catchall provision" allowing for relief from a final judgment for "any other reason that justifies relief"). He does not make an independent Rule 60(b)(2) argument about "newly discovered evidence."

Dantzler's son's report, he and four of his friends committed the crime. (*See* ECF No. 48-3, PageID.2380–2381 (summarizing the son's polygraph examination, including that the son said that he "gathered 4 of his friends" to "teach Hill a lesson," that he beat Hill by punching Hill and hitting Hill with a golf club, that one of his friends "produced a revolver . . . out of nowhere" and shot Hill, and that "it was never his intent to kill Hill").) The son told the examiner that he was the one wearing the black cap and that he had taken it from the home he lived in with his parents. (*Id.* at PageID.2380.) He believed that he lost the cap at the scene when the victim grabbed him during the struggle. (*Id.* at PageID.2381.) And he said that his father "was not present when Hill was shot and . . . did not participate in the confrontation with Hill." (*Id.*) During Dantzler's own polygraph exam, he told the examiner that he had nothing to do with the crime and believed that the cap must have been worn by one of his family members. (ECF No. 48-4, PageID.2382–2383.) The polygraph examiner for both Dantzler and the son concluded that "the recorded responses to the above questions were truthful and not indicative of deception." (*Id.* at PageID.2383; ECF No. 48-3, PageID.2381; *see* ECF No. 48, PageID.2345–2346 n.2 ("[Dantzler's son] passed a polygraph affirming that his father was not involved. Dantzler also passed a polygraph attesting to his innocence." (citations omitted)).)

Finally, Dantzler points to "new" (or post-conviction) case law as support that his case presents extraordinary circumstances. He cites a Michigan Supreme Court case, *People v. Kennedy*, 917 N.W.2d 355, 360 (Mich. 2018), which expanded the right to present a defense to include the appointment of DNA experts, in support of his

argument that Michigan now recognizes the importance of independent DNA experts in cases such as his. (ECF No. 48, PageID.2365.) He also references a United States Supreme Court case, *Hinton v. Alabama*, 571 U.S. 263, 273 (2014), which held that a defense counsel's failure to request additional funds to replace an inadequate expert amounted to deficient performance. While that case mostly dealt with the deficiency prong of the *Strickland* analysis, Dantzler quotes language from the Court about how invalid forensic testimony can lead to wrongful conviction if not challenged:

> This threat [of wrongful conviction based on invalid forensic testimony] is minimized when the defense retains a competent expert to counter the testimony of the prosecution's expert witnesses; it is maximized when the defense instead fails to understand the resources available to it by law.

(*Id.* at PageID.2367 (quoting *Hinton*, 571 U.S. at 276.).)

In sum, Dantzler asserts that his previous habeas proceedings lacked integrity because he was unfairly faulted for not having evidence of prejudice, when he says that evidence was impossible to obtain. (*Id.* at PageID.2358.) Further, Dantzler points to a variety of factors, such as the fact that he claims to have new evidence showing prejudice and polygraph reports indicating his innocence, which he considers to be extreme circumstances meriting relief under Rule 60(b)(6). (*Id.* at PageID.2341–2342.) Dantzler asks the Court to "grant [his] request for relief and grant habeas relief ordering a new trial with constitutionally effective counsel." (*Id.* at PageID.2367.)

Respondent maintains that because Dantzler's motion seeks a grant of habeas relief based on a reassessment of a claim that was already rejected on the merits, the

motion constitutes a second or successive habeas petition under 28 U.S.C. § 2244(b). (ECF No. 50, PageID.2399–2404.) Respondent asserts that the Court therefore does not have jurisdiction to consider the second petition absent authorization from the Sixth Circuit. (*Id.*) The Court turns to that question next.

## B.

Under the Antiterrorism and Effective Death Penalty Act of 1996, a district court does not have jurisdiction to consider a petitioner's "second or successive" habeas petition unless the petitioner first obtains authorization from the "appropriate court of appeals." 28 U.S.C. § 2244(b)(3)(A); *see Franklin v. Jenkins*, 839 F.3d 465, 473 (6th Cir. 2016). When a habeas petitioner files a Rule 60(b) motion, the "threshold inquiry is whether [the petitioner's] Rule 60(b) motion is a 'true' Rule 60(b) motion or simply a 'second or successive' habeas application cloaked in Rule 60(b) garb." *Franklin*, 839 F.3d at 473 (quoting *Gonzalez*, 545 U.S. at 531).

A filing otherwise styled as a Rule 60(b) motion is treated as a habeas petition within the meaning of 28 U.S.C. § 2244(b) if it advances a new ground for relief from the state conviction or "attacks the federal court's previous resolution of a [habeas] claim *on the merits*." *Gonzalez*, 545 U.S. at 532. In *Post v. Bradshaw*, 422 F.3d 419 (6th Cir. 2005), the Sixth Circuit held that a Rule 60(b) motion was "clearly" a successive petition because it sought "to advance, through new discovery, claims that the district court previously considered and dismissed on substantive, constitutional grounds: i.e., on the merits." *Post*, 422 F.3 at 424–25; *see also Smith v. Anderson*, 402 F.3d 718, 724 (6th Cir. 2005) (construing petitioner's Rule 60(b)(6) motion to vacate

the death sentence as a second or successive habeas petition because it asked the district court to reassess the merits of his ineffective assistance of counsel claim in light of new, allegedly mitigating evidence of brain damage).

In contrast, a "true" Rule 60(b) motion "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Gonzalez*, 545 U.S. at 532. Put another way, a petitioner has filed a "true" Rule 60(b) motion "[w]hen no 'claim' is presented," and "neither the motion itself nor the federal judgment from which it seeks relief substantively addresses federal grounds for setting aside the movant's state conviction." *Id.* at 533. So a challenge to a prior ruling that prevented the federal court from reaching the merits of a claim—such as a prior denial for procedural default, failure to exhaust, or the statute of limitations—is a proper Rule 60(b) motion. *Id.* at 532 n.4. The Sixth Circuit has likewise held that a Rule 60(b) motion asserting new evidence of actual innocence to overcome a previous procedural default is not a second or successive petition. *In re Cross*, No. 24-5287, 2024 U.S. App. LEXIS 28994, at *6–8 (6th Cir. Nov. 14, 2024). Similarly, a Rule 60(b) motion may properly challenge the application of a rule that prevented a habeas court from reaching the merits of a Fourth Amendment claim. *See Lamb v. Palmer*, No. 03-73587, 2021 U.S. Dist. LEXIS 40588, at *6–8 (E.D. Mich. Mar. 4, 2021).

Dantzler's motion does not fall within those camps. It is not a "true" 60(b) claim because both this Court and the Sixth Circuit have already rejected his ineffective assistance of counsel claim on the merits. To Dantzler, the independent DNA expert's

report, as well as other evidence (that, while newly discovered, is not new), shows that his trial counsel's failure to obtain a DNA expert was in fact prejudicial. (ECF No. 48, PageID.2340 ("Dantzler now has evidence of the exact issue the Sixth Circuit found lacking—a DNA expert has outlined the ways in which Mr. Dantzler's defense was constitutionally deficient due to the lack of a DNA expert.").) A straightforward application of *Gonzalez* prohibits such a motion because "attack[ing] the federal court's previous resolution of a claim on the *merits* . . . is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief." *Gonzalez*, 545 U.S. at 532.

Dantzler resists this conclusion by relying on *Buck v. Davis*, 580 U.S. 100 (2017), where the Supreme Court concluded a habeas petitioner was entitled to relief from judgment based on the catch-all provision of Rule 60(b)(6) for "any other reason that justifies relief." *Buck*, 580 U.S. at 110 (quoting Fed. R. Civ. P. 60(b)(6)). But *Buck* involved an appeal from the denial of a habeas petitioner's Rule 60(b) motion—specifically, an appeal from the denial of a certificate of appealability, which would have allowed the petitioner to appeal the district court's denial of his underlying Rule 60(b)(6) motion. *Id.* at 114. *Buck* did not discuss the issue presented here: whether that underlying Rule 60(b) motion constituted a second or successive habeas petition.[4] And, critically, while procedural default was the reason the *Buck*

---

[4] In *Buck*, the petitioner was denied federal habeas relief because he had procedurally defaulted on his ineffective assistance of trial counsel claim by failing to raise it on state collateral review. *Buck*, 580 U.S. at 110–11. At the time of his habeas petition, Buck was unable to assert ineffective assistance of post-conviction counsel as cause to excuse the default. *Id.* at 111 ("At the time Buck filed his § 2254 petition,

petitioner's federal habeas petition was denied, here Dantzler's ineffective assistance of counsel claim has already been rejected on the merits by both this Court and the Sixth Circuit.[5]

Dantzler also argues that his case presents extraordinary circumstances meriting relief under Rule 60(b)(6) as in *In re West*, 103 F.4th 417, 419 (6th Cir. 2024). (ECF No. 48, PageID.2361; ECF No. 52, PageID.2424.) But in that case, the Sixth Circuit found a habeas petitioner's Rule 60(b) motion proper because "separate and apart from any claim of constitutionally deficient counsel, [the] sentencing judge[] [had] acknowledge[d] in non-habeas post-conviction proceedings that [petitioner was] serving an unconstitutionally imposed life sentence." *In re West*, 103 F.4th at 420. Unlike *In re West*, Dantzler collects the injustices and obstacles he says he has faced

---

our decision in in *Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991), made clear that an attorney's failure to raise an ineffective assistance claim during state postconviction review could not constitute cause."). The Supreme Court subsequently held that the ineffectiveness of post-conviction counsel, under certain circumstances, may constitute cause to excuse such a procedural default. *See Martinez v. Ryan*, 566 U.S. 1, 14 (2012); *Trevino v. Thaler*, 569 U.S. 413, 428 (2013). So Buck filed a Rule 60(b)(6) motion asserting, among many other things, that relief from judgment was appropriate because of "the change in law effected by *Martinez* and *Trevino*, which, if they had been decided earlier, would have permitted federal review of Buck's defaulted claim." *Buck*, 580 U.S. at 113. The district court denied the motion and denied a certificate of appealability. *See id.* at 105. The Fifth Circuit likewise denied a certificate of appealability. *Id.* The Supreme Court reversed, holding that it was error to deny the certificate of appealability because the petitioner was entitled to relief under Rule 60(b)(6). *Id.* at 128.

[5] Dantzler points to a second case, *In re Johnson*, 935 F.3d 284 (5th Cir. 2019). (*See* ECF No. 48, PageID.2360–2361.) That case, however, involves a similar situation as the one presented in *Buck*. The petitioner's Rule 60(b) motion asserted that his post-conviction counsel was ineffective under *Martinez* and *Trevino* and did not attack the federal habeas court's previous resolution of a claim on the merits. *In re Johnson*, 935 F.3d at 289–91.

and reinserts them into a constitutionally deficient counsel claim that was already litigated on the merits. (ECF No. 48; ECF No. 52.) The Sixth Circuit cautions district courts against broadly granting this type of relief. 103 F.4th at 419 ("Extraordinary circumstances, for purposes of Rule 60(b)(6), 'will rarely occur in the habeas context'—but they are not unheard of.").

To summarize, Dantzler maintains that his habeas claim was only rejected on the merits because he "never truly had an opportunity" to make his case. (ECF No. 48, PageID.2359.) But once Dantzler litigated his habeas petition on the merits, even if he had not yet obtained the most persuasive evidence of his claim, the federal court resolved his claim. *Gonzalez* prohibits Rule 60(b) motions that attack the prior resolution of a habeas claim on the merits. Dantzler's motion does just that.

## C.

The Court therefore finds that the clear language in *Gonzalez* controls. Dantzler asks this Court to reconsider his ineffective assistance of counsel claim in light of new evidence, i.e., his motion seeks to attack this Court's and the Sixth Circuit's prior determination. It thus constitutes a second or successive habeas petition.[6]

---

[6] The Michigan Supreme Court case Dantzler mentions, *People v. Kennedy*, 917 N.W.2d 355, 360–66 (Mich. 2018), does not change the outcome. For starters, the Court has already considered the case, as Dantzler brought it to the Court's attention during his initial habeas petition as a *pro se* litigant. (ECF No. 21.) He raises it now as further evidence of prejudice. (ECF No. 52, PageID.2427 (arguing that, because of *Kennedy*, "the injustice of Dantzler's case likely would not have occurred today").) But, like his other arguments, this serves as additional evidence of an already-litigated claim. Therefore, it does not lead the Court to construe his motion as a "true" Rule 60(b) motion.

This does not mean that Dantzler is without recourse. It only means this Court is not the first stop for making these arguments. And, given the nature of some of them, the Sixth Circuit may yet grant him authorization to file a second or successive habeas petition in this Court. At that time, the Court would have jurisdiction to consider the merits of Dantzler's newly supported ineffective assistance of counsel claim. But Dantzler's motion is the functional equivalent of a successive habeas petition, so the Court is constrained by § 2244(b)(3)(A) unless and until Dantzler is given such authorization.

Accordingly, the Clerk of Court shall TRANSFER this motion to the United States Court of Appeals for the Sixth Circuit to be considered as a motion for an order authorizing the district court to consider the second or successive application. 28 U.S.C. §§ 2255(h), 2244(b)(3)(A).

SO ORDERED.

Dated: September 22, 2025

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES DISTRICT JUDGE